# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| Horizon Global Americas, Inc. | ) | Case No. |
| | ) | |
| Plaintiff, | ) | Judge |
| | ) | |
| vs. | ) | |
| | ) | Jury Trial Demanded |
| Northern Stamping, Inc. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## COMPLAINT

For its complaint against defendant Northern Stamping, Inc. ("NSI"), plaintiff Horizon Global Americas, Inc. ("Horizon") states:

### Summary of Case

1. This is an action for damages and injunctive relief to remedy the infringement by NSI of U.S. Patent No. 9,834,050 (the "'050 Patent").

2. As a global leader in innovate towing and trailering equipment, Horizon has developed and established a highly valuable portfolio related to its innovative products, including the '050 Patent related to an innovative underbed hitch mounting system. (Ex. A.)

3. Accordingly, Horizon seeks to enjoin NSI's ongoing patent infringement and to obtain monetary relief for the harm NSI has caused.

## Parties

4. Horizon is a Delaware corporation with a principal place of business at 47912 Halyard Dr. #100, Plymouth, MI 48170. Horizon was previously known as Cequent Performance Products, Inc. and Cequent Towing Products, Inc.

5. Upon information and belief, NSI is an Ohio corporation with a principal place of business in at 6600 Chapek Parkway, Cuyahoga Heights, OH 44125. Upon information and belief, Northern Stamping Co. is registrant and owner of NSI.

## Jurisdiction and Venue

6. This Court has subject matter jurisdiction over Horizon's patent infringement claims under 28 U.S.C. §§ 1331 and 1338(a) because they arise under federal law and, more specifically, the U.S. Patent Act, 35 U.S.C. § 1 *et seq*.

7. This Court also has personal jurisdiction over NSI at least because among other things, upon information and belief, NSI does business in Ohio and offers for sale products, including infringing products, anywhere in the U.S. including in Ohio and to Ohio businesses or individuals. By willfully infringing the '050 Patent, NSI is intentionally causing tortious harm to Horizon in Ohio; upon information and belief, NSI has sold products, including infringing products, in Ohio and to Ohio businesses or individuals; upon information and belief, NSI's principal place of business and headquarters is in Ohio.

8. Venue is proper under 28 U.S.C. § 1391 because NSI is subject to personal jurisdiction in this district under Ohio law and, therefore, "resides" in this district according to federal law.

**Relevant Facts**

**I.     Horizon's Innovations and the '050 Patent**

9. Horizon is one of the world's leading manufacturers of towing and trailering equipment. For decades, Horizon and its predecessors and affiliates have continually designed, produced, manufactured, distributed, and marketed a wide array of high-quality and custom-engineered products and accessories for trailer equipment manufacturers, wholesaler-distributors, and retail markets in Northern America, Australia, and Europe.

10. Horizon is home to some of the most recognized brands in the towing and trailering industry, including: Reese®, Hayman-Reese™, Draw-Tite®, Bulldog®, Fulton®, ROLA®, Tekonsha®, and Westfalia®. Horizon has approximately 4,700 employees in 67 facilities across 21 countries.

11. Horizon is committed to providing cutting-edge and best-in-class products to its consumers. In recognizing the value of intellectual property and patented technology, Horizon has developed and established a highly valuable patent portfolio related to its innovations.

12. Horizon developed and was first to market an innovative underbed hitch mounting system that alleviated the common aftermarket problem of installing rails on top of a truck bed that attaches to a hitch. Such installation on top of a truck bed could cause damage to the truck bed and was thought to potentially void the truck warranty.

13. Horizon was approached by the Ford Motor Company, and Horizon thereafter developed its innovative underbed hitch mounting system that removed the rails from the top of the truck bed.

14. To this end, Horizon currently owns the '050 Patent entitled "Underbed Hitch Mounting System" and directed to an improved towing apparatus.

15. The '050 Patent, was duly and legally issued on December 5, 2017. (Ex. A.)

16. The '050 Patent is valid and enforceable.

17. Horizon marks its products as covered by the '050 Patent pursuant to 35 U.S.C. §287, giving notice to the public.

18. General Motors also approached Horizon about supplying an underbed system, but no agreement was reached. General Motors then approached NSI to provide the underbed systems.

19. NSI has knowledge of and is aware of the '050 Patent at least as of December 12, 2017 when Horizon provided a letter to NSI regarding the same. (Ex. B.)

## II. NSI's Infringement of the '050 Patent

20. Upon information and belief, NSI has made, used, sold, and offered to sell, and continues to make, use, sell, and offer to sell, products that infringe the '050 Patent.

21. Upon information and belief, NSI has sold and continues to sell an underbed combined gooseneck and fifth wheel hitch mounting system, which infringes the '050 Patent, to General Motors or to its subsidiaries or affiliates that is incorporated into at least the Chevrolet Silverado.

## III. NSI Refuses to Comply

22. After discovering that NSI was selling infringing products, Horizon sought to resolve the dispute without court intervention. (Ex. B.) Horizon and NSI have been in communication regarding potential resolutions.

23. These discussions have not resulted in agreement, however, and NSI has refused to stop selling its infringing products.

24. Since NSI continues to infringe the '050 Patent, Horizon has had no choice but to defend itself in court.

### Count I
*Infringement of the '050 Patent*

25. Horizon incorporates by reference all allegations in all preceding paragraphs of this complaint as if fully set forth herein.

26. NSI has directly and indirectly infringed, and, upon information and belief, continues to directly and indirectly infringe, the '050 Patent at least by making, using, selling, and offering for sale its underbed hitch mounting system.

27. As a non-limiting, illustrative example of how NSI's underbed hitch mounting system infringes one or more claims of the '050 Patent, below is a comparison chart showing how, for example, NSI's underbed hitch mounting system includes each and every limitation of claims 1, 2, 4, and 8 of the '050 Patent.

| '050 Patent Claim | NSI's Underbed Hitch Mounting System |
|---|---|
| 1. An underbed hitch mounting system comprising: | |
| at least one tubular member having a cross-sectional shape a substantial portion of which is defined by an enclosed peripheral wall with a generally hollow section | The cross-members (yellow) are each a tubular member having a cross-sectional shape, a substantial portion of which is defined by the peripheral wall with a generally hollow section (*i.e.*, the walls of the tube)<br><br>tubular members (yellow) |

| '050 Patent Claim | NSI's Underbed Hitch Mounting System |
|---|---|
| a central member attached to said at least one tubular member, said central member having a socket; and | The central member (blue) is attached to at least one tubular member and has a socket:<br><br>central member (blue) attached to tubular member and central member has a socket |
| a pair of receiving members attached with said at least one tubular member, said receiving members configured to engage an accessory member. | pair of receiving members that engage an accessory member (here the accessories configured to engage the receiving members are tie downs shown in orange) |
| 2. The underbed hitch mounting system of claim 1, | The NSI device is an underbed hitch mounting system of claim 1 as shown above. |

| '050 Patent Claim | NSI's Underbed Hitch Mounting System |
|---|---|
| where said socket is configured to have secured thereto a hitch ball. | The socket on the central member is configured to have secured thereto a hitch ball, as confirmed by the NSI 3-D rendering:<br><br>hitch ball (orange) secured in socket |
| 4. The underbed hitch mounting system of claim 1, | The NSI device is an underbed hitch mounting system of claim 1 as shown above. |
| wherein said at least one tubular member includes a pair of tubular members with said central member positioned between said pair of tubular members. | There are a pair of tubular members (yellow) and a central member (blue) positioned between them:<br><br>Central member (blue) positioned between pair of tubular members (yellow) |
| 8. The underbed hitch mounting system of claim 1, | The NSI device is an underbed hitch mounting system of claim 1 as shown above. |

| '050 Patent Claim | NSI's Underbed Hitch Mounting System |
|---|---|
| wherein said pair of receiving members are spaced apart from one another. | the receiving members are spaced apart from one another |

28. As shown above, NSI's underbed hitch mounting system includes each of the limitations in claims 1-8 of the '050 Patent. Therefore, the NSI's underbed hitch mounting system directly infringes the '050 Patent.

29. The only intended and feasible use for NSI's underbed hitch mounting system is as an underbed hitch mounting system.

30. Because the only intended and feasible use of NSI's underbed hitch mounting system is an infringing use, NSI's underbed hitch mounting system has no substantial non-infringing uses.

31. NSI has knowledge of and is aware of the '050 Patent at least as of December 12, 2017 when Horizon provided a letter to NSI regarding the same. (Ex. B.)

32. NSI has induced infringement of the '050 Patent at least because, with knowledge of the '050 patent, it intentionally and actively induced end users of NSI's

underbed hitch mounting system (through instructions, videos, and otherwise) to use them in a manner that infringes the '050 patent with specific intent that they do so.

33. NSI has further induced infringement of the '050 Patent at least by selling NSI's underbed hitch mounting system to distributors, retailers, and other resellers with specific intent that they infringe the '050 patent by reselling NSI's underbed hitch mounting system to others.

34. NSI has contributed to infringement of the '050 Patent at least by selling the NSI's underbed hitch mounting system, which has no substantial use other than an infringing use as an underbed hitch mounting system.

35. NSI's direct and indirect infringement of the '050 Patent was, and continues to be, willful and deliberate.

36. Horizon has been and will continue to be damaged by NSI's infringing activities. NSI's infringing activities, upon information and belief, have caused loss of business, which in turn hurts the local economy and causes local people to lose their jobs.

37. Horizon has suffered irreparable harm due to NSI's infringement and will continue to be irreparably harmed unless and until NSI is enjoined by this Court.

### Prayer for Relief

**WHEREFORE**, Horizon prays for judgment against NSI as follows:

(A) Finding that NSI has directly infringed one or more claims of the '050 Patent under 35 U.S.C. § 271(a);

(B) Finding that NSI has induced infringement of one or more claims of the '050 Patent under 35 U.S.C. § 271(b);

(C) Finding that NSI has contributed to the infringement of one or more claims of the '050 Patent under 35 U.S.C. § 271(c);

(D)     Preliminary and permanent injunctive relief enjoining NSI, its officers, directors, managers, employees, affiliates, agents, representatives, parents, subsidiaries, successors, assigns, those in privity with them, and all others aiding, abetting, or acting in concert or active participation therewith, from: (1) making, using, selling, offering to sell, or importing any product covered by any of the claims of the '050 Patent, or (2) otherwise directly or indirectly infringing any of the claims of the '050 Patent;

(E)     Awarding Horizon compensatory damages under 35 U.S.C. § 284;

(F)     Awarding Horizon treble damages under 35 U.S.C. § 284;

(G)     Ordering NSI to account to Horizon for all sales, revenues, and profits derived from its infringing activities and that three times those profits be disgorged and paid to Horizon under 35 U.S.C. § 284;

(H)     Awarding Horizon its costs, attorneys' fees, investigatory fees, and expenses to the full extent provided under 35 U.S.C. § 285;

(I)     Awarding Horizon pre-judgment and post-judgment interest;

(J)     Awarding Horizon any other actual and punitive damages to which Horizon is entitled under applicable federal and state laws; and

(K)     Such other and further relief as allowed at law or in equity that the Court deems to be appropriate, just, and proper.

Dated: February 12, 2020

       s/David B. Cupar
David B. Cupar (0071622)
Matthew J. Cavanagh (0079522)
MCDONALD HOPKINS LLC
600 Superior Avenue, East, Ste. 2100
Cleveland, Ohio 44114
t 216.348.5400 | f 216.348.5474
dcupar@mcdonaldhopkins.com
mcavanagh@mcdonaldhopkins.com

*Counsel for Horizon Global Americas, Inc.*

## **Jury Demand**

Plaintiff Horizon Global Americas, Inc. hereby demands a jury trial for all issues so triable.

Dated: February 12, 2020

    s/David B. Cupar
David B. Cupar (0071622)
Matthew J. Cavanagh (0079522)
MCDONALD HOPKINS LLC
600 Superior Avenue, East, Ste. 2100
Cleveland, Ohio 44114
t 216.348.5400 | f 216.348.5474
dcupar@mcdonaldhopkins.com
mcavanagh@mcdonaldhopkins.com

*Counsel for Horizon Global Americas, Inc.*