UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Horizon Global Americas Inc., | ) | Case No. 1:20-cv-00310-PAB |
| | ) | |
| Plaintiff, | ) | Judge Pamela A. Barker |
| | ) | |
| vs. | ) | Magistrate Judge Thomas M. Parker |
| | ) | |
| Northern Stamping Co., | ) | Jury Trial Demanded |
| | ) | |
| Defendant. | ) | |
| | ) | |

## First Amended Complaint

For its first amended complaint against defendant Northern Stamping Co. ("NSI"), plaintiff Horizon Global Americas Inc. ("Horizon") states:

## Summary of Case

1. This is an action for damages and injunctive relief to remedy the infringement by NSI of U.S. Patent Nos. 9,834,050 (the "'050 Patent") and 10,589,585 (the "'585 Patent," collectively, the "Horizon Patents").

2. As a global leader in towing and trailering equipment, Horizon has developed and established a highly valuable portfolio related to its products, including the Horizon Patents related to innovative underbed hitch mounting systems. (Exs. A and B.)

3. Accordingly, Horizon seeks to enjoin NSI's ongoing patent infringement and to obtain monetary relief for the harm NSI has caused.

## Parties

4. Horizon is a Delaware corporation with a principal place of business at 47912 Halyard Dr. #100, Plymouth, MI 48170. Horizon was previously known as Cequent Performance Products, Inc. and Cequent Towing Products, Inc.

5. Upon information and belief, NSI is a Delaware corporation with a principal place of business at 6600 Chapek Parkway, Cuyahoga Heights, OH 44125. Upon information and belief, NSI does business as Northern Stamping, Inc.

## Jurisdiction and Venue

6. This Court has subject matter jurisdiction over Horizon's patent infringement claims under 28 U.S.C. §§ 1331 and 1338(a) because they arise under federal law and, more specifically, the U.S. Patent Act, 35 U.S.C. § 1 *et seq*.

7. This Court also has personal jurisdiction over NSI at least because among other things, NSI has consented to personal jurisdiction by asserting a counterclaim in this action, has a principal place of business in Ohio, is registered to do business in Ohio, does business in Ohio and offers for sale products, including infringing products, in Ohio and to Ohio businesses or individuals.

8. Venue is proper under 28 U.S.C. §§ 1391 and 1400 at least because NSI is registered to do business in Ohio, does business in Ohio, has a principal place of business in Ohio, and has committed acts of infringement in Ohio and has a regular and established place of business in Ohio.

# Relevant Facts

## I. Horizon's Innovations and the Horizon Patents.

9. Horizon is one of the world's leading manufacturers of towing and trailering equipment. For decades, Horizon and its predecessors and affiliates have designed, produced, manufactured, distributed, and marketed a wide array of high-quality and custom-engineered products and accessories for trailer equipment manufacturers, wholesaler-distributors, and retail markets in Northern America, Australia, and Europe.

10. Horizon is home to some of the most recognized brands in the towing and trailering industry, including: Reese®, Hayman-Reese™, Draw-Tite®, Bulldog®, Fulton®, ROLA®, Tekonsha®, and Westfalia®. Horizon has approximately 4,700 employees in 67 facilities across 21 countries.

11. Horizon is committed to providing cutting-edge and best-in-class products to its consumers. In recognizing the value of intellectual property and patented technology, Horizon has developed and established a highly valuable patent portfolio related to its innovations.

12. Horizon developed and was first to market an innovative underbed hitch mounting system that alleviated the common aftermarket problem of installing rails on top of a truck bed that attaches to a hitch. Such installation on top of a truck bed could cause damage to the truck bed and was thought to potentially void the truck warranty.

13. Horizon was approached by the Ford Motor Company, and Horizon thereafter developed its innovative underbed hitch mounting system that removed the rails from the top of the truck bed.

14. To this end, Horizon currently owns the '050 Patent entitled "Underbed Hitch Mounting System" and directed to an improved towing apparatus.

15. The '050 Patent was duly and legally issued on December 5, 2017. (Ex. A.)

16. The '050 Patent is valid and enforceable.

17. Horizon marks its products as covered by the '050 Patent pursuant to 35 U.S.C. § 287, giving notice to the public.

18. Horizon also currently owns the '585 Patent, similarly entitled "Underbed Hitch Mounting System," and also directed to an improved towing apparatus.

19. The '585 Patent was duly and legally issued on March 17, 2020. (Ex. B.)

20. The '585 Patent is valid and enforceable.

21. Horizon marks its products as covered by the '585 Patent pursuant to 35 U.S.C. §287, giving notice to the public.

22. General Motors also approached Horizon about supplying an underbed system, but no agreement was reached. General Motors then approached NSI to provide the underbed systems.

23. NSI had knowledge of and was aware of the '050 Patent at least as of December 12, 2017, when Horizon provided a letter to NSI regarding the same. (Ex. C.)

24. Upon information and belief, NSI, with knowledge of the related '050 Patent and as a competitor of Horizon in the marketplace for underbed hitch mounting systems, also had actual knowledge of the '585 Patent.

## II. NSI's Infringement of the Horizon Patents.

25. NSI has made, used, sold, and offered to sell, and continues to make, use, sell, and offer to sell, products that infringe the Horizon Patents.

26. NSI has sold and continues to sell an underbed combined gooseneck and fifth wheel hitch mounting system, which infringes the Horizon Patents, to General Motors or to its subsidiaries or affiliates that is incorporated into at least the Chevrolet Silverado.

## III. NSI Refuses to Comply

27. After discovering that NSI was selling infringing products, Horizon sought to resolve the dispute without court intervention. (Ex. C) Horizon and NSI were in communication regarding potential resolutions.

28. These discussions did not result in agreement, however, and NSI has refused to stop selling its infringing products.

29. Since NSI continues to infringe the Horizon Patents, Horizon has had no choice but to protect its rights in Court.

## Count I
*Infringement of the '050 Patent*

30. Horizon incorporates by reference all allegations in all preceding paragraphs of this complaint as if fully set forth herein.

31. NSI has directly and indirectly infringed, and, upon information and belief, continues to directly and indirectly infringe, the '050 Patent at least by making, using, selling, and offering for sale its underbed hitch mounting system.

32. As a non-limiting, illustrative example of how NSI's underbed hitch mounting system infringes one or more claims of the '050 Patent, below is a comparison chart showing how, for example, NSI's underbed hitch mounting system includes each and every limitation of claims 1, 2, 4, and 8 of the '050 Patent.

| '050 Patent Claim | NSI's Underbed Hitch Mounting System |
|---|---|
| 1. An underbed hitch mounting system comprising:[1] | |
| at least one tubular member having a cross-sectional shape a substantial portion of which is defined by an enclosed peripheral wall with a generally hollow section | The cross-members (yellow) are each a tubular member having a cross-sectional shape, a substantial portion of which is defined by the peripheral wall with a generally hollow section<br><br>tubular members(yellow) |

---

[1] At this stage, Horizon takes no position as to whether the preamble is limiting. Instead, Horizon merely shows that, if the Court determines that it is limiting, then the limitation is found in the Infringing Products.

| '050 Patent Claim | NSI's Underbed Hitch Mounting System |
|---|---|
| a central member attached to said at least one tubular member, said central member having a socket; and | The central member (blue) is attached to at least one tubular member and has a socket:<br><br>central member (blue) attached to tubular member and central member has a socket |
| a pair of receiving members attached with said at least one tubular member, said receiving members configured to engage an accessory member. | pair of receiving members that engage an accessory member (here the accessories that engage the receiving members are tie downs shown in orange) |
| 2. The underbed hitch mounting system of claim 1, | The NSI device is an underbed hitch mounting system of claim 1 as shown above. |

| '050 Patent Claim | NSI's Underbed Hitch Mounting System |
|---|---|
| where said socket is configured to have secured thereto a hitch ball. | The socket on the central member is configured to have secured thereto a hitch ball, as confirmed by the NSI 3-D rendering

hitch ball (orange) secured in socket |
| 4. The underbed hitch mounting system of claim 1, | The NSI device is an underbed hitch mounting system of claim 1 as shown above. |
| wherein said at least one tubular member includes a pair of tubular members with said central member position between said pair of tubular members. | There are a pair of tubular members (yellow) and a central member (blue) positioned between them:

Central member (blue) positioned between pair of tubular members (yellow) |
| 8. The underbed hitch mounting system of claim 1, | The NSI device is an underbed hitch mounting system of claim 1 as shown above. |

| '050 Patent Claim | NSI's Underbed Hitch Mounting System |
|---|---|
| wherein said pair of receiving members are spaced apart from one another. | the receiving members are spaced apart from one another |

33. As shown above, NSI's underbed hitch mounting system includes each of the limitations in at least claims 1, 2, 4, and 8 of the '050 Patent. Therefore, NSI's underbed hitch mounting system directly infringes the '050 Patent.

34. The only intended and feasible use for NSI's underbed hitch mounting system is as an underbed hitch mounting system.

35. Because the only intended and feasible use of NSI's underbed hitch mounting system is an infringing use, NSI's underbed hitch mounting system have no substantial non-infringing uses.

36. NSI has knowledge of and is aware of the '050 Patent at least as of December 12, 2017 when Horizon provided a letter to NSI regarding the same. (Ex. B.)

37. NSI has induced infringement of the '050 Patent at least because, with knowledge of the '050 patent, it intentionally and actively induced end users of NSI's

underbed hitch mounting system (through instructions, videos, and otherwise) to use them in a manner that infringes the '050 patent with specific intent that they do so.

38. NSI has further induced infringement of the '050 Patent at least by selling NSI's underbed hitch mounting system to distributors, retailers, and other resellers with specific intent that they infringe the '050 patent by reselling NSI's underbed hitch mounting system to others.

39. NSI has contributed to infringement of the '050 Patent at least by selling the NSI's underbed hitch mounting system, which has no substantial use other than an infringing use as an underbed hitch mounting system.

40. NSI's direct and indirect infringement of the '050 Patent was, and continues to be, willful and deliberate.

41. Horizon has been and will continue to be damaged by NSI's infringing activities.

42. Horizon has suffered irreparable harm due to NSI's infringement and will continue to be irreparably harmed unless and until NSI is enjoined by this Court.

## Count II
### *Infringement of the '585 Patent*

43. Horizon incorporates by reference all allegations in all preceding paragraphs of this complaint as if fully set forth herein.

44. NSI has directly and indirectly infringed, and, upon information and belief, continues to directly and indirectly infringe, the '585 Patent at least by making, using, selling, and offering for sale its underbed hitch mounting system.

45. As a non-limiting, illustrative example of how NSI's underbed hitch mounting system infringes one or more claims of the '585 Patent, below is a comparison chart showing how, for example, NSI's underbed hitch mounting system includes each and every limitation of claims 16 and 17 of the '585 Patent.

| '585 Patent Claim | NSI's Underbed Hitch Mounting System |
|---|---|
| 16. A hitch mounting system comprising:[2] | |

---

[2] At this stage, Horizon takes no position as to whether the preamble is limiting. Instead, Horizon merely shows that, if the Court determines that it is limiting, then the limitation is found in the Infringing Products.

| '585 Patent Claim | NSI's Underbed Hitch Mounting System |
|---|---|
| a pair of tubular members each having a cross-sectional shape a substantial portion of which is defined by an enclosed peripheral wall with a generally hollow section; | The cross-members (yellow) are each a tubular member having a cross-sectional shape a substantial portion of which is defined by the peripheral wall with a generally hollow section<br><br>tubular members(yellow) |
| a mid rail attached to each of and between said pair of tubular members spacing said pair of tubular members apart, said mid rail having a socket capable of accepting a gooseneck hitch ball; and | The mid rail (blue) is attached to each of and between said pair of tubular members apart and has a socket capable of accepting a gooseneck hitch ball:<br><br>central member (blue) attached to tubular member and central member has a socket |

| '585 Patent Claim | NSI's Underbed Hitch Mounting System |
|---|---|
| a pair of receiving members attached with each of said pair of tubular members, said receiving members configured to engage a leg of a fifth wheel hitch. | pair of receiving members are attached with each tubular member and may be configured to engage each leg of a fifth wheel hitch at the points indicated below. |
| 17. The hitch mounting system of claim 16, | The NSI device is an underbed hitch mounting system of claim 16 as shown above. |
| wherein at least a pair of the receiving members are configured to accept a safety chain tie down. | pair of receiving members that engage an accessory member (here the accessories that engage the receiving members are tie downs show in in orange) |

46.  As shown above, NSI's underbed hitch mounting system includes each of the limitations in at least claims 16 and 17 of the '585 Patent. Therefore, the NSI's underbed hitch mounting system directly infringes the '585 Patent.

47. The only intended and feasible use for NSI's underbed hitch mounting system is as an underbed hitch mounting system.

48. Because the only intended and feasible use of NSI's underbed hitch mounting system is an infringing use, NSI's underbed hitch mounting system have no substantial non-infringing uses.

49. Upon information and belief, and because NSI is a competitor to Horizon in the marketplace for underbed hitch mounting systems and had actual knowledge of the related '585 Patent, NSI has knowledge of and is aware of the '585 Patent.

50. NSI has induced infringement of the '585 Patent at least because, with knowledge of the '050 Patent, it intentionally and actively induced end users of NSI's underbed hitch mounting system (through instructions, videos, and otherwise) to use them in a manner that infringes the '585 patent with specific intent that they do so.

51. NSI has further induced infringement of the '585 Patent at least by selling NSI's underbed hitch mounting system to distributors, retailers, and other resellers with specific intent that they infringe the '585 patent by reselling NSI's underbed hitch mounting system to others.

52. NSI has contributed to infringement of the '585 Patent at least by selling the NSI's underbed hitch mounting system, which has no substantial use other than an infringing use as an underbed hitch mounting system.

53. NSI's direct and indirect infringement of the '585 Patent was, and continues to be, willful and deliberate.

54. Horizon has been and will continue to be damaged by NSI's infringing activities.

55. Horizon has suffered irreparable harm due to NSI's infringement and will continue to be irreparably harmed unless and until NSI is enjoined by this Court.

**Prayer for Relief**

**WHEREFORE**, Horizon prays for judgment against NSI as follows:

(A) Finding that NSI has directly infringed one or more claims of the '050 and '585 Patents under 35 U.S.C. § 271(a);

(B) Finding that NSI has induced infringement of one or more claims of the '050 and '585 Patents under 35 U.S.C. § 271(b);

(C) Finding that NSI has contributed to the infringement of one or more claims of the '050 and '585 Patents under 35 U.S.C. § 271(c);

(D) Preliminary and permanent injunctive relief enjoining NSI, its officers, directors, managers, employees, affiliates, agents, representatives, parents, subsidiaries, successors, assigns, those in privity with them, and all others aiding, abetting, or acting in concert or active participation therewith, from: (1) making, using, selling, offering to sell, or importing any product covered by any of the claims of the '050 or '585 Patents, or (2) otherwise directly or indirectly infringing any of the claims of the '050 or '585 Patents;

(E) Awarding Horizon compensatory damages under 35 U.S.C. § 284;

(F) Awarding Horizon treble damages under 35 U.S.C. § 284;

(G) Ordering NSI to account to Horizon for all sales, revenues, and profits derived from its infringing activities and that three times those profits be disgorged and paid to Horizon under 35 U.S.C. § 284;

(H) Awarding Horizon its costs, attorneys' fees, investigatory fees, and expenses to the full extent provided under 35 U.S.C. § 285;

(I) Awarding Horizon pre-judgment and post-judgment interest;

(J) Awarding Horizon any other actual and punitive damages to which Horizon is entitled under applicable federal and state laws; and

(K) Such other and further relief as allowed at law or in equity that the Court deems to be appropriate, just, and proper.

Dated: August 20, 2020

     s/ David B. Cupar
David B. Cupar (OH 0071622)
Matthew J. Cavanagh (OH 0079522)
MCDONALD HOPKINS LLC
600 Superior Avenue, East, Ste. 2100
Cleveland, Ohio 44114
t 216.348.5400 │ f 216.348.5474
dcupar@mcdonaldhopkins.com
mcavanagh@mcdonaldhopkins.com

*Counsel for Horizon Global Americas Inc.*

## **Jury Demand**

Plaintiff Horizon Global Americas Inc. hereby demands a jury trial for all issues so triable.


Dated: August 20, 2020     /s/ David B. Cupar
David B. Cupar (OH 0071622)

*Counsel for Horizon Global America, Inc.*