**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| Horizon Global Americas Inc., | ) | Case No. 1:20-cv-00310-PAB |
| | ) | |
| Plaintiff, | ) | Judge Pamela A. Barker |
| | ) | |
| vs. | ) | |
| | ) | |
| Northern Stamping, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

**Horizon's Memorandum in Support of Motion to Dismiss**
**NSI's Amended Inequitable Conduct Counterclaim V and Strike Affirmative Defense #8**

## INTRODUCTION

For the past decade, a legion of Federal Circuit and District Court cases have identified the "plague" of defense attorneys attempting to allege "inequitable conduct" – a fancy term for fraud before the USPTO. The law is clear: to assert such a claim a party must plead with particularity the "who, when, what, where and how" of the fraud and must allege specific facts supporting those allegations. Otherwise, Courts consistently dismiss with prejudice such claims when made by attorney supposition as opposed to plausible facts.

Such attorney supposition is the case here. NSI's serious fraud allegation is that a mid-level engineer at Horizon named Eric Stanifer lied to the USPTO in a declaration (the "Stanifer Declaration"). NSI falsely alleges that Stanifer did not conceive his "claimed invention" to include a "receiving member" prior to the filing dates of two Ford patents cited by the USPTO (the "Ford Patents"). NSI's inequitable conduct claim fails for at least three reasons.

First, NSI did not show any factual basis for the allegation that the Stanifer Declaration was "unmistakably false" as required by the law. NSI's sole basis of falsity is based on NSI's allegation that: (1) Stanifer's "***<u>unambiguous intent</u>***" in his declaration was to compare the drawings

in support of the declaration (the “Conception Drawings”) to the provisional application for the ‘050 patent; (2) figure 3 in the provisional application does not show a “receiving member”; and (3) if that figure or the provisional application does not show a receiving member, then Stanifer’s declaration is “false” because it too does not show a receiving member. On its face, this implausible allegation is incorrect because a simple reading of Stanifer’s three-page declaration shows that he never compared his Conception Drawings to either the provisional application or figure 3 of it. Because Stanifer’s declaration does not include any such comparison, there is no basis for alleging any falsity in Stanifer’s declaration. This allegation is easily dismissible on this first basis alone.

Second, NSI’s claim also fails on its face because NSI’s own allegations show that the USPTO Examiner himself ***reviewed*** Stanifer’s declaration and Conception Drawings and found them to be proper. If the Examiner believed that Stanifer’s Conception Drawings did not include a receiving member, he would have said so and rejected the declaration. Instead, the Examiner reviewed that evidence, and concluded that Stanifer did invent the claimed invention before the filing dates of the Ford Patents. Because the Examiner is “presumed to have properly done [his] job,” there can be no inequitable conduct. This second independent basis also eviscerates NSI’s implausible inequitable conduct claim.

Third, because NSI did not identify any factual basis to support its incorrect allegation that Stanifer’s declaration was false, NSI also has no basis plausibly allege that: (1) Stanifer knew his declaration was false; or (2) he “intended to deceive” the USPTO based on such a false statement. NSI’s implausible inequitable claim fails on this third independent basis.

Fourth, and worse yet, Horizon produced to NSI Stanifer’s invention records ***before*** NSI re-affirmed its inequitable conduct claims. Specifically, as required by the Local Patent Rules, Horizon on August 14, 2020 produced its invention/conception records. Those records repeatedly

show that Stanifer's inventive underbed system ***did include*** the "receiving members" NSI alleges were not a part of the invention. Incredibly, ***after*** receiving these invention records, NSI flatly ignored them, and amended its answer on October 22, 2020 and alleged that Stanifer lied in this declaration in direct contradiction to the invention records. Not only is NSI's inequitable conduct claim implausible, but the invention records NSI received two months prior to its amended counterclaim show the falsity of NSI's claim that should never have been made in the first place.

As a result, NSI does not plausibly plead inequitable conduct and the Court should dismiss NSI's Counterclaim V and affirmative defense (#8).

## BACKGROUND

### I. The Stanifer Declaration and the Conception Drawings.[1]

NSI bases its inequitable conduct allegations on a declaration (the "Stanifer Declaration") and attached drawings (the "Conception Drawings") submitted to the USPTO in response to an Office Action rejecting the claims of the '050 patent. The underlying prosecution history[2] for the '050 patent shows the full picture.

During prosecution of the '050 patent, the USPTO Examiner rejected the claims of what became the '050 patent because, in his view, they were anticipated or obvious by a patent and patent application by Ford[3] (referred to in the counterclaim as the "Ford Patents"). (Ex. A, August

[1] The NSI complaint refers to "Conception Drawing" in the singular form. However, Exhibit A to the Stanifer Declaration contains two drawings and is thus more accurately referred to as the "Conception Drawings." (*See* ECF #25-1 at 5.)

[2] Courts may consider "the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to [a] motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). The prosecution history for the '050 patent is attached to the complaint in part through the Stanifer Declaration, is central to NSI's claims, and is a matter of public record. Thus, the Court should take judicial notice of the prosecution history in its entirety. Horizon submits pertinent excerpts as Exhibits A and B.

[3] The rejection also refers to one of Horizon's patents, Lindenman et al. (U.S. Patent No. 5,971,418), but that detail is not material to the analysis of NSI's counterclaim.

14, 2017 Office Action.) The Office Action did not rely on or mention U.S. Provisional Application No. 61/197,732 (the "provisional application") or figure 3 of that provisional application. (*Id*.)

To overcome these anticipation and obviousness rejections, Horizon filed an Office Action response. (Ex. B, August 28, 2017 Response to Office Action.) With that response, Horizon submitted a 37 C.F.R. §1.131[4] declaration of co-inventor and mid-level engineer at Horizon, Eric Stanifer, and attached two of his Conception Drawings to support his statement that he and his co-inventor had conceived of the invention before the earliest priority date of the Ford Patents of May 30, 2008. (ECF #25-1; Ex. B.) Specifically, with regard to conception, Stanifer states the following in the declaration:

> 4. Attached hereto as Exhibit A are drawings that I along with my fellow inventor prepared and completed on May 8, 2008. The drawings of Exhibit A demonstrate our conception of the claimed subject matter before the effective date of the '122 Withers of May 30, 2008 and the '968 Withers of June 23, 2009. The drawings attached as Exhibit A were created as I and my fellow inventor refined the invention to create a manufacturable version. Therefore, I and my
>
> fellow inventor as the inventors of the present application conceived of the invention prior to May 30, 2008 and June 23, 2009.

(ECF # 25-1 at 3-4.) The Stanifer Declaration does ***not*** contain: (1) any comparison between the Conception Drawings to the provisional application for the '050 patent, or (2) that they show the same subject matter. (*Id.*) Likewise, Horizon's office action response does not contain (1) any

[4] A "Rule 131" declaration, under 37 C.F.R. § 1.131, is a tool that inventors can use to "swear behind" a reference. That is, where a patent is rejected on the basis that another patent or other invention has an earlier filing date, an inventor can show facts, as to how they conceived their invention before the filing date of those other references coupled with diligence from that date "to the filing of the application." 37 C.F.R. § 1.131.

comparison about the Conception drawings to the provisional application, or (2) make any representation that they show the same subject matter. (Ex. B.)

The Examiner examined the Stanifer Declaration and the Conception Drawings to ensure that the met the legal requirements for patentability, and issued a Notice of Allowability for the application. (Ex. C, October 17, 2017 Notice of Allowability, at 6-8.) The Notice of Allowability does *not* contain: (1) any comparison between the Conception Drawings and the provisional application for the '050 patent, or (2) that they show the same subject matter. (*Id.*)

## II. NSI received Stanifer's Invention Records before adding its inequitable conduct claim.

Per Local Patent Rule 3.2, Horizon was required to produce "[a]ll documents ***evidencing the conception*** and first reduction to practice of each claimed invention, which were created on or before the date of application for the patent in suit or the priority date identified pursuant to L. P. R. 3.1(f), whichever is earlier…." along with its initial infringement contentions. L.P.R. 3.1; 3.2(b) (emphasis added). Horizon did so on August 14, 2020,[5] over *two months* prior to NSI's amended counterclaim. (*See* Ex. D, August 14, 2020 email to NSI serving documents & initial infringement contentions; Ex. E, nine pages from Horizon's invention record document production under L.P.R. 3.2.)

These invention record documents definitively show that that the receiving members (some of the documents identify them as "pucks") were part of the invention as early as 2006. (Ex. E at HZN000025.) In fact, the document production is replete with examples showing their prior conception. (Ex. E at HZN000031 (Jan. 31, 2008), HZN000034 (Jan. 31, 2008), HZN000037 (Mar. 6, 2008), HZN000042-44 (Feb. 4, 2008).)

[5] Because this document production is "items appearing in the record of the case," and because NSI received it prior to its filing of its amended counterclaim in accordance with L.P.R. 3.2, and their absence is directly put at issue by NSI's counterclaim, Horizon requests that the Court take judicial notice of their contents. *Bassett*, 528 F.3d at 430.

An example, the following February 4, 2008 figure from Mr. Stanifer show the receiving members as claimed in the '050 patent:




(Ex. E, HZN000042, drawing of February 4, 2008 (arrows and annotations added).) This February 4, 2008 figure is dated prior the Conception Drawing dated May 8, 2008 in Stanifer's declaration (ECF #25-1), and further support Stanifer's testimony in his declaration.

Despite having received these documents pursuant to L.P.R. 3.2, NSI nevertheless alleges that Stanifer declaration was false in stating that he conceived his claimed invention prior to the May 30, 2008 date for the Ford Patents because he did not of those receiving members. Horizon now moves to dismiss Counterclaim V and its affirmative defense #8.

**<u>LAW AND ARGUMENT</u>**

"[T]he inequitable conduct doctrine has plagued not only the courts but also the entire patent system." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1289 (Fed. Cir. 2011) (en banc). In *Theranese*, the Federal Circuit noted that alleging inequitable conduct has become "a common litigation tactic," asserted in "almost every major patent case" on even the "slenderest

grounds." *Id.* The Federal Circuit also recognized many costs of this "absolute plague," including "increased adjudication cost and complexity, reduced likelihood of settlement, burdened courts, strained PTO resources, increased PTO backlog, and impaired patent quality." *Id.* at 1290.

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Inequitable conduct, while a broader concept than fraud, must be pled with particularity under Rule 9(b)." *Exergen Corp. v. Wal–Mart Stores, Inc.*, 575 F.3d 1312, 1326 (Fed. Cir. 2009). In pleading inequitable conduct in patent cases, Rule 9(b) requires identification of the specific who, what, when, where, how "of the material misrepresentation or omission committed before the PTO." *Id.* at 1327. A pleading that simply states the substantive elements of inequitable conduct without "setting forth the particularized factual bases for the allegation, does not satisfy Rule 9(b)." *Webasto Thermo & Comfort N. Am., Inc. v. Bestop, Inc.*, 326 F. Supp. 3d 521, 529 (E.D. Mich. 2018) (quoting *Exergen*, 575 F.3d at 1326-27.) Federal Circuit law applies to the question of whether inequitable conduct has been pled in accordance with Rule 9(b). *Exergen*, 575 F.3d at 1326.

Under *Exergen*, the essential elements of inequitable conduct are: "(1) an individual associated with the filing and prosecution of a patent application made an affirmative misrepresentation of a material fact, failed to disclose material information, or submitted false material information; and (2) the individual did so with a specific intent to deceive the PTO." *Id.* at 1327 n. 3. *Therasense* further heightened the standard for the materiality element of inequitable conduct, holding that "the materiality required to establish inequitable conduct is but-for materiality." *Therasense*, 649 F.3d at 1290. False declarations are but-for material only where a party alleges "affirmative acts of <u>*egregious*</u> conduct, such as the filing of an <u>*unmistakably false*</u> affidavit…." *Id*. at 1292 (emphasis added).

Courts are not required to "accept as true legal conclusions or unwarranted factual inferences." *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1331–32 (Fed. Cir. 2012). NSI's inequitable conduct claim is filled with unsupported, conclusory, and unwarranted factual inferences so that it should be dismissed.

## I. Nothing in Stanifer's declaration is false, let alone "unmistakably false."

NSI fails to plausibly allege a misrepresentation of a material fact or the submission of false material information because, outside of conclusory allegations, it does not plausibly allege but-for materiality or that the Stanifer Declaration is "unmistakably false" or constitutes "affirmative acts of egregious conduct." *Therasense*, 649 F.3d at 1290, 1292.

### A. NSI's unsupported "unambiguous intent" allegation does not support falsity.

NSI incorrectly alleges that Stanifer's "unambiguous intent of the declaration was to show [that] the Conception Drawing… included all of the elements of a provisional application for the '050 patent." (ECF # 25 at 8, ¶ 21.) Contrary to NSI's assertions, the prosecution history, incorporated into the complaint, plainly shows that this was *not* Stanifer's "unambiguous intent." (*Compare* ECF # 25-1 *with* ECF # 25 at 8, ¶ 21.) No such statement is found anywhere in the prosecution history or the Stanifer Declaration. (*See id.;* Ex. A-D.) Instead, Stanifer states that he and his co-inventor had conceived of the claimed subject matter "before the effective date of the [Ford Patents]." (ECF # 25-1 at 2.) The Stanifer Declaration does not compare his Conception Drawings to the provisional application. (*Id.*) The Stanifer Declaration also does not state that his Conception Drawings "included all of the elements of a provisional application for the '050 patent" as alleged by NSI. (*Id.*)

Stanifer's only mention of the provisional application was that he was "diligent in working on the invention at least until we filed the provisional patent application 61/197,732, which we

filed on October 30, 2008 and thereafter." (ECF #25-1 at 3.) Stanifer's sentence means what it says: he and his co-inventor worked diligently on the invention leading up to filing the provisional application and afterwards. (*Id.*) Indeed, NSI inequitable conduct counterclaim did not cite to this sentence. (ECF #25.) Stanifer's only identification of the provisional application was show when he was working "diligent[ly]" on the invention – ***not*** that his Conception Drawings "include all the elements of [the] provisional application." Therefore, Stanifer's declaration does not support NSI's claim of what Stanifer's "unambiguous intent" was in that declaration.

NSI then creates its own strawman table comparing the Conception Drawings to Figure 3 of the provisional application, and alleges that the table NSI's counsel created was Stanifer's "unambiguous intent" in his declaration. (ECF # 25 at 9, ¶ 21.) That table proves nothing. At best, it merely show NSI counsel's personal (and incorrect) belief that the Conception Drawing look like figure 3 of the provisional application. However, NSI counsel's belief about those drawings alone can never support an inequitable conduct allegation. *See Exergen*, 575 F.3d at 1326-27. NSI once again did not cite to anything in Stanifer's declaration to support its made-for-litigation table.

NSI's failed and unsupported "unambiguous intent" allegation knocks down its inequitable conduct claim like a house of cards. Here is how: (1) NSI needs the Court to believe its unsupported allegation that Stanifer's "***unambiguous intent***" in his declaration was that his Conception Drawings "included all of the elements of [the] provisional application" (ECF #25-1 at 8-9, ¶21); and (2) because that provisional application does not show a receiving member (*Id.* at ¶22), then Stanifer's declaration is "knowingly false" because the Conception Drawings also do not show a receiving member that is recited in the '050 patent claims.

This allegation is completely meritless because: (1) NSI has no factual basis to allege that Stanifer's declaration states that his Conception Drawings "include all of the elements of [the]

provisional application"; (2) Stanifer did not state that in his allegation, NSI has no basis to allege that Stanifer made any false statement in his declaration, let alone that Stanifer made a "knowlingly" false statement.

Further, none of the '050 patent prosecution history documents support NSI's bald allegation. Horizon's Response, to which the Stanifer's declaration was attached, does not in any way state that the Conception drawing "include all of the elements of [the] provisional application." (Ex. B.) Instead, Horizon's Response states what Stanifer's declaration states – Stanifer and his co-inventor invented the claimed subject matter prior to the filing date for the Ford patents. Indeed, NSI's allegations do not cite to Horizon's Response, which further shows that NSI's allegations are nowhere to be found in there. (*Id.*)

Likewise, the Examiner's close examination of Stanifer's declaration and subsequent Notice of Allowability (Ex. C) establishes that the Examiner is "presumed to have properly done [his] job." *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1304 (Fed. Cir. 2008) (citation omitted); *Medline Indus., Inc. v. C.R. Bard, Inc.*, No. 17 C 7216, 2018 WL 4333629, at *4 (N.D. Ill. Sept. 11, 2018) (granting motion to dismiss). If, as NSI alleges the Conception Drawings in Stanifer's declaration don't show a receiving member, the Examiner would have rejected it. The Examiner, however, reviewed and accepted Stanifer's declaration and the Conception Drawings as sufficient swearing behind evidence over the Ford patents. This further establishes no falsity or knowledge of falsity by Stanifer.

## III. Stanifer did not specifically intent to deceive the USPTO

NSI's allegations also fail because they do not plausibly allege that Stanifer had a "specific intent to deceive the PTO." *In re BP Lubricants USA, Inc.*., 637 F.3d at 1327, n.3. The intent to deceive must be "the single most reasonable inference able to be drawn from the evidence."

*Therasense*, 649 F.3d at 1290. Courts must also consider "any objective indications of candor and good faith." *Exergen*, 575 F.3d at 1329 n. 5.

An inference of a specific intent to deceive is not just implausible here, it's impossible. For Stanifer to have had the intent to deceive there must be particularly alleged untrue fact that he lied about or attempted to hide. *Id.* at 1331 (intent to make a knowingly false representation is a "necessary predicate for inferring deceptive intent."). As set forth in Section II above, Stanifer did not make any false declaration statement. Without a false statement, NSI cannot reasonably allege that Stanifer intended to deceive the USPTO. Thus, NSI's inequitable conduct claim cannot stand.

Critically, NSI does ***not*** allege: (1) that Stanifer and his co-inventor never conceived of the receiving members prior to the filing date for the Ford Patents; and (2) the Conception Drawings are Stanifer and his co-inventor's only proof of inventorship. *See Crocs, Inc. v. Effervescent, Inc.*, 2017 WL 1229707, *6 (D. Colo. 2017). In *Crocs*, the Court dismissed inequitable conduct based on an allegation that another inventor should have been named because the "counterclaim does not allege that Seamans and Battiston collaborated or worked together to conceive of the relevant invention." *Id.* That makes sense, and the same holds true here. Without these allegations, it is easily plausible for the Court to conclude that Stanifer and his co-inventor: (1) did conceive of the receiving member even if the Court were to believe NSI's allegation that Stanifer Declaration does not include them; or (2) had other invention documents showing the receiving member. Neither of these conclusions support inequitable conduct or an intent to deceive by Stanifer.

## III. Horizon's document production under Local Patent Rule 3.2 proves that NSI's claim is false and baseless.

Further showing the baselessness of NSI's inequitable conduct claim is the fact that NSI is in possession of documents that prove their claims have no merit. Specifically, the documents show that Stanifer and his co-inventor had conceived of the allegedly missing receiving members

well before the May 8, 2008 date in the Stanifer Declaration and thus there was conception before the priority dates of the Ford Patents.

The Conception Drawings produced as required by Local Patent Rule 3.2 show that Stanifer's invention included receiving members (or "pucks") prior to May 30 and May 8, 2008. (*See generally*, Ex. E; ECF # 16-1, '050 patent at 5:60-63 (receiving members also referred to as "pucks.").)[6] As shown in the documents the receiving member/puck had been part of the claimed subject matter since at least *2006*. (Ex. E at HZN000042, HZN000025.) In fact, the document production is replete with examples showing this fact. (Ex. E.)

As a result, because the receiving members were a part of the invention prior to May 30, 2008 and well prior to the May 8, 2008 date from the Stanifer Declaration, it is impossible for NSI to allege that Stanifer (1) made a misrepresentation; or (2) had the specific intent to deceive.[7] The Court should dismiss NSI's inequitable conduct claims.

## IV. Because NSI's allegations fail as to the '050 patent, they also fail as to the '585 patent.

NSI asserts that because the '050 patent was obtained by inequitable conduct and Horizon did not "correct" the misrepresentations at the heart of that claim, the '585 patent is similarly unenforceable. (ECF # 25 at 11, ¶ 28.) For the same reasons that NSI's allegations regarding inequitable conduct behind the '050 patent fail, so do the claims behind the '585 patent. As a result, the Court should dismiss the inequitable conduct counterclaims against the '585 patent as well.

[6] Again, these documents were served upon NSI over two months before it filed its amended counterclaim on October 22, 2020. (Ex. D.)

[7] It is further worth noting that NSI will have the burden of establishing inequitable conduct by clear and convincing evidence. *Therasense*, 649 F.3d at 1290.

## V. **The Court should strike NSI's inequitable conduct affirmative defense (#8)**

NSI also asserts an inequitable conduct affirmative defense. (ECF # 25, Aff. Def. ¶ 8.) "The Court may strike from a pleading an insufficient defense…" Fed. R. Civ. P. 12(f). Because NSI's inequitable conduct counterclaims should be dismissed, and the affirmative defense is simply an alternative pleading of its counterclaims, they "rise or fall together." *Medline Indus., Inc. v. C.R. Bard, Inc.*, No. 16-CV-3529, 2016 WL 5871501, at *3 (N.D. Ill. Oct. 7, 2016) (striking inequitable conduct defense with dismissal of counterclaim) (citing *Senju Pharm. Co. v. Apotex, Inc.*, 921 F. Supp. 2d 297, 306 (D. Del. 2013)). Therefore the Court should strike NSI's inequitable conduct affirmative defense (#8) under Rule 12(f).

## **Conclusion**

For the foregoing reasons, the Court should dismiss NSI's Counterclaim V for Inequitable Conduct under Rule 12(b)(6) and strike its affirmative defense of inequitable conduct (#8) under 12(f).

Respectfully submitted,

Dated: November 25, 2020

s/David B. Cupar

David B. Cupar (OH 0071622)
Matthew J. Cavanagh (OH 0079522)
Andrew D. Gordon-Seifert (OH0092499)
McDONALD HOPKINS LLC
600 Superior Avenue, East, Ste. 2100
Cleveland, Ohio 44114
t 216.348.5400 │ f 216.348.5474
dcupar@mcdonaldhopkins.com
mcavanagh@mcdonaldhopkins.com
agordon-seifert@mcdonaldhopkins.com

*Counsel for Horizon Global Americas Inc.*