# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **HORIZON GLOBAL AMERICAS, INC.,** | **CASE NO. 1:20-CV-00310** |
| Plaintiff, | |
| -vs- | **JUDGE PAMELA A. BARKER** |
| **NORTHERN STAMPING, INC.,** | |
| Defendant. | **MEMORANDUM OF OPINION AND ORDER** |

This matter comes before the Court upon the Motion to Dismiss Amended Inequitable Conduct Counterclaim V and Strike Affirmative Defense #8 ("Motion") of Plaintiff/Counter-Defendant Horizon Global Americas, Inc. ("Horizon"). (Doc. No. 35.) Defendant/Counter-Claimant Northern Stamping, Inc. ("NSI") filed a brief in opposition to Horizon's Motion on December 23, 2020, to which Horizon replied on January 6, 2021. (Doc. Nos. 36, 37.) For the following reasons, Horizon's Motion (Doc. No. 35) is GRANTED.

I. **Background**

   a. **Factual Allegations**

Horizon is a manufacturer of towing and trailering equipment. (Doc. No. 16 at ¶ 9.) On December 5, 2017, Horizon obtained a patent—U.S. Patent No. 9,834,050 (the "'050 Patent")—for an underbed hitch mounting system that allows a hitch to be attached to a truck without having to install rails on top of the truck bed. (*Id.* at ¶¶ 1, 12-15.)

During prosecution of the '050 patent, Horizon received an Office Action from the U.S. Patent and Trademark Office ("PTO") rejecting its claims as being anticipated by a patent and patent application by Ford (the "Ford Patents"). (Doc. No. 25, Amended Counterclaims, at ¶ 21; Doc. No.

35-2.) In order to overcome this rejection, Horizon submitted a response to the PTO that included a declaration from one of its employees, Eric Stanifer ("Stanifer"), stating that he and his coinventor conceived of the invention before the earliest priority date of the Ford Patents. (Doc. No. 25, Amended Counterclaims, at ¶ 21.) Specifically, Stanifer's declaration provided, in relevant part:

3. The invention described and claimed in the present application was conceived by my fellow inventor and me prior to the effective date of '122 Withers of May 30, 2008 and '968 Withers of June 23, 2009, and diligently worked on and reduced to practice following conception, as evidenced by the following facts, which are of my own knowledge:

4. Attached hereto as Exhibit A are drawings that I along with my follow inventor prepared and completed on May 8, 2008. *The drawings of Exhibit A demonstrate our conception of the claimed subject matter before the effective date of the '122 Withers of May 30, 2008 and the '968 Withers of June 23, 2009.* The drawings attached as Exhibit A were created as I and my fellow inventor refined the invention to create a manufacturable version. Therefore, I and my fellow inventor as the inventors of the present application conceived of the invention prior to May 30, 2008 and June 23, 2009.

(Doc. No. 18-1 at ¶¶ 3-4 (emphasis added).)

Exhibit A to Stanifer's declaration contains two drawings. (*Id.* at 5.) One of the drawings is a sketch of the complete underbed hitch mounting system, and one of the drawings appears to be a side view of one of the parts of the system. (*Id.*) According to NSI, these conception drawings do not show "receiving members" on the underbed hitch mounting system even though receiving members are claimed as a necessary element of the '050 Patent. (Doc. No. 25, Amended Counterclaims, at ¶¶ 24-26.)[1] More specifically, the claims of Horizon's '050 patent all require "a

---

[1] In its Amended Counterclaims, NSI attempts to support its contention that the conception drawings do not contain receiving members based on an alleged comparison of the conception drawings to a separate provisional application by Horizon. (*See* Doc. No. 25, Amended Counterclaims, at ¶¶ 21-26.) NSI appears to have abandoned this argument in its opposition to Horizon's Motion, and the Court therefore need not address Horizon's arguments regarding the provisional application.

2

pair of receiving members attached with said at least one tubular member, said receiving members configured to engage an accessory member." (*Id.* at ¶ 24.) Based on the lack of receiving members in the conception drawings, NSI asserts that Stanifer's statement in his declaration that the drawings demonstrate that he invented the underbed hitch mounting system prior to the Ford Patents was false. (*Id.* at ¶¶ 20-32.) Nonetheless, after receiving Stanifer's declaration, the PTO examiner issued a Notice of Allowability for the application, and Horizon obtained the '050 Patent. (Doc. No. 16 at ¶ 15; Doc. No. 35-4.)

Based on the representations made by Stanifer during the prosecution of the '050 Patent, the Ford Patents were not considered to be prior art during Horizon's later prosecution of another patent related to the underbed hitch mounting system that also included receiving members as a necessary element, specifically U.S. Patent No. 10,589,585 (the "'585 Patent"). (Doc. No. 25, Amended Counterclaims, at ¶ 28.) Neither Stanifer nor any other Horizon employee corrected the alleged misrepresentation regarding what the conception drawings portrayed while obtaining the '585 patent. (*Id.*) The '585 Patent was issued to Horizon on March 17, 2020. (Doc. No. 16 at ¶ 19.)

### b. Procedural History

On August 20, 2020, Horizon filed a First Amended Complaint, alleging that NSI has infringed both the '050 Patent and the '585 Patent. (Doc. No. 16.) On October 22, 2020, NSI filed an Answer to Horizon's First Amended Complaint and Amended Counterclaims. (Doc. No. 25.) In its Answer and Amended Counterclaims, NSI sets forth both an affirmative defense—Affirmative Defense #8—and counterclaim—Counterclaim V—alleging that Horizon's patents are unenforceable as a result of its inequitable conduct based on Stanifer's alleged misrepresentation in his declaration

in support of Horizon's application for the '050 Patent.  (Doc. No. 25, Affirmative Defenses, at ¶ 8; *id.*, Amended Counterclaims, at ¶¶ 19-32.)

In response, on November 25, 2020, Horizon filed a Motion to Dismiss Amended Inequitable Conduct Counterclaim V and Strike Affirmative Defense #8.  (Doc. No. 35.)  In its Motion, Horizon seeks to dismiss NSI's inequitable conduct counterclaim for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), as well as to strike NSI's corresponding affirmative defense pursuant to Fed. R. Civ. P. 12(f).  (*Id.*)  NSI filed a brief in opposition to Horizon's Motion on December 23, 2020, to which Horizon replied on January 6, 2021.  (Doc. Nos. 36, 37.)  Subsequently, on March 17, 2021, the parties moved for a ninety-day stay of the case in order to engage in mediation, which the Court granted the following day.  (Doc. No. 39.)  Following the stay period, the parties informed the Court that they were unable to resolve the case through settlement negotiations, and the case was reopened on June 17, 2021.  (Doc. No. 44.)  As such, Horizon's Motion is ripe for adjudication.

## II. Motion to Dismiss

### a. Standard of Review

Under Rule 12(b)(6), the Court accepts the plaintiff's factual allegations as true and construes the complaint in the light most favorable to the plaintiff.  *See Gunasekara v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009).  In order to survive a motion to dismiss under this Rule, "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'"  *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56, 570 (2007)).

The measure of a Rule 12(b)(6) challenge—whether the complaint raises a right to relief above the speculative level—"does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'" *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Deciding whether a complaint states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that 'Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."'" *Gunasekera*, 551 F.3d at 466 (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). Nonetheless, while "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

b. **Analysis**

In its Motion, Horizon argues that NSI's inequitable conduct counterclaim should be dismissed for several reasons. First, Horizon asserts that Stanifer's declaration does not contain a false statement, as the drawings attached to his declaration do show the allegedly missing receiving members. (Doc. No. 35-1 at 8-10; Doc. No. 37 at 3-5.) Although Horizon admits that Stanifer's

5

drawings are not as clear as the professionally generated figures in the '050 Patent, Horizon contends that certain layered circles in the sketch of the underbed hitch mounting system represent receiving members. (Doc. No. 37 at 3-5.) Horizon also argues that its interpretation of the drawings is confirmed by the fact that the PTO examiner, who is presumed to have properly done his job, reviewed the drawings and agreed that they supported the issuance of the patent. (*Id.* at 4-5.) Second, Horizon asserts that because Stanifer did not make any false statement, NSI cannot show that he had the requisite intent to deceive the PTO. (Doc. No. 35-1 at 10-11.) Further, Horizon contends that even if the Court agrees with NSI that the conception drawings do not include receiving members, NSI's allegations do not support a finding of an intent to deceive by Stanifer. (*Id.* at 11.)[2] In response, NSI contends that Stanifer's drawings do not include a depiction of the receiving members, that Stanifer's declaration stating that the drawings support his conception of all of the elements of the underbed hitch mounting system is therefore false, and that Stanifer's intent to deceive the PTO can be inferred from the submission of this false statement that was necessary to obtain the '050 Patent. (Doc. No. 36 at 7-8.)[3] Upon review of the parties' arguments, the Court finds that dismissal of NSI's

---

[2] In support of its Motion, Horizon also relies on several documents it produced to NSI pursuant to Local Patent Rule 3.2 that Horizon asserts demonstrate that Stanifer and his co-inventor conceived of the allegedly missing receiving members well before the May 8, 2008 date provided in his declaration and, therefore, there was conception before the priority dates of the Ford Patents. (Doc. No. 35-1 at 11-12.) However, the Court may not consider these documents. "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett*, 528 F.3d at 430. Horizon has not shown that these documents were central to or referenced in NSI's Amended Counterclaims, and the Court cannot consider them merely because they were produced in discovery prior to the filing of NSI's Amended Counterclaims.

[3] In NSI's opposition to Horizon's Motion, NSI also asserts that Stanifer falsely claimed that he invented the underbed hitch mounting system independent of Ford, even though it is inconceivable that Stanifer was not working with Ford given the similarities between the drawings and the Ford Patents. (Doc. No. 36 at 5.) To the extent that NSI relies on this additional allegedly false statement in support of its inequitable conduct counterclaim, the Court will not consider it, as NSI failed to set forth any allegations regarding this theory of Ford's alleged joint inventorship in its Amended Counterclaims. *See Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483 (6th Cir. 2020) (holding parties "cannot . . . amend their complaint in an opposition brief or ask the court to consider new allegations (or evidence) not contained in the complaint").

inequitable conduct counterclaim is appropriate, as NSI has failed to allege sufficient facts to support a reasonable inference that Stanifer specifically intended to deceive the PTO.[4]

"'[I]nequitable conduct, while a broader concept than fraud, must be pled with particularity' under Rule 9(b)." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326 (Fed. Cir. 2009) (quoting *Ferguson Beauregard/Logic Controls, Div. of Dover Resources, Inc. v. Mega Sys., LLC*, 350 F.3d 1327, 1344 (Fed. Cir. 2003)). Thus, "[a] pleading that simply avers the substantive elements of inequitable conduct, without setting forth the particularized factual bases for the allegation," is insufficient. *Id.* at 1326-27.

"The substantive elements of inequitable conduct are: (1) an individual associated with the filing and prosecution of a patent application made an affirmative misrepresentation of a material fact, failed to disclose material information, or submitted false material information; and (2) the individual did so with a specific intent to deceive the PTO." *Id.* at 1327 n.3. With respect to the second element, "although 'knowledge' and 'intent' may be averred generally, a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." *Id.* at 1328-29.[5] "Because direct evidence of deceptive intent is rare, a district court may infer intent from indirect and circumstantial evidence."

---

[4] Therefore, the Court need not address Horizon's other arguments in support of dismissal.

[5] Horizon asserts that to establish an inequitable conduct claim, the intent to deceive must be "the single most reasonable inference able to be drawn from the evidence." (Doc. No. 35-1 at 10.) However, that standard does not apply at the pleadings stage. *See Exergen*, 575 F.3d at 1329 n.5; *ZAGG Intellectual Prop. Holding Co. v. XO Skins, LLC*, No. 2:10-CV-1257-TC, 2012 WL 896352, at *5 (D. Utah Mar. 15, 2012) ("[S]uch a standard applies only when the court is evaluating the claim on the merits under the clear and convincing standard.").

*Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011). However, the Court also may take into account "any objective indications of candor and good faith." *Exergen*, 575 F.3d at 1329 n.5.

In this case, NSI asserts that Stanifer made a materially false statement to the PTO by indicating in his declaration that "[t]he drawings of Exhibit A demonstrate our conception of the claimed subject matter before the effective date of the [Ford patents]." (Doc. No. 36 at 7.) According to NSI, this statement is false because the drawings do not demonstrate the conception of all of the elements of the underbed hitch mounting system because they do not include a depiction of the receiving members. (*Id.*) However, even assuming, *arguendo*, that the drawings do not display the receiving members and that Stanifer's declaration therefore contains a false statement, the Court finds NSI's allegations fail to state a claim for inequitable conduct.

Specifically, NSI's allegations are insufficient to enable the Court to reasonably infer that Stanifer submitted this false statement with the specific intent to deceive the PTO. NSI argues that because Stanifer should have known that the drawings did not show conception of the underbed hitch mounting system, the logical inference is that Stanifer's false statement was made to deceive the PTO into allowing the Horizon patents. (*Id.* at 8.) Without additional supporting allegations, the Court does not agree that this inference is reasonable. First, as Horizon points out, NSI does not allege that Stanifer and his coinventor did not actually conceive of the receiving members prior to the filing dates for the Ford Patents or that they lacked other proof of their conception besides the drawings attached to Stanifer's declaration. (Doc. No. 35-1 at 11.) If Stanifer and his coinventor did, in fact, conceive of the receiving members prior to the Ford patents and had additional proof of that conception, it is not reasonable to infer that Stanifer would have nonetheless intentionally submitted

8

inadequate drawings in order to deceive the PTO examiner. The lack of such allegations undermines NSI's claim.

Further, Stanifer's allegedly false representation to the PTO examiner was in the form of a single statement in his declaration regarding what the attached drawings depicted that was easily verifiable by the examiner. Indeed, all the examiner had to do was review the two conception drawings to determine whether they supported Stanifer's claimed conception of the underbed hitch mounting system. It is not plausible to infer that Stanifer intended to deceive the PTO examiner when he presented everything in plain sight for the examiner to review. *See Medline Indus., Inc. v. C.R. Bard, Inc.*, No. 17 C 7216, 2018 WL 4333629, at *5 (N.D. Ill. Sept. 11, 2018) (finding no intent to deceive where a statement to the examiner inaccurately described certain figures when those figures were provided to the examiner).

Therefore, the Court finds NSI's allegations inadequate with respect to Stanifer's specific intent to deceive the PTO in his declaration in support of the '050 Patent. NSI's inequitable conduct counterclaim with respect to the '585 Patent is based on this same conduct. (*See* Doc. No. 25, Amended Counterclaims, at ¶ 28.) Therefore, NSI's inequitable conduct counterclaim against the '585 patent fails for the same reason. Accordingly, the Court grants Horizon's Motion to dismiss NSI's inequitable conduct counterclaim.

### III. Motion to Strike

Horizon also moves to strike NSI's affirmative defense, which is based on the same alleged inequitable conduct, pursuant to Fed. R. Civ. P. 12(f). (Doc. No. 35-1 at 13.) Both parties agree that NSI's counterclaim and affirmative defense for inequitable conduct rise or fall together. (*Id.*; Doc. No. 36 at 10.) Indeed, courts have so held. *Medline Indus., Inc. v. C.R. Bard, Inc.*, No. 16-cv-3529,

2016 WL 5871501, at *3 (N.D. Ill. Oct. 7, 2016) ("[I]nequitable conduct counterclaims and affirmative defenses of inequitable conduct rise or fall together."); *Senju Pharm. Co., Ltd. v. Apotex, Inc.*, 921 F. Supp. 2d 297, 306 (D. Del. 2013) ("Apotex's counterclaim and affirmative defense for inequitable conduct rise or fall together."). As a result, because NSI's counterclaim is not adequately pled, the Court also strikes NSI's affirmative defense of inequitable conduct.

## IV. Conclusion

For the reasons set forth above, Horizon's Motion (Doc. No. 35) is GRANTED.

**IT IS SO ORDERED.**

Date: July 14, 2021

    *s/Pamela A. Barker*
PAMELA A. BARKER
U. S. DISTRICT JUDGE