**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| Horizon Global Americas Inc., | ) | Case No. 1:20-cv-00310-PAB |
| | ) | |
| Plaintiff, | ) | Judge Pamela A. Barker |
| | ) | |
| v. | ) | |
| | ) | |
| Northern Stamping, Inc., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## <u>Horizon's Opening Claim Construction Brief</u>

# Table of Contents

I.      Introduction......................................................................................................... 1

II.     Background ..........................................................................................................2

   A.   Horizon .............................................................................................................2

   B.   The Invention ...................................................................................................2

   C.   The Patents ...................................................................................................... 4

   D.   NSI infringes Horizon's Asserted Patents .....................................................5

   E.   How the "tubular" and "hollow" terms made it into the claims ................. 6

III.    Claim Construction Law ................................................................................. 10

IV.     Analysis ............................................................................................................. 12

   A.   "Tubular member having a cross-sectional shape a substantial portion of which is
        defined by an enclosed peripheral wall with a generally hollow section"............. 12

        1.    The claim language supports Horizon's construction......................... 12

        2.    The specification supports Horizon's construction............................. 13

        3.    The prosecution history supports Horizon's construction ................. 14

        4.    Real-world engineering extrinsic evidence proves that "tubular" includes
              rectangular shapes................................................................................ 16

   B.   "Receiving member" ...................................................................................... 18

   C.   "Accessory member"......................................................................................20

        1.    "Accessory member" does not need construction .............................20

        2.    "Accessory member" is not a limitation ............................................. 21

        3.    The intrinsic evidence contradicts NSI's proposal .............................22

V.      NSI's alternative indefiniteness argument of the claim terms is meritless ...........23

   A.   NSI's argument that the Court can construe these terms contradicts its argument
        that those terms are indefinite ..................................................................23

   B.   The terms are not indefinite ........................................................................24

VI.     Conclusion.........................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Apple Inc. v. Motorola, Inc.,*
757 F.3d 1286 (Fed. Cir. 2014) ...................................................................12

*BASF Corp. v. Johnson Matthey Inc.,*
875 F.3d 1360 (Fed. Cir. 2017) ..................................................................23

*C.R. Bard, Inc. v. M3 Sys., Inc.,*
157 F.3d 1340 (Fed. Cir. 1998) ..................................................................20

*CCS Fitness, Inc. v. Brunswick Corp.,*
288 F.3d 1359 (Fed. Cir. 2002) .................................................................. 11

*Endotach LLC v. Cook Med. Inc.,*
No. 1:12-cv-01630-LJM, 2013 WL 1500827 (S.D. Ind. Apr. 10, 2013) ............................ 10, 17

*Georgetown Rail Equip. Co. v. Holland L.P.,*
867 F.3d 1229 (Fed. Cir. 2017) ..................................................................21

*In re Hiniker Co.,*
150 F.3d 1362 (Fed. Cir. 1998) ..................................................................12

*Hoechst Celanese Corp. v. BP Chems. Ltd.,*
78 F.3d 1575 (Fed. Cir. 1996) ................................................................... 14

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys.,*
381 F.3d 1111 (Fed. Cir. 2004) ..................................................................22

*Invitrogen Corp. v. Biocrest Mfg., L.P.,*
327 F.3d 1364 (Fed. Cir. 2003) ................................................................. 14

*Jang v. Boston Sci. Corp.,*
532 F.3d 1330 (Fed. Cir. 2008) ...........................................................10, 18, 21

*In re Katz Interactive Call Processing Patent Litig.,*
639 F.3d 1303 (Fed. Cir. 2011) ................................................................. 14

*Nautilus, Inc. v. Biosig Instruments, Inc.,*
134 S.Ct. 2120, 189 L.Ed.2d 37 (2014) ..........................................................23

*NTP, Inc. v. Research In Motion, Ltd.,*
418 F.3d 1282 (Fed.Cir. 2005) ....................................................................7

*Phillips v. AWH Corp.,*
415 F.3d 1303 (Fed. Cir. 2005) (en banc) ........................................................ 11, 12, 19, 22

*Power-One, Inc. v. Artesyn Techs., Inc.,*
599 F.3d 1343 (Fed. Cir. 2010) ...................................................................................21

*Rambus Inc. v. Rea,*
731 F.3d 1248 (Fed. Cir. 2013) ................................................................................... 14

*Renishaw PLC v. Marposs Societa' per Azioni,*
158 F.3d 1243 (Fed. Cir. 1998) ...................................................................................12

*In re Sang Su Lee,*
277 F.3d 1338 (Fed. Cir. 2002) ...................................................................................23

*Terves LLC v. Yueyang Aerospace New Materials Co.,*
No. 1:19-CV-1611, 2021 WL 1172332 (N.D. Ohio Mar. 29, 2021) ........................................20

*Trustees of Columbia Univ. v. Symantec Corp.,*
811 F.3d 1359 (Fed. Cir. 2016) ...............................................................................8, 13

*UUSI, LLC v. United States,*
131 Fed. Cl. 244 (2017) .............................................................................................22

*Vivid Techs. v. Am. Sci. & Eng'g, Inc.,*
200 F.3d 795 (Fed. Cir. 1999)........................................................................... 10, 18, 21

*Wellman, Inc. v. Eastman Chem. Co.,*
642 F.3d 1355 (Fed. Cir. 2011) ...................................................................................23

# I.       Introduction

Horizon sued because defendant Northern Stamping ("NSI") sells underbed hitch mounting systems that infringe two Horizon patents: U.S. Patent Nos. 9,834,050 (the "'050 patent," att'd as Ex. A) and 10,589,585 (the "'585 patent," att'd as Ex. B) (collectively, the "Asserted Patents"). NSI has raised three claim terms for construction:

- "Tubular member having a cross-sectional shape a substantial portion of which is defined by an enclosed peripheral wall with a generally hollow section" (or the "tubular member term," for convenience);

- "Receiving member"; and

- "Accessory member."

The Court should adopt Horizon's construction for the "tubular member" term because it is supported by intrinsic evidence from the claim language, the specification, and prosecution history, as well as extrinsic evidence.

The Court need not construe "receiving member" or "accessory member" because they are used consistently with their ordinary meanings that the factfinder will understand. If the Court believes that constructions are necessary to help the factfinder, then Horizon provides constructions supported by intrinsic and extrinsic evidence.

The same evidence supporting Horizon's constructions also belies NSI's proposed constructions. In fact, it is readily apparent from the evidence that NSI's proposals do not seek to define those terms, but improperly limit or narrow them, which the Federal Circuit has called a "cardinal sin."

For example, NSI seeks not to define "tubular," but rather to limit it only to circular shapes, which contradicts a mountain of evidence that shows tubular can include

rectangular, circular, and other shapes. The reason for NSI's unlawful attempt to limit such a common definition only to a specific circular shape? Its accused system conveniently uses tubes that have a rectangular shape (just like Horizon's first-to-market system shown in the drawings of the patents).

By following the Federal Circuit's *en banc Philips* case and its progeny on claim construction law, the Court should reject NSI's legally unsupported, narrowing proposals that fail to serve the purpose of claim construction.

II.     **Background**

    A.      **Horizon**

Horizon is one of the world's leading manufacturers of towing and trailering equipment. For decades, Horizon and its predecessors have invented, engineered, manufactured, and marketed a wide array of high-quality products and accessories for trailer equipment in North America, Australia, and Europe. Horizon owns the most recognized brands in this industry, including REESE® and DRAW-TITE®.

    B.      **The Invention**

For decades, the auto industry faced a problem. Pickup truck owners wanted to install aftermarket fifth wheel hitches or gooseneck hitches into the bed of their trucks. But installing a fifth wheel hitch or a gooseneck coupler to the bed of the truck required permanently bolting a pair of rails on the truck bed, as shown below:



**Fifth wheel hitch**

**Pair of rails bolted onto bed**



**Hitch ball for gooseneck coupler**

**Pair of rails bolted onto bed**

The rails bolted onto the bed were unsightly and caused problems when the hitch was removed. For example, drywall placed on the bed rails would not sit flat and would break easily due to those rails being bolted on the bed. Because Horizon literally invented fifth wheel hitches, was the largest manufacturer and seller of those hitches worldwide, and had innovative engineers, Ford approached Horizon to solve the exposed rail problem.

Horizon's engineers, Richard McCoy (a named inventor on 50+ trailer and towing patents) and Eric Stanifer, engineered a solution: an underbed system that mounts to the vehicle frame under the bed with openings on the bed that could be covered by rubber grommets (that look like hockey pucks) when not in use:



Ford introduced this now well-known puck system in the 2010 Ford F-Series pick-ups. Horizon's invention was a game-changer for Ford and its F-Series heavy-duty pickup truck program because Ford was the first auto manufacturer to provide such a solution to customers.

### C. The Patents

Because of the innovative nature of this invention, the USPTO granted Horizon multiple patents for its underbed mount system, including the Asserted Patents.[1] Claim 1 of the '050 patent is illustrative:

1.     An underbed hitch mounting system comprising:

at least one tubular member having a cross-sectional shape a substantial portion of which is defined by an enclosed peripheral wall with a generally hollow section;

a central member attached to said at least one tubular member, said central member having a socket; and

a pair of receiving members attached with said at least one tubular member, said receiving members configured to engage an accessory member.

---

[1] The two Asserted Patents are the third and fourth patents to issue in the same family of patents for this technology and are continuations of prior patents, starting with U.S. Patent No. 8,414,009 (the "'009 patent"), followed by U.S. Patent No. 9,067,468 (the "'468 patent"). The '009 is attached to this brief as Exhibit C.

The annotations to Figure 6 from the patents, below, shows where these claim limitations (as well as the accessory member) are found in a preferred embodiment:



FIG. 6

### D. NSI infringes Horizon's Asserted Patents

NSI has infringed the Asserted Patents by copying the under-mount system and selling it to General Motors, which installs them in its pickup trucks, including the Chevy Silverado. The NSI rendering below shows the infringing tubular members in yellow.



Despite the NSI underbed system matching Horizon's system and patents pre-litigation, NSI's lawyers have developed a post-litigation (and legally unsupported) non-infringement theory: (a) the claimed term "tubular member" must mean only "circular" tubes and not rectangular tubes (despite the patent figures showing rectangular tubes and the claims reciting any "cross-sectional shape"); and (b) only tubes having a tube-in-

tube configuration read on the "hollow wall" term (despite none of the patent figures showing such a tube-in-tube configuration). The sketch below, which looks nothing like anything in the patents, illustrates NSI's proposed tube-in-tube construction:



As explained more below, the intrinsic patent evidence contradicts NSI's faulty claim construction theories. So does the extrinsic evidence including basic engineering concepts, and ████████████████████████████████████████████████████ ████████████████████████████████████ The Court should reject their theories accordingly.

### E. How the "tubular" and "hollow" terms made it into the claims

Before delving into the analysis, it is important to understand the context of how the "tubular member" and "generally hollow section" terms found their way into the claims. The Asserted Patents both trace back to the same parent application, U.S. Application No. 12/609,062 (the "'062 application"), that ripened into U.S. Patent No. 8,414,009 (the "'009 patent") as shown in the following family tree (Asserted Patents in red):

---

² Horizon asks that the Court forgive the quality of this sketch by Horizon's inartistic lawyer. Because NSI's lawyer-invented "tube-in-tube" theory is not found in any of the patents' figures or prosecution history, there were no other sources from which to pull an exemplar of this NSI proposed design.



Because the Asserted Patents are continuations of the '009 patent, the claim terminology and descriptions for the invention across this family of patents is relevant to understanding the meaning of the claim terms at issue here. *NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282, 1293 (Fed.Cir. 2005) (where patents are "from the same parent application and share many common terms, we must interpret the claims consistently across all asserted patents.") The prosecution history shows that the terms did not narrow—and were not intended to narrow—the claims only to a "circular" tube-in-tube configuration as NSI now argues.

As originally filed, the claims in the '062 application did not contain the "tubular member" term. Instead, all claims referred to the structural supports only as "rails." (10/30/2009 Claims of '062 application, att'd as Ex. D.) The "tubular member" term was first added to the claims in a March 10, 2011 amendment when Horizon added new claim 18, which ultimately became claim 9 in the '009 patent. (03/10/2011 Amended Claims of '062 application, att'd as Ex. E, at 4, claim 18.) New claim 18 recited "at least one tubular member" (shown in red below in Fig. 6 of the '009 patent) and a "pair of solid members attached to the tubular member" (shown in green below), where the solid members "attach[] to an underside of a load bed of a vehicle." (*Id.*)



FIG. 6

Horizon used the "tubular" term to distinguish the hollow structural members from a "solid," *i.e.,* non-hollow, member. As shown by this intrinsic prosecution history evidence, Horizon did not introduce "tubular" to narrow the claims only to circular tubes, and there's no evidence to the contrary in the prosecution history.

Indeed, as proof, when Horizon added the term "tubular" during the prosecution history, all Figures in the '009 patent (and the two Asserted Patents) that supported the use of that term show only rectangular tubes. (*See* Figures 1-2, 4-7 of '009 patent, Ex. C, '050 patent, Ex. A, and '585 patent, Ex. B.)

As further proof, dependent claims 16 and 17 of independent claim 9 from the '009 patent *specify shapes* for the tubular members: (1) dependent claim 16 specifies that "at least one tubular member has a generally <u>rectangular</u> cross-sectional shape" and (2) dependent claim 17 specifies that "at least one tubular member has a generally <u>oval</u> cross-sectional shape." ('009 patent, Ex. C, claims 16 and 17 (emphasis added).) Thus, as a matter of basic claim construction law, "tubular member" is not restricted in shape and must include rectangular tubular members. *See Trustees of Columbia Univ. v. Symantec*

*Corp.*, 811 F.3d 1359, 1370 (Fed. Cir. 2016) ("[C]onstruing the independent claim to exclude material covered by the dependent claim would be inconsistent.").

As to the "generally hollow section" language, Horizon added it to explain that a tubular member has an "enclosed peripheral wall" that forms a "generally hollow section" to distinguish it from u-shaped rails the USPTO Examiner cited in the prior art that have unenclosed bottoms. Specifically, the Examiner initially rejected certain claims based on a prior Horizon patent, U.S. Patent No. 7,121,573 ("Lindemann"), as allegedly "disclos[ing] tubular members **22, 24** capable to attaching to frame members..." (12/07/2011 Office Action, att'd as Ex. F, at 5, ¶5.)



(Lindemann, att'd as Ex. G at Figure 10.)

Horizon responded that Lindemann failed to disclose tubular members because, as seen in figure 10 (above), Lindemann disclosed "U-shaped members with an opening at the bottom thereof instead of a bottom peripheral wall." (03/07/2012 Horizon Response to Office Action, att'd as Ex. H at 9 (discussion of claims 18-20).) In contrast, Horizon explained that tubular members are different from Lindemann's u-shape because they have a "cross-sectional shape a substantial portion of which is defined by an enclosed

peripheral wall with a generally hollow section." (*Id.*) That is, the walls enclose a hollow section, as shown, for example, in Figure 1 from the '009 patent:[3]



FIG. 1

(Figure 1 from '009 and Asserted Patents (annotations added), Exs. A, B, and C.)

Horizon amended the claims to add this clarification and distinction from that u-shape in Lindemann. (Ex. H at 4 (underlined portions).) After further back-and-forth on unrelated matters, the USPTO issued the '009 patent with this clarifying language that is also in the Asserted Patents, and is the same claim language at issue here.

## III.    Claim Construction Law

The first step in the analysis is whether a claimed term needs to be construed. The Court should construe claims only to the extent necessary to resolve an infringement or invalidity dispute, and should not construe terms just because a party requests construction. *Vivid Techs. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999); *see also Jang v. Boston Sci. Corp.*, 532 F.3d 1330, 1336 (Fed. Cir. 2008) (construing terms "that do not actually affect the infringement controversy" would result in impermissible "advisory opinions"); *Endotach LLC v. Cook Med. Inc.*, No. 1:12-cv-01630-LJM, 2013 WL

---

[3] This figure is found in every patent in the family, including the Asserted Patents.

1500827, at *14 (S.D. Ind. Apr. 10, 2013) (declining to construe "tubular member" because the term itself is "sufficiently descriptive" and proposed construction would exclude the preferred embodiment).

Claim terms are interpreted as having the "ordinary and customary meaning" as would be understood by a person of ordinary skill in the art ("POSITA") at the time of the invention. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc). Claims must be construed in light of the patent's intrinsic evidence—the claims, specification, and prosecution history. *Id.* at 1314-17. However, there is a "heavy presumption" that a claim term carries its ordinary and customary meaning. *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002). Accused infringers can only overcome this "heavy presumption" and narrow a claim term's ordinary meaning where the patentee: (1) clearly set forth a definition of the disputed term in the specification or prosecution history; (2) expressly disclaimed the subject matter; (3) the term chosen "deprives the claim of clarity;" or (4) the claim is phrased in step- or means-plus-function format. *Id.*, at 1366-67.

If the construction is still not clear from the intrinsic evidence, then the Court may also use extrinsic evidence, such as expert and inventor testimony, dictionaries, and learned treatises. *Id.* (extrinsic evidence "is less significant than the intrinsic record in determining the operative meaning of claim language").

## IV.    Analysis

### A. "Tubular member having a cross-sectional shape a substantial portion of which is defined by an enclosed peripheral wall with a generally hollow section"

| Horizon's Proposed Construction | NSI's Proposed Construction |
| --- | --- |
| A part with much of its cross-sectional shape outlined by a wall that encloses a generally hollow section of the part. | Term is indefinite.[4] To the extent understood, a member having a hollow, round cross-section defined by a pair of structures forming a hollow peripheral wall. |

#### 1.    The claim language supports Horizon's construction

"The claim construction inquiry … begins and ends in all cases with the actual words of the claim." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998). "[I]n all aspects of claim construction, 'the name of the game is the claim.' " *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1298 (Fed. Cir. 2014) (quoting *In re Hiniker Co.*, 150 F.3d 1362, 1369 (Fed. Cir. 1998); *Phillips*, 415 F.3d at 1314 ("[T]he claims themselves provide substantial guidance as to the meaning of particular claim terms.")).

The claims themselves support Horizon's construction. The claims state that the tubular member has "a cross-sectional shape" that is "defined by an enclosed peripheral wall"—without limiting it to any shape in particular. Because the claims describe the tubular member broadly as having "a cross-sectional shape," its plain language covers any shape, *e.g.*, rectangle, square, circle, triangle, etc. (*See, e.g.*, '050 patent, Ex. A, claim 1.)

Indeed, under the law of claim differentiation, dependent claims 16 and 17 in the '009 patent identify specifically rectangular and circular configurations, which, by law and logic, means "tubular member" is not limited to any specific shape and includes

---

[4] Horizon will address NSI's indefiniteness argument in Section V, below.

rectangular shapes. (*See* Section II.E, above.) "Tubular member," therefore, must include rectangular shapes and is not limited only to round shapes as argued by NSI. ('009 patent, Ex. C, at claims 16 and 17); *see also Columbia*, 811 F.3d at 1370 ("[C]onstruing the independent claim to exclude material covered by the dependent claim would be inconsistent."). Therefore, the claim language intrinsic evidence itself supports Horizon's construction.

Similarly, nothing in the claim language requires a tube-in-tube configuration argued by NSI. NSI bases its tube-in-tube theory on the "hollow section" language in the claims and contends the tube *wall* has to be "hollow." This makes no sense and is not what the claim's plain language requires. The claims state that the tubular member has a "hollow section" that is enclosed by the tube's "peripheral wall." The claim language elaborates on the non-controversial fact that the tubular member is hollow and enclosed by a "peripheral wall." It's the tube that is hollow, not the tube's wall. Again, that explanatory language was added during prosecution to distinguish the claimed invention from prior art inventions that used u-shaped rails open on the bottom, were not hollow, and did not have "enclosed peripheral wall[s]" that define a "cross-sectional shape" to form a "hollow section." (*See supra* at Section II.E.) Because NSI's proposal contradicts the intrinsic evidence, it is wrong.

### 2.    The specification supports Horizon's construction

The specification also supports Horizon's construction. Every single embodiment in the figures shows a *rectangular* tubular member. Adopting NSI's incorrect construction would lead to none of the claims covering those preferred embodiments shown in the

specification. By law, such constructions are strongly disfavored and require "highly persuasive evidence," such as a "clear and unambiguous" disavowal of the claim scope. *See Rambus Inc. v. Rea*, 731 F.3d 1248, 1253 (Fed. Cir. 2013) ("A claim construction that excludes the preferred embodiment 'is rarely, if ever, correct'"); *In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1324 (Fed. Cir. 2011) ("[T]here is a strong presumption against a claim construction that excludes a disclosed embodiment."); *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 327 F.3d 1364, 1369 (Fed. Cir. 2003) (rejecting a construction that excluded an embodiment without "clear and unambiguous" disavowal of the claim scope in the patents or prosecution history); *Hoechst Celanese Corp. v. BP Chems. Ltd.*, 78 F.3d 1575, 1581 (Fed. Cir. 1996) ("We share the district court's view that it is unlikely that an inventor would define the invention in a way that excluded the preferred embodiment, or that persons of skill in this field would read the specification in such a way."). Thus, the specification supports Horizon.

### 3. The prosecution history supports Horizon's construction

Section II.E, above, explains the prosecution history, and how it further supports the claim language and the specification that "tubular" is *<u>not</u>* limited to a specific shape as NSI incorrectly argues. (*See* Section II.E.)

Horizon added "tubular" during prosecution to distinguish a hollow "tubular" member from a "solid" member. (*See* Section II.E.) Horizon did not add the word "tubular" to distinguish shapes, so it is not: (a) a prosecution disclaimer of any shapes, or (b) some "clear and unambiguous disavowal" that limits the tubular member shape only to a "round" shape. Indeed, the '050 patent prosecution history shows that both the

Examiner and Horizon understood *rectangular* tubes to be included in the meaning of "tubular member," which further confirms that no one understood tubular as limited only to round tubes. (08/14/2017 Office Action, att'd as Ex. I, at 3-5.) Specifically, the examiner pointed to <u>rectangular-shaped parts</u> in Figure 1 from each of the references that he considered as meeting the "tubular member" term,[5] which shows he believed tubular members can be rectangular tubes:



As to the "hollow section" language, the prosecution history for the parent application shows that Horizon added that language to explain that the tubular member is hollow and is enclosed by a peripheral wall to distinguish from the u-shape in Lindemann. (*See* Section II.E, above, at 9-10.) There's nothing in the prosecution history to suggest that the explanatory language was meant to claim hollow "walls," *i.e.*, a tube-in-tube arrangement, as NSI contends.

---

[5] For context: the references used as a basis to initially reject the "tubular member" term in the '050 patent claims was a Ford patent, Withers et al. (US 7,793,968 B1), shown on the left, above, and another Horizon patent by Lindemann (US 5,971,418), shown on the right, above. As detailed the Court's opinion and order dismissing NSI's inequitable conduct counterclaim, Horizon swore behind the Withers reference to prevent it from being considered as prior art. (ECF #46 at 2.)

4.     **Real-world engineering extrinsic evidence proves that "tubular" includes rectangular shapes**

The following extrinsic engineering evidence further proves that tubular members come in various shapes, including rectangular:

- The _American Society for Testing and Materials (ASTM)_ standards, which drafts and publishes U.S. engineering standards, identify that structural tubes can be any shape, including rectangular. _See, e.g.,_ ASTM Int'l Std. Spec. A513/A513M, att'd as Ex. J, at 5, 1.3 (covering "round, square, rectangular, and special shape electric-resistance-welded carbon and alloy steel mechanical tubing..."); _see also_ ASTM Int'l Std. Spec. A500/A500M, att'd as Ex. K at 3, 1.1 (covering "cold-formed welded and seamless carbon steel round, square, rectangular, or special shape structural tubing..."); and ASTM Int'l Std. Spec. A1076/A1076M, att'd as Ex. L at 3, 1.1 (covering "round, square, rectangular, and special shape, electric-resistance-welded structural tubing...");

- _Standard Handbook of Machine Design_, att'd as Ex. M at 3, Table 48.18. (listing "Properties of Square and Rectangular Structural Steel Tubing" with various characteristics of that tubing.)

- _Marks' Standard Handbook for Mechanical Engineers_, att'd as Ex. N, Table 12.2.26 (same); and

- Numerous examples of "square or rectangular tubing" sold in the marketplace. (_See, e.g._, excerpts from online suppliers, att'd as Ex. O.)

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████



This overwhelming intrinsic and extrinsic evidence proves that "tubular member" can be any shape, and has an enclosed hollow section, but not hollow walls enclosing a hollow section.

## B. "Receiving member"

| Horizon's Proposed Construction | NSI's Proposed Construction |
|---|---|
| No construction necessary because the subsequent claim language itself describes the configuration of the "receiving member," for example, that it is "attached with said at least one tubular member" and is "configured to engage an accessory member" (claim 1 of '050 patent) or "configured to engage a respective leg of a fifth wheel hitch" (claim 7 of the '585 patent).<br><br>Alternatively: A part that receives something. | Term is indefinite. To the extent understood, the structure identified by "44" in Fig. 7 of the '050 patent and '585 patent. |

The Court does not need to construe this term for two reasons. First, the claim language carries its ordinary meaning and will be easily understood by the trier of fact. *See, e.g., Endotach LLC*, 2013 WL 1500827, at *14 (declining to construe "tubular member" because the term itself is "sufficiently descriptive"). The term means what it says: a receiving member is a member that receives something. To the extent there is more to detail needed about that part, the other claim language explains those details, namely that they are "attached" to the tubular member and "configured to engage an accessory member."

Second, to avoid impermissible advisory opinions, courts should not construe terms unless the party seeking construction identifies how its proposed construction would resolve an invalidity or infringement issue. *See Jang*, 532 F.3d at 1336 (construing terms "that do not actually affect the infringement controversy" would result in impermissible "advisory opinions"); *Vivid Technologies*, 200 F.3d at 803 (claim terms

should be construed "only to the extent necessary to resolve the controversy"). While NSI seeks construction of this term, it does not dispute that it has a receiving member in its non-infringement contentions. (*See* NSI's initial non-infringement contentions, att'd as Ex. T, at 2.) The Court, therefore, should decline to construe this term.

If the Court construes the term, it should adopt Horizon's alternative construction. As applicable to both patents, the "receiving member" is a "part that receives something." This is appropriate because each patent details that the receiving member is designed to "receive" a specified part. In the '050 patent, the "receiving member" is "configured to engage" an "accessory member" (claim 1), and the specification explains that such accessories may be a "cap or a safety chain tie down member." ('050 patent, Ex. A, at 5:60-67; 6:1-4.) Similarly, in the '585 patent, the "receiving member" is "configured to engage a leg of a fifth wheel hitch." ('050 patent, Ex. A, at claim 16.) Thus, the patents specify that this part is designed to "receive something," and thus Horizon's construction matches the evidence.

In contrast, NSI's construction only seeks to identify the preferred embodiment part shown as **44** in Fig. 7 of the Asserted Patent as the sole basis for the definition of this term. To adopt this proposed construction would be to commit one of the "cardinal sins of patent law" by "reading a limitation from the written description into the claims." *Phillips*, 415 F.3d at 1320. It is well-known legal error in claim construction to improperly import a preferred embodiment out of a figure in the specification into the claims to limit the claims to just one preferred embodiment. *Id.* It would be especially erroneous here because the written specifications themselves contradict this proposal and state that the

receiving member "may be of *any shape or size*, such as cylindrical, oval, or a square shape, for example, and *should not be limited to that shown and described herein*." ('050 patent, Ex. A, at 5:60-63; '585 patent, Ex. B, at 5:62-65 (emphasis added).)

This is another argument where NSI's proposal contradicts the intrinsic evidence in violation of controlling law. The Court should decline NSI's invitation to commit legal error by limiting the meaning of this term only to one of the preferred embodiments. The Court either should not construe this term or adopt Horizon's proposals.

### C. "Accessory member"

| Horizon's Proposed Construction | NSI's Proposed Construction |
|---|---|
| No construction necessary because the terms is used consistent with its ordinary meaning that the fact finder will know and understand.<br><br>Alternatively: The term is not a claim limitation, but rather is used to describe the receiving member. An accessory member is merely an additional part that can attach to a receiving member [such as a cap, fifth wheel hitch leg, or safety-chain tie down]. | Term is indefinite. To the extent understood, the structure identified by "44" in Fig. 7 of the '050 patent and '585 patent. |

### 1. "Accessory member" does not need construction

The Court does not need to construe "accessory member" because the term is used consistent with its ordinary meaning, and the finder of fact will understand that meaning: they are accessories, such as hitch legs or safety chain tie downs. *See, e.g., Terves LLC v. Yueyang Aerospace New Materials Co.*, No. 1:19-CV-1611, 2021 WL 1172332, at *4 (N.D. Ohio Mar. 29, 2021) (finding no construction necessary because jurors could understand the term at issue).

### 2. "Accessory member" is not a limitation

This term is not a claim limitation. This is because an accessory member is not a required feature, but merely explains what the "receiving member" is used or configured "for" in the invention. *See C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340 (Fed. Cir. 1998). In *C.R. Bard*, the Federal Circuit held that a patent claimed a biopsy needle for use with a biopsy machine. *Id.* Both the preamble and the body of the claims in *C.R. Bard* recited the "housing" of the biopsy machine, which the Federal Circuit ruled was not a claim limitation. *Id.* at 1350. As to the body of the claim reciting "said housing," those were merely non-limiting "reference points" for "guidance in understanding and construing the claim." *Id.* The claim body, for example, required that the claimed needles be configured to allow movement "toward and away from said forward end of said housing." *Id.* at 1349. This did not render the "housing" part of the claimed invention. It was a mere reference point for defining the needle invention. *Id.*

Similarly here, the "accessory member" term from the '050 patent is a reference point for defining the receiving member, which is designed to engage with accessory member and is not another claim limitation, such as the central member. That is, the "accessory member" describes the use of the receiving member but is not a required part of the structurally complete invention. *Georgetown Rail Equip. Co. v. Holland L.P.*, 867 F.3d 1229, 1236 (Fed. Cir. 2017) (finding that term "mounted on vehicle for movement along railroad track" described use of invention and was not a claim limitation). Because this is not a limitation, construction is not necessary. *See Jang*, 532 F.3d at 1336

(construing terms "that do not actually affect the infringement controversy" would result in impermissible "advisory opinions"); *Vivid*, 200 F.3d at 803.

### 3. The intrinsic evidence contradicts NSI's proposal

In addition to being unnecessary, NSI's proposed construction is simply incorrect. The specification states explicitly that part **44** is the "receiving member" shown in the Figures, not the "accessory member." The specification states this, no less than *10 times*. (*e.g.*, '050 patent, Ex. A, at 5:52 ("... use of the receiving members **44**"); 5:60 ("The puck or receiving member **44** ...".) Thus, NSI's proposal that the accessory member be construed as "the structure identified by "44" in Fig. 7 of the '050 patent and '585 patent" is wrong on its face. *Power-One, Inc. v. Artesyn Techs., Inc.*, 599 F.3d 1343, 1348 (Fed. Cir. 2010) ("The terms, as construed by the court, must ensure that the jury fully understands the court's claim construction rulings and what the patentee covered by the claims.")

Moreover, importing one particular preferred embodiment shown in a Figure into the claims as a limitation is the same type of "cardinal sin" that NSI attempts with respect to the "receiving member." *Phillips*, 415 F.3d at 1320. The Court should reject this attempt for the same reasons.

Additionally, NSI's proposed construction makes no sense because NSI simultaneously proposes defining the "receiving member" as that same part, **44**. (*Compare* NSI's proposed construction for "receiving member" *with* NSI's proposed construction for "accessory member.") The claim language and the specification make clear that the receiving members and the accessory members are two separate parts (*e.g.*, '050 patent at claim 1 ("...said receiving members configured to engage an accessory member."); *id.* at

6:1-7 ("a number of accessories **60** may be utilized with the receiving member **44**."). *See Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1119 (Fed. Cir. 2004) ("[A]ll claim terms are presumed to have meaning in a claim."). The Court should not construe the term because it is not a limitation.

## V.     NSI's alternative indefiniteness argument of the claim terms is meritless

NSI argues in the alternative that all of the claim terms are not construable because they are indefinite, and essentially seeks to backdoor an early summary judgment ruling of invalidity due to indefiniteness through claim construction, without any expert opinion or summary judgment evidence, and based on a meritless theory.

### A.     NSI's argument that the Court can construe these terms contradicts its argument that those terms are indefinite

As an initial matter, the Court should reject NSI's alternative indefiniteness arguments for the simple fact that the Court would have to reject *both* Horizon's *and* NSI's proposed constructions for those terms. Indeed, both Horizon and NSI present intrinsic and extrinsic evidence supporting the fact that the Court *can* construe these terms. *UUSI, LLC v. United States*, 131 Fed. Cl. 244, 257 (2017) (consideration of extrinsic evidence only proper if, after consideration of the intrinsic evidence, the claim is still ambiguous). It is disingenuous for NSI to propose constructions on one hand, and then argue the claims are incapable of construction on the other hand. The fact that NSI is able to propose constructions defeats its indefiniteness theory, which requires clear and convincing evidence that the claims are incapable of being construed.

**B. The terms are not indefinite**

NSI has the burden of proving indefiniteness by clear and convincing evidence. *See BASF Corp. v. Johnson Matthey Inc.,* 875 F.3d 1360, 1365 (Fed. Cir. 2017). A patent claim is only indefinite if, when "read in light of the specification delineating the patent, and the prosecution history, [the claim] fail[s] to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.,* 134 S.Ct. 2120, 2124, 189 L.Ed.2d 37 (2014). "[A]n inventor need not explain every detail because a patent is read by those of skill in the art." *Wellman, Inc. v. Eastman Chem. Co.,* 642 F.3d 1355, 1367 (Fed. Cir. 2011).

NSI's attorney argument that these terms are indefinite is not only incorrect, but implausible. As shown above, the intrinsic evidence illustrates the meanings of these terms. This is bolstered by the fact that during prosecution of the Asserted Patents, the examiner, a POSITA, reviewed the claims and did not find them to be indefinite. *In re Sang Su Lee,* 277 F.3d 1338, 1345 (Fed. Cir. 2002) (an examiner is presumed to act from the viewpoint of a POSITA when determining patentability during examination). The examiner did not reject those terms based on indefiniteness, which he could have. *Id.* ███ ███████████████  ██████████████████████████████████████████, ████████  ██████████████████████████████████████████████

The "tubular member" term simply describes what the "tubular member" looks like and traces its origins to Horizon distinguishing it from a u-shaped member from prior art. (*See* Section II.E, above.) ████████████████████████████████████████  ███████████████████████████████████████

The receiving member is described in detail as the member that receives the accessory member.

The accessory members, though not a claim limitation, are specifically detailed and described in the specification, with examples—a cap or a safety chain tie down—expressly provided. (*See* '050 patent 6:2-5.)

NSI cannot meet its burden of proving that these terms are indefinite under any standard of proof, but especially by clear and convincing evidence. The Court should reject this argument.

## VI.    Conclusion

For all of the foregoing reasons, the Court should (1) adopt Horizon's construction of the "tubular member" term; (2) decline to construe "receiving member" and "accessory member" or, if necessary, adopt Horizon's constructions for the same; and (3) reject NSI's unfounded indefiniteness arguments.

<table>
<tr><td></td><td>Respectfully submitted</td></tr>
<tr><td>Dated: August 13, 2021</td><td>  s/ David B. Cupar</td></tr>
<tr><td></td><td>David B. Cupar (OH 0071622)<br>Matthew J. Cavanagh (OH 0079522)<br>Andrew D. Gordon-Seifert (OH0092499)<br>MCDONALD HOPKINS LLC<br>600 Superior Avenue, East, Ste. 2100<br>Cleveland, Ohio 44114<br>t 216.348.5400 │ f 216.348.5474<br>dcupar@mcdonaldhopkins.com<br>mcavanagh@mcdonaldhopkins.com<br>agordon-seifert@mcdonaldhopkins.com</td></tr>
<tr><td></td><td>*Counsel for Horizon Global Americas Inc.*</td></tr>
</table>