**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**


HORIZON GLOBAL AMERICAS, INC.,            )
                                          )
            Plaintiff,                    )
                                          )
      v.                                  )      Case No. 1:20-cv-00310-PAB
                                          )
NORTHERN STAMPING, INC.,                  )      Honorable Judge Pamela A. Barker
                                          )
            Defendant,                    )


**REPLY IN SUPPORT OF DEFENDANT NORTHERN STAMPING, INC.'S
MOTION FOR STAY**

# TABLE OF CONTENTS

**Page**

I.      **INTRODUCTION**................................................................................................1

II.     **ARGUMENT**...................................................................................................2

     A.     Horizon Failed To Identify Any *Undue* Prejudice From A Stay ............................2

     B.     Horizon Ignores The Overwhelming Simplification Of Issues In This Case ..........6

     C.     Horizon Cannot Deny This Case Is Still In The Early Stages ................................9

     D.     This Court Has Flatly Rejected Horizon's Assertion That The Motion For Stay is Premature ................................................................................................10

     E.     Horizon Cannot Show That NSI Has Acted With An Improper Dilatory Motive .............................................................................................................12

III.    **CONCLUSION** ...........................................................................................15

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Pages**

*Abcellera Biologics Inc. v. Berkeley Lights, Inc.*,
    No. 5:20-cv-08624 (N.D. Cal. Aug. 26, 2021) ................................................................. 10

*Allied Erecting and Dismantling Co., Inc. v. Genesis Equip. and Mfg., Inc.*,
    No. 4:08-cv-00589, 2010 WL 3239001 (N.D. Ohio Aug. 16, 2010)................................. 3

*Automated Packaging Sys., Inc. v. Free-Flow Packaging Int'l, Inc.*,
    No. 5:14-cv-02022, 2016 WL 9782345 (N.D. Ohio Apr. 15, 2016) .............. 1, 3, 4, 11, 12

*Blatchford Products, Ltd., v. Freedom Innovations, LLC*,
    No. 1:14-cv-529, 2015 WL 13102004 (S.D. Ohio Sep. 29, 2015) ................................. 4, 8

*Cequent Performance Products, Inc. v. Hopkins Manufacturing Corp.*,
    No. 2:13-cv-15293, 2015 WL 1510671 (E.D. Mich. Apr. 1, 2015) ........................ 5, 7, 14

*Datatrak Int'l, Inc. v. Medidata Solutions, Inc.*,
    No. 1:11-cv-00458 (N.D. Ohio Dec. 16, 2011) .................................................................. 4

*Jump Rope Sys., LLC v. Coulter Ventures, LLC*,
    No. 2:18-cv-00731 (S.D. Ohio May 7, 2019) ........................................................ 3, 12, 15

*Kirsch Research and Dev., LLC v. Owens Corning Roofing & Asphalt, LLC*,
    No. 5:20-cv-00901 (N.D. Ohio Apr. 1, 2021) .................................................................... 5

*Lund Motion Prods., Inc. v. T-Max Hangzhou Tech. Co., Ltd.*,
    No. 8:17-cv-01914, 2019 WL 116784 (C.D. Cal. Jan. 2, 2019)........................................ 5

*Masimo Corp. v. Apple Inc.*,
    No. 8:20-cv-00048, 2020 WL 6653652 (C.D. Cal. Oct. 13, 2020) ................................. 10

*Masimo Corp. v. Wireless*,
    No. 3:19-cv-01100, 2021 WL 321481 (S.D. Cal. Feb. 1, 2021)....................................... 14

*Networks, Inc. v. Advanced Micro Devices, Inc.*,
    No. 2:08-cv-00184, 2009 WL 357902 (W.D. Wash. Feb. 9, 2009) .................................. 3

*NST Global, LLC v. SIG Sauer Inc.*,
    No. 1:19-cv-00792, 2020 WL 1429643 (D.N.H. Mar. 24, 2020)...................................... 4

*Ocean Semiconductor LLC v. Analog Devices, Inc.*,
    No. 1:20-cv-12310 (D. Mass. Sep. 20, 2021) .................................................................. 10

*Pragmatus Telecom, LLC v. Netgear, Inc.*,
No. 4:12-cv-06198, 2013 WL 2051636 (N.D. Cal. May 14, 2013)...................................... 1

*Procter & Gamble Co. v. CAO Group, Inc.*,
No. 1:13-cv-337, 2014 WL 3573597 (S.D. Ohio Jul. 21, 2014) ................................... 3, 6

*Procter & Gamble Company v. Conopco, Inc.*,
No. 1:13-cv-00732, 2014 WL 12656915, (S.D. Ohio Apr. 23, 2014)...................... 1, 7, 14

*Putco, Inc. v. Carjamz Com Inc.*,
No. 3:20-cv-50109 (N.D. Ill. Mar. 2, 2021) ..................................................... 11

*Service Solutions U.S. LLC v. Autel. US Inc.*,
No. 4:13-cv-10534, 2015 WL 401009 (E.D. Mich. Jan. 28, 2015) ................................... 7

*SightSound Technologies, LLC v. Apple Inc.*,
809 F.3d 1307, 1316 (Fed. Cir. 2015)............................................................. 7

*SRC Labs, LLC v. Microsoft Corp.*,
No. 2:18-cv-00321, 2018 WL 6065635 (W.D. Wash. Nov. 20, 2018)............................. 3

*Targus International LLC v. Group III International, Inc.*,
No. 1:20-cv-21435, 2021 WL 542675 (S.D. Fla. Jan. 8, 2021)........................................ 11

*The NOCO Company, Inc. v. Shenzhen ChangXinYang Technology Co., Ltd.*,
No. 1:17-cv-02209 (N.D. Ohio Nov. 24, 2020)...................................................... 3

*VARTA Microbattery GmbH v. GN Audio A/S et al.*,
No. 1:21-cv-00134 (D. Del. Jun. 1, 2021) ....................................................... 11

*VirtualAgility Inc. v. Salesforce.com, Inc.*,
759 F.3d 1307, 1319 (Fed. Cir. 2014)............................................................. 5

*Wi-LAN Inc. v. Huizhou TCL Mobile Communication Co. Ltd.*,
No. 8:19-cv-00870, 2020 WL 6193311 (C.D. Cal. Oct. 15, 2020) ................................. 11

*Wonderland Nursery Goods Co., Ltd. v. Baby Trend, Inc.*,
No. 5:14-cv-01153, 2015 WL 1809309 (C.D. Cal. Apr. 20, 2015)................................. 14

## **Other Authorities**

35 U.S.C. § 315(b) ............................................................................... 14

## I.     INTRODUCTION

NSI filed an IPR petition and a motion to stay to greatly reduce the overall cost and complexity of this case and to prevent potentially inconsistent results between this Court and the Patent Trial and Appeal Board.   This benefits NSI, the Court, and even Horizon.

Indeed, because the stay factors heavily favor a stay under the circumstances of this case, Horizon's opposition largely ignores them.  Instead, Horizon primarily relies on two arguments: first, that the motion is premature before institution of the IPR, and second, that because only one of the two asserted patents in this case is subject to the IPR petition, there can be no simplification of issues, and the entire case should proceed.  Both arguments fail.

First, as this Court has already held, the fact that the PTAB has not yet issued an institution decision does not make the motion premature, nor is that fact somehow dispositive. *Automated Packaging Sys., Inc. v. Free-Flow Packaging Int'l, Inc.*, No. 5:14-cv-02022, 2016 WL 9782345, at *4 (N.D. Ohio Apr. 15, 2016) (concluding the "motion to stay is not premature and the Court has discretion to stay a case before the PTAB institutes a petition for IPR."). Instead, this Court and others—contrary to what Horizon argues—routinely grant stays even before institution.

Second, "a stay request is not contingent upon the reexamination proceeding being coterminous and resolving every claim and issue in this action. Rather, the salient question is whether the reexamination will aid the Court or otherwise streamline the litigation." *Procter & Gamble Company v. Conopco, Inc.*, No. 1:13-cv-00732, 2014 WL 12656915, at *7 (S.D. Ohio Apr. 23, 2014) (quoting *Pragmatus Telecom, LLC v. Netgear, Inc.*, No. 4:12-cv-06198, 2013 WL 2051636, at *2 (N.D. Cal. May 14, 2013)).

Here, there is obvious and overwhelming evidence that the IPR will simplify issues in this case as to *both* asserted patents, and that a stay will avoid otherwise duplicative and wasteful

litigation in this Court.  The patents-in-suit are virtually identical—a fact that Horizon does not

dispute.  Because of that fact, NSI agreed that the estoppel statute will apply equally to ***both***

patents, thereby simplifying any invalidity issues in this case.  Issues concerning claim

construction and infringement would also be simplified.

There is no prejudice to Horizon, and despite Horizon's claim of "direct competition"

with NSI, it offers no argument or evidence that monetary damages cannot suffice.  Horizon's

two-year delay in filing suit after knowing of its claim contradicts any claim of competitive

injury that cannot be remedied with monetary damages.  And finally, this case is undeniably in

its early stages, with fact discovery still open, expert discovery and dispositive motions all yet to

come.  No trial date has been set.  The Court has not held a claim construction hearing or issued

a claim construction order.  Horizon argues that NSI has unfairly delayed depositions, and that

this case otherwise would be further along.  NSI has not, but, in any event, even if all the

depositions Horizon says should have gone forward had already occurred, that would not have

tipped the scales when compared to the massive amount of litigation activity ahead.  This Court

should enter a stay to avoid wasteful and costly duplication of litigation efforts.

## II.     ARGUMENT

### A.     Horizon Failed To Identify Any *Undue* Prejudice from A Stay.

Although the majority of the arguments in Horizon's opposition brief are grouped under

the "prejudice" section, Horizon's prejudice argument boils down to just two points, as discussed

below.  Neither suffices.

***First***, Horizon argues that it "will be unduly prejudiced by losing the right to proceed on

the ['050] patent for which NSI affirmatively chose not to seek an IPR."  Opp. at 3.  This plainly

misunderstands the procedural impact of a stay.  Horizon will not lose the right to proceed on the

'050 patent at all; it can do so once the IPR on the '585 patent concludes and the stay is lifted.

2

Thus, the only "prejudice" Horizon is alleging is *delay*, but as this Court has held, "delay in itself is not enough to deny a stay, otherwise few if any patent cases would be stayed pending reexamination." *Automated Packaging*, 2016 WL 9782345, at *4; *SRC Labs, LLC v. Microsoft Corp.*, No. 2:18-cv-00321, 2018 WL 6065635, at *4 (W.D. Wash. Nov. 20, 2018) ("[M]ere delay does not demonstrate undue prejudice.") (quoting *Implicit Networks, Inc. v. Advanced Micro Devices, Inc.*, No. 2:08-cv-00184, 2009 WL 357902, at *3 (W.D. Wash. Feb. 9, 2009)); *The NOCO Company, Inc. v. Shenzhen ChangXinYang Technology Co., Ltd.*, No. 1:17-cv-02209, ECF Dkt. #62 at *5-6 (N.D. Ohio Nov. 24, 2020) (same); *Allied Erecting and Dismantling Co., Inc. v. Genesis Equip. and Mfg., Inc.*, No. 4:08-cv-00589, 2010 WL 3239001, at *2 (N.D. Ohio Aug. 16, 2010) (same).  Importantly, Horizon fails to identify any prejudice supposedly associated with the delay, nor is there any.

**Second**, Horizon argues that it will suffer competitive harm from a stay because "NSI and Horizon are direct competitors."  Opp. at 12.  But this bare assertion is not enough.  Most importantly, even if the parties are competitors, Horizon "does not address how monetary compensation would be inadequate."  *Jump Rope Sys., LLC v. Coulter Ventures, LLC*, No. 2:18-cv-00731, ECF at *3 (S.D. Ohio May 7, 2019) (granting stay pending petitions for IPR).  Absent that, "any potential prejudice against [Horizon] does not outweigh the benefits of a stay."  *Id.*; *Procter & Gamble Co. v. CAO Group, Inc.*, No. 1:13-cv-337, 2014 WL 3573597, at *1 (S.D. Ohio Jul. 21, 2014) ("Here, even if Plaintiff is prejudiced, the Court is not persuaded that any potential loss could not be partially, if not fully, mitigated by monetary damages.").  Put simply, Horizon "has failed to demonstrate how this case presents circumstances that are different than many other patent infringement cases, even if Plaintiff and Defendant are, in fact, direct competitors."  *Automated Packaging*, 2016 WL 9782345, at *4.  In any event, "this Court has

granted stays in patent infringement cases, even when the parties are direct competitors." *Id.* (citing *Datatrak Int'l, Inc. v. Medidata Solutions, Inc.*, No. 1:11-cv-00458, ECF Dkt. #36 at *7-8 (N.D. Ohio Dec. 16, 2011)).

Not only did Horizon identify no reason monetary damages are somehow insufficient to cover a loss, but it also did not even address NSI's argument that the parties do not actually compete for sales.  NSI sells the accused products to GM; Horizon sells its products to Ford. Even before NSI began selling to GM, Horizon had its chance, but GM declined to do business with Horizon and went elsewhere, a fact that Horizon admits in its Complaint.  ECF 1 at ¶18. Indeed, even if GM had not chosen NSI, there is no evidence that it would have gone back to Horizon, and plenty of reason to believe it would have gone to another supplier altogether. Horizon's opposition ignores this.

More importantly, Horizon's own actions belie its newfound claim of competitive harm, or that any alleged damage cannot be remedied by monetary relief.  "[Horizon] has not moved for a preliminary injunction to halt [NSI's] alleged infringement of its patents," which "weighs in favor of finding that [Horizon] will not be unduly prejudiced by a stay." *Blatchford Products, Ltd., v. Freedom Innovations, LLC*, No. 1:14-cv-529, 2015 WL 13102004, at *2 (S.D. Ohio Sep. 29, 2015).  While the failure to seek such relief is not necessarily fatal, "it is evidence of how serious [Horizon] takes [its] concerns" of undue prejudice. *NST Global, LLC v. SIG Sauer Inc.*, No. 1:19-cv-00792, 2020 WL 1429643, at *5 (D.N.H. Mar. 24, 2020) (granting a stay, and finding, "[a]lthough the parties are direct competitors, I do not find that this factor weighs against a stay to such a degree that it outweighs the other two factors," and noting that plaintiff "did not request a preliminary injunction in this case.").

Further evidence undermining Horizon's claim of competitive harm is Horizon's over-

two-year delay in filing suit after first notifying NSI of its claim, and then its four-month delay in

serving the complaint.  Courts have repeatedly held that a patentee's delay in bringing suit as

powerful evidence against the patentee's claim of alleged competitive harm.  *See, e.g.,*

*VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1319 (Fed. Cir. 2014) (undue

prejudice not found where plaintiff waited after the patent issued before bringing suit); *Lund*

*Motion Prods., Inc. v. T-Max Hangzhou Tech. Co., Ltd.*, No. 8:17-cv-01914, 2019 WL 116784,

at *2 (C.D. Cal. Jan. 2, 2019) ("Plaintiff's own delay in bringing the instant action renders its

arguments of undue prejudice unpersuasive.").  This comes as no surprise to Horizon; in a prior

action brought by Horizon's predecessor-in-interest, Cequent, the court found an identical claim

of prejudice to be unsupported and contradicted by Cequent's "delay in filing th[e] action."

*Cequent Performance Products, Inc. v. Hopkins Manufacturing Corp.*, No. 2:13-cv-15293, 2015

WL 1510671, at *3 (E.D. Mich. Apr. 1, 2015) (granting a stay in view of an IPR despite

Cequent's claim that it was a "direct competitor" of the defendant).  Horizon argues that courts

do not consider a patentee's delay in filing suit, but that assertion ignores the directly-on-point

precedent on page 10 of NSI's opening brief, including *Kirsch Research*, a case in which this

Court just this year expressly relied on a patentee's delay in filing suit in its decision to stay the

case in view of an IPR.  ECF 52 at *10; *Kirsch Research and Dev., LLC v. Owens Corning*

*Roofing & Asphalt, LLC*, No. 5:20-cv-00901, ECF 31 at *2 (N.D. Ohio Apr. 1, 2021) (finding "a

stay will not unduly prejudice or disadvantage plaintiff" because it "first contacted [defendant]

about the '482 patent in 2016, but then waited nearly three years before filing this case.").  This

makes obvious sense.  A business that is being harmed in a way that cannot be remedied by

monetary damages does not wait two years after learning of the alleged harm to bring suit, let

alone another four months after bringing suit to even serve the defendant.  Nor would it forego

its right to address such harm by seeking preliminary injunctive relief to stop it. Horizon's own actions show that it faces no undue prejudice from a stay.

Horizon tries to justify these long, unexplained delays, by claiming it was "attempt[ing] to negotiate a good faith settlement without litigation." Opp. at 7. For this, Horizon cites a single letter demanding an outsized payment and threatening litigation (Opp. Ex. E)—hardly evidence of a two-year negotiation. If anything, the fact that Horizon believes that a payment of money (as its CEO demanded in Opp. Ex. E) can compensate it for the alleged infringement only further contradicts its claim of undue prejudice.

Finally, Horizon argues that the Court should consider the "willfulness" of NSI's supposed infringement in considering whether to grant a stay. But Horizon's *allegations* remain just that: unfounded, unproven allegations. *See CAO Group*, 2014 WL 3573597, at *1 ("If the Court accepts Plaintiff's argument, the Court must presume that Defendant does, in fact, infringe the Patents-in-Suit. However, infringement has yet to be determined by this Court."). If it were enough to avoid a stay with a mere pleading of willful infringement, no patent case would ever be stayed. To be sure, NSI vehemently denies Horizon's unfounded allegations of supposed willful infringement.

### B. Horizon Ignores The Overwhelming Simplification of Issues in This Case.

Regarding simplification, Horizon makes only a single argument: that there can be *no* simplification whatsoever "where the movant seeks a stay based on a review of a fraction of the patent claims asserted in th[e] case." Opp. at 13. Thus, according to Horizon, because NSI only sought IPR review of one of the two patents at issue in this case, "a stay would not simplify the issues" because the '050 patent cannot be invalidated at the Patent Office.

But the bright-line rule that Horizon purports to advance does not exist. On the contrary:

The proper focus of this inquiry is on what issues will be streamlined or narrowed,

> and ***there is no requirement that an IPR proceeding must address all issues
> relevant to the litigation in order to warrant a stay***. "[A] stay request is not
> contingent upon the reexamination proceeding being coterminous and resolving
> every claim and issue in this action. Rather, ***the salient question is whether the
> reexamination will aid the Court or otherwise streamline the litigation***."

*Conopco*, 2014 WL 12656915, at *7 (emphasis added, citations omitted) (granting stay in view

of an IPR on a subset of the asserted claims of two out of three asserted patents in suit).  Horizon

knows this full well.  In granting a stay over the objections of Horizon's predecessor-in-interest

(Cequent), the court made clear:  "an IPR review need not dispose of a case completely to

simplify the issues of a case."  *Cequent*, 2015 WL 1510671, at *2 (quoting *Service Solutions

U.S. LLC v. Autel. US Inc.,* No. 4:13-cv-10534, 2015 WL 401009, *3 (E.D. Mich. Jan. 28,

2015) (granting motion to stay pending IPR)).

Horizon ignores "the salient question" of whether the IPR "will aid the Court or

otherwise streamline the litigation."  *Conopco*, 2014 WL 12656915, at *7.  But there can be no

serious dispute that the IPR will definitively resolve certain issues on the validity of the '585

patent:  either the PTAB invalidates the asserted claims, leaving nothing left for this Court to do

with them, or the PTAB upholds those claims and NSI is estopped from advancing the same

invalidity arguments in this Court.  Either way, there is undeniable simplification.  Moreover, as

to the '050 patent—which shares the same specification as the '585 patent—at the very least, the

PTAB's expertise and guidance on the validity of the '585 patent will inform the same inquiry on

the '050 patent, and this Court will benefit from that guidance.  *See SightSound Technologies,

LLC v. Apple Inc.*, 809 F.3d 1307, 1316 (Fed. Cir. 2015) ("Where multiple patents derive from

the same parent application and share many common terms, we must interpret the claims

consistently across all asserted patents.") (internal citations omitted).

NSI has also gone above and beyond to ensure that simplification necessarily results from

a stay by agreeing to a broader estoppel than mandated by law.  Specifically, in the event of a

stay, and if NSI is unsuccessful in invalidating the '585 patent claims, NSI would agree to be estopped on the '050 patent in the same manner that it is estopped on the '585 patent.  That would ensure that the invalidity challenges being heard by the Patent Office will not be heard again by this Court as to ***both*** the '585 and '050 patents (except where NSI succeeds on the '585 patent, it would obviously seek to invalidate the '050 patent on the exact same grounds if Horizon continued to pursue its infringement claim).

Yet Horizon never addressed this simplification.  It did not address that this Court has already found, as a general matter, that a stay in view of an IPR, no matter what happens in the IPR, will "[u]ndoubtedly" result in "the litigation [being] simplified or streamlined following reexamination."  *NOCO*, No. 1:17-cv-02209, ECF Dkt. #62 at *5-6.

Finally, Horizon has no answer to the indisputable similarity between the asserted claims of the '585 and '050 patents.  *See, e.g.,* Ex. A, Apr. 11, 2019 Office Action at pp. 2-3 (patent examiner stating that the two patents are "***not patentably distinct***") (emphasis added).  Horizon does not deny: (i) that the '585 claims are a narrower subset of the '050 claims, (ii) that both patents are being asserted against the exact same accused products in an almost identical way, and (iii) that the '585 patent issued from a continuation of the '050 patent.  In *Blatchford Products, Ltd. v. Freedom Innovations, LLC*, the Court found similar circumstances weighed heavily in favor of a stay.  2015 WL 13102004.  There, the patent owner opposed a stay, arguing that the vast majority of the claims of one of the two patents-in-suit were not subject to IPR review, and that therefore no simplification of issues would occur.  The Court disagreed.  It focused on the similarity of the claim terms in both patents, and "the fact that the patents-in-suit are from the same family," to conclude that "the entire *inter partes* review process will simplify the issues presented in this case," even despite "the fact that the PTAB is not reviewing all of the

claims of the [second asserted] Patent."  *Id.* at *2-3.

So too here.  The simplification from the '585 patent alone is enough to warrant a stay of the case.  But the fact that the '585 and '050 patents are so highly similar only further justifies a stay.

### C.   Horizon Cannot Deny This Case Is Still In The Early Stages.

In considering whether to grant a stay, courts consider the stage of the litigation ***at the time of the stay request***.  But Horizon ignores the relevant inquiry, instead choosing to focus on the ***anticipated*** stage of the litigation ***in the future*** at a time when the PTAB disposes of the IPR.  For example, Horizon argues:  "***By the time the Court gets word of an IPR institution decision*** on the '585 patent in February 2022, the parties will have completed claim construction fact discovery and will have exchanged expert reports."  Opp. at 10 (emphasis added); *id.* at 15 ("the parties…will be well on their way to trial by the time that the USPTO makes a decision on whether to institute").  Elsewhere, Horizon says:  "The parties will have completed claim construction, fact discovery, and will have this entire suit resolved before final resolution of the IPR."  *Id.* at 14.

But Horizon's arguments badly misapply the relevant inquiry.  NSI is seeking a stay of the case now, before the parties and Court have expended considerable resources on a claim construction hearing, much of fact discovery, all of expert discovery, dispositive motion practice, and trial.  If a stay is entered, none of that activity will happen before the PTAB can issue a decision on NSI's IPR petition and ultimately on the patentability of the '585 patent.

Horizon points to no case that says a Court should look at where the litigation may be in the future in the absence of a stay when considering whether one should be entered.  To the contrary, in every single case applying the traditional stay factors, the courts look at how far the litigation has progressed as of the time the Court is deciding the stay motion.  NSI seeks a stay of

the case now. Where the case may stand when the PTAB decides whether to institute, or when the PTAB issues a final written decision on the '585 patent, is legally and logically irrelevant.

**D.    This Court Has Flatly Rejected Horizon's Assertion That The Motion for Stay is Premature.**

Ironically, after spending much of its brief accusing NSI of supposed strategic "delay," Horizon turns around and actually argues that NSI filed its stay motion *too quickly*.  Horizon contends that the stay motion is *premature* because the PTAB has yet to issue an institution decision, either granting or denying NSI's petition for IPR review of the '585 patent.  Horizon contends that the law compels such a result:  "Nearly all U.S. courts have denied a stay when defendant has merely filed a petition."  Opp. at 1; *id.* at 8 ("legions of Courts all over the country routinely deny stays based merely on a petition").

Horizon severely mischaracterizes the state of the law.  When presented with the same argument, the Northern District of California concluded, based on its own survey of recent case law, that the exact opposite was true:  "Although the PTAB has not yet instituted the IPR[], courts routinely stay lawsuits pending institution decisions."  *Abcellera Biologics Inc. v. Berkeley Lights, Inc.*, No. 5:20-cv-08624, ECF Dkt. #103 at *2 (N.D. Cal. Aug. 26, 2021).  This full quote was in NSI's opening brief, but Horizon ignored it, choosing not to explain how its position somehow squares with what the *Abcellera* Court concluded.

Even a cursory review of recent stay decisions from courts across the country contradicts Horizon.  *See, e.g.*, *Masimo Corp. v. Apple Inc.*, No. 8:20-cv-00048, 2020 WL 6653652 (C.D. Cal. Oct. 13, 2020) (granting motion to stay prior to institution decision); *Ocean Semiconductor LLC v. Analog Devices, Inc.*, No. 1:20-cv-12310, ECF Dkt. #37 at *1 (D. Mass. Sep. 20, 2021) (same); *VARTA Microbattery GmbH v. GN Audio A/S et al.*, No. 1:21-cv-00134 (D. Del. Jun. 1, 2021) (oral order granting stay based on four pending IPRs and two to-be-filed IPR petitions);

10

*Putco, Inc. v. Carjamz Com Inc.*, No. 3:20-cv-50109, ECF Dkt. #70 (N.D. Ill. Mar. 2, 2021) (granting motion to stay prior to institution decision); *Targus International LLC v. Group III International, Inc.*, No. 1:20-cv-21435, 2021 WL 542675, at *1 (S.D. Fla. Jan. 8, 2021) ("deny[ing] stays when they are sought *before* the PTAB has decided to institute review…is not the bright-line rule Targus makes it out to be.") (original emphasis); *Wi-LAN Inc. v. Huizhou TCL Mobile Communication Co. Ltd.*, No. 8:19-cv-00870, 2020 WL 6193311 (C.D. Cal. Oct. 15, 2020) (after court granted stay before IPR institution determination, declining to lift stay after petitions for IPR were denied because of pending ex parte reexamination requests).

Nor did Horizon distinguish *Automated Packaging*, also cited and discussed in NSI's opening brief, in which this Court rejected the very same argument Horizon is now advancing. 2016 WL 9782345.  The Court did not agree that the case for a stay prior to institution was "weak," but merely that "the case for a stay becomes stronger once post-grant relief has been instituted." *Id.* at *3.  In doing so, the Court declined to follow precedent from the Eastern District of Texas's view on how much weight to afford the fact that the IPR has not yet been instituted. *Id.*  The Court concluded that it had the "discretion to stay a case before the PTAB institutes a petition for IPR," and that the "motion to stay [was] not premature." *Id.* at *4.  The Court then considered the circumstances of the case under the traditional stay factors, concluding that a stay was appropriate where, as here, the IPR had not yet been instituted by the PTAB. *Id.* at *7.

*Automated Packaging* also addresses why Horizon's complaint of delay is overstated: "the IPR process is mandated to conclude within one year if the petitions are instituted, and [] if the petition[] [is] not instituted, the stay will be for a much shorter length of time." *Id.* at *5.

Ultimately, as *Automated Packaging* demonstrates, and contrary to Horizon's position,

11

institution is not a pre-requisite to a stay, and the traditional stay factors must be analyzed on the facts of each case.  *See Jump Rope Systems*, No. 2:18-cv-00731, ECF Dkt. #33 at *4 ("The issue comes down to a common-sense analysis of the circumstances of each case.").  Here, as explained above, each stay factor weighs heavily in favor of staying this case now in view of the IPR.

> **E.     Horizon Cannot Show That NSI Has Acted With An Improper Dilatory Motive.**

Because the traditional factors overwhelmingly favor a stay in this case, Horizon focuses much of its opposition on contorting the record and claiming that NSI has somehow acted in bad faith.  Horizon asserts:  (i) that NSI "missed" the deadline to file an IPR petition on the '050 patent, and then filed the IPR petition on the '585 patent on "the last possible day"; and (ii) that NSI "played a seriously improper tactical game of delay to avoid scheduling depositions."  Opp. at 5, 12.  Horizon contends that this is evidence of supposed dilatory improper motive.

But the facts and evidence don't back up Horizon's unfounded accusations.  Incredibly, Horizon makes no mention of the ***joint*** request to stay this case for three months while the parties pursued settlement through mediation.  ECF 39.  That joint action to pause the case was predicated on the agreed-upon notion that "[a] stay will facilitate mediation and allow the parties to direct their resources towards settlement without the adversity, distraction, and costs of active litigation." *Id.* at 1-2.

Although settlement discussions were ultimately unsuccessful, NSI at all times engaged in those discussions in good faith.  That also explains the timing of NSI's IPR filing.  NSI did not, as Horizon now alleges, game the timing of its IPR in order to delay the case.  Nor was the timing of NSI's IPR filing designed to prejudice Horizon in any other way.  Indeed, as set forth

above, there is no prejudice to Horizon, and Horizon has identified none.[1]

Rather, as of the joint request to stay the case to allow for settlement discussions, NSI in cooperation with Horizon put all of its efforts into settlement. Both parties, and NSI in particular, hoped that settlement could be achieved and that they could avoid the expense and burden of unnecessary litigation activity. It was not until June 17, 2021 that the parties reported that their discussions did not result in settlement and that the case should be restarted. ECF 44. By then the deadline to file an IPR against the '050 patent had passed, and the deadline to file an IPR against the '585 patent was only nine weeks away. At that point NSI began preparing the IPR petition in earnest and filed it *within the statutory period*. This is not bad faith or a dilatory motive.[2] This is NSI engaging in good faith efforts to settle the case. In fact, NSI sought out settlement to its own detriment, choosing to forego the preparation and filing of an IPR against the '050 patent in the hopes that settlement would make such action unnecessary.

In any event, NSI's IPR petition was *timely filed* under a statutory regime specifically designed to prevent improper tactical delays. As one Court explained:

> Through IPR, Congress sought "to create a timely, cost-effective alternative to litigation" and to establish "a more efficient and streamlined patent system that will improve patent quality and limit unnecessary and counterproductive litigation costs." The goals of IPR are to minimize duplication of efforts between district courts and the PTO when a party opposes a patent's validity and to reduce the

---

[1] Horizon alleges that "NSI is already using district court claim construction positions in IPR that NSI's delay caused Horizon to provide in the district court." Opp. at 7, n.1. However, in the IPR, Horizon did not use NSI's claim construction in an offensive manner; rather, because it is true in patent law that "what infringes if after invalidates if before," NSI simply applied Horizon's proposed claim construction in its IPR to demonstrate that if Horizon's interpretation of its patents is correct, then its patents are invalid. There is no tactical advantage.

[2] The deadline to file an IPR petition for the '585 patent was only a little over two months past the deadline to file an IPR petition for the '050 patent. Horizon fails to explain how this timeframe—which is less than the duration of the stay Horizon previously agreed to for settlement negotiations (*see* ECF 39)—is somehow a dilatory tactic or otherwise prejudices Horizon in any way.

> amount of time the PTO spends on reexaminations.

> To ensure that IPR is not employed strategically to delay litigation in court, Congress required that a defendant in an infringement lawsuit petition for IPR within one year of being served with a complaint in court.

*Conopco*, 2014 WL 12656915, at *1. (internal citations omitted). In other words, a ***timely-filed*** IPR petition is not and cannot be a strategic tactic designed to delay litigation in court. *Id.*; *Masimo Corp. v. Wireless*, No. 3:19-cv-01100, 2021 WL 321481, at *4 (S.D. Cal. Feb. 1, 2021) ("Delay alone [within the statutory deadline] does not usually constitute undue prejudice, because parties having protection under the patent statutory framework may not complain of the rights afforded to others by that same statutory framework.") (quotation omitted); *Wonderland Nursery Goods Co., Ltd. v. Baby Trend, Inc.*, No. 5:14-cv-01153, 2015 WL 1809309, at *2 (C.D. Cal. Apr. 20, 2015) (citing 35 U.S.C. § 315(b)) ("The statute also seeks to limit the abuse of *inter partes* review as a tool for tactical delay by requiring that a defendant petition for review within one year after being served with the complaint. This one year limit sets a ceiling on the PTO's ability to commence *inter partes* review where there is ongoing litigation.").

Indeed, Horizon continues to follow the same unsuccessful playbook it used in opposing a stay in the *Cequent* case. *See* 2015 WL 1510671. There, Cequent argued that the defendant "sought a tactical advantage when it filed the IPRs on the last possible day under 35 U.S.C. § 315(b)." *Id.* at *3. But the Court found no such "tactical disadvantage to Cequent," disagreed that there was anything "supposedly suspicious" with the "timing of the IPRs," and concluded that "Cequent ha[d] failed to establish a dilatory motive on the part of" the defendant "to justify denying the Motion to Stay." *Id.* The same is true here.

Horizon's second claim—that NSI purposefully delayed and avoided discovery—is unsupported, and a mere distraction. Discovery is still open. NSI is engaging in good faith efforts to move discovery forward in an orderly fashion. Horizon's attempt to cast shade on

14

ordinary negotiations over discovery and scheduling of depositions over the short time between the lifting of the stay for settlement discussions and the filing of the instant motion is hardly worthy of reply.

Suffice it to say the record speaks for itself.  Horizon never felt the need to file a discovery motion, and the Court has never made a finding that NSI has engaged in any impropriety during discovery.  The only discovery motion filed was by *NSI*—a request for a protective order, which this Court granted, when Horizon demanded that a third-party witness sit and appear at a time when it knew the witness was unavailable.  ECF 53.

More importantly, as set forth in NSI's opening brief, even if every noticed deposition had already been taken, that would have next-to-no bearing on the stay inquiry.  Regardless of any depositions, key activity remains ahead:  the Court has yet to hold a claim construction hearing; expert discovery has not begun; dispositive motion practice has not begun; a trial date has not been scheduled.  *See Jump Rope Systems*, No. 2:18-cv-00731, ECF 33 at *2 ("Regardless of whether the parties have engaged in some discovery, the Court finds this factor still weighs in favor of a stay because more discovery is still necessary, and no trial date has been established.") Courts routinely grant motions to stay in view of an IPR at similar and even much later points in a case.  ECF 52 (NSI's opening brief in support of stay) at 5 (listing additional supporting authority).

## III.    CONCLUSION

This Court should enter a stay pending resolution of the validity of the asserted claims of the '585 patent by the PTAB in IPR2021-01411.

Dated:  September 29, 2021       Respectfully submitted,

By:  */s/ Jay R. Campbell*

    Ron N. Sklar
    Dennis J. Abdelnour
    **HONIGMAN LLP**
    155 North Wacker Drive, Suite 3100
    Chicago, IL 60606
    (312) 701-9300
    rsklar@honigman.com
    dabdelnour@honigman.com

    Jay R. Campbell (0041293)
    David A. Bernstein (0093955)
    **TUCKER ELLIS LLP**
    950 Main Avenue Suite 1100
    Cleveland, OH 44113
    (216) 592-5000
    jay.campbell@tuckerellis.com
    david.bernstein@tuckerellis.com

    *Attorneys for Defendant Northern Stamping, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that on September 29, 2021, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system.

*/s/ Jay R. Campbell*