## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| HORIZON GLOBAL AMERICAS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:20-cv-00310-PAB |
| | ) | |
| NORTHERN STAMPING, INC., | ) | Honorable Judge Pamela A. Barker |
| | ) | |
| Defendant. | ) | |

## NORTHERN STAMPING, INC.'S STATUS REPORT ON THE PTAB'S FINAL DECISION FINDING ALL CLAIMS UNPATENTABLE

On March 11, 2022, the Court directed Defendant NSI "to notify the Court within ten (10) days of the issuance of the PTAB's decision" on the inter partes review of Horizon's U.S. Patent No. 10,589,585.  On February 9, 2023, the Patent Trial and Appeal Board (PTAB) issued a Final Written Decision (Final Decision) judging all challenged claims of the '585 patent *invalid*.  That Final Decision is attached as Exhibit 1.

The Final Decision has significant implications for this suit beyond the invalidation of the '585 Patent.  The only remaining patent-in-suit, the '050 Patent, is broader than the '585 Patent, and is necessarily invalid for the same reasons the PTAB invalidated the '585 Patent.  Further, in its pleadings and arguments before the PTAB, Horizon made representations *that directly contradict its representations to this Court*.  This raises serious concerns about Horizon's prosecution of this case from the outset and any continued prosecution of this suit.

1

I.      **The IPR Proceedings**

A.      **The PTAB found each of the Asserted Claims of the '585 Patent invalid on multiple grounds.**

NSI's IPR petition challenged claims 16-20 of the '585 Patent—all of the '585 Patent claims that Horizon asserted in this litigation (Asserted Claims).  In its Final Decision, the PTAB concluded that "claims 16-20 of the '585 patent are ***unpatentable***."   Final Decision, p. 47 (emphasis added).

The PTAB found the Asserted Claims unpatentable over the prior art on two grounds. Specifically, The PTAB found that combining the *Works* patent with patents to *Fandrich* and *Lindenman* rendered the claims obvious.  The PTAB also found that combining *Lindenman* with *Fandrich* and *Works* made the claims obvious and unpatentable. NSI relies on these same prior art references in this litigation.

Horizon did not dispute that these prior art patents disclose every element of the Asserted Claims.  It argued only that a skilled artisan would not have been motivated to combine these patents to disclose Horizon's claimed combination hitch.

The PTAB rejected Horizon's argument.  The PTAB found at least four independent grounds that would have motivated a person to combine the references to result in the Asserted Claims.  Final Decision, pp 19-23.  Notably, the named inventor of the '585 Patent admitted it was ***Ford's*** idea to combine these two hitch types into a single product, not Horizon's.  Final Decision at p. 21 (PTAB finding that "an inventor of the '585 patent admits that it was Ford's idea to have a hitch that combined both types of sockets.").  Accordingly, as the PTAB found, there was nothing inventive about Horizon's patent.

2

**B.**  **Contrary to Horizon's arguments to the Patent Office and to this Court, Horizon admitted in the IPR that the "Conception Drawings" used to remove the Ford patent as prior art do *not* include "receiving members."**

To convince the Patent Office to grant its patents-in-suit, Horizon provided the Patent Office with "Conception Drawings" that Horizon claimed show critical "receiving members." To avoid NSI's inequitable conduct claims, Horizon represented to this Court the same thing—that the Conception Drawings show receiving members.

Yet, in the IPR both the named inventor of the '585 Patent and Horizon were forced to admit that the Conception Drawings ***do not*** show these critical receiving members.

Apparently, the rigors of the IPR process exposed Horizon's lie before the Patent Office and this Court.

**1.** ***During prosecution of this patent family, Horizon repeatedly represented to the Patent Office that the Conception Drawings disclose receiving members.***

During the prosecution of this patent family, the Patent Office repeatedly rejected Horizon's patent applications based on patents owned by Ford.  Horizon overcame these rejections by submitting multiple sworn declarations from its alleged inventor, Eric Stanifer, claiming that "the drawings of Exhibit A demonstrate our conception of the claimed subject matter before" the Ford patent. *See* Stanifer Declaration at ¶ 4, ECF 18-1.  Horizon submitted the Conception Drawings below to prove its representation:



*See* ECF 37, p.3.  Based on Horizon's representations, the Patent Office granted Horizon's patents.

        **2.**     ***Horizon made these same representations that the Conception Drawings show the claimed invention, including the "receiving members," to this Court.***

NSI asserted in this litigation that Horizon committed inequitable conduct in wrongly representing to the Patent Office that Horizon conceived of the claimed invention before Ford. NSI argued that the Conception Drawings that Horizon submitted to the Patent Office as ***proof*** of conception before Ford, do ***not*** show the claimed "receiving members."

Horizon moved to dismiss NSI's inequitable conduct counterclaim calling NSI's claim "flawed beyond repair," "baseless," "false," and "unsupported."  ECF 37, pp. 1, 2.  In doing so, Horizon repeatedly represented to this Court that the Conception Drawings ***do*** show the claimed receiving members:

- "[T]he Conception Drawings ***do*** show the alleged missing receiving members and thus the Stanifer Declaration, on its face, is true."  ECF 37, p. 2 (emphasis in original).

- "[T]he hand-drawn Conception Drawings ***do*** show the allegedly 'missing' receiving members based on the four circles near each corner as shown by the [orange] arrows below:"

4



ECF 37, p. 3 (emphasis and arrows in original).

- "[I]t is **_impossible_** to argue with the fact that the drawings show the receiving member." ECF 37, p. 4 (emphasis added).

Horizon continued to emphasize its position and to attack the credibility of NSI's counsel.  Horizon claimed that the "only falsity" in this suit is in "**_NSI's misrepresentations_** to the Court that the receiving members are not found on the Conception Drawing when in fact they are."  ECF 37, p. 4, (emphasis added).  Horizon then threatened that "[i]f NSI continues to pursue this baseless and debunked theory, then Horizon will pursue sanctions."  ECF 37, p. 2, n.1.

### 3.     In the IPR, Horizon and its inventor admitted the Conception Drawings do not show receiving members or conception.

In the IPR, Horizon could not deny what it knew or should have known about the Conception Drawings all along—that they **_do not_** show the claimed receiving members.  Indeed, a named inventor of both the '050 and '585 Patents, and the declarant on both sworn declarations during prosecution, Eric Stanifer, readily conceded this fact.  During his deposition, Mr. Stanifer testified that the Conception Drawings do not show the receiving members:

> Q?  I mentioned receiving members a few minutes ago. Are the receiving members shown in this sketch [the Conception Drawings]?
>
> A.  No, they're not.
>
> Q?  Are pucks [another name for receiving members] shown in this sketch?
>
> A.   No, they are not.
>
> Q?  You mentioned the sort of integrated receiving members.  Are those shown here either?
>
> A.  No.

Stanifer Dep. Tr., pp. 32:24-33:8, objection omitted, attached as Exhibit 2.

And Horizon's counsel was forced to make the same admission to the PTAB:

> Evidence from both parties the Board already analyzed shows the May 2008 sketch does *not* contain the claimed receiving members.  Because the May 2008 sketch doesn't disclose each and every limitation in the patent claims at issue, it is not evidence of a conception as of that date.

Horizon Surreply, p. 14, (emphasis in original), attached as Exhibit 3.

In other words, Horizon admitted in the IPR that the sketches that *it* entitled "Conception Drawings" in its briefing to this Court do not show conception at all. And that is after representing to this Court the exact opposite: that "it is *impossible* to argue with the fact that the drawings show the receiving member." (ECF 37, p. 4, emphasis added).

## II.     Implications of the IPR

### A.     Horizon's infringement claims concerning the '585 Patent should be dismissed with prejudice.

The PTAB determined that the Asserted Claims of the '585 Patent are unpatentable and invalid.  Horizon's claims concerning the '585 Patent should be dismissed with prejudice.

### B.     Horizon should dismiss its claims concerning the '050 Patent.

Horizon has no legitimate basis to proceed with its infringement claims related to the '050 Patent.  The validity of the '050 and '585 Patents rise and fall together because the claims

of the '050 Patent are broader than the claims of the '585 patent.[1]

As the following table shows, if the '585 Patent claims are invalid, so too are the asserted

claims of the '050 Patent:

| **'050 patent claim 1** | **'585 patent claim 16** |
| --- | --- |
| 1. An underbed hitch mounting system comprising: | 16. A hitch mounting system comprising: |
| ***at least one*** tubular member having a cross-sectional shape a substantial portion of which is defined by an enclosed peripheral wall with a generally hollow section; | ***a pair of*** tubular members each having a cross-sectional shape a substantial portion of which is defined by an enclosed peripheral wall with a generally hollow section; |
| a central member attached to said at least one tubular member, said central member having ***a socket***; and | a mid rail attached to each of and between said pair of tubular members spacing said pair of tubular members apart, said mid rail having ***a socket capable of accepting a gooseneck hitch ball***; and |
| a pair of receiving members attached with said at least one tubular member, said receiving members configured to engage ***an accessory member***. | a pair of receiving members attached with each of said pair of tubular members, said receiving members configured to engage ***a leg of a fifth wheel hitch***. |

As this comparison makes clear, the '050 Patent is broader than the '585 Patent.  For

example, the '050 Patent only requires "at least one" tubular member, whereas the '585 Patent

requires "a pair."  A prior art reference that discloses "a pair" of tubular members necessarily

discloses "at least one" tubular member.  Likewise, a prior art reference that discloses a "socket

capable of accepting a gooseneck hitch ball" necessarily discloses "a socket."  And a prior art

reference that discloses "a leg of a fifth wheel hitch," a specific type of accessory member,

necessarily discloses an accessory member.

For the same reasons that the '585 Patent is invalid, so too are the asserted claims of the

'050 Patent.

---

[1] Because of this fact, NSI stipulated in its Motion to Stay Pending IPR that in the event the PTAB did not invalidate the Asserted Claims of the '585 Patent, NSI would be bound by the same estoppel requirements on the '050 Patent that would apply to the '585 Patent.  ECF 52 at 7.

C.     **Horizon's Contradictory Statements in the IPR Raise Serious Concerns Regarding the Prosecution of the Patents in Suit, Horizon's Filing of this Litigation, and its Litigation Conduct.**

Horizon stridently represented to this Court multiple times that it was "***impossible*** to argue with the fact that the drawings show the receiving members."  ECF 37, p. 4 (emphasis added).  Yet, in the IPR, the PTAB,[2] Mr. Stanifer,[3] and ***even Horizon itself***, all did the "impossible"—they took the position that the Conception Drawings ***do not*** disclose receiving members.

As it relates to Mr. Stanifer and Horizon, these admissions support a finding that Horizon obtained its patents through inequitable conduct (a claim Horizon moved to dismiss in-part based on its now admittedly false argument that the conception drawings ***do*** show receiving members).  In addition to this false representation, Mr. Stanifer testified during the IPR that "Ford Motor Company came to [Horizon] and said, we want to combine these [hitch types]."  Final Decision at p. 22 (brackets in original), Ex. 1.  Yet, when the Examiner identified the Ford prior art during prosecution, Mr. Stanifer was silent regarding Horizon's relationship with Ford, or that this combined system, ***which is disclosed in the Ford prior art Patent***, was Ford's idea in the first place.  Instead, he executed multiple sworn declarations, alleging his Conception Drawings disclosed things he now admits were not disclosed.

The IPR record also calls into question the conduct of Horizon's patent prosecution counsel.  The same firm that represents Horizon in this litigation and in the IPR, prosecuted these

---

[2] In its Institution Decision, the PTAB held that "[w]hile Figure 4 of the '585 patent depicts receiving members . . . it appears that the [Conception] sketch shows no such corresponding features.").  Decision Instituting IPR, p. 14, ECF 66-1.

[3] Discovery in IPRs is very limited.  NSI did not involve Mr. Stanifer in the IPR.  Instead, it was Horizon who approached Mr. Stanifer and again obtained a declaration from him in an effort to support its IPR position.

patents before the Patent Office.  Horizon's counsel's express admissions that the Conception Drawings are "not evidence of a conception as of [May 2008]," raises serious questions regarding prosecution counsels' decision to submit these declarations to the Patent Office during prosecution.

Beyond the implications for NSI's inequitable conduct counterclaim, Horizon's admissions in the IPR present serious concerns regarding Horizon's filing of this suit and its conduct in this litigation.  Horizon's counsel either knew, or should have known based on a reasonable investigation, that the Conception Drawings failed to show receiving members and that this combined hitch system was Ford's idea in the first place. All it had to do was to ask its alleged inventor (who has cooperated with Horizon as demonstrated in the IPR).

At the appropriate time, NSI intends to pursue fees under 35 U.S.C. § 285, 28 U.S.C. § 1927 and/or Fed. R. Civ. P. 11.

### III.    NSI's Proposal for Further Proceedings

The IPR without question changed the complexion of this suit.  The PTAB found that the Asserted Claims of the '585 patent—which are narrower in scope than the '050 patent—are invalid.  And Horizon admitted that its position that the Conception Drawings show receiving members—and its reason why NSI's inequitable conduct claim should be dismissed—was false. Indeed, Horizon's about-face, along with its admissions that the claimed hitch was **_Ford's_** idea, calls into question Horizon's basis for filing this suit in the first instance.

NSI should not have to wait under the cloud of this baseless litigation while Horizon determines how it will proceed.  NSI seeks a schedule that would promptly permit the Court to consider the validity of the '050 Patent for exactly the same reasons the PTAB found the '585

patent invalid.  NSI also intends to seek leave to amend its affirmative defenses and counterclaims to reassert its inequitable conduct defense and possibly add other counterclaims and defenses.

NSI respectfully requests a status conference to further address these issues with the Court.

Dated:  February 21, 2023            Respectfully submitted,

By:  /s/ Jay R. Campbell

Jay R. Campbell (0041293)
David A. Bernstein (0093955)
**TUCKER ELLIS LLP**
950 Main Avenue Suite 1100
Cleveland, OH 44113
(216) 592-5000
jay.campbell@tuckerellis.com
david.bernstein@tuckerellis.com

Ron N. Sklar
Dennis J. Abdelnour
**HONIGMAN LLP**
155 North Wacker Drive, Suite 3100
Chicago, IL 60606
(312) 701-9300
rsklar@honigman.com
dabdelnour@honigman.com

*Attorneys for Defendant Northern Stamping, Inc.*

10

## CERTIFICATE OF SERVICE

I hereby certify that on February 21, 2023 a copy of the foregoing *Notice of Appearance of Jay R. Campbell* was filed electronically.  Service of this filing will be made by operation of the Court's electronic filing system.

*/s/ Jay R. Campbell*

Jay R. Campbell

*Attorney for Defendant*

*Northern Stamping, Inc.*