UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| HORIZON GLOBAL AMERICAS INC., | ) CASE NO. 1:20-cv-00310-PAB |
| Plaintiff, | ) |
| | ) JUDGE PAMELA A. BAKER |
| v. | ) |
| | ) **NORTHERN STAMPING INC.'S** |
| NORTHERN STAMPING, INC., | ) **SUPPLEMENTAL MOTION FOR LEAVE** |
| | ) **TO AMEND ITS FIRST AMENDED** |
| Defendant. | ) **ANSWER** |
| | ) |

**I. INTRODUCTION**

But-for Horizon's filing of a declaration before the Patent Office in which a Horizon inventor ("Stanifer") falsely claimed that the "drawings of Exhibit A demonstrate our conception of the claimed subject matter," neither of the Horizon patents in suit would have issued. In the IPR, Horizon, as well as Stanifer himself, admitted the declaration was false. That alone is enough to infer that Horizon intentionally deceived the Patent Office into improperly granting its patents.[1]

By law, the new arguments manufactured by Horizon's new counsel[2] cannot alter that conclusion. Horizon's new counsel now argues that even though the drawing does not show the

---

[1] *Intellect Wireless, Inc. v. HTC Corp.,* 732 F.3d 1339, 1342-5 (Fed. Cir. 2013) (holding that the submission of a knowingly false declaration is material and "raises a strong inference of intent to deceive.").

[2] On June 21, 2023, NSI filed a request for a status conference (ECF 71) and pointed out that Horizon's former counsel's several now-admittedly false statements to the Court placed it in an ethical conflict with its client. New counsel for Horizon filed a notice of appearance June 26, 2023 (ECF 75) and former counsel withdrew one day later (ECF 76).

6085682.1

required "receiving members," it shows slots which are "*evidence of conception.*" But Horizon already conceded the sketch provided no such evidence:

| Horizon's new argument | Horizon's contrary admission before the IPR |
|---|---|
| "The sketch was offered as *evidence of conception* in the inventor's mind. It is well-established that such evidence need not provide literal, comprehensive support for each and every possible claim element…." | "Evidence from both parties the Board already analyzed shows the May 2008 sketch does not contain the claimed receiving members. Because the May 2008 sketch doesn't disclose each and every limitation in the patent claims at issue, *it is not evidence of a conception* as of that date." |

Because Horizon already admitted in the IPR that the drawing "is *not* evidence of conception," Horizon is estopped from advancing its contradictory argument in this Court.[3]

If not bad enough, the Ford employee who worked with Horizon—and whose patents Horizon argued it predated—testified that Horizon could not have conceived of the invention before him, because he first brought the idea to Horizon to manufacture it. Thus, he is the proper inventor, not Horizon.

Stanifer executed, and Horizon's prosecution counsel submitted, to the PTO a knowingly false declaration. Without that declaration, the PTO would not have granted the patents-in-suit. Without question, those actions justify NSI's request that it be permitted to amend its answer to add counterclaims for inequitable conduct and false inventorship.

---

[3] *Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1361 (Fed. Cir. 2017) (Federal Circuit finding that like in initial prosecution, prosecution history estoppel applies to statements made during an IPR proceeding).

6085682.1

## II. BACKGROUND

Horizon[4] deceived the Patent Office in two ways to obtain its patents. First, it filed a false Oath in which Horizon employees claimed to be original inventors of the Horizon patents when in fact the inventor was a Ford employee who brought the invention to Horizon. In for a penny, in for a pound, Stanifer later filed a declaration falsely claiming he conceived of the patented invention before the Ford employee."

Without this pattern of deceit, Horizon would not have been able to obtain the patents in suit. Nor could it have filed this frivolous lawsuit.

### A. Horizon deceives the Patent Office by filing false inventor Oaths in which Horizon employees claim to have invented the subject matter of the Horizon patents when a Ford employee was the actual inventor.

#### 1. A Ford employee, Sean Withers, invented the subject matter of the Horizon Patents and disclosed his invention to Horizon so it could manufacture it for Ford.

According to Sean Withers, a Ford employee and inventor on a number of Ford patents, Ford desired a hitch for its trucks to accommodate both fifth wheel and gooseneck hitches. ("combination hitch") Sean Withers Decl. at ¶¶ 6-7, previously filed as ECF 54-1. He was assigned the task of developing the combination hitch at Ford. *Id*. at ¶ 8. Once he invented a suitable hitch, Ford reached out to several manufacturers to manufacture the hitch and Horizon was eventually selected. *Id*. at ¶¶ 11-12.

Withers testified that he disclosed his combination hitch design invention to Horizon and provided Horizon all of the necessary specifications to manufacture it. *Id*. at ¶ 15. One of the

---

[4] Although we often use "Horizon" for simplicity, the improper conduct was through the inventors who were employed by Horizon, Horizon, and possibly its counsel.

3

6085682.1

Horizon employees to which Withers disclosed his invention was Eric Stanifer. *Id.* at ¶ 12. Horizon then manufactured the hitch that Withers had invented for Ford. *Id.* at ¶ 16.

According to Withers, he informed Horizon that Ford would be seeking patents on his inventions and Horizon did not object or claim to be even partial inventors of the hitch. *Id.* at ¶ 20. Withers and Ford were granted two U.S. patents on his combination hitch, U.S. Patent Nos. 7,828,317 and 7,793,968.

### 2. Horizon obtains patents on Withers's invention by filing an Oath falsely representing that Horizon employees were the inventors.

Despite Ford coming to Horizon with Withers's hitch design, Horizon inconceivably claims that it coincidentally and independently invented nearly the identical hitch mount earlier, down to the exact same number and locations of slots, sockets, rails, curves, castings, and flanges. Horizon filed for a patent on the invention and its inventors signed an Oath swearing that they were the "original or an original joint inventor" of the subject matter of what became the Horizon patents in suit:

> Title of Invention: Underbed Hitch Mounting System
>
> As the below named inventor, I hereby declare that this declaration is directed to the attached application.
>
> The above-identified application was made or authorized to be made by me.
>
> I believe that I am the original inventor or an original joint inventor of a claimed invention in the application.

*See* Inventor's Oath, previously filed as ECF 59-3.

In fact, Stanifer swore to the Patent Office in a Declaration—discussed more fully below—that he invented the subject matter of the Horizon patents on May 8, 2008.

During the IPR proceeding, Horizon admitted that the May 8, 2008 conception date in the Stanifer Declaration was false and that Horizon was not sure of the actual conception date.

4

Horizon, however, asserted that the actual conception date was probably around a year later, "at least March/April 2009" based on a CAD drawing it found:

> In fact, the March 12, 2009 CAD drawing at Ex. 2013 (clear copy at Ex. 2020) alone establishes conception of the claimed inventions by at least March/April 2009….

Patent Owner's Response in IPR, p. 16, previously filed as ECF 76-5. That CAD drawing, which Horizon argues is its supposed conception, turns out to look remarkably like Ford's *final* patented version of the combination hitch:

| Withers Ford '968 Patent | Horizon's supposed *conception* drawing of its invention |
|---|---|
| (figure) | (figure) |

*See* Horizon's drawing submitted during IPR, attached as Exhibit A (orientation rotated).

Horizon's CAD drawing does not identify Stanifer or the origin of the drawings anywhere. Given the remarkable similarity to the figures in Wither's Ford patent, it is more likely an iteration of Withers's invention placed into Horizon's CAD system for manufacture than Horizon's "conception."

5

Indeed, as Withers testifies, the subject matter that the Horizon patents claim is actually the invention that he came up with and disclosed to Horizon:

> I have learned that Eric Stanifer and his employer, Cequent (now Horizon Global), filed patent applications for this same technology, which resulted in the grant of two patents: U.S. Patent Nos. 9,834,050 and 10,589,585 ("Horizon Patents"). ***The Horizon Patents disclose the Combination Hitch that I invented and that I and my colleagues at Ford shared with Cequent as part of the project discussed in this declaration.*** For example, Figure 4 of the Horizon Patents discloses my invention, including castings connected to each end of a rail with mounting pads on each end and receiver tube in the middle of the system to which a goose-ball can connect. ***In fact, I disclosed this exact same embodiment in my patent.***

Sean Withers Decl. at ¶ 18, ECF 54-1 (emphasis added).

As such, the Horizon inventors cannot be the "original inventors" they falsely claim to be in their Oaths.

>   **B.     Horizon falsely claims that the Withers patents are not prior art by fabricating a conception date that Horizon later admits is incorrect.**
>
>> **1.     The Withers patents are without question material as the Patent Office initially rejected all of the claims of the Horizon Patents in Suit based on the Withers patents.**

During the prosecution of the applications for Horizon's '050 and '585 patents, the Patent Office rejected the claims as unpatentable over Withers's patent application that eventually became the Ford '317 patent.  The Ford '317 patent disclosed an undermount structure for a truck that accommodated both a gooseneck and a fifth wheel hitch.  The application further disclosed "receiving members" or pucks denoted by numeral 18 in the photo below.

6



The Ford '317 patent discloses all elements of the claims of the '050 and '585 patents, but-for, arguably, a tubular member instead of the elongate rails. As the Patent Office found, the use of tubular members is well-known in this industry and the Examiner concluded that the subject matter of Horizon's patents was not patentable over the Ford '317 patent. *See* ECF 35-2.

The Ford '317 patent was thus a but-for material prior art reference that would have prevented the patents in suit from issuing. *Therasense, Inc. v. Becton, Dickinson and Co.*, 864 F.Supp.2d 856, 860 (N.D. Cal. 2012).

### 2. Horizon removes the Ford '317 patent as prior art by improperly claiming it had an earlier conception date.

Horizon removed the but-for material Ford '317 patent as prior art by submitting a declaration of one of its supposed inventors, Eric Stanifer. In that Declaration, Stanifer swore that he and another Horizon employee conceived of the invention before the May 30, 2008 priority date of the Ford '317 patent:

> 4. Attached hereto as Exhibit A are drawings that I along with my fellow inventor prepared and completed on May 8, 2008. ***The drawings of Exhibit A demonstrate our conception of the claimed subject matter before the effective date of the [Ford '317 patent] of May 30, 2008***…. The drawings attached as Exhibit A were created as I and my fellow inventor refined the invention to create a manufacturable version. Therefore, I and my fellow inventor as the inventors of the present application conceived of the invention prior to May 30, 2008….

Stanifer Declaration, ECF 18-1.

6085682.1

First, as explained above, the Horizon employees did not "conceive" of the invention at all, much less on May 8, 2008. Second, the drawing attached as Exhibit A to the Declaration is missing the "receiving member" and thus does not prove a conception date for the Horizon patents.



The drawing itself (on the left) is a very rough, hand-drawn sketch that lacks any identification of the individual parts.[5] ECF 18-1 at p. 5.

It is undisputed that in order for this sketch to be used to remove the Ford '317 patent as prior art, it must establish conception of "each and every" claimed limitation. It does not. It fails to show the claimed "receiving member" element, as Stanifer himself admitted in the IPR.

Stanifer testified under oath in the IPR that the sketch does *not* show the receiving members:

> *Q? I mentioned receiving members a few minutes ago. Are the receiving members shown in this sketch?*
>
> *A. No, they're not.*
>
> Q? Are pucks [another name for receiving members] shown in this sketch?
>
> A. No, they are not.

Stanifer Dep. Tr., pp. 32:24-33:8, ECF 76-4 (objection omitted, emphasis added).

---

[5] It is hard to fathom that Stanifer could have confused the rough, hand drawn sketch he submitted with his Declaration with the CAD drawing in the chart above that Horizon eventually decided was Mr. Stanifer's conception drawing. It is also hard to fathom that when the Horizon patents were rejected over the Ford patents, Horizon did not explain to the PTO its relationship with Ford.

6085682.1

Horizon then not only agreed that the Conception Drawing "does not contain the claimed receiving members," *but further admitted Horizon had evidence to prove that it does not include the receiving member or was evidence of the conception date*:

> *Evidence from both parties* the Board already analyzed shows the May 2008 sketch does not contain the claimed receiving members. *Because the May 2008 sketch doesn't disclose each and every limitation in the patent claims at issue, it is not evidence of a conception as of that date*.

Horizon Surreply in IPR, p. 14, ECF 67-3 (underlining in original, other emphasis added).[6]

Thus, the Stanifer declaration is false and the Ford '317 patent is indisputably but-for material prior art.

### 3. Horizon's pattern of misrepresentation of the conception date for the Horizon patents was continued before this Court.

As Horizon now admits that it had *evidence* that the 2008 sketch *does not show* the receiving members or evidence of conception, the clear representations that it made to the Court that the sketch *does show* the receiving members must have been knowingly false.[7] Horizon Surreply in IPR, p. 14, ECF 67-3.

Yet, Horizon's, and its counsels', misrepresentations to this Court were neither equivocal nor subject to interpretation:

> "The Conception Drawings *do* show the alleged missing receiving members and thus the Stanifer Declaration, on its face, is *true*." ECF 37, p. 2 (emphasis in original).

> "[I]t is *impossible* to argue with the fact that the drawings show the receiving member. *Id*., p. 4 (emphasis added).

---

[6] As noted in the Introduction, Horizon now claims that slots on the hitch mount that could receive the receiving members are "evidence of conception" of the receiving members. But, as seen here, Horizon has already forfeited that argument. ECF 76, p. 4.

[7] This is particularly troublesome given that Horizon characterized NSI's interpretation of the Stanifer Declaration as "flawed beyond repair," "baseless," "debunked," "false," "unsupported," based on "NSI's misrepresentation to the Court" and deserving of "sanctions." ECF 37, p. 1-2.

9

"[T]he only 'falsity' here is not in Stanifer's Declaration, but rather NSI's misrepresentation to the Court that the receiving members are not found in the Conception Drawings when in fact they are." *Id*.

"If NSI continues to pursue this baseless and debunked theory [that the Stanifer sketch does not show receiving members], then Horizon will pursue sanctions." ECF 37, p. 2, n.1.

Never once did Horizon previously present the new argument advanced by its new counsel that the Stanifer sketch "show[s] receiving members …because the elements Horizon indicated as showing the receiving members receive the 'pucks' [another name for a receiving member] even though the pucks themselves are not depicted." ECF 76, p. 4.



Indeed, aided by the fact that the sketch is ambiguous, Horizon went so far as to misrepresent to the Court exactly where the receiving members supposedly appeared on the Stanifer sketch. It was not the location of elements that "receive the pucks" or receiving members, as Horizon now claims. Instead, Horizon claimed "the hand-drawn Conception Drawings *do* show the allegedly 'missing' receiving members based on the four circles near each corner as shown by the [orange] arrows below." ECF 37, p. 3 (emphasis and arrows in original).

But the arrows in the image above that Horizon prepared for this Court do not point to where a receiving member might be attached, but rather point to the holes or apertures used to attach the hitch mount to the truck chassis. IPR Institution Decision, p. 15, ECF 66-1. As an expert in this field, Horizon must have known its assertions to this Court were untrue.

Horizon made all of these knowingly false statements to the Court to hide the fact that it

10

and its counsel had misrepresented the conception date in the Stanifer Declaration in its now-failed effort to remove the invalidating Withers '317 patent as prior art.

### C. The Court's dismissal of NSI's previous counterclaim of inequitable conduct.

On July 14, 2021, this Court dismissed NSI's previous counterclaim of inequitable conduct, finding that NSI had insufficient evidence for the Court to infer deceptive intent in the filing of the Stanifer Declaration. ECF 46, pp. 8-9.

Since that ruling: 1) Stanifer admitted under oath the sketch attached to his declaration does not disclose receiving members; 2) Horizon admitted the sketch is not evidence of conception; 3) Horizon admitted that it had evidence that the conception date in the Stanifer Declaration was untrue; and 4) NSI obtained the Declaration of Sean Withers in which he testifies that he was the true inventor of the subject matter of the Horizon patents—not Horizon or Stanifer.

## III. THE RELEVANT LAW

The Court in its July 2021 Order explained the requirements to plead inequitable conduct:

> 'The substantive elements of inequitable conduct are: (1) an individual associated with the filing and prosecution of a patent application made an affirmative misrepresentation of a material fact, failed to disclose material information, or submitted false material information; and (2) the individual did so with a specific intent to deceive the PTO.'…With respect to the second element, 'although 'knowledge' and 'intent' may be averred generally, a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO.'… 'Because direct evidence of deceptive intent is rare, a district court may infer intent from indirect and circumstantial evidence.' *Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011). However, the Court also may take into account 'any objective indications of candor and good faith.' *Exergen*, 575 F.3d at 1329 n.5.

549 F.Supp.3d 730, 735-6 (2021) (internal citations omitted).

Fed. Civ. P. Rule 15(a)(2) requires that "[c]ourts should freely give leave [to amend] when justice so requires." *ShieldMark, Inc. v. Creative Safety Supply, LLC.,* 2012 WL 6824003 *2 (N.D. Ohio 2012) (allowing a motion to leave to file counterclaim of inequitable conduct).

The limited factors that might indicate denial of a motion for leave to amend include: "bad faith, undue delay, dilatory motives, undue prejudice to the opposing party, repeated failure to cure deficiencies in prior amendments, and futility." *Nichols v. Vill. of Minerva, Ohio*, No. 5:14-CV-613, 2015 WL 845714, at *2 (N.D. Ohio Feb. 25, 2015).   None of those exists here.

## IV. DISCUSSION

### A. There is no undue delay or bad faith in NSI bringing its motion to amend its Answer at this time.

Here, good cause exists to allow NSI to amend its Answer because discovery is still open, no depositions have been taken, and no dispositive motions have been filed.  *See Birchwood v. Battenfeld Technologies, Inc.,* 762 F.Supp.2d 1152, 1156 (D. Minn. 2011) (good cause exists for amending to include counterclaim for inequitable conduct "where, as here, discovery is still open and no dispositive motions have been filed.").  More importantly, NSI moved to amend its answer in the fall of 2021 immediately after it obtained the Withers Declaration.  And the IPR, in which Horizon admitted that the Stanifer Declaration was false, was not concluded until February 2023.

### B. There is no prejudice to Horizon in allowing NSI to amend its Answer to include counterclaims for inequitable conduct and improper inventorship because the fact patterns are basically the same as NSI's pending invalidity defense based on the Ford Patent.

The facts surrounding NSI's claim for invalidity, for inequitable conduct, and for improper inventorship all arise from the same facts. Thus, allowing NSI to amend its answer will not prejudice Horizon.  *See Birchwood,* 762 F.Supp.2d 1156 ("Any claim of prejudice based on the

12

need for additional discovery is greatly diminished where the claim to be added overlaps with some of the claims already pled.").

> C. **The inequitable conduct and improper inventorship claims are well supported by the Withers Declaration and the admissions that Horizon and Stanifer made in the IPR.**
>
> 1. **NSI has sufficiently pled that the Horizon inventors acted with the specific intent to deceive the Patent Office by claiming themselves to be the inventors of the combination hitch when in reality Withers of Ford invented it and disclosed it to them.**

"A person is not entitled to a patent if he did not himself invent the subject matter sought to be patented, or in other words, if he is not the true inventor." *Theranos, Inc. v. Fuisz Pharma, LLC*, 876 F.Supp.2d 1123, 1136 (N.D. Cal. 2012) (citation omitted).

As discussed above, Sean Withers, a former Ford employee, testified in a declaration obtained just prior to the stay in this case that he is the true inventor of the combination hitch disclosed in the Horizon patents—not Horizon's named inventors. Withers no longer works for Ford and has no reason to lie about being the true inventor of the combination hitch mount.

Moreover, Horizon's explanation concerning its supposed conception of the subject matter in the Horizon patent lacks veracity. First, Horizon admits that the drawings it submitted to the PTO as evidence of conception are not evidence of conception at all. Second, it admits that it got its conception date wrong by a year. Moreover, the CAD drawing on which its new date is based does not identify Stanifer as the originator. Third, that CAD drawing is so nearly indistinguishable from the final Ford drawing in the Ford '968 patent that it defies coincidence. Lastly, Horizon in its actions before the PTO conveniently forgot to explain to the PTO that it worked with Ford in developing the hitch mount.

Accepting Withers's Declaration as true, as the Court must in judging the sufficiency of NSI's affirmative claim (ECF 46, p. 4), the only inference that can reasonably be drawn is that

13

the Horizon inventors intended to deceive the Patent Office when they falsely claimed that they were the true inventors of the combination hitch mount. *Takeda Pharmaceuticals Co., Ltd. V. Twi Pharmaceuticals, Inc.,* 87 F.Supp.3d 1263, 1286 (N.D. Ca. 2015) (finding that fact finder could conclude that an inventor who knew he was not first inventor, but signed a declaration that he was the true inventor, had committed inequitable conduct).

> **2. As a result of the IPR proceedings, it is clear that Horizon intended to deceive the Patent Office through the filing of the false Stanifer Declaration.**
>
> > i. *Horizon admitted in the IPR that it was not entitled to the date of conception in the Stanifer Declaration and thus it is reasonable to infer an intent to deceive the Patent Office.*

In its earlier ruling dismissing NSI's counterclaim for inequitable conduct, the Court found that "[i]f Stanifer and his coinventor did, in fact, conceive of the receiving members prior to the Ford patents and had additional proof of that conception, it is not reasonable to infer that Stanifer would have nonetheless intentionally submitted inadequate drawings in order to deceive the PTO examiner." ECF 46, pp. 8-9 (emphasis added). Horizon has now admitted that Stanifer did ***not*** in fact conceive of the receiving members prior to the Ford '317 patent. Horizon Surreply in Patent Office, p. 14, ECF 67-3 ("Evidence from both parties the Board already analyzed shows the May 2008 sketch does not contain the claimed receiving members." (emphasis in original)).

Thus, the Stanifer Declaration is untrue as are the multiple misrepresentations that Horizon made to this Court trying to cover up its misconduct before the Patent Office. *See, e.g.* ECF 37, p.4 ("[I]t is ***impossible*** to argue with the fact that the drawings show the receiving member." (emphasis added)).

This pattern of deception justifies an inference that Horizon intended to deceive the Patent Office into issuing the patents in suit by the filing of the false inventor Oath and the false Stanifer Declaration. *Theranos, Inc.*, 876 F.Supp.2d at 1136 (N.D. Cal. 2012).

14

      *ii.*  *It is wholly plausible to conclude that Horizon intended to deceive the Examiner despite the fact that it provided the sketch to the Examiner.*

The Court also found that "[i]t is not plausible to infer that Stanifer intended to deceive the PTO examiner when he presented everything in plain sight [in the sketch] for the examiner to review." ECF 46, p. 9.  Because of the roughness and ambiguity of the sketch, however, everything was not in plain sight.  Indeed, it was because of the ambiguity of the sketch that Horizon was able to misrepresent to this Court exactly where the receiving members appeared in the sketch (with arrows) even though it now admits—and the IPR Board agrees—the receiving members are not in the sketch. IPR Institution Decision, p. 15, ECF 66-1.  Thus, it is likely the Examiner was misled by relying on Horizon's duty of candor in its dealings with the Patent Office when Stanifer swore that "[t]he drawings of Exhibit A demonstrate our conception of the claimed subject matter."[8]

## V.  CONCLUSION

Horizon falsely passed Withers's invention off as its own and then deceived the Patent Office into believing that it had invented Withers's invention before him. Horizon then attempted to cover up its deception by making several deliberate misrepresentations to this Court.  That is a forceful case for inequitable conduct.

  NSI submits that justice and Rule 15 require that it be permitted to file its attached Third Amended Answer and Counterclaims to add claims for inequitable conduct and improper inventorship.

---

[8] "Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the Office, which includes a duty to disclose to the Office all information known to that individual to be material to patentability as defined in this section." 37 CFR 1.56.

Dated: August 1, 2023  Respectfully submitted,

/*s*/ Jay R. Campbell

Jay R. Campbell (0041293)
David A. Bernstein (0093955)
**TUCKER ELLIS LLP**
950 Main Avenue
Suite 1100
Cleveland, OH 44113
Telephone:  216.592.5000
Facsimile: 216.592.5009
E-mail:  jay.campbell@tuckerellis.com
david.bernstein@tuckerellis.com

Ron N. Sklar
Dennis J. Abdelnour
**HONIGMAN LLP**
155 North Wacker Drive, Suite 3100
Chicago, IL 60606
(312) 701-9300
rsklar@honigman.com
dabdelnour@honigman.com

*Attorneys for Defendant Northern Stamping, Inc.*

16

**Certificate of Service**

I hereby certify that on August 1, 2023, I served the above document on counsel of record for plaintiff through the Court's ECF system.

/s/ Jay R. Campbell
Jay R. Campbell

*Counsel for Defendant*

6085682.1