UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| HORIZON GLOBAL AMERICAS INC., | ) |
| **Plaintiff**, | ) CASE NO. 1:20-cv-00310-PAB <br> ) <br> ) JUDGE PAMELA A. BAKER <br> ) |
| v. | ) <br> ) **NORTHERN STAMPING INC.'S REPLY** |
| NORTHERN STAMPING, INC., | ) **IN SUPPORT OF ITS SUPPLEMENTAL** |
| **Defendant**. | ) **MOTION FOR LEAVE TO AMEND ITS** <br> ) **FIRST AMENDED ANSWER** <br> ) |

**I.  INTRODUCTION**

In its challenge to NSI's allegations of inequitable conduct, Horizon claims its multiple contradictory explanations of conception of the Horizon patents is excusable because they were made "for different purposes." Pl.'s Opp'n to Def. Suppl. Mot. for Leave to Amend First Am. Answer ("Pl.'s Opp'n") 2 (ECF No. 84). Thus, Horizon reasons, their varied versions of the truth "cannot plausibly reveal knowing intent to deceive during the patents' original prosecution." *Id.* Borrowing from Mark Twain, if the inventors and Horizon had told the truth since the beginning, the story would not have been so hard for Horizon to keep straight. It's as simple as that.

Horizon's desire to recreate history, without regard to what it previously claimed was the truth, continues in Horizon's latest filing. Now it claims that despite admitting to the PTAB that the May 2008 sketch "is not evidence of a conception as of that date," that version of the truth

doesn't matter.[1] Instead, Horizon claims the May 2008 sketch in fact shows the opposite—"conception in Stanifer's and McCoy's minds." Pl.'s Opp'n 7. The simple fact that Horizon must once again create a new, *third*, contradictory version of the supposed "truth" demonstrates that NSI's counterclaims are at least plausible.

In fact, the only reasonable inference that explains Horizon's varying mistruths depending on "purpose" is that the Horizon inventors and its counsel repeatedly deceived the Patent Office. First by claiming that the Ford invention was theirs, and then twice swearing that the Stanifer Sketches evidenced its conception, only to later admit they do not. But for Horizon's deceit, it would have no patents to assert in this suit.

There is no doubt NSI's counterclaims meet the low "not futile" standard under Fed. R. Civ. P. Rule 15 and that NSI should be permitted to amend its answer to add counterclaims for inequitable conduct and false inventorship.

## II. DISCUSSION

### A. NSI's counterclaims easily satisfy the pleading requirements of Fed. R. Civ. P. Rule 9(b).

#### 1. The timing of the Horizon patent filings demonstrate that Stanifer had not conceived of the critical "receiving member" as part of the invention in May of 2008 as Stanifer falsely claimed in his Declaration.

---

[1] Remarkably, Stanifer testified in the IPR proceedings in July 2022 that no Horizon lawyer contacted him before Horizon made the repeated and strident mistruths to this Court in January of 2021 about his Declaration and what his March 2008 "conception" sketch supposedly showed. *See* Stanifer Dep. Tr. 95:21-96:2 (ECF No. 83-4). Horizon just made up what at that moment served its "purpose."

Horizon argues that NSI "Improperly Conflates the Relevant Patents and Inventions." Pl.'s Opp'n 3. Not so. It is Horizon that is confused.[2] Horizon represents that "just months" after Ford's filing of the Withers '317 patent application and before Ford's filing of the Withers '968 patent application, it filed its Provisional Application to which the patents-in-suit claim priority. Pl.'s Opp'n 3-4.[3] Horizon, however, fails to inform the Court that the Provisional Application does not disclose the critical "receiving member," even though the Provisional Application was filed on October 30, 2008. That is five months *after* the May 2008 Stanifer sketch that Horizon argues, in its current version of the "truth," "provide[s] evidence corroborating prior conception [of the receiving member] in Stanifer's and McCoy's minds." Pl.'s Opp'n 7. Yet the Provisional Application fails to show, mention, describe, or even imply the receiving member at all.

Instead, in the Provisional Application the legs of the fifth wheel hitch are mounted *directly* to an aperture 18 in the rails of the undermount portion of the hitch *without the receiving member that would have been secured to the aperture in the Horizon patents*:

> Each rail 12 may include one or more apertures 18 configured to receive and support the legs of the fifth wheel hitch. The legs may be bolted through the apertures 18, screwed into the threaded apertures 18, welded to the rail 12, or connected to the rails by any other means known in the art.

---

[2] This could very well be an innocent mistake by new counsel having arrived several years into this case.

[3] Horizon is apparently attempting to imply that it disclosed the idea of using a receiving member in a filing at the Patent Office before Ford's filing of the application that became the Withers '968 Patent. That is incorrect as explained in this section of the brief.

3

Provisional Application 4 (ECF No. 18-2). Figure 1 in the Provisional Application (below, right), which is described in the quote above, also does not include the receiving member. In fact, the Provisional Application does not mention or illustrate the receiving member at all. Not once. Not even by a different name.

The receiving member is a critical feature in the Horizon patents in suit. Each Horizon patent uses the phrase "receiving member" at least a dozen times. The receiving member is depicted in each Horizon patent in suit in four of the seven drawings. And it is a required element in twenty-two of the claims of the Horizon patents.

Thus, if Stanifer and McCoy had conceived of the receiving member or even vaguely had it "in their minds" by the time of Stanifer's May 2008 sketch, it would have without question at least been mentioned once in the Provisional Application. Instead, it was not until October 30, 2009—*after* Ford's June 23, 2009 filing of the '968 Patent—that Horizon first filed a patent application including a receiving member.

The *only* plausible inference that can be drawn from the filings of the relevant patents—and the exclusion of the receiving member in Horizon's Provisional Application—is that Stanifer and McCoy had not conceived of or even contemplated the use of a receiving member as part of its invention in May of 2008. Thus, Stanifer must have knowingly deceived the Patent Office by submitting now *admitted* false Declarations alleging otherwise. There is no other explanation for why Stanifer and McCoy would have omitted the receiving member in Horizon's Provisional

4

Application if they had actually conceived of it months earlier when Stanifer supposedly drew his May 2008 "conception" sketch.

**2. Withers invented the subject matter of the Horizon patents, disclosed the invention to Horizon, and Horizon wrongly claimed it as their invention—this is not a "matter of who invented first." Horizon did not "invent" at all.**

Ford's inventor, Sean Withers, testified in his declaration that he invented the subject matter of the Horizon patents and that he provided the specifications of his invention to Horizon to manufacture the combination hitch. Withers Decl. ¶¶ 15, 16, 18 (ECF No. 54-1). Horizon then copied Mr. Withers's invention and falsely claimed that its employees, Mr. Stanifer and Mr. McCoy, somehow managed—defying all logic and reason—to invent *exactly the same thing, drawn exactly the same way, just before Ford*.

That's a little too much coincidence to stomach. Indeed, the drawings of the Ford invention and what Horizon claims to have invented are nearly indistinguishable:

| Withers's Ford '968 Patent | Horizon's supposed *conception* drawing of its invention as presented to the PTAB |
|---|---|
| | |

5

Remember, Horizon's first version of the "truth" was that Stanifer's rough, hand drawn sketch *literally included* the receiving member. Then, in the IPR, Horizon admitted the sketch *did not* include the receiving member and was not evidence of conception. It argued the drawing above was in "truth" the conception. Now, changing course again, Horizon argues the "truth" is that the rough sketch "provide[s] evidence corroborating prior conception [of the receiving member] in Stanifer's and McCoy's minds." Pl.'s Opp'n 7.

Nonetheless, ignoring the fact that it's on its third or fourth iteration of the "truth," Horizon claims that "NSI's Motion asks the Court to convert a garden-variety defense about 'who invented first' into multiple far-fetched 'fraud on the court' claims." Pl.'s Opp'n 3. Hardly. The question is not "who invented first," but rather who invented it at all. Thus, Horizon's attack on Mr. Withers's declaration testimony is misplaced and irrelevant. The date of his conception does not matter because he conceived of the invention and gave the invention to Horizon. Horizon's employees did not invent it independently.

Horizon does note that Mr. Withers in his Declaration "never testifies that he invented the subject matter *claimed* in the [Horizon] patents in suit." Pl.'s Opp'n 5 (emphasis in original). But, Mr. Withers does state that "Figure 4 of the Horizon patents discloses my invention…In fact, I disclosed this exact same embodiment in my patent." Withers Decl. ¶18. As seen in the table above, Figure 1 of the Withers's Ford '968 patent includes all of the *claimed* elements in the Horizon patents: at least one tubular member, a central member, a pair of receiving members, and a pair of solid members. Thus, Horizon misses the point. Mr. Withers proved *his* point—he is the inventor of the subject matter of the Horizon patents, not Horizon—which is far more important than his word choice.

NSI has more than adequately pled its claims under Fed. R. Civ.P. Rule 9(b).

### 3. Horizon cannot absolve Stanifer's misconduct by arguing that he had a different, undefined definition of "receiving member" than that he set forth in his patents.

As noted in NSI's opening brief, Stanifer admitted that his May 2008 sketch did ***not*** include a "receiving member" as that term is used in his patents. Stanifer Dep. Tr. 32:24-33:8 (ECF No. 83-4). Horizon doubled down on that admission further admitting to the PTAB that it has ***evidence*** that proves Horizon is not entitled to the conception date of the May 2008 sketch:

> Evidence from both parties the Board already analyzed shows the May 2008 sketch does not contain the claimed receiving members. Because the May 2008 sketch doesn't disclose each and every limitation in the patent claims at issue, it is not evidence of a conception as of that date.

Horizon Surreply in IPR 14 (ECF No. 67-3) (underlining in original).[4] That is dispositive.

But, Horizon asks the Court to ignore the "evidence," Horizon's admission, and Stanifer's testimony, and instead adopt Horizon's latest version of the truth. According to Horizon, the PTAB adopted a narrower definition of receiving member in which "the sockets [30] depicted in the [May 2008] conception sketch were not the 'receiving members 44 extending out above the rails.'" Pl.'s Opp'n 8. According to Horizon, "[t]he important thing to remember is that the remaining arguments before the PTAB utilized this narrowed construction of 'receiving member.'" Pl.'s Opp'n 9.[5] Whatever the supposed "broader" construction that it

---

[4] Horizon argues it is not bound by its statements to the PTAB under the doctrines of prosecution history and judicial estoppel. Pl.'s Opp'n 11-13. It does not try to explain how the ***evidence*** it admits having just goes away. More importantly, whether Horizon is ***legally*** confined to its previous version of the truth or not, the fact that it must once again change its story is indicative of the fact that the truth really does not support its new argument.

[5] Notably, during the IPR, Horizon never argued that the PTAB improperly construed any terms, nor did it condition its arguments as being based on any perceived construction. Horizon could have very easily written "Based on the PTAB's construction of receiving member…," but never did so. Its statement during the IPR is unambiguous: the May 2008 Sketch "is not evidence of a conception as of that date."

7

implies Mr. Stanifer and Horizon had, Horizon is unwilling to say. That is likely because Stanifer's patents demand only one definition and it defies reality to accept—as Horizon urges the Court to do once again—that neither Stanifer nor Horizon knew what this definition is. It was, after all, their definition that they placed in the Horizon patents.

> i. *The Horizon patents unambiguously use the term "receiving member" to mean structures separate from the sockets in the rails to receive the legs of a fifth wheel hitch.*

Stanifer makes the meaning of "socket" and "receiving member" quite clear in his patents. Stanifer's Horizon patents identify the sockets 30 and the receiving member 44 separately and distinctly and identifies them by different numbers.

Moreover, the Horizon patents require that the socket 30 and receiving member 44 must be separate elements. According to the patents, the receiving member 44 may be secured to the sockets 30. (If the socket and receiving member were the same thing they could not be secured together). Or, according to Stanifer's patents, the receiving member 44 could be integrally formed within the cross members 20, without the use of the sockets 30 at all (demanding they are separate elements):

> FIGS. 4 and 5 illustrate an integrally formed mounting 40 system 10, whereby the receiving members 44 may be formed within the cross members 20. FIG. 6 illustrates a mounting system 10 where the receiving members 44 may be placed and secured into sockets 30 located within the cross members 20.

'050 patent, col. 6:8-13.

Horizon does not explain how Stanifer could have held a broader definition of receiving member than what *he* used in *his* patents and that conflicts with *his* own patents.

> ii. *The Horizon patents prove that the presence of the sockets in the rails does not mandate the presence of a receiving member because the legs of the hitch can be secured to the rails directly using the sockets and without the receiving members.*

8

The Horizon patents also do not require that the receiving members must be used. Thus, the presence of sockets 30 does not mandate the presence of the receiving members. As the Horizon patents state, the legs 57 of the fifth wheel hitch can be directly secured to the sockets 30, such as by welding, without the use of the receiving means:

> The sockets 30 may be of any appropriate shaper [sic] or size, such as a generally ovular, circular or rectangular shape. The sockets 30 may be configured to receive and support the legs 57 of a fifth wheel hitch 55. The legs 57 may be secured to rails 20 through the sockets 30 by any appropriate means, such as by fasteners, being welded, or the like.

'050 patent, col. 3:48-53.

In other words, the mere fact that Stanifer's 2008 sketch shows sockets in no way supports the proposition that the sketch reflects conception of receiving members. Indeed, the presence of a socket but lack of receiving members in the Provisional Application bears that out.

Given the evidence in Stanifer's Horizon patents, and the submission of two admittedly false declarations, it is more than reasonable to infer that Mr. Stanifer intended to deceive the Patent Office because that was the only way to secure the Horizon patents and to maintain the deception that he invented the Ford combination hitch and not Mr. Withers.

    **B.**    **NSI's Counterclaims satisfy the requirements of Fed. R. Civ. P. Rule 15(a).**

        **1.**    **NSI's counterclaims are timely.**

NSI obtained the Declaration of Sean Withers, the Ford employee and actual inventor of the subject matter of the Horizon patents, during the discovery period and in fact ***before a single deposition had been taken*** in this case. And even then, Horizon's then-counsel accused NSI's counsel of unethical conduct and of committing multiple other offenses in having contacted Mr. Withers and his former employer, Ford, to investigate its claims:

> This is improper and there are serious legal and ethical issues based on it.
> First, without giving us prior notice that you have spoken to Horizon's

9

> customer, Horizon has serious potential tortious interference, deceptive trade practices, defamation, and ethics issues against you, your law firm, and Northern Stamping by reaching out to Horizon's customer behind Horizon's back about this lawsuit, any claims, or specifically about an inequitable conduct issue that the Court already dismissed at the pleadings stage.

September 2, 2021 email from David Cupar to NSI's counsel, attached as Exhibit A.

Yet now Horizon ironically argues that NSI should have contacted Stanifer earlier.

In any event, NSI's president emailed Horizon as early as October, 2018 expressing his concerns about the inventorship and validity of the Horizon patents because of Mr. Withers's Ford '968 patent. Emails from Friedman to Horizon (ECF Nos. 61-1, 61-2). Despite that, Horizon never bothered to investigate NSI's claims with the Horizon inventors until it contacted Mr. Stanifer "a couple months" before his July 2022 deposition in the IPR—nearly four years later. Stanifer Dep. Tr. 95:21-96:2 (ECF No. 83-4). And Horizon revealed in its latest responsive brief that it had apparently never spoken to the co-inventor, McCoy, about the conception of the subject matter of the Horizon patents before his death in 2022. Pl.'s Opp'n 13.

Given Horizon's failure to investigate NSI's claims of inequitable conduct before filing suit in February 2020 and for over two years after, Horizon can hardly claim prejudice.[6]

Further, courts, including those in this District, routinely permit amendment when new information becomes available. *E.g., MPT, Inc. v. Marathon Labels, Inc.*, 2005 WL 8160889, at *4 (N.D. Ohio Nov. 23, 2005). For example, as the *MPT* court held:

> Although the amendment came late in discovery, Defendants should not be penalized when the factual basis for the amendment was not disclosed until late in discovery. This is particularly true in light of the Federal Circuit's holdings and Fed. R. Civ. P. 9(b). To strictly enforce rules limiting inequitable conduct claims at the outset of litigation but then refuse to allow meritorious claims to be added

---

[6] Stanifer's testimony and Horizon's lack of an investigation raise apparent Rule 11 and other issues under 35 U.S.C. § 285 and 28 U.S.C. § 1927. Apparently, Horizon and its counsel did not care about the validity of its case and hoped to drive a smaller competitor out of the market even if its suit is frivolous.

10

> by amendment once information that satisfies the pleading rules becomes available would be fundamentally unfair.

*Id.* That is true even when amendments come late in discovery. *Id.* Here, discovery is still in its early stages. Neither party has taken a single deposition.

NSI's amendments are based on evidence obtained immediately prior to, and during the pendency of the stay issued by this Court. NSI promptly disclosed this evidence to opposing counsel and sought to amend its claims during the stay. Under these circumstances, there is no procedural basis to deny NSI's motion.

### 2. NSI's counterclaims are without question not futile.

Horizon puffs that NSI's allegation that Horizon made misrepresentations about the supposed conception of the Horizon patents to this Court are proof of NSI's improper motives and the futility of NSI's counterclaims. Pl.'s Opp'n 14. Horizon claims that its "arguments before this Court preceded the narrowing of the term [receiving member] by the PTAB." *Id.* at 15. Notably, Horizon does not give a single example of how its flagrant misrepresentations to the Court are excused by the supposed narrowing construction of receiving member. And that is because they are not.

Horizon never once claimed in its arguments to the Court that the socket 30 was the receiving member—which Horizon implies here that a "broader" definition of receiving member would cover. Nor did it argue that the presence of the socket implied the conception of the receiving member. Instead, Horizon claimed that "it is impossible to argue with the fact that the [Stanifer sketches] show the receiving members indicated by the layered circles at the edge of each tubular member." Pl.'s Reply in Support of Mot. to Dismiss Def.'s Am. Countercl. V ("Pl.'s Reply ISO MTD") 4 (ECF 37). The layered circles are not located near the socket 30. Instead, Horizon deliberately tried to pass off the area where the tubular member (as indicated by the

11

layered circles) would secure to the truck chassis as the receiving member. *That could never be the receiving member under any construction*.

Moreover, all of Horizon's misrepresentations to this Court about what Stanifer's May 2008 "conception" sketch showed were made with absolutely no input from either inventor. *See*, Stanifer Dep. Tr. 95:21-96:2 (ECF No. 83-4). They were not vetted in any way. Horizon just made up whatever it wanted and argued to the Court that it was "impossible," a "falsity" and a "baseless" "misrepresentation" *by NSI* to argue otherwise. Pl.'s Reply ISO MTD 4.

NSI's counterclaims are not futile and its motive is pure.

### III. CONCLUSION

Stanifer and McCoy did not disclose the use of a "receiving member" in Horizon's Provisional Application—despite being filed five months after Stanifer's supposed "conception drawing." That is compelling evidence that Stanifer and McCoy did not conceive of the "invention" of the Horizon patents when Stanifer claimed to the Patent Office that he did. Moreover, Horizon's story of inventing exactly what Ford wanted and happening to design it in exactly the same way as Ford, but just before Ford, is wholly implausible.

Stanifer unfortunately misrepresented the truth to the Patent Office to obtain its patents on Ford's invention. Horizon and its counsel then made multiple knowing and deliberate misrepresentations to the Court to cover up Stanifer's and his counsel's misconduct. That is inequitable conduct no matter how Horizon wants to explain it away. NSI's motion to amend its answer to assert counterclaims for inequitable conduct and false inventorship should be granted.

Dated: September 14, 2023        Respectfully submitted,

                                         */s/ Jay R. Campbell*
                                         Jay R. Campbell (0041293)
                                         Carter S. Ostrowski (0102302)
                                         950 Main Avenue
                                         Suite 1100
                                         Cleveland, OH 44113
                                         Telephone:    216.592.5000
                                         Facsimile:     216.592.5009
                                         E-mail:jay.campbell@tuckerellis.com
                                         carter.ostrowski@tuckerellis.com


                                         *Attorneys for Defendant Northern Stamping, Inc.*


### Certificate of Service

      I hereby certify that on September 14, 2023, I served this brief on counsel for plaintiff through the Court's ECF system.

                                         */s/ Jay R. Campbell*
                                         Jay R. Campbell

                                         *Counsel for Defendant*