IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **HORIZON GLOBAL AMERICAS, INC.,** | Case No. 1:20-cv-00310-PAB |
| Plaintiff, | |
| -vs- | JUDGE PAMELA A. BARKER |
| **NORTHERN STAMPING, INC.,** | |
| Defendant. | MEMORANDUM OPINION & ORDER |

Pending before the Court is Defendant Northern Stamping, Inc.'s ("NSI") Supplemental Motion for Leave to Amend Counterclaims filed on August 1, 2023. (Doc. No. 80.) On August 31, 2023, Plaintiff Horizon Global America, Inc. ("Horizon") filed an Opposition (Doc. No. 84), to which NSI filed a Reply on September 14, 2023. (Doc. No. 85.) With its Opposition, Horizon also filed a Request for Judicial Notice, which NSI did not oppose. (Doc. No. 83.)

For the following reasons, the Court GRANTS NSI's Motion for Leave to Amend and DENIES, without prejudice, Horizon's Request for Judicial Notice.

I. **Background**

A. **Procedural History**

Horizon manufactures towing and trailering equipment. (Doc. No. 16, ¶ 9.) It owns two patents that are at issue in this case. First is the '050 Patent, titled "Underbed Hitch Mounting System," which is "directed to an improved towing apparatus." (*Id*. at ¶ 14.) The '050 Patent was issued on December 5, 2017. (*Id*. at ¶ 15.) Second is the '585 Patent, also titled "Underbed Hitch Mounting System," and likewise is "directed to an improved towing apparatus." The '585 Patent was issued on March 17, 2020. (*Id*. at ¶ 19.)

On February 12, 2020, Horizon filed a Complaint against NSI for infringement of the '050 Patent. (Doc. No. 1.) Horizon amended its Complaint on August 20, 2020, to also allege that NSI infringed on the '585 Patent. (Doc. No. 16.) On September 3, 2020, NSI filed an Answer to Horizon's First Amended Complaint as well as five counterclaims, one of which—Counterclaim V—alleged that the '050 and '585 Patents are "invalid and/or unenforceable" because of Horizon's "inequitable conduct." (Doc. No. 18, Counterclaims, ¶¶ 19-28.) NSI also pled the associated affirmative defense of inequitable conduct. (*Id*. at Affirmative Defenses, ¶ 8.)

On October 2, 2020, Horizon moved to dismiss NSI's inequitable conduct counterclaim and to strike its inequitable conduct affirmative defense. (Doc. No. 20.) On October 22, 2020, NSI amended its counterclaims but maintained its allegation that the subject Patents are invalid because of Horizon's inequitable conduct. (Doc. No. 25.) Specifically, NSI alleged that one of Horizon's employees, Eric Stanifer ("Stanifer"), filed a declaration with the U.S. Patent and Trademark Office ("USPTO") that falsely asserted that he and a fellow inventor conceived of the '050 Patent before nearly identical earlier patents by Ford. (*Id*. at Amended Counterclaims, ¶¶ 21, 27.) On November 25, 2020, Horizon again moved to dismiss NSI's inequitable conduct counterclaim and associated affirmative defense. (Doc. No. 35.)

After briefing on Horizon's Motion to Dismiss was complete, the parties requested to stay the case for 90 days to conduct mediation, which the Court granted. (Doc. No. 39; Non-Document order dated March 18, 2021.) The mediation was ultimately unsuccessful, so the Court lifted the stay. (Doc. No. 44.)

On July 14, 2021, the Court issued its Memorandum Opinion and Order on Horizon's Motion to Dismiss. (Doc. No. 46.) The Court found that NSI failed to state a claim for inequitable conduct

because NSI's allegations were insufficient to enable the Court to infer that Stanifer intended to deceive the PTO, for two reasons. (*Id*. at PageID# 355.) First, "NSI [did] not allege that Stanifer and his coinventor did not actually conceive of the receiving members prior to the filing dates for the Ford Patents or that they lacked other proof of their conception besides the drawings attached to Stanifer's declaration." (*Id*.) Second, "Stanifer's allegedly false representation to the PTO examiner was in the form of a single statement in his declaration regarding what the attached drawings depicted that was easily verifiable by the examiner." (*Id*. at PageID# 356.)

On September 8, 2021, NSI moved to stay this case pending resolution of *inter partes* review ("IPR"). (Doc. No. 52). Two weeks later, NSI moved for leave to amend its first amended answer and counterclaims. (Doc. No. 59.) While NSI's Motion for Leave to Amend was still pending, on December 6, 2021, the Court granted NSI's Motion to Stay. (Doc. No. 65.) This case has remained stayed since that time. The PTAB issued its IPR decision on February 9, 2023 (Doc. No. 67-1, PageID# 2005), which Horizon appealed shortly thereafter. *See Horizon Global Americas Inc. v. Northern Stamping Co.*, No. 23-1767 (Fed. Cir. filed Apr. 2, 2023).

At NSI's request, the Court held a status conference on June 29, 2023. (Doc. Nos. 71, 79.) The Court lifted the stay pending Horizon's appeal of the PTAB's decision for the limited purpose of NSI filing a supplemental motion for leave to amend its answer and counterclaims. (Doc. No. 79.) On August 1, 2023, NSI filed its Supplemental Motion for Leave to Amend Counterclaims. (Doc. No. 80.) On August 31, 2023, Horizon filed an Opposition to NSI's Motion and a Request for Judicial Notice. (Doc. Nos. 83, 84.) On September 14, 2023, NSI filed a Reply in support of its Motion. (Doc. No. 85.)

3

### B. Allegations in Proposed Amended Counterclaims

With its Motion for Leave to Amend, NSI attached a proposed amended answer and proposed amended counterclaims. (Doc. No. 80-2.) In its proposed amended inequitable conduct counterclaims—Counterclaims V through VIII—NSI sets forth the following allegations.

While developing its 2011 Super Duty truck, Ford decided to also develop an underbed hitch mounting system for the truck. (*Id*. at Amended Counterclaims, ¶ 25.) Ford's marketing team discussed whether the underbed hitch should be a fifth wheel hitch or a gooseneck hitch. (*Id*.) Ford employee Harry Rawlins ("Rawlins") suggested that Ford develop an underbed hitch mounting system that consists of "both a fifth wheel hitch and a gooseneck hitch." (*Id*.) Ford tasked its engineer, Sean Withers ("Withers"), to develop the combination fifth wheel/gooseneck hitch. (*Id*. at Amended Counterclaims, ¶ 26.)

Withers conceived of the combination fifth wheel/gooseneck hitch mounting system. (*Id*.) It included "a gooseneck hitch connected to an underbed fifth wheel hitch system so that the goose-ball would be positioned in between the four mounting pads of an underbed fifth wheel hitch." (*Id*.)

Ford contacted several auto parts manufacturers to manufacture the combination hitch. (*Id*. at Amended Counterclaims, ¶ 27.) Ultimately, Ford chose Cequent (now known as Horizon) as the manufacturer. (*Id*.) Ford and Horizon then "worked together to prepare" the combination hitch for manufacture. (*Id*.) Withers from Ford worked directly with Stanifer from Horizon during this process. (*Id*.)

An early prototype—"an H-shaped plated design"—did not pass Ford's durability requirements. (*Id*. at Amended Counterclaims, ¶ 28.) This led Withers to determine that "castings would better transfer the load from the mounting pads to the truck frame." (*Id*.) He also determined

that "the castings would be mounted to transverse bars to create rails, and that each rail would have a casting on each side, with one mounting pad positioned on each casting." (*Id*.) Withers disclosed this new design to Horizon and Stanifer, and Ford provided Horizon and Stanifer with the measurements necessary to meet Ford's requirements. (*Id*.) Horizon then manufactured this combination hitch (the "Casting Design") for Ford. (*Id*.)

Withers is the named inventor on two patents "directed to this combination underbed gooseneck/fifth wheel hitch mounting system:" the '317 Patent and '968 Patent. (*Id*. at Amended Counterclaims, ¶ 29.) The '968 Patent "discloses the Casting Design." (*Id*. at Amended Counterclaims, ¶ 30.) Horizon's '050 Patent "discloses the same Casting Design" that Withers invented and that he and Ford shared with Horizon. (*Id*. at Amended Counterclaims, ¶ 31.) On July 25, 2013, Horizon employees Stanifer and Richard McCoy ("McCoy") executed declarations that they conceived of the inventions claimed in the '050 Patent. (*Id*. at Amended Counterclaims, ¶ 33.)

Ford informed Horizon through its employee Mike Orlos ("Orlos") that it was seeking patent protection for the combination underbed hitch mounting invention. (*Id*. at Amended Counterclaims, ¶ 36.) Orlos never disputed that Withers and Ford were the inventors. (*Id*.) Orlos told Withers that Horizon would seek patent protection for its manufacturing of the device because it was "utilizing Cequent's 'mounting pads.'" (*Id*. at Amended Counterclaims, ¶ 37.) Horizon did not claim to have invented the combination underbed hitch. (*Id*.)

The patent examiner rejected Horizon's '050 Patent as being anticipated by Ford's '968 Patent. (*Id*. at Amended Counterclaims, ¶ 40.) In response, on August 28, 2017, Stanifer executed a declaration that "[t]he drawings of Exhibit A [the sketch] demonstrate our conception of the claimed subject matter [of the Horizon '050 Patent] before the effective date of the [Ford '317 Patent] of May

5

30, 2008 and [Ford's '968 Patent] of June 23, 2009." (*Id*. at Amended Counterclaims, ¶ 41.) Based on Stanifer's declaration, the patent examiner allowed Horizon's '050 Patent to issue. (*Id*. at Amended Counterclaims, ¶ 42.)

At the IPR, Stanifer testified that the sketch he submitted to the patent examiner "does not show the receiving members." (*Id*. at Amended Counterclaims, ¶ 44.) Horizon via its counsel also admitted at the IPR that because the "sketch doesn't disclose each and every limitation in the patent claims at issue, it is not evidence of a conception as of that date." (*Id*. at ¶ 45.)

The '585 Patent is a continuation of the '050 Patent and therefore covered by the same allegedly false inventor's oath that Withers and McCoy made about the '050 Patent on July 25, 2013. (*Id*. at Amended Counterclaims, ¶ 62.) Moreover, the '585 Patent was only allowed following Stanifer's allegedly false declaration on August 28, 2017, that he conceived of the '050 Patent before Ford's '317 and '968 Patents. (*Id*. at Amended Counterclaims, ¶¶ 69-71.)

## II. Request for Judicial Notice

The Court first addresses Horizon's Request for Judicial Notice. (Doc. No. 83.) Horizon filed this Motion contemporaneously with its Opposition. (Doc. No. 84.) Horizon asks the Court to take judicial notice of a list of 23 documents. (Doc. No. 83, PageID# 2300-02.) Each is "a United States Patent or published patent application history, an obituary notice published online by a funeral home, or was docketed in the related *inter partes* review proceeding." (*Id*. at PageID# 2300.) NSI does not oppose Horizon's Request for Judicial Notice.

Federal Rule of Evidence 201 reads, in relevant part, that "[t]he court may judicially notice *a fact* that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy

cannot reasonably be questioned." Fed. R. Evid. 201(b) (emphasis added). The court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c). And it "may take judicial notice at any stage of the proceeding." Fed. R. Evid. 201(d). When the court takes judicial notice of a fact, it "must instruct the jury to accept the noticed fact as conclusive." Fed. R. Evid. 201(f).

As the Rule makes clear, "courts do not take judicial notice of documents, they take judicial notice of facts." *Abu-Joudeh v. Schneider*, 954 F.3d 842, 848 (6th Cir. 2020). The *existence* of the patent application histories or the documents docketed in the IPR could be such "facts." *See id.* But it is unclear to the Court whether Horizon seeks judicial notice of the existence of these documents or of their contents. To the extent Horizon seeks judicial notice of the documents' contents, it must specify what facts it seeks notice of and why they are not subject to reasonable dispute. *See Platt v. Bd. of Comm'rs on Grievs. & Discipline of the Ohio Supreme Court*, 894 F.3d 235, 245 (6th Cir. 2018) (quoting *KBC Asset Mgmt. N.V. v. Omnicare, Inc. (In re Omnicare, Inc. Sec. Litig.)*, 769 F.3d 455, 467 (6th Cir. 2014)) ("a court may take notice of the documents and what they say, but it '[cannot] consider the statements contained in the document for the truth of the matter asserted.'").

Moreover, just because a court takes judicial notice of certain facts does not necessarily mean a court may consider those facts when ruling on a particular motion. Generally, when ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "the district court is confined to considering only the pleadings, or else it must convert the motion into one for summary judgment under Rule 56." *Elec. Merch. Sys. LLC v. Gaal*, 58 F.4th 877, 883 (6th Cir. 2023).

Here, the Court is not ruling on a 12(b)(6) motion to dismiss. However, to analyze NSI's Motion for Leave to Amend, the Court may weigh the "futility of the proposed amendment." *Knight*

7

*Capital Partners Corp. v. Henkel AG & Co., KGaA*, 930 F.3d 775, 786 (6th Cir. 2019).  And futility is determined by whether the proposed amendment could "withstand a Rule 12(b)(6) motion to dismiss."  *Parchman v. SLM Corp.*, 896 F.3d 728, 738 (6th Cir. 2018) (quoting *Beydoun v. Sessions*, 871 F.3d 459, 469 (6th Cir. 2017)).  As such, even though there is not a motion to dismiss before the Court, the Court will nonetheless undertake a 12(b)(6) analysis for purposes of evaluating whether NSI's proposed amended answer and counterclaims are futile under a Rule 15(a) analysis.  When "undertaking a 12(b)(6) analysis" a court may "take judicial notice of 'matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint.'"  *Elec. Merch. Sys.*, 58 F.4th at 883 (quoting *Golf Vill. North, LLC v. City of Powell*, 14 F.4th 611, 617 (6th Cir. 2021)).  Yet a court may "consider public records for the truth of the statements contained within them only when the 'contents prove facts whose accuracy cannot reasonably be questioned."  *Id*. (quoting *Passa v. City of Columbus*, 123 F. App'x 694, 697 (6th Cir. 2005)).

Accordingly, if the Court takes judicial notice of facts in public records, it will so identify in its analysis of NSI's Motion for Leave to Amend, below.  Otherwise, the Court denies Horizon's blanket Request for Judicial Notice, without prejudice.

### III. Motion for Leave to Amend

#### A. Standard

Under Federal Rule of Civil Procedure 15(a), a court "should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2); *see also Morse v. McWhorter*, 290 F.3d 795, 799-800 (6th Cir. 2002).  "Though the decision to grant leave to amend is committed to the trial court's discretion, that discretion is limited by Fed. R. Civ. P. 15(a)'s liberal policy of permitting amendments to ensure the determination of claims on their merits."  *Marks v. Shell Oil Co.*, 830 F.2d 68, 69 (6th

Cir. 1987).  However, a motion for leave to amend a pleading "may be denied when the motion is the product of undue delay, bad faith, or dilatory motive, amendment would cause undue prejudice to the opposing party, the plaintiff repeatedly failed to cure deficiencies in the complaint with previous amendments, or amendment of the complaint would be futile." *Springs v. U.S. Dep't of Treasury*, 567 F. App'x 438, 443 (6th Cir. 2014) (citing *Riverview Health Inst. LLC v. Med. Mut. Of Ohio*, 601 F.3d 505, 520 (6th Cir. 2010)).

NSI argues that the Court should grant it leave to amend its answer and counterclaim because (a) there is no undue delay or bad faith; (b) there is no prejudice to Horizon; and (c) its counterclaims for inequitable conduct are sufficiently pled.  (Doc. No. 80, PageID# 2263-66.)  Horizon opposes NSI's Motion arguing that (a) NSI unduly delayed for 18 months before obtaining Withers's declaration; (b) the allegations in NSI's proposed amended counterclaims misrepresent the record; (c) NSI has repeatedly failed to plead inequitable conduct; and (d) NSI's proposed amended inequitable conduct counterclaims remain futile.  (Doc. No. 84, PageID# 3489-92.)  For the following reasons, the Court concludes that the Rule 15(a) factors weigh in favor of granting NSI's Motion for Leave to Amend.

B.     **Undue Delay**

NSI contends that there is no undue delay because discovery is still open and because it initially moved to amend its answer immediately after receiving Withers's declaration. (Doc. No. 80, PageID# 2263; *see also* Doc. No. 54-1.)  Horizon counters that the declarations of Stanifer and McCoy—the named inventors of the '050 Patent—have been available to NSI since Horizon filed this case, yet NSI waited 18 months before obtaining Withers's declaration.  (Doc. No. 84, PageID# 3489.)  In its Reply, NSI asserts that it obtained the declaration of Withers during the discovery period

and before a single deposition had been taken in this case, and even then, in a September 21, 2021, email, Horizon's then counsel accused NSI's counsel of unethical conduct in contacting Ford and Withers. (Doc. No. 85, PageID# 3509-10; Doc. No. 85-1.) According to NSI, it is ironic that Horizon now asserts that NSI should have contacted Withers and obtained his declaration sooner. (Doc. No. 85, PageID# 3510.)

Horizon cites two cases to support its contention that there is undue delay on NSI's part due to its delay in obtaining Withers's declaration. (Doc. No. 84, PageID# 3489.) The first case is *Benzon v. Morgan Stanley Distribs.*, 420 F.3d 598 (6th Cir. 2005), where the Sixth Circuit found no error in the district court's denial of the plaintiffs' motion to amend the complaint. However, in *Benzon* the plaintiffs moved for leave to amend their claims after the trial court had entered judgment for the defendants. *Id*. at 612. The Sixth Circuit recognized that such a post-judgment motion to amend requires the court to "also take into consideration the competing interest of protecting the 'finality of judgments and the expeditious termination of litigation.'" *Id*. at 613 (quoting *Morse v. McWhorter*, 290 F.3d at 800). Moreover, the Sixth Circuit noted that the plaintiffs had already been permitted twice to amend the complaint, prior to the entry of judgment against them, and that plaintiffs had not claimed that new facts emerged to justify their delay in seeking to amend the complaint. *Id*. Here, there has been no judgment entered, and NSI has not been given leave to file an amended counterclaim twice, so *Benzon* does not help Horizon's argument.

The second case is *Doe v. Mich. State Univ.*, 989 F.3d 418 (6th Cir. 2021). In *Doe*, the Sixth Circuit affirmed the trial court's denial of the plaintiff's motion to amend because "the facts that [the plaintiff] sought to add in his [second amended complaint] were available to [the plaintiff] at the time of his first amendment, and that [the plaintiff] failed to offer any excuse for omitting them when he

10

first amended his complaint." *Id*. at 426.  Here, the facts NSI seeks to add—namely those from Withers's declaration—were available when NSI filed its first amended counterclaim for inequitable conduct, so this case supports Horizon's argument.

NSI has maintained that Horizon's '050 Patent is invalid and/or enforceable due to Horizon's inequitable conduct since NSI filed its first Answer in this case. (*See* Doc. No. 12, Counterclaims, ¶¶ 12-20.)  Upon Horizon's filing of a motion to dismiss NSI's inequitable conduct claim, NSI amended its Answer and Counterclaim for inequitable conduct. (*See* Doc. No. 25, Counterclaims, ¶¶ 19-32.) And the Court construed the allegations set forth therein as insufficient to withstand Horizon's motion to dismiss that Counterclaim.  Indeed, it was not until approximately 18 months after Horizon filed the case that NSI sought to amend its Counterclaim yet again, this time based on Withers's declaration.  While NSI argues that it is ironic that Horizon challenged NSI on it contacting Ford and Withers and obtaining Withers's declaration while at the same time asserting that NSI should have done so sooner, the following remains.  Since NSI did contact Withers and Ford 18 months after the Complaint was filed despite Horizon's subsequent objection to it doing so, NSI could have chosen to contact Withers and Ford much sooner.  Thus, the September 2021 email does not help NSI, but actually demonstrates that it was not until around September 2021 that NSI tried to contact Withers and Ford to support its inequitable conduct counterclaim.  Therefore, the Court concludes that NSI unduly delayed in obtaining Withers's declaration.

However, the Sixth Circuit has repeatedly held that "[d]elay, standing alone, is an insufficient basis for denying leave to amend, and this is true no matter how long the delay."  *Wallace Hardware Co. v. Abrams*, 223 F.3d 382, 409 (6th Cir. 2000).  Rather, "the delay must have resulted in prejudice to the party opposing the motion."  *Tefft v. Seward*, 689 F.2d 637, 639 n.2 (6th Cir. 1982).

Accordingly, NSI's delay is an insufficient basis to deny NSI's Motion for Leave to Amend absent a showing of prejudice, which the Court will consider next.

### C. Undue Prejudice

NSI argues that there is no undue prejudice because its claims "for invalidity, for inequitable conduct, and for improper inventorship all arise from the same facts." (Doc. No. 80, PageID# 2263.) Horizon responds that it will suffer prejudice because McCoy, who was not named in NSI's previous counterclaims, is named in NSI's instant proposed counterclaims and is now dead. (Doc. No. 84, PageID# 3489.)

McCoy died on January 4, 2022.[1] (Doc. No. 83-1.) NSI initially filed its Motion for Leave to Amend on September 24, 2021—in other words, before McCoy died. (Doc. No. 59.) Horizon does not explain how it will suffer prejudice due to McCoy's death other than to write that "NSI cannot dispute" the prejudice. Courts generally find prejudice where discovery is closed and dispositive motions are complete. *See, e.g., Church Joint Venture, L.P. v. Blasingame*, 947 F.3d 925, 934 (6th Cir. 2020) (finding prejudice where there was a five-year delay, discovery deadlines had long passed, and the matter was scheduled for trial); *see also Siegner v. Twp. of Salem*, 654 F. App'x 223, 228 (6th Cir. 2016) (finding prejudice where plaintiff moved to amend a month after the dispositive motion deadlines and two months after the close of discovery).

Here, without more explanation of how McCoy's death prejudices Horizon and given the early stage of discovery in this case, the Court finds that there is no prejudice to Horizon in allowing NSI to amend its counterclaims. *See dlhBOWLES, Inc. v. Jiangsu Riying Elecs. Co., Ltd.*, 2022 U.S. Dist.

---

[1] In its Request for Judicial Notice, Horizon asks the Court to take notice of McCoy's death on January 4, 2022. (Doc. Nos. 83, 83-1.) This fact is appropriate for judicial notice under Federal Rule of Evidence 201, so the Court takes notice of it.

LEXIS 678 at *11 (N.D. Ohio Jan. 3, 2022) (Lioi, J.) (in a patent case, allowing amendment for new infringement claims where discovery was still in its early stages); *see also Morse*, 290 F.3d at 801 (finding no prejudice where opposing party was not faced with duplicative discovery, did not have to revise any strategy because of the proposed amendments, and where moving party's amendment did not add new substantive claims).

### D.      Bad Faith

Horizon contends that NSI's allegation in its proposed amended counterclaim that "Horizon, Stanifer, and its prior litigation counsel made several misrepresentations to this Court" is unjustified and made in bad faith.  (Doc. No. 84, PageID# 3491; *see also* Doc. No. 80-2, Amended Counterclaims, ¶ 47.)  But the factor for the Court to consider is whether NSI acted in bad faith by filing the motion, not whether the allegations in its proposed amendment lack factual justification. *See Knight Capital Partners*, 930 F.3d at 786 ("the district court may weigh . . . bad faith in filing the motion").

Whether the allegations in NSI's proposed amended counterclaims have evidentiary support is a factual question not appropriately addressed at this stage.  This factor weighs in NSI's favor.

### E.      Repeated Failure to Cure

Horizon contends that two of NSI's new counterclaims fail to "rehabilitat[e] the problems noted in the Court's prior Order dismissing those claims," and that they "merely recast the same theory using different language." (Doc. No. 84, PageID# 3491.)  The Court disagrees for the reasons provided in the next section.  Moreover, the instant Motion for Leave to Amend is NSI's first attempt at curing the deficiencies the Court noted in its Order dismissing NSI's previous counterclaims. *Cf. Gerber v. Ohio N. Univ.*, 2015 U.S. Dist. LEXIS 56767 at *39 (N.D. Ohio Apr. 30, 2015) (denying

motion for leave to amend where plaintiff previously filed four substantially similar complaints, all of which were dismissed). Accordingly, this factor also weighs in NSI's favor.

### F. Futility

The final factor is futility. A proposed amendment is futile when it "would not survive a motion to dismiss" under Rule 12(b)(6). *Banerjee v. Univ. of Tenn.*, 820 F. App'x 322, 329 (6th Cir. 2020) (quoting *Thiokol Corp. v. Dep't of Treasury, State of Mich., Revenue Div.*, 987 F.2d 376, 383 (6th Cir. 1993)). In short, under Rule 12(b)(6), the Court must accept NSI's factual allegations as true and construe the counterclaims in the light most favorable to NSI. *See Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009). For NSI's counterclaims to survive a motion to dismiss under this Rule, they "must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56, 570 (2007)).

In its previous Order dismissing NSI's counterclaims, the Court explained the elements of inequitable conduct as follows.

> "'[I]nequitable conduct, while a broader concept than fraud, must be pled with particularity' under Rule 9(b)." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326 (Fed. Cir. 2009) (quoting *Ferguson Beauregard/Logic Controls, Div. of Dover Resources, Inc. v. Mega Sys., LLC*, 350 F.3d 1327, 1344 (Fed. Cir. 2003)). Thus, "[a] pleading that simply avers the substantive elements of inequitable conduct, without setting forth the particularized factual bases for the allegation," is insufficient. *Id*. at 1326-27.
>
> "The substantive elements of inequitable conduct are: (1) an individual associated with the filing and prosecution of a patent application made an affirmative misrepresentation of a material fact, failed to disclose material information, or submitted false material information; and (2) the individual did so with a specific intent to deceive the PTO." *Id*. at 1327 n.3. With respect to the second element, "although 'knowledge' and 'intent' may be averred generally, a pleading of

> inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." *Id*. at 1328-29. "Because direct evidence of deceptive intent is rare, a district court may infer intent from indirect and circumstantial evidence." *Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011). However, the Court also may take into account "any objective indications of candor and good faith." *Exergen*, 575 F.3d at 1329 n.5.

(Doc. No. 46, PageID# 354-55.)

Horizon argues that NSI's counterclaims remain futile for two reasons: (1) "NSI's new counterclaims lack Rule 9(b)'s required 'who, what, when, where, and how'" and (2) "NSI still has no proof of intent to deceive the USPTO or this Court." (Doc. No. 84, PageID# 3492.) As noted above, the Court dismissed NSI's previous counterclaims because "NSI [did] not allege that Stanifer and his coinventor did not actually conceive of the receiving members prior to the filing dates for the Ford Patents," and because "Stanifer's allegedly false representation to the PTO examiner was in the form of a single statement . . . that was easily verifiable by the examiner." (Doc. No. 46, PageID# 355-56.) For the following reasons, the Court concludes that NSI's proposed amended counterclaims cure these deficiencies and satisfy Rule 9(b).

First, NSI's proposed amended counterclaims satisfy the "identification of the specific who, what, when, where, and how of the material representation or omission committed before the [US]PTO." *Kaszuba v. Iancu*, 823 F. App'x 973, 979 (Fed. Cir. 2020) (quoting *Exergen*, 575 F.3d at 1328).

The "who" requires NSI to identify the specific individual associated with prosecuting the patents, who both knew of the material information and deliberately withheld it. *Exergen*, 575 F.3d at 1339. NSI alleges that it was Horizon's employees, Stanifer and McCoy, who knew of Ford's prior

design that they claimed as their own. (Doc. No. 80-2, Amended Counterclaims, ¶¶ 27, 28, 33-35, 41). NSI has thus satisfied the "who."

Horizon argues that NSI never identifies "when" Withers designed the combination hitch for Ford, other than to allege it was "[d]uring Ford's development of its 2011 Model Year Super Duty pickup truck." (Doc. No. 84, PageID# 3480-81.) True, but that is not the focus of the "when" requirement. Rather, it requires an allegation "when the alleged inequitable conduct occurred." *Tecnomatic S.p.A. v. ATOP S.p.A.*, 2021 U.S. Dist. LEXIS 74054 at *15 (E.D. Mich. Feb. 24, 2021) (citing *Planet Bingo, LLC v. VKGS, LLC*, 2012 U.S. Dist. LEXIS 162496 at *10 (W.D. Mich. Nov. 14, 2012)). NSI alleges that Stanifer and McCoy made their allegedly false inventor oaths on July 25, 2013, and that Stanifer made his later allegedly false declaration to the USPTO on August 28, 2017. (Doc. No. 80-2, Amended Counterclaims, ¶¶ 33-35, 41). NSI has thus satisfied the "when" as well.

The "what, where, and how" of Counterclaim V are Stanifer's and McCoy's allegedly false declarations that they invented the combination hitch before Ford, which allowed the '050 Patent to issue. (Doc. No. 80-2, Proposed Amended Counterclaims, ¶¶ 33-35, 38.) *Cf. Webasto Thermo & Comfort N. Am., Inc. v. BesTop, Inc.*, 326 F. Supp. 3d 521, 530 (E.D. Mich. 2018) (dismissing inequitable conduct counterclaim where the defendant failed to identify the "who" and what knowledge they had of the prior art.) As for Counterclaim VI, the "what, where, and how" are Stanifer's allegedly false declaration that his sketch discloses "the claimed 'receiving members,'" but for which the examiner would not have allowed the '050 Patent to issue. (Doc. No. 80-2, Amended Counterclaims, ¶¶ 42, 43.) Therefore, NSI has satisfied all of Rule 9(b)'s pleading requirements.

Second, NSI's proposed amended counterclaims also satisfy the final element of inequitable conduct: specific intent to deceive the USPTO. In Counterclaim V, NSI alleges that Withers, while working for Ford, designed the combination hitch that Stanifer and McCoy later declared was their own invention. (Doc. No. 80-2, Amended Counterclaims, ¶¶ 28, 31, 33.) It also alleges that Withers disclosed his design to Stanifer and Horizon, "with all of the measurements necessary for the rails and castings to meet Ford's requirements." (*Id*. at Amended Counterclaims, ¶ 28.) It is reasonable to infer from these allegations that Stanifer and McCoy knew that Withers was the original inventor of the combination hitch, and that their declarations that they were the original inventors were false and intended to deceive the USPTO.

In Counterclaim VI, NSI alleges that when the USPTO rejected Horizon's '050 Patent, Stanifer again committed inequitable conduct by declaring that his sketch demonstrated that he conceived of the combination hitch before the effective dates of Ford's Patents. (*Id*. at ¶ 40-42.) Given the previous allegations that Ford disclosed its design to Stanifer and Horizon, it is reasonable to infer that Stanifer's declaration was false and made with the intent to deceive the USPTO.

Whether NSI can prove any of these allegations on the merits is not the Court's concern at this stage. *See Kazsuba*, 823 F. App'x at 979. Rather, the Court looks "to whether [NSI] has pled its fraud claim with particularity." *Id*. The Court concludes that it has.[2]

---

[2] Counterclaims VII and VIII make the same allegations as Counterclaims V and VI but as to the '585 Patent. Both parties agree that the '585 Patent is a "continuation" of the '050 Patent. (*See, e.g.*, Doc. No. 80-2, Amended Counterclaims, ¶¶ 51; Doc. No. 84, PageID# 3480.) "[I]nequitable conduct 'early in the prosecution may render unenforceable all claims which eventually issue from the same or a related application.'" *Agfa Corp. v. Creo Prods.*, 451 F.3d 1366, 1379 (Fed. Cir. 2006) (quoting *Fox Indus. v. Structural Pres. Sys.*, 922 F.2d 801, 804 (Fed. Cir. 1990)). So, the analysis of Counterclaims V and VI is equally applicable to Counterclaims VII and VIII.

Since NSI's proposed amended counterclaims are not futile, its proposed affirmative defense of inequitable conduct (Doc. No. 80-2, Affirmative Defenses, ¶ 8) is also not futile. (Doc. No. 46, PageID# 356-57.) *See also Terves LLC v. Yueyang Aero. New Materials Co.*, 2021 U.S. Dist. LEXIS 46893 at *3 (N.D. Ohio Mar. 12, 2021) (quoting *Medline Indus. v. C.R. Bard, Inc.*, 2016 U.S. Dist. LEXIS 139689, at *10 (N.D. Ill. Oct. 7, 2016)) ("[I]nequitable conduct counterclaims and affirmative defenses of inequitable conduct rise or fall together.").

Accordingly, the Rule 15(a) factors weigh in favor of allowing NSI to amend its answer and counterclaims.

## IV. Conclusion

For the reasons set forth above, the Court GRANTS NSI's Motion for Leave to Amend (Doc. No. 80) and DENIES, without prejudice, Horizon's Request for Judicial Notice. (Doc. No. 83.)

**IT IS SO ORDERED.**

Date: October 23, 2023

                                                *s/Pamela A. Barker*
                                                PAMELA A. BARKER
                                                U.S. DISTRICT JUDGE