IN THE UNITED STATES DISTRICT COURT
FOR NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| HORIZON GLOBAL AMERICA, INC., | ) | CASE NO.  1:20-CV-00310-PAB |
| | ) | |
| Plaintiff, | ) | JUDGE PAMELA A. BARKER |
| | ) | |
| v. | ) | **Jury Demand Endorsed Hereon** |
| | ) | |
| NORTHERN STAMPING, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT NORTHERN STAMPING, INC.'S THIRD AMENDED ANSWER TO FIRST AMENDED COMPLAINT AND COUNTERCLAIMS

Defendant Northern Stamping, Inc. ("NSI") answers Plaintiff Horizon Global America, Inc.'s ("Horizon") First Amended Complaint by denying each allegation unless specifically admitted below:

1.      NSI admits that the action purports to be one for patent infringement. NSI denies that it infringes the '050 patent and the '585 patent, but lacks sufficient information to remaining allegations of paragraph 1 and therefore denies them.

2.      NSI lacks sufficient information to respond to the allegations of paragraph 2 and therefore denies them.

3.      While this paragraph states a legal conclusion to which no response is required, NSI denies the allegations of paragraph 3.

4.      NSI lacks sufficient information to respond to the allegations of paragraph 4 and therefore denies them.

5.      NSI admits that Northern Stamping Co. is a Delaware corporation, registered as a foreign corporation with the Ohio Secretary of State, doing business as Northern Stamping, Inc.,

with a principal place of business at 6600 Chapek Parkway, Cuyahoga Heights, OH 44125. To the extent this paragraph states a legal conclusion, no response is required.

## ANSWER TO "JURISDICTION AND VENUE"

6.      While this paragraph states a legal conclusion to which no response is required, NSI denies the allegations of paragraph 6.

7.      While this paragraph states a legal conclusion to which no response is required, NSI denies the allegations of paragraph 7.

8.      While this paragraph states a legal conclusion to which no response is required, NSI denies the allegations of paragraph 8.

## ANSWER TO RELEVANT FACTS

9.      NSI lacks sufficient information to respond to the allegations of paragraph 9 and therefore denies them.

10.     NSI lacks sufficient information to respond to the allegations of paragraph 10 and therefore denies them.

11.     NSI lacks sufficient information to respond to the allegations of paragraph 11 and therefore denies them.

12.     NSI lacks sufficient information to respond to the allegations of paragraph 12 and therefore denies them.

13.     NSI lacks sufficient information to respond to the allegations of paragraph 13 and therefore denies them.

14.     NSI lacks sufficient information to respond to the allegations of paragraph 14 and therefore denies them.

15.     NSI denies the allegations of paragraph 15.

16.     NSI denies the allegations of paragraph 16.

17.     NSI lacks sufficient information to respond to the allegations of paragraph 17 and therefore denies them.

18.     NSI lacks sufficient information to respond to the allegations of paragraph 18 and therefore denies them.

19.     NSI denies the allegations of paragraph 19.

20.     NSI denies the allegations of paragraph 20.

21.     NSI lacks sufficient information to respond to the allegations of paragraph 21 and therefore denies them.

22.     NSI lacks sufficient information to respond to the allegations of paragraph 22 and therefore denies them.

23.     NSI denies the allegations of paragraph 23.

24.     NSI denies the allegations of paragraph 24.

25.     NSI denies the allegations of paragraph 25.

26.     NSI denies the allegations of paragraph 26.

27.     NSI admits it engaged in communication with Horizon, but denies the remaining allegations of paragraph 27.

28.     NSI denies the allegations of paragraph 28.

29.     NSI denies the allegations of paragraph 29.

## ANSWER TO COUNT I
### Infringement of the '050 Patent

30.     NSI incorporates its responses to the allegations in paragraphs 1 through 29 of the complaint fully.

31.     NSI denies the allegations in paragraph 31.

32.     NSI denies the allegations in paragraph 32.

33.     NSI denies the allegations in paragraph 33.

34.     NSI denies the allegations in paragraph 34.

35.     NSI denies the allegations in paragraph 35.

36.     NSI denies the allegations in paragraph 36.

37.     NSI denies the allegations in paragraph 37.

38.     NSI denies the allegations in paragraph 38.

39.     NSI denies the allegations in paragraph 39.

40.     NSI denies the allegations in paragraph 40.

41.     NSI denies the allegations in paragraph 41.

42.     NSI denies the allegations in paragraph 42.

## ANSWER TO COUNT II
### Infringement of the '585 Patent

43.     NSI incorporates its responses to the allegations in paragraphs 1 through 42 of the

complaint fully.

44.     NSI denies the allegations in paragraph 44.

45.     NSI denies the allegations in paragraph 45.

46.     NSI denies the allegations in paragraph 46.

47.     NSI denies the allegations in paragraph 47.

48.     NSI denies the allegations in paragraph 48.

49.     NSI denies the allegations in paragraph 49.

50.     NSI denies the allegations in paragraph 50.

51.     NSI denies the allegations in paragraph 51.

52.     NSI denies the allegations in paragraph 52.

53.     NSI denies the allegations in paragraph 53.

54.     NSI denies the allegations in paragraph 54.

55.     NSI denies the allegations in paragraph 55.

## ANSWER TO PRAYER FOR RELIEF

NSI specifically controverts the requests set forth in paragraphs (A) through (K) in the section of the First Amended Complaint titled "PRAYER FOR RELIEF," and denies that Horizon is entitled to any relief whatsoever.

## AFFIRMATIVE DEFENSES

1.      NSI has not and does infringe any claim of the '050 patent and the '585 patent either directly or indirectly and either literally or under the doctrine of equivalents.

2.      Plaintiff lacks standing to bring this suit.

3.      The First Amended Complaint fails to state a claim upon which relief can be granted.

4.      Plaintiff's claims lack merit and are otherwise exceptional under 35 U.S.C. § 285.

5.      Plaintiff's claims for relief and for damages are limited by 35 U.S.C. §§ 286 and 287.

6.      Plaintiff's claims are barred in whole or in part by laches, license, waiver, and/or estoppel.

7.      The claims of the '050 patent and the '585 patent are invalid under the patent laws, including but not limited to 35 U.S.C. §§ 101, 102, 103 and/or 112, paragraphs 1 and 2.

8.      The claims of the '050 patent and the '585 patent are unenforceable under the patent laws because of inequitable conduct as explained in the Counterclaim below.

## AMENDED COUNTERCLAIMS IN REPLY

1.      Defendant Northern Stamping Inc. ("NSI") files its Counterclaims in Reply against Plaintiffs as follows:

2.      NSI incorporates by reference its Answer to Horizon's First Amended Complaint.

3.      Horizon sued NSI in the present action, alleging infringement of the '050 patent and the '585 patent. Thus, an immediate, real, and justiciable controversy exists between Horizon and NSI with respect to the alleged infringement, validity, and enforceability of the '050 patent and the '585 patent.

4.      NSI is entitled to a judicial declaration that NSI does not infringe, directly or indirectly, any claim of the '050 patent and the '585 patent, that the '050 patent and the '585 patent are invalid, and that the '050 patent and the '585 patent are unenforceable.

## COUNTERCLAIM I:  COUNTERCLAIM OF INVALIDITY OF THE '050 PATENT

5.      NSI incorporates by reference its Answer to Horizon's First Amended Complaint and Paragraphs 1 through 4 of its Counterclaims In Reply.

6.      One or more claims of the '050 patent is invalid for failing to meet one or more of the requirements under Title 35 of the United States Code, including, but not limited to, 35 U.S.C. §§ 101–103 and/or 112, paragraphs 1 and 2.

7.      Specifically, one or more claims of the '050 patent is invalid as being anticipated by U.S. Patent No. 7,793,968 to Ford Global Technologies, LLC ("Ford Patent").  The Ford Patent discloses all of the claimed elements of the claims of the '050 patent.

8.      Moreover, one or more claims of the '050 patent are invalid as being obvious over U.S. Patent No. 6,969,090 to Works; U.S. Patent No. 6,467,791 to Fandrich; US Patent No.

7,121,573 to Lindenman; and U.S. Patent No. 7,828,317 to Withers. *See* Final Decision, IPR2021-01411, previously filed as ECF 67-1.

9.      Based upon the foregoing, NSI is entitled to a judicial declaration that the '050 patent is invalid.

## COUNTERCLAIM II:  COUNTERCLAIM OF INVALIDITY OF THE '585 PATENT

10.      NSI incorporates by reference its Answer to Horizon's First Amended Complaint and Paragraphs 1 through 9 of its Counterclaims in Reply.

11.      One or more claims of the '585 patent is invalid for failing to meet one or more of the requirements under Title 35 of the United States Code, including, but not limited to, 35 U.S.C. §§ 101–103 and/or 112, paragraphs 1 and 2.

12.      Specifically, one or more claims of the '585 patent is invalid as being anticipated by the Ford Patent.  The Ford Patent discloses all of the claimed elements of the claims of the '585 patent.

13.      Moreover, one or more claims of the '585 patent are invalid as being obvious over U.S. Patent No. 6,969,090 to Works; U.S. Patent No. 6,467,791 to Fandrich; US Patent No. 7,121,573 to Lindenman; and U.S. Patent No. 7,828,317 to Withers. *See* Final Decision, IPR2021-01411, ECF 67-1.

14.      Based upon the foregoing, NSI is entitled to a judicial declaration that the '585 patent is invalid.

## COUNTERCLAIM III:  COUNTERCLAIM OF NONINFRINGEMENT OF THE '050 PATENT

15.      NSI incorporates by reference its Answer to Horizon's Complaint and Paragraphs 1 through 14 of its Counterclaims in Reply.

16.     NSI does not infringe, has not infringed, and does not and has not induced infringement or contributed to infringement of any claim of the '050 patent under any theory, including literal infringement and infringement under the doctrine of equivalents.

17.     Based upon the foregoing, NSI is entitled to a judicial declaration that it does not infringe the '050 patent.


## COUNTERCLAIM IV:  COUNTERCLAIM OF NONINFRINGEMENT OF THE '585 PATENT

18.     NSI incorporates by reference its Answer to Horizon's Complaint and Paragraphs 1 through 17 of its Counterclaims in Reply.

19.     NSI does not infringe, has not infringed, and does not and has not induced infringement or contributed to infringement of any claim of the '585 patent under any theory, including literal infringement and infringement under the doctrine of equivalents.

20.     Based upon the foregoing, NSI is entitled to a judicial declaration that it does not infringe the '585 patent.

## COUNTERCLAIM V:  COUNTERCLAIM OF INVALIDITY, INEQUITABLE CONDUCT AND UNENFORCEABILITY OF THE '050 PATENT BASED ON A FALSE INVENTOR'S OATH

21.     NSI incorporates by reference its Answer to Horizon's Complaint and Paragraphs 1 through 20 of its Counterclaims in Reply.

22.     The claims of the '050 patent are unenforceable under the patent laws as a result of the inequitable conduct of the named inventors of the '050 Patent, Eric Stanifer and Richard McCoy, in executing knowingly false Inventor Oaths, for submission to the Patent Office

through Horizon's patent prosecution counsel, in connection with its patent application that resulted in the '050 patent.

23.     The claims are also invalid for failure to name the correct inventor, Sean Withers.

24.     NSI incorporates by reference the facts alleged in Mr. Sean Withers August 27, 2021 Declaration, previously filed as ECF 54-1.

25.     While developing the Ford Motor Company's 2011 Model Year Super Duty pickup truck, Ford decided it wanted to develop an underbed hitch mounting system for its vehicle. A Ford marketing team conducted a meeting to discuss whether it should develop a fifth wheel hitch or a gooseneck hitch.  Harry Rawlins, a Ford employee present at that meeting, suggested that the underbed hitch mounting system should consist of both a fifth wheel hitch and a gooseneck hitch. *See* Withers Decl, ¶¶ 5-7, ECF 54-1.

26.     Ford tasked its then-engineer, Mr. Sean Withers, with developing this combination underbed gooseneck/fifth wheel hitch mounting device. *Id*. at ¶ 8. Being familiar with then existing fifth wheel hitches and gooseneck hitches, Mr. Withers conceived of a combination underbed gooseneck/fifth wheel hitch mounting system. *See id*. at ¶¶ 9-10. Because the then existing fifth wheel hitches and gooseneck hitches had a similar footprint, the combination hitch conceived of by the Mr. Withers included "a gooseneck hitch connected to an underbed fifth wheel hitch system so that the goose-ball would be positioned in between the four mounting pads of an underbed fifth wheel hitch." *Id*. at ¶ 10

27.     After conceiving of this combination underbed gooseneck/fifth wheel hitch, Ford then contacted several auto parts manufacturers to inquire about having them manufacture this product. *Id*. at ¶ 11.  Ford ultimately settled on Cequent (now Horizon) as the manufacturer. *Id*. Ford and Horizon then worked together to prepare this product for manufacture. *Id*. at ¶ 12.  In

fact, Mr. Withers worked directly with Horizon Global employee Eric Stanifer during this process. *Id.*

28.     An early prototype, which Mr. Withers refers to as an H-shaped plate design, did not pass Ford's durability requirements. *Id.* at ¶ 13. In response to those failures, Mr. Withers determined that castings would better transfer the load from the mounting pads to the truck frame. *Id.* at ¶ 14. He also determined that the castings would be mounted to transverse bars to create rails, and that each rail would have a casting on each side, with one mounting pad positioned on each casting. *Id.* Mr. Withers disclosed this design to Horizon, including Mr. Stanifer, and Ford provided Horizon, including Mr. Stanifer, with all of the measurements necessary for the rails and castings to meet Ford's requirements. *Id.* at ¶ 15. With these instructions, Horizon manufactured this combination hitch (i.e., the "Casting Design") for Ford. *Id.* at ¶ 16.

29.     For conceiving of these inventions, Mr. Withers is the named inventor on two patents directed to this combination underbed gooseneck/fifth wheel hitch mounting system: U.S. Patent Nos. 7,828,317 ("'317 Patent") and 7,793,968 ("'968 Patent"). *Id.* at ¶ 17.

30.     Mr. Withers's '968 Patent discloses the Casting Design.

31.     As Mr. Withers's explained in his sworn declaration, Horizon's '050 Patent discloses the same Casting Design hitch that Mr. Withers invented, and that he and his Ford colleagues shared with Horizon. *Id.* at ¶ 18.

32.     Mr. Withers's allegation is supported by a simple comparison of the near identical designs between Figure 1 of Ford's '968 patent and Figure 4 Horizon's 050 Patent:

| Ford '968 Patent | Horizon '050 Patent |
|---|---|



33.     On July 25, 2013, Horizon employees Eric Stanifer and Richard McCoy each executed a declaration ("Inventor Oath") asserting that they each conceived of the inventions claimed in the '050 patent.  *See* Inventor Oath, previously filed as ECF :

> Title of Invention: Underbed Hitch Mounting System
>
>       As the below named inventor, I hereby declare that this declaration is directed to the attached application.
>
>       The above-identified application was made or authorized to be made by me.
>
>       I believe that I am the original inventor or an original joint inventor of a claimed invention in the application.

(Inventor's Oath, p. 2, ECF 59-3)

34.     Mr. Stanifer knowingly and falsely declared that he was the "original inventor" of the combination underbed hitch mounting system. Mr. Stanifer makes no mention in his Inventor

Oath, or in his patent application, of Mr. Withers's or Ford's actual inventorship. *Id*.; *see also* Provisional Application for '050 Patent, previously filed as ECF 18-2, *passim*.

35.     Mr. Stanifer's listed co-inventor of the '050 patent, Mr. Richard McCoy, similarly knowingly and falsely declared that he was the "original inventor" of the combination underbed hitch mounting system. Mr. McCoy makes no mention in his Inventor Oath, or in his patent application, of Mr. Withers's or Ford's actual inventorship. *See* Inventor Oath, ECF 59-3; *see also* Provisional Application for '050 Patent, previously filed as ECF 18-2, *passim*.

36.     After Ford sought patent protection for its combination underbed hitch mounting invention, Mr. Withers informed Horizon, through its account manager Mike Orlos, that Ford was seeking patent protection for the invention. Mr. Orlos never disputed that Mr. Withers and Ford invented the combination underbed hitch. *Id*. at ¶ 20.

37.     Mr. Orlos told Mr. Withers that Horizon Global would seek "some form of patent protection" for its manufacturing of the device because it was utilizing Cequent's "mounting pads." Horizon never claimed to Ford that it actually invented the combination underbed hitch. *Id*.

38.     An inventor oath is a requirement for the filing and issuance of a patent.  Absent the execution of either of the knowingly false Inventor Oaths the '050 Patent would not have issued.  Therefore, the above facts are sufficient to demonstrate the invalidity and unenforceability of the '050 Patent.

**COUNTERCLAIM VI: COUNTERCLAIM OF INEQUITABLE CONDUCT AND UNENFORCEABILITY OF THE '050 PATENT BASED ON A FALSE DECLARATION**

39.     NSI incorporates by reference its Answer to Horizon's Complaint and Paragraphs 1 through 38 of its Counterclaims in Reply.

40.     In addition to these knowingly false Inventor Oaths, there is an additional basis for demonstrating Mr. Stanifer's inequitable conduct in the prosecution of the '050 patent. That Ford's '968 Patent and the '050 Patent cover the same invention was not lost on the patent examiner of the application that resulted in the '050 Patent. The examiner rejected Horizon's patent application as being anticipated by Ford's '968 Patent. The examiner also rejected the '050 patent as obvious based on the Ford '317 Patent. The Ford patents are thus but-for material prior art.

41.     On August 28, 2017, in response to this rejection, Mr. Stanifer executed a declaration for submission to the Patent Office ("Stanifer Declaration") by his patent counsel. In order to overcome the examiner's rejection, Mr. Stanifer declared that "[t]he drawings of Exhibit A demonstrate our conception of the claimed subject matter [of the Horizon '050 patent] before the effective date of the [Ford's '317 Patent] of May 30, 2008 and [Ford's '968 Patent] of June 23, 2009." *See* ECF 18-1.

42.     As a result of the Stanifer Declaration and its Exhibit A, the examiner removed the rejection based on the Stanifer patents and the '050 patent was allowed to issue. ECF 18-1.

43.     Exhibit A to the declaration, shown below, does not however demonstrate the conception of the claimed subject matter because it fails to disclose the claimed "receiving member."



44.     Mr. Stanifer testified under oath in the IPR that the sketch does not show the

receiving members:

> Q?     I mentioned receiving members a few minutes ago. Are the receiving members
> shown in this sketch?
> A.     No, they're not.
> Q?     Are pucks [another name for receiving members] shown in this sketch?
>         A.   No, they are not.

Stanifer Dep. Tr., pp. 32:24-33:8, ECF 76-4 (objection omitted).

45.     In the IPR Horizon, Stanifer, and its prior litigation counsel admitted that the

Exhibit A to the Stanifer Declaration "does not contain the claimed receiving members," and that

Exhibit A "is not evidence of a conception as of that date:

> Evidence from both parties the Board already analyzed shows the May 2008
> sketch does not contain the claimed receiving members.  Because the May 2008
> sketch doesn't disclose each and every limitation in the patent claims at issue, it is
> not evidence of a conception as of that date.

Horizon Surreply in IPR, p. 14, ECF 67-3 (underlining in original)

46.     Thus, Mr. Stanifer's statement in the Stanifer Declaration that he and his co-inventor had conceived of the invention claimed in '050 patent was false and justifies an inference that the statement was made with the intent to deceive the Patent Office into issuing the '050 patent in error.

47.     Horizon, Stanifer, and its prior litigation counsel made several misrepresentations to this Court as well to cover up its deception before the Patent Office.  Horizon made the following false statements and others to the Court knowing them to be false:

> "The Conception Drawings **do** show the alleged missing receiving members and thus the Stanifer Declaration, on its face, is ***true***."  ECF 37, p. 2 (emphasis in original).

> "[I]t is ***impossible*** to argue with the fact that the drawings show the receiving member. *Id*., p. 4 (emphasis added).

> "[T]he only 'falsity' here is not in Stanifer's Declaration, but rather NSI's misrepresentation to the Court that the receiving members are not found in the Conception Drawings when in fact they are."  *Id*.

> "If NSI continues to pursue this baseless and debunked theory [that the Stanifer sketch does not show receiving members], then Horizon will pursue sanctions."  *Id*., p. 2, n.1.

48.     The knowingly false statements are further evidence of Horizon's misconduct before the Patent Office and further confirm that the '050 patent was obtained through Mr. Stanifer's, Horizon's, and or its counsels' inequitable conduct.

49.     The '050 patent is thus unenforceable.

**COUNTERCLAIM VII:  COUNTERCLAIM OF INVALIDITY, INEQUITABLE CONDUCT AND UNENFORCEABILITY OF THE '585 PATENT BASED ON A FALSE INVENTOR'S OATH**

50.     NSI incorporates by reference its Answer to Horizon's Complaint and Paragraphs 1 through 49 of its Counterclaims in Reply.

51.     The claims of the '585 patent are unenforceable under the patent laws as a result of the inequitable conduct of the named inventors of the '585 Patent, Eric Stanifer and Richard McCoy, in executing knowingly false inventor declarations, for submission to the Patent Office through Horizon's patent prosecution counsel, in connection with its patent application that resulted in the '050 patent.  The '585 patent is a continuation of the '050 patent.

52.     The claims are also invalid for failure to name the correct inventor, Sean Withers.

53.     NSI incorporates by reference the facts alleged in Mr. Sean Withers August 27, 2021 Declaration, ECF 54-1.

54.     While developing the Ford Motor Company's 2011 Model Year Super Duty pickup truck, Ford decided it wanted to develop an underbed hitch mounting system for its vehicle. A Ford marketing team conducted a meeting to discuss whether it should develop a fifth wheel hitch or a gooseneck hitch.  Harry Rawlins, a Ford employee present at that meeting, suggested that the underbed hitch mounting system should consist of both a fifth wheel hitch and a gooseneck hitch. *See* Withers Decl., ¶¶ 5-7, ECF 54-1.

55.     Ford tasked its then-engineer, Mr. Sean Withers, with developing this combination underbed gooseneck/fifth wheel hitch mounting device. *Id*. at ¶ 8. Being familiar with then existing fifth wheel hitches and gooseneck hitches, Mr. Withers conceived of a combination underbed gooseneck/fifth wheel hitch mounting system. *See id*. at ¶¶ 9-10.  Because the then existing fifth wheel hitches and gooseneck hitches had a similar footprint, the

combination hitch conceived of by the Mr. Withers included "a gooseneck hitch connected to an underbed fifth wheel hitch system so that the goose-ball would be positioned in between the four mounting pads of an underbed fifth wheel hitch." *Id*. at ¶ 10

56. After conceiving of this combination underbed gooseneck/fifth wheel hitch, Ford then contacted several auto parts manufacturers to inquire about having them manufacture this product. *Id*. at ¶ 11. Ford ultimately settled on Cequent (now Horizon) as the manufacturer. *Id*. Ford and Horizon then worked together to prepare this product for manufacture. *Id*. at ¶ 12. In fact, Mr. Withers worked directly with Horizon Global employee Eric Stanifer during this process. *Id*.

57. An early prototype, which Mr. Withers refers to as an H-shaped plate design, did not pass Ford's durability requirements. *Id*. at ¶ 13. In response to those failures, Mr. Withers determined that castings would better transfer the load from the mounting pads to the truck frame. *Id*. at ¶ 14. He also determined that the castings would be mounted to transverse bars to create rails, and that each rail would have a casting on each side, with one mounting pad positioned on each casting. *Id.* Mr. Withers disclosed this design to Horizon and Mr. Stanifer, and Ford provided Horizon, including Mr. Stanifer, with all of the measurements necessary for the rails and castings to meet Ford's requirements. *Id*. at ¶ 15. With these instructions, Horizon, including Mr. Stanifer, manufactured this combination hitch (i.e. the "Casting Design") for Ford. *Id*. at ¶ 16.

58. For conceiving of these inventions, Mr. Withers is the named inventor on two patents directed to this combination underbed gooseneck/fifth wheel hitch mounting system: U.S. Patent Nos. 7,828,317 ("'317 Patent") and 7,793,968 ("'968 Patent"). *Id*. at ¶ 17.

59. Mr. Withers's '968 Patent discloses the Casting Design.

60.     As Mr. Withers's explained in his sworn declaration, Horizon's '585 Patent discloses the same Casting Design hitch that Mr. Withers invented, and that he and his Ford colleagues shared with Horizon. *Id*. at ¶ 18.

61.     Mr. Withers's allegation is supported by a simple comparison of the near identical designs between Figure 1 of Ford's '968 patent and Figure 4 Horizon's '585 Patent:

| Ford '968 Patent | Horizon '585 Patent |
|---|---|



62.     On July 25, 2013, Horizon employees Eric Stanifer and Richard McCoy each executed a declaration ("Inventor Oath") asserting that they each conceived of the inventions claimed in the '050 patent. *See* Inventor Oath, ECF 59-3:

Title of Invention: Underbed Hitch Mounting System

     As the below named inventor, I hereby declare that this declaration is directed to the attached application.

     The above-identified application was made or authorized to be made by me.

     I believe that I am the original inventor or an original joint inventor of a claimed invention in the application.

ECF 59-3 at p. 2. Since the '585 patent is a continuation of the '050 patent it is covered by the same Inventor's Oath as the '050 patent.

63.     Mr. Stanifer knowingly and falsely declared that he was the "original inventor" of the combination underbed hitch mounting system. Mr. Stanifer makes no mention in his Inventor Oath, or in his patent application, of Mr. Withers's or Ford's actual inventorship. *Id*.; *see also* Provisional Application for '050 Patent, previously filed as ECF 18-2, *passim*.

64.     Mr. Stanifer's listed co-inventor of the '585 patent, Mr. Richard McCoy, similarly knowingly and falsely declared that he was the "original inventor" of the combination underbed hitch mounting system. Mr. McCoy makes no mention in his Inventor Oath, or in his patent application, of Mr. Withers's or Ford's actual inventorship. *See* Inventor Oath, ECF 59-3; *see also* Provisional Application for '050 Patent, previously filed as ECF 18-2, *passim*.

65.     After Ford sought patent protection for its combination underbed hitch mounting invention, Mr. Withers informed Horizon, through its account manager Mike Orlos, that Ford was seeking patent protection for the invention. Mr. Orlos never disputed that Mr. Withers and Ford invented the combination underbed hitch. *Id*. at ¶ 20.

66.     Mr. Orlos told Mr. Withers that Horizon Global would seek "some form of patent protection" for its manufacturing of the device because it was utilizing Cequent's "mounting

pads." Horizon never claimed to Ford that it actually invented the combination underbed hitch. *Id*.

67.     An inventor oath is a requirement for the filing and issuance of a patent.  Absent the execution of either of the knowingly false Inventor Oaths the '585 Patent would not have issued.  Therefore, the above facts are sufficient to demonstrate the invalidity and unenforceability of the '585 Patent.

## COUNTERCLAIM VIII:  COUNTERCLAIM OF INEQUITABLE CONDUCT AND UNENFORCEABILITY OF THE '585 PATENT BASED ON A FALSE DECLARATION

68.     NSI incorporates by reference its Answer to Horizon's Complaint and Paragraphs 1 through 67 of its Counterclaims in Reply.

69.     The '585 patent is a continuation of the '050 patent.

70.     The claims of the '585 patent were rejected based on the '050 patent and only allowed following the filing of a terminal disclaimer on October 22, 2019.

71.     Because of that terminal disclaimer, and the Stanifer Declaration filed during the prosecution of the '050 patent, the examiner did not consider the Ford '317 Patent or the Ford '968 Patent as prior art.  Neither Horizon nor the named inventors on the '585 patent informed the Patent Office that the Stanifer Declaration was false, that Horizon was not entitled to the conception date in the Stanifer Declaration, and that the Ford '317 Patent and the Ford '968 Patent were prior art.

72.     As a result, the '585 patent was wrongly allowed to issue.

73.     The '585 patent is thus unenforceable.

## REQUESTED RELIEF ON COUNTERCLAIMS

NSI respectfully requests this Court:

A.      Declare that NSI does not infringe any claim of the '050 patent or the '585 patent;

B.      Declare that all claims of the '050 patent and the '585 patent are invalid;

C.      Declare that all claims of the '050 patent and the '585 patent are unenforceable;

D.      Declare this case to be "exceptional" under 35 U.S.C. § 285 and award NSI reasonable attorneys' fees and costs; and,

E.      Award NSI any further relief this Court deems just and proper.

JURY TRIAL DEMANDED

Respectfully submitted,

/s/ *Jay R. Campbell*
Jay R. Campbell (0041293)
Carter S. Ostrowski (0102302)
TUCKER ELLIS LLP
950 Main Avenue, Suite 1100
Cleveland, OH 44113
Telephone:     216.592.5000
Facsimile:     216.592.5009
E-mail:          jay.campbell@tuckerellis.com
                 carter.ostrowski@tuckerellis.com

Ron N. Sklar
Dennis J. Abdelnour
HONIGMAN LLP
155 North Wacker Drive, Suite 3100
Chicago, IL 60606
(312) 701-9300
rsklar@honigman.com
dabdelnour@honigman.com

*Attorneys for Defendant Northern Stamping, Inc.*

## JURY DEMAND

Defendant Northern Stamping, Inc. hereby demands a trial by jury for all issues so triable.

Respectfully submitted,

/s/ *Jay R. Campbell*
Jay R. Campbell (0041293)
Carter S. Ostrowski (0102302)
TUCKER ELLIS LLP
950 Main Avenue, Suite 1100
Cleveland, OH 44113
Telephone:    216.592.5000
Facsimile:    216.592.5009
E-mail:        jay.campbell@tuckerellis.com
              carter.ostrowski@tuckerellis.com

*Attorneys for Defendant Northern Stamping, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on November 30, 2023, a copy of the foregoing document was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Respectfully submitted,

*/s/ Jay R. Campbell*
Jay R. Campbell (0041293)

*Attorneys for Defendant Northern Stamping, Inc.*

015892\000001\6083468.2