IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| HORIZON GLOBAL AMERICAS, INC. | ) | CASE NO. 1:20-cv-00310-PAB |
| | ) | |
| Plaintiff, | ) | JUDGE PAMELA A. BARKER |
| vs. | ) | |
| | ) | |
| NORTHERN STAMPING, INC. | ) | **MOTION OF DAVID B. CUPAR, ESQ.** |
| | ) | **TO QUASH SUBPOENA** |
| Defendant. | ) | |
| | ) | |

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, David B. Cupar, Esq. ("Cupar"), by and through counsel, hereby moves to quash the Subpoena served upon him by Northern Stamping, Inc. ("NSI"), a copy of which is attached hereto as Exhibit A (the "Subpoena").

NSI says it requires Cupar's deposition to support its forthcoming attorney fee motion. More specifically, it states that Cupar's cross-examination is necessary because McDonald Hopkins allegedly "made several statements to the Court that Horizon has since admitted were false," and those contested "filings including those false statements were signed by Mr. Cupar." (*See* Ex. B.) By its own admission, NSI already has the evidence it deems necessary for its fee motion: the court filings themselves. Any additional knowledge Cupar may have is shielded by attorney-client privilege and the work-product doctrine. Consequently, NSI's request for a deposition of opposing counsel lacks necessity—let alone the "crucial" need or other heightened showings mandated to depose opposing counsel by the *Shelton* test, as adopted by the Sixth Circuit in *Nationwide Mutual Insurance Co. v. Home Insurance Co.*, 278 F.3d 621 (6th Cir. 2002).

More specifically, Cupar states the grounds for this Motion as follows:

35835831.1

2

1. Cupar is an attorney-at-law and a member of McDonald Hopkins LLC ("McDonald Hopkins").

2. Cupar represented Plaintiff Horizon Global Americas Inc. ("Horizon") in this patent infringement lawsuit (the "Lawsuit"). On or about June 26, 2023, Cupar withdrew as counsel for Horizon (Doc. 75).

3. On or about February 21, 2025, counsel for NSI corresponded with the Managing Partner of McDonald Hopkins that he wished to depose Cupar in connection with a contemplated motion for attorneys' fees, citing unspecified fraudulent conduct on the part of Cupar as the reason. See Exhibit B. Undersigned counsel for Cupar requested that the deposition be held off pending a motion to dismiss filed by Horizon on NSI's counterclaim. See Exhibit C. Counsel for NSI responded on March 3, 2025. See Exhibit D. Then, counsel for Cupar also requested further information regarding the alleged fraud and basis for deposing former lead counsel for Horizon. See Exhibit E.

4. On March 5, 2025, Counsel for Cupar communicated his objections to the Subpoena to counsel for NSI. See Exhibit F. On March 6, 2025, counsel for NSI responded and expanded the scope of deposition topics to include testimony regarding "presuit" investigation by Cupar, clearly moving further into areas protected by privilege and work-product. See Exhibit G.

5. Despite Cupar's objections—primarily regarding the attorney-client privilege, the highly irregular nature of deposing opposing counsel, need, and relevance—NSI has not withdrawn the Subpoena, thus necessitating this Motion.

### The Subpoena Should Be Quashed Based Upon The Attorney-Client Privilege

6. The attorney-client privilege is one of the oldest recognized privileges for confidential communications *Swidler & Berlin v. United States*, 524 U.S. 399, 403 (1998).

2

7. R.C. 2317.02(A) provides the exclusive means by which privileged communications directly between an attorney and a client can be waived. *Jackson v. Greger*, 110 Ohio St.3d 488, 2006-Ohio-4968, 854 N.E.2d 487, *syllabus*, following *State v. McDermott,* 72 Ohio St.3d 570, 651 N.E.2d 985 (1995).

R.C. 2317.02 provides:

> [T]he following persons shall not testify in certain respects:
>
> (A)(1) An attorney, concerning a communication made to the attorney by a client in that relation or the attorney's advice to a client, except that the attorney may testify by express consent of the client * * *. However, if the client voluntarily testifies or is deemed by section 2151.421 [215.42.1] of the Revised Code to have waived any testimonial privilege under this division, the attorney may be compelled to testify on the same subject.

Relevant to this case, the only two statutory methods by which the privilege may be waived are express waiver and voluntary testimony by the client about the privileged matter. *McDermott*, 72 Ohio St.3d at 52. Here, Cupar's former client, Horizon, has neither expressly waived the privilege nor voluntarily testified about privileged matters. Thus, Cupar cannot testify concerning privileged matters—especially those germane to the Lawsuit.

8. Independent of the attorney-client privilege, the work-product doctrine provides a qualified privilege that protects an attorney's mental process and confidential work in preparation of litigation. *Squire, Sanders & Dempsey L.L.P. vs. Givaudan Flavors Corp.*, 127 Ohio St.3d 161, 2010-Ohio-4469, 937 N.E.2d 533, at ¶55. In this case, the expected interrogation of Cupar threatens to explore Cupar's mental impressions regarding the asserted patents, the district court litigation, and the *inter partes* review before the U.S. Patent and Trademark Office's ("USPTO") Patent Trial and Appeal Board ("PTAB"). *See also Hickman v. Taylor*, 329 U.S. 495, 510-14 (1947). The work-product doctrine bars a litigant from taking undue advantage of his adversary's

industry or efforts or to explore the attorney and client's undisclosed thoughts and strategies.  Fed. Civ. R. 26(b)(3).  Thus, the Subpoena should be quashed for this independent reason.

9. As explained next, the deposition could only be aimed at Cupar's knowledge that is privileged or work-product because everything else that Cupar did or said with respect to the litigation was done in writing in open court or in open administrative proceedings before the USPTO and thus NSI already has that evidence.

## A Deposition of Opposing Counsel Should Be Done Only As A Matter Of Last Resort

10. Courts have recognized that taking the deposition of [opposing] counsel in a pending case is an extraordinary step which will rarely be justified.  *Shelton v. American Motors Corp.*, 805 F2d 1323, 1327 (8th Cir. 1986).  The Sixth Circuit has adopted the *Shelton* test on this issue.  *Nationwide Mut. Ins. Co. v. Home Ins. Co.,* 278 F.3d 621, 628 (6th Cir. 2002).  The *Shelton* test disfavors the litigation tactic of deposing opposing counsel because it invades the confidential and sacred attorney-client relationship, often is designed to harass and retaliate against an adversary, and, if allowed, chills zealous advocacy.  Under *Shelton*, before such a deposition may proceed, the party seeking the deposition must "**first exhaust less intrusive** discovery methods, and then make a showing of necessity and materiality, and that the interests of justice require this extraordinary step." *Id*. at 1255. (emphasis added).  That Cupar no longer represents Horizon is a distinction without a difference, especially since the deposition must be aimed at conduct by Cupar when he represented Horizon.

11. "[A] party seeking to depose opposing counsel must show that '(1) no other means exists to obtain the information than to depose opposing counsel [citation omitted]; (2) the information sought is relevant and non-privileged; and (3) the information is crucial to the preparation of the case." *In re Douglas Asphalt Co.*, 436 B.R. 246, 249 (Bankr. S.D. Ga. 2010)

4

quoting *Shelton v. American Motors,* at 1237. Here, NSI has not made a showing of necessity and materiality which would compel the need to depose Cupar.

### ***There is no need for Cupar's deposition, and this lack of need forecloses NSI from making any of the showings required by Shelton***

12. NSI has made no efforts to show how any information in Cupar's possession is not protected by the attorney-client privilege or is not otherwise available in the public record. It goes without saying that attorneys are uniquely positioned to testify as to their clients and their matters. This is the reason why the privilege and work product doctrines exist, so attorneys can act without fear of divulgence and both attorneys and clients can share information without fear that the attorney will have to divulge that information. *Fisher v. United States*, 425 U.S. 391, 404-05 (1976).

13. In his February 21, 2025, letter requesting Cupar's deposition, NSI's counsel states that his need for the deposition is to support an attorney fee motion that NSI intends to file based on NSI's theory that "attorneys from McDonald Hopkins made several statements to the Court that Horizon has since admitted were false." (Ex. B.) NSI's counsel state further that the "filings including those false statements were signed by Mr. Cupar." (*Id.*) Thus, NSI's own rationale undermines its request: the alleged misconduct resides in documented court filings, rendering Cupar's deposition unnecessary and far below the "crucial" need required by the *Shelton* test). The existing record—including this court's docket, related filings, and the IPR proceeding—provides an ample record for NSI to advance its fee arguments without further discovery.

14. Indeed, if NSI's motion contends that Horizon and its counsel engaged in litigation misconduct to merit an attorney fee award—and they certainly have not done so—that motion could only be based on the observable litigation conduct that happened in open court or the open proceedings before the USPTO. There's no crucial need for a deposition of opposing counsel when

5

the litigation record is written and speaks for itself. Trial courts are experts at judging litigation conduct by attorneys before it, and this Court has sufficient record evidence to do so here.

15. Again, anything that Cupar knows beyond what was said and done in court, administrative proceedings, or filings in those forums is protected by the attorney-client privilege and work-product doctrine. This further underscores the lack of crucial need for this deposition. Moreover, NSI says in Exhibit G that it wants to explore whether pre-suit or other investigations were conducted. Trial counsel's confidential trial preparation work "in anticipation of litigation" is exactly what the privilege and work-product doctrine are designed to protect. Allowing inquiry about it will only create a case-within-a-case as the parties will inevitably engage in objections and motion practice over privilege and work-product. NSI should have pursued discovery on pre-suit investigation directly from Horizon, a party to the case, while the case was live if NSI deems it relevant. We know of no legal basis allowing a fishing expedition on that topic—let alone through subpoenaed deposition of former trial counsel—after the case is moot and dismissal is either entered or impending.

16. If NSI seeks to depose Cupar to try and prove inequitable conduct, that counterclaim is now mooted by Horizon's covenant not to sue and dismissal. (*See* Doc. 96.) The Court should not permit NSI to keep that now moot counterclaim alive under the guise of an attorney fee motion. The Court should not allow NSI to explore through discovery the academic question of whether there was inequitable conduct. Moreover, NSI's inequitable conduct counterclaim was based on written filings with the USPTO, to which NSI has full access, so there is no crucial need for a deposition of opposing counsel. 17. Not only is it rare to obtain a deposition of opposing counsel, but it is doubly rare to obtain a deposition of opposing counsel *post-judgment* to support for an attorney fee motion. Indeed, counsel for NSI did not cite any case

6

authority allowing such discovery. Although the Court has not yet fully dismissed the case, as Horizon's motion to dismiss confirms (ECF 96), the case is wholly moot due to Horizon dismissing its affirmative claims and covenanting not to sue NSI on the patents contested by its counterclaim. NSI's subpoena, therefore, chases discovery in a case now lacking subject matter jurisdiction. Its request must therefore be regarded as post-judgment discovery on the collateral issue of attorneys' fees, triggering far stricter scrutiny than standard discovery.

18.  In sum, there has been no showing (or any efforts to show for that matter) why any information Cupar may have is crucial to the case or could not be obtained by less intrusive means. Permitting Cupar to testify would result in a "chilling effect" on the truthful communications from client to attorney.  Accordingly, the Subpoena should be quashed.

## CONCLUSION

For all of these reasons, Cupar respectfully requests that the Court quash the Subpoena.

Respectfully submitted,

/s/ Tyler L. Mathews
Tyler L. Mathews (0063759)
McDonald Hopkins LLC
600 Superior Avenue – Suite 2100
Cleveland, Ohio  44114
Phone: (216) 348-5400
Fax:  (216) 348-5474
tmathews@mcdonaldhopkins.com

Attorney for David B. Cupar

7

**CERTIFICATE OF SERVICE**

    I hereby certify that on this __7th__ day of March 2025, a copy of the foregoing *Motion Of David B. Cupar, Esq. To Quash Subpoena* was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system and the parties may access this filing through the Court's system.

                                              /s/ Tyler L. Mathews
                                              Tyler L. Mathews (0063759)

                                              Attorney for David B. Cupar

35835831.1