UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| HORIZON GLOBAL AMERICAS, INC., | ) | |
| | ) | Case No. 1:20-cv-00310-PAB |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge Pamela Barker |
| | ) | |
| NORTHERN STAMPING, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT NORTHERN STAMPING'S OPPOSITION TO THE MOTION OF
DAVID CUPAR TO QUASH HIS DEPOSITION**

**I.  Introduction**

NSI agrees with Mr. Cupar that if this were an ordinary case, NSI would not have the opportunity, nor would it have sought, to depose former trial counsel.  But this has not been an ordinary case.

Horizon misrepresented the truth to every forum that has addressed the Patents-in-Suit and McDonald Hopkins has been their counsel along the way.  First, Horizon filed a declaration with the Patent Office, drafted by McDonald Hopkins, including a sketch that Horizon falsely alleged showed an early conception.  Then, under Mr. Cupar's representation, Horizon represented to NSI and to the Court that the sketch "clearly" showed the critical receiving members and that it was "impossible" to argue otherwise.  But Horizon's identification of those receiving members was a moving target as it curiously identified *different* structures to NSI than it did to the Court as the receiving members. Unable to clearly identify this critical component, one would think lead counsel would have been led to question the merits of the suit and recommend it be dismissed. Yet, Horizon plowed ahead.  It again falsely represented to the

Patent Office in an IPR proceeding that the sketch showed a receiving member and that it established conception.

Then things quicky fell apart.  The Horizon inventor testified that the sketch did ***not*** include a receiving member (and that conspicuously no one at McDonald Hopkins had ever asked him if it did).  And Horizon was forced to admit, through McDonald Hopkins, that it had evidence all along that its representations to the Patent Office, this Court, and to NSI were all false.  Had counsel not seen this evidence?

McDonald Hopkins' and specifically lead counsel David Cupar's participation in this mess—including the obligation to investigate Horizon's switching stories—deserves to be investigated.  NSI does not intend to ask about privileged communications between counsel and Horizon.  But that still leaves very fertile, non-privileged grounds for deposition.

Mr. Cupar's motion to quash should be dismissed.

## II.  The Awful Facts

But for a sketch Horizon submitted to the Patent Office to falsely establish an early conception date, Horizon never could have obtained the Patents-in-Suit and this lengthy and costly suit could never have been pursued.  However, having received its patents, Horizon's counsel, Mr. Cupar, sent NSI a letter accusing NSI of infringement. NSI investigated Horizon's patent and realized it was invalid because the sketch Horizon submitted to the Patent Office failed to include a critical "receiving member."  It informed Horizon.[1]

That should have compelled Mr. Cupar to investigate NSI's concerns.  It apparently did

---

[1] ECF 61-2 (The sketch "does not show a receiving member for the attachment of the fifth wheel hitch as is required by the claims of the '050 patent. … As I understand it, and in addition to other reasons stated above and in previous emails, this makes the Horizon '050 patent invalid.").

2

not. Instead, Horizon misrepresented to NSI in its response that a slot in the sketch was the receiving member, as shown below:[2]



On the sketch, Horizon identified the inboard slot as an "Example of a receiving member." Horizon identified the apertures at the end of the legs as the "Aperture for connection to the frame." Having concocted proof of the receiving member, Horizon sued NSI.

Convinced that it could deceive the Court into believing the sketch included a receiving member, Horizon filed a motion to dismiss NSI's inequitable conduct counterclaim. ECF No. 35. Horizon apparently surmised that its initial claim that the receiving member was the inboard slot was not viable. So, it simply changed its story. No longer was the slot the receiving member, Horizon now vehemently argued to the Court that the receiving members were "the four circles near each corner" of each leg in the drawing below: ECF No. 37, p. 4.[3]

---

[2] February 13, 2020, Letter from Terrance Gohl, CEO of Horizon to Matthew Friedman, CEO of NSI. Mr. Gohl stated the "May 8, 2008 sketch *clearly* shows a receiving member." (Emphasis added.) Exhibit A.

[3] The orange arrows on the drawing were supplied by Horizon.



Again, just a few months prior, Horizon had represented to NSI that those very same circles were "clearly" the "Aperture[s] for connection to the frame"—not the receiving member.

Horizon's need to completely change its identification of the receiving member would have caused any reasonable counsel to reconsider the merits of going forward. Instead, Mr. Cupar buried his head in the sand and represented to the Court that NSI's argument that there was no receiving member in the sketch was "impossible," "false," and a "misrepresentation" by NSI deserving of sanctions. ECF No. 37, pp. 2, 4.

Horizon's deception was not limited to NSI and the Court. In the IPR before the PTAB, Horizon continued its earlier attempts to deceive the Patent Office when it first obtained its patent. It argued to the PTAB that the sketch demonstrated conception because the circles at the extreme ends of the rails in the drawing were the receiving members. Patent Owner's Preliminary Response, IPR2021-01411, Paper 9 at 29-30, attached as Exhibit B.

Then NSI deposed the person most knowledgeable of whether the drawing showed a receiving member—the author of the drawing, Eric Stanifer. Mr. Stanifer readily admitted that the drawing did *not* show a receiving member:

> Q … Are the receiving members shown in this sketch?
> A *No, they're not.*

Stanifer Dep. Tr., pp. 32:24-33:8, ECF No. 83-4 (objection omitted, emphasis added).

4

Worse, Mr. Stanifer testified that in the five years since Horizon accused NSI of infringement, Horizon never bothered to ask him if Horizon's drawing showed a receiving member:

> Q  Do you recall first being contacted in this case by your lawyers?
> A  Yes.
> Q  Do you recall when that was?
> A  I do not remember the exact date, but it was a couple months ago, I believe, something along those lines.

Stanifer Dep. Tr. 95:21-96:2, ECF No. 83-4.

Five years ago Mr. Cupar could have called Mr. Stanifer, or sent him an email, to ask if the sketch showed a receiving member. He did not. Was it because neither he nor Horizon really cared if the case had merit? Did Mr. Cupar contact anyone? Was there ever a legitimate investigation?

Having seen Mr. Stanifer's deposition, Horizon then admitted that its several, vehement representations to this Court were false.[4] ECF No. 67-3, p. 14. Indeed, Horizon's about face demonstrates that its decision to file suit in the first instance was entirely indefensible. To obtain its patent grant, McDonald Hopkins drafted a declaration for Mr. Stanifer stating the "[sketch] of Exhibit A *demonstrate[s] our conception* of the claimed subject matter." (Emphasis added). But in the IPR, Horizon, in a pleading signed by Mr. Cupar, had no choice but to admit that because "the sketch doesn't disclose each and every limitation in the patent claims at issue, *it is not evidence of a conception* as of [the relevant date]." But perhaps more importantly, Horizon admitted *that it had evidence all along that the sketch did not include a receiving member*. *Id.*

---

[4] Horizon's misrepresentations to the Court were not innocuous. They were part of Horizon's successful effort to convince the Court to dismiss NSI's Counterclaims of inequitable conduct.

5

Contrary to Mr. Cupar's assertions in his Motion to Quash, there are several non-privileged and appropriate areas for deposition where he is the only possible source of information.  Horizon's current counsel admits as much: "During this suit and the IPR Horizon provided its contentions and extensive evidence, allowing you to interrogate its pre-suit and ongoing investigations without invading privileged and protected information."  Thus at least some of this "extensive evidence" must be non-privileged—else Horizon has waived the privilege.  March 14, 2025, email from Brendan Clark to counsel for NSI, attached as Exhibit C.

Accordingly, NSI should be permitted to complete that discovery.

**III.    Discussion**

Mr. Cupar provides two reasons to avoid his deposition.  He claims that the case is over and thus the Court lacks jurisdiction to sanction him and Horizon.  Secondly, he curiously argues his deposition would be a waste of time because there is already "ample record" of misconduct. ECF No. 98, p. 5.

>    **A.    Horizon's dismissal of its claims and its deficient covenant not to sue does not divest it of jurisdiction to consider fees under 35 U.S.C. 285, 28 USC 1927, and the Court's inherent powers.**

According to Mr. Cupar, the Court is deprived of continuing jurisdiction in this matter because of Horizon's abject failure on its claims and its covenant not to sue.  Mr. Cupar cites no authority for his proposition, because there is none.

As a preliminary matter, as NSI will brief shortly in its opposition to Horizon's Motion to Dismiss, Horizon's covenant not to sue is deficient, and does not divest this Court of jurisdiction. But even if Horizon provided a proper covenant, this Court still retains jurisdiction over the NSI's counterclaims through NSI's request for fees.

Indeed, Judge Gaughan addressed this exact same issue in *Accordant Energy, LLC v.*

6

*Vexor Technology, LLC*, 364 F.Supp.3d 780, 786 (N.D. Ohio 2019) and found that defendant's request for attorney fees gave the Court continuing jurisdiction to investigate defendant's counterclaims:

> The fee motion is the jurisdictional "hook" that gives the Court the power to declare a patent invalid when no other "case or controversy" exists. Accordingly, the Court will dismiss the counterclaims and allow defendant to file a motion pursuant to 35 U.S.C. § 285 in which defendant may argue that plaintiff's inequitable conduct warrants a declaration of unenforceability. In the event defendant succeeds, the Court undoubtedly possesses jurisdiction to enter a declaratory judgment to the extent necessary to enforce any appropriate fee award.

See also, *Lowe v. ShieldMark, Inc*., 2023 WL 3043769 *3 (ND. Ohio 2023) ("As a preliminary matter, the Court notes that it has subject matter jurisdiction to decide Defendants' fees counterclaim. Plaintiffs argue to the contrary, contending that the Court lost jurisdiction over Defendants' § 285 counterclaim when it dismissed Plaintiffs' patent infringement claim. But a § 285 counterclaim confers subject matter jurisdiction independent of an initial patent infringement claim.").

Here, the Court has already specifically granted NSI time to investigate the issue of attorney fees. And the Court made that grant after NSI specifically informed the Court that "NSI expects that it will take the deposition of…certain attorneys at McDonald Hopkins…who made the several misrepresentations to the Court." ECF No. 92, p. 8.

Mr. Cupar's jurisdictional argument thus fails.

### B. The *Shelton* factors favor the deposition of Mr. Cupar.

In *Nationwide Mut. Ins. Co. v. Home Ins. Co*., 278 F.3d 621 (6th Cir. 2002), the Sixth Circuit adopted the factors espoused in *Shelton v. Am. Motors Corp.,* 805 F.2d 1323, 1327 (8th Cir. 1986) regarding deposition of opposing counsel. The Sixth Circuit stated that "[d]iscovery from an opposing counsel is limited to where the party seeking to take the deposition has shown

7

that (1) no other means exist to obtain the information; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." (citation omitted).

The "case" here is NSI's request for attorney fees. NSI satisfies the *Shelton* factors as addressed below.

### a. No means exists to obtain the information sought other than through Mr. Cupar.

Mr. Cupar argues that "NSI should have pursued discovery on pre-suit discovery directly from Horizon, while the case was live if NSI deems it relevant." ECF No. 98, p. 5. Mr. Cupar apparently forgets the case was stayed during the IPR.

In fact, it was during the IPR that Horizon's and Mr. Cupar's misconduct became evident. Indeed, it was in the IPR proceedings where: 1) the author of the sketch admitted that Horizon's counsel did not contact him prior Horizon filing suit; 2) the author of the sketch testified that the sketch does not include a receiving member; 3) Horizon admitted that its strident representations to the Court that the sketch include a receiving member were false; and, 4) Horizon admitted it had evidence of this all along. Moreover, the case is still "live" while the Court determines the issue of fees.

Further, what Mr. Cupar did and who he spoke with in investigating Horizon's differing stories are not likely known by Horizon and in any event Horizon's testimony on what Mr. Cupar did is likely hearsay. NSI should be entitled to ask Mr. Cupar directly about his actions.

### b. The information NSI seeks is non-privileged inherently or the privilege has been waived.

NSI does not intend to inquire at this time into the substance of Mr. Cupar's conversations with Horizon. However, information such as when and how Mr. Cupar conducted

8

his investigations into Horizon's changing stories and with whom he spoke and related matters are not privileged and are appropriate for inquiry. NSI believes it can appropriately tailor suitable questions to these non-privileged background facts without invading the attorney-client privilege. Should NSI's questions into the timing and extent of Mr. Cupar's knowledge or investigation of fact raise concerns, objections may be raised at the deposition. *See Hay & Forage Indus. v. Ford New Holland, Inc.*, 132 F.R.D. 687, 689-690 (D. Kan. 1990) (finding patentee's assertion of attorney-client privilege and work product premature and insufficient to quash a subpoena of patentee's attorney where alleged infringer sought background facts regarding alleged false and misleading representations to the patent office).

If the deposition reveals that Mr. Cupar participated actively in concocting the multiple and varied misrepresentations to the Court and knew that these were fabrications, then the crime/fraud exception may apply to act as a waiver of the attorney-client privilege.

        c.        **The information to be obtained from Mr. Cupar is relevant to the preparation of NSI's fees case.**

Strikingly, Mr. Cupar argues that "[t]he existing record—including this court's docket, related filings, and IPR proceeding—provides *ample record* for NSI to advance its fee arguments without further discovery." ECF No. 98, p. 5. NSI wholeheartedly agrees with Mr. Cupar that there is ample evidence to support the award of attorney fees in this case. Indeed, it is that ample record that makes this case stand out from others, and justifies further discovery into the misconduct.

NSI contends that Mr. Cupar and McDonald Hopkins are *jointly liable* for the fees it intends to seek at the conclusion of discovery. Horizon, through its counsel, made several material misrepresentations to the Court. It changed its legal arguments repeatedly. Both are factors in awarding fees. *See, Howmedica Osteonics Corp. v. Zimmer, Inc.,* 2018 WL 2378406,

9

at *14 (D. NJ. 2018) (changed claim constructions to overcome prior art one factor in awarding attorney fees).  Horizon and Mr. Cupar went so far as to accuse NSI of misrepresenting the facts to the Court and threatening to seek sanctions against NSI, apparently a ploy to detract from its own sanctionable misconduct.  See, *Integrated Technology Corporation v. Rudolph Technology Corp.*, 2012 WL 12507656, at *7 (D. Ariz. 2012) (the court awarded plaintiff its attorney fees for defendant's litigation misconduct noting that defendant made statements in a motion for summary judgment that it did not infringe, knowing that it did infringe.)  Thus, Mr. Cupar's conduct and lack of investigation are relevant to NSI's anticipated fees motion.

Moreover, the Court has access to its inherent powers to sanction a party or counsel.  *See, e.g.*, *Lowe v. ShieldMark, Inc.*, 2023 WL 3043769 *5 (N.D. Ohio 2023) ("The Court notes that its inherent power to craft sanctions also serves as an alternative basis to award Defendants the above patent litigation fees. The 'assessment of attorney's fees is undoubtedly within a court's inherent power,' particularly 'when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'").

**IV.  Conclusion**

Horizon and McDonald Hopkins have worked their ways into an incredibly bad spot through its multiple and inconsistent misrepresentations, both to the Patent Office and to this Court.  Horizon admits that it has already provided "extensive evidence" regarding the pre-suit and subsequent investigations that is nonprivileged.  NSI is entitled to investigate that evidence.

Mr. Cupar's motion to quash should be denied.

Dated:  March 17, 2025	Respectfully submitted,

              By:  */s/ Jay R. Campbell*

                Jay R. Campbell (0041293)
                Carter Ostrowski (00)
                **TUCKER ELLIS LLP**
                950 Main Avenue Suite 1100
                Cleveland, OH 44113
                (216) 592-5000
                jay.campbell@tuckerellis.com
                david.bernstein@tuckerellis.com

                Ron N. Sklar
                Dennis J. Abdelnour
                **HONIGMAN LLP**
                155 North Wacker Drive, Suite 3100
                Chicago, IL 60606
                (312) 701-9300
                rsklar@honigman.com
                dabdelnour@honigman.com

                *Attorneys for Defendant Northern Stamping, Inc.*