**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| HORIZON GLOBAL AMERICAS INC., | ) | CASE NO.: 1:20-CV-00310-PAB |
| Plaintiff, | ) | JUDGE PAMELA A. BARKER |
| v. | ) | |
| NORTHERN STAMPING, INC., | ) | **HORIZON GLOBAL AMERICAS INC.'S MOTION TO QUASH CUPAR SUBPOENA <u>OR FOR PROTECTIVE ORDER</u>** |
| Defendant. | ) | |

Pursuant to Rules 45 and 26 of the Federal Rules of Civil Procedure, plaintiff Horizon Global Americas Inc. ("Horizon") moves to quash the subpoena (the "Subpoena") of defendant Northern Stamping, Inc. ("NSI") to depose Horizon's former litigation counsel, Mr. David Cupar ("Cupar"), noticed for March 20, 2025, or, in the alternative, moves for a protective order preventing the Cupar deposition.

## I. INTRODUCTION

Despite Horizon's best efforts to bring this case to an appropriate close, NSI has persisted in its wasteful and overreaching pursuit of fees since the February 5, 2025 status conference ("Status Conference"), necessitating this motion. As promised during the Status Conference, on February 19, 2025, Horizon dismissed its claims with prejudice in the above-captioned action. Horizon even went a step further and executed and delivered to NSI a covenant not to sue, permanently resolving any controversy and thereby mooting NSI's counterclaims. On February 27, 2025, Horizon provided the covenant not to sue[1] to NSI and advised NSI's counsel that it would move to dismiss NSI's counterclaims by 4 p.m. the next day unless NSI agreed to voluntary

[1] The covenant not to sue was previously provided to all counsel of record when it was electronically filed with Horizon's motion to dismiss its claims with prejudice.

dismissal. Undeterred by the mootness of its counterclaims, on February 28, 2025, in anticipation of Horizon's motion to dismiss NSI's counterclaims, NSI instead hurriedly noticed the Subpoena. The Subpoena blatantly seeks to elicit confidential information subject to attorney-client privilege and work-product protection, as NSI's own description of its intended inquiry confirms.

Horizon bases this motion, which joins the motion to quash filed by non-party Cupar (through his representation at his firm McDonald Hopkins LLC ("MH")), on Horizon's own vested interest in maintaining the sanctity of its attorney-client privileged communications and work-product protection, as well as avoiding needless discovery directed to mooted counterclaims. As a threshold matter, there is no reasonable or defensible basis for any further discovery as Horizon's claims are dismissed and NSI's counterclaims are moot and subject to dismissal. The Court need go no further in its analysis. But even if there were a procedural ground for the Subpoena, the proposed Cupar deposition would be improper because it is not directed to anything other than privileged information. This is a critical issue that not only touches on Horizon's interests, but on the broader policy grounds underpinning the attorney-client privilege. The Subpoena threatens to invade the privilege, thereby creating a chilling effect on attorney-client communications, and should be subjected to the highest level of scrutiny possible by this Court. The contemplated deposition will also necessarily impose undue burden and expense as it promises to be complex and contentious for all four law firms and the Court. Rather than seeking relevant information, the subpoena and communications leading up to its service appear to be designed to harass and embarrass. The Subpoena should be quashed or, in the alternative, a protective order issued prohibiting this extraordinary questioning of litigation counsel.

## II. FACTS

The background of this matter is well known to the Court. As discussed in its Memorandum in Support of Horizon Global Americas Inc.'s Motion to Dismiss Defendant's Counterclaims for Lack of Subject Matter Jurisdiction ("Memo"), Horizon seeks to bring this long-running lawsuit—one it sought to avoid in the first instance—to an efficient conclusion despite good-faith bases to continue litigating. (*See* Dkts 93, 94, and 96.)

Unfortunately, NSI seems more interested in dragging this case out further, thereby creating a new, specious case within a concluded case as improper leverage to have Horizon pay NSI's legal fees when no legal or common-sense basis exists for such fee shifting.[2] To this end, the Court authorized a limited period of discovery relevant to NSI's counterclaims when NSI refused to drop those counterclaims at the Status Conference. The Court did not, however, grant NSI a fishing license to invade the attorney-client privilege.

Making good on its promise at the Status Conference to seek economical resolution, Horizon moved to dismiss its claims. In addition, it granted NSI a broad covenant not to sue. (Dkt 94.) The Court granted Horizon's requested dismissal on February 20, 2025. (Dkt 95.) On February 27, 2025, Horizon contacted NSI noting that Horizon's dismissal and covenant not to sue extinguished subject matter jurisdiction over NSI's counterclaims, rendering them moot. (Ex. B at 3.) Horizon asked whether NSI would, rather than burdening the Court, voluntarily dismiss its counterclaims. NSI responded inquiring into Horizon's basis, and Horizon responded with authority cited in its Memo. (*Id.* at 1.)

---

[2] The Court also ordered NSI to provide, by February 19, 2025, an "itemization" of "the fees associated with defending the case in the District Court, and the fees it seeks beyond those incurred in defending the matter in the District Court." (Feb. 5, 2025 Minute Order.) Contrary to the promises it made to the Court and Horizon during the February 5 conference, NSI lumped together fees related to the *inter partes* proceeding with its summary of fees related to the District Court litigation and failed to provide the ordered "detail" that would enable Horizon to separate those fees out. (Ex. A.) The letter did not provide legal invoices with descriptions and fell conspicuously short of the Court's directive.

NSI did not agree to voluntarily dismiss its counterclaims but instead, after being informed that Horizon would be moving to dismiss NSI's counterclaims, preemptively served a notice of subpoena to take Cupar's deposition. (Ex. C.) The notice and subpoena are silent on what topics the deposition might explore, let alone any details setting forth grounds justifying a deposition of opposing litigation counsel given the procedural posture of the case and applicable privileges and immunities.

When Cupar's firm, MH, inquired into these issues, NSI's counsel responded that NSI's questioning would be directed toward "pre-suit investigation or continuing investigations"—topics that would be entirely subject to privilege and work-product protection against discovery. (Dkt 98-7.) NSI also stated that they wished to question Cupar regarding publicly filed documents that he signed. (*Id.*) Acknowledging that these topics inevitably pry into the privileges of the attorney-client relationship and work-product immunity, NSI declined to further clarify its position on the deposition, alleging counsel "believe [they] can tailer [*sic*] questions during the deposition to avoid issues of attorney-client privilege." (*Id.*) Stuck at this impasse, on March 7, 2025, Cupar (through his counsel at MH) moved to quash NSI's subpoena. (Dkt 98.)

## III. COURTS MUST PROHIBIT IMPROPER DISCOVERY FROM LITIGATION COUNSEL

Under Rule 45, a court must quash or modify a subpoena that requires disclosure of privileged or other protected matter, if no exception or waiver applies, or where the subpoena imposes undue burden. Fed. R. Civ. P. 45(d)(3)(A). In addition to privilege and undue burden, the court may also consider "whether (i) the subpoena was issued primarily for the purposes of harassment, (ii) there are other viable means to obtain the same evidence, and (iii) to what extent the information sought is relevant, nonprivileged, and crucial to the moving party's case.'" *Pitzer*

*v. Cinmar, LLC*, No. 1:16 MC 64, 2016 WL 7325158, at *1 (N.D. Ohio Dec. 16, 2016) (citations omitted).

And, under Rule 26, a court may issue an order to protect a party by forbidding discovery, specifying terms for discovery, forbidding inquiry into certain matters, or limiting the scope of discovery to certain matters. Fed. R. Civ. P. 26(c). Courts may further order payment of expenses by a party necessitated by having to move for a protective order. *Id.*; Fed. R. Civ P. 37(a)(5).

A party with a claim of privilege may move under either rule to oppose a subpoena served on a third party. *See*, *e.g.*, *Drips Holdings, LLC v. Teledrip LLC*, No. 5:19-CV-02789-JRA, 2021 WL 8342860, at *3–5 (N.D. Ohio Apr. 15, 2021). Such privilege exists if a litigant seeks to depose opposing counsel.

Heightened scrutiny exists around challenges to privilege because of the highly detrimental impact of deposing opposing counsel. "The practice of forcing trial counsel to testify as a witness [] has long been discouraged." *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986) (citing *Hickman v. Taylor*, 329 U.S. 495, 513, 67 S.Ct. 385, 394, 91 L.Ed. 451 (1947) (leading case on work-product immunity)). Courts have emphasized that interrogating opposing counsel "'disrupt[s] the adversarial nature of our judicial system,' [. . .] 'lowers the standards of the profession,' [ ... and] 'also adds to the already burdensome time and costs of litigation.'" *Massillon Mgmt., LLC v. Americold Realty Tr.*, No. 5:08CV0799, 2009 WL 614831, at *2 (N.D. Ohio Jan. 21, 2009) quoting *Shelton*, 805 F.2d at 1327. Such depositions "detract[] from the quality of client representation" and, importantly impose a systemic "chilling effect" on truthful communications from clients. *Id*. (citations omitted).

Based on this heightened scrutiny, "[d]iscovery from an opposing counsel is 'limited to where the party seeking to take the deposition has shown that (1) no other means exist to obtain

the information []; (2) the information sought is relevant and *nonprivileged*; and (3) the information is *crucial* to the preparation of the case.'" *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 278 F.3d 621, 628 (6th Cir. 2002) citing *Shelton*, 805 F2d at 1327 (emphasis added).

The party seeking to take a disputed deposition must make threshold showings satisfying the foregoing standards. Here, as in any discovery dispute, the party seeking discovery "bears the initial burden of establishing that the information sought is discoverable: *i.e.*, non-privileged, relevant, and proportional to the needs of the case or reasonably calculated to lead to the discovery of admissible evidence." *Biondi v. Jaguar Land Rover N. Am., LLC*, No. 1:23-CV-297, 2023 WL 5822415, at *6 (N.D. Ohio Aug. 21, 2023) citing *White v. City of Cleveland*, 417 F. Supp. 3d 896, 902 (N.D. Ohio 2019); *see also* Fed. R. Civ. P. 26(b)(1).

## IV. THE COURT SHOULD QUASH NSI'S SUBPOENA

Because Horizon's claims have been dismissed, and the Court has no further jurisdiction over NSI's counterclaims, there is no basis to conduct discovery, and the subpoena should be quashed on that ground alone. Even if a basis for discovery existed, however, Cupar's work leading up to and during this litigation is plainly protected from discovery by both the attorney-client privilege and work-product immunity, which Horizon never waived, expressly or impliedly. His deposition, then, is precisely the sort of discovery Rules 45 and 26 seek to prevent. NSI cannot show that this deposition is both necessary and material and that the interests of justice require this extraordinary deposition of opposing litigation counsel. *Nationwide*, 278 F.3d at 628. And their tactics in pursuing this deposition strongly suggest a harassing motive.

NSI's subpoena and recent communications fail to set forth any procedural or substantive ground on which it can justify Cupar's deposition. Even setting aside that the only claims remaining in the case are moot, any argument that this deposition is "necessary" is belied by the nature of NSI's allegations. NSI has repeatedly asserted that the existing record not only proves

that Horizon and Cupar made misrepresentations to the Court but that they have admitted they did so. (Dkt 98-7 (asserting that Cupar "signed many of the documents containing the conflicting misrepresentations that Horizon has admitted are false").) If those alleged misrepresentations and admissions already exist in the record, NSI has no need for any discovery. And NSI's concern over "whether a pre-suit investigation or continuing investigations were performed" is resolved on simple review of Horizon's served contentions and pleadings, which plainly set forth the thorough and good-faith bases by which Horizon understood that NSI infringed its valid patents. Horizon has not, and has no need to, assert an advice of counsel defense going beyond what is already contained in the record. Anything beyond Horizon's papers constitutes Cupar's thoughts and communications about the case, around which protections are "inviolate." *Shelton*, 805 F.2d at 1328 (collecting cases).

Turning to the next prong, NSI cannot show that anything to be gained in this deposition is material. This discovery is immaterial because its only bases are counterclaims that are now moot. (*See* Dkt 96; Fed. R. Civ. P. 12(h)(3).) There is no longer a justiciable case or controversy, and so there is no justification for any discovery. Beyond this, NSI's communications relating to the deposition and subpoena lack any specificity as to what material, nonprivileged information they believe can be gleaned through deposition of prior counsel.

Further, Cupar's deposition would impose undue burden on Horizon, Cupar and MH, and the Court. NSI's belief that it can avoid issues of attorney-client privilege on the fly (Dkt 98-7)—while deposing Horizon's prior lead counsel in this same litigation—is far from a guarantee that the deposition will be efficient and uncontroversial. Given the privileges and protections at issue, it is unlikely that Cupar's testimony would evidence anything bearing on NSI's defunct counterclaims; rather, it will be replete with well-founded objections. In this procedural and

factual context, *any* burden is undue, because the proposed discovery has no basis given the posture of the case. Yet the burden imposed is significant, requiring two law firms to prepare for and defend the interests of their current or former client against two other law firms during a highly unusual deposition of opposing counsel.

Finally, NSI's tactics in pursuing this deposition were harassing. NSI initially asked undersigned counsel to accept service for Cupar. (Ex. B at 4.) When advised that current counsel for Horizon was not authorized to accept service, rather than simply serving the subpoena or contacting Cupar, NSI first sent a letter to Cupar's managing partner stating: "Discovery in the case established that attorneys from McDonald Hopkins made several statements to the Court that Horizon has since admitted were false. Many of the filings including those false statements were signed by Mr. Cupar." (Dkt 98-2.) These inflammatory accusations, made to Cupar's managing partner, were entirely gratuitous. NSI has abused the discovery process by leveraging intimidation and hyperbolic accusations in lieu of substance, further warranting an order prohibiting the discovery.

Given the foregoing considerations, the Court should quash NSI's subpoena.

## V. CONCLUSION

The Subpoena not only fails to comport with the standards of Rule 45(d)(3)(A) and Rule 26 but boldly crashes through virtually all the protections against abusive and improper discovery they provide. Horizon respectfully requests that the Court quash the Subpoena and enter a protective order prohibiting the deposition.

Further, having sought to efficiently resolve this litigation and avoid this discovery dispute, Horizon should be awarded its expenses in connection with filing this motion.

Dated: March 17, 2025

Respectfully submitted,

*/s/Brendan E. Clark*

Christina J. Moser (0074817)
Email: cmoser@bakerlaw.com
Brendan E. Clark (085634)
Email: bclark@bakerlaw.com
Brian A. Troyer (059671)
Email: btroyer@bakerlaw.com

BAKER & HOSTETLER LLP
Key Tower
127 Public Square, Suite 2000
Cleveland, OH 44114-1214
Telephone: 216.621.0200
Facsimile: 216.696.0740

Attorneys for Plaintiff
Horizon Global Americas Inc.

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that, pursuant to Fed. R. Civ. P. 26(c)(1) and L.R. 37.1, Horizon conferred with NSI in a sincere and good-faith effort to resolve the dispute without action from the Court.

By: */s/Brendan E. Clark*
Brendan E. Clark

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was served on this 17th day of March 2025 via the Court's electronic filing system on all parties registered to receive service therefrom.

By: *<u>/s/Brendan E. Clark</u>*
Brendan E. Clark