**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| HORIZON GLOBAL AMERICAS, INC., | ) | |
| | ) | Case No. 1:20-cv-00310-PAB |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge Pamela Barker |
| | ) | |
| NORTHERN STAMPING, INC., | ) | |
| | ) | |
| Defendant. | ) | |

# DEFENDANT NORTHERN STAMPING'S OPPOSITION TO HORIZON'S MOTION TO DISMISS

## I. Introduction

Although Horizon graciously claims it "now seeks to bring this long-running litigation to an efficient conclusion," it is really trying to avoid the repercussions of its pervasive misconduct. Doc 96, p. 5.

Even if Horizon had properly granted NSI an unconditional covenant not to sue—it did not—the posture of this suit would not change. The law is clear that this Court would still retain jurisdiction over NSI's claims for attorney fees and counterclaims. *See, e.g., Monsanto Co. v. Bayer Bioscience N.V.*, 514 F.3d 1229, 1242 (Fed. Cir. 2008); *Accordant Energy, LLC v. Vexor Technology, LLC*, 364 F.Supp.3d 780, 786 (N.D. Ohio 2019); and *Lowe v. ShieldMark, Inc.*, 2023 WL 3043769 *3 (N.D. Ohio 2023). Else any plaintiff would be free to use whatever deception and misconduct it could fathom and simply drop its case once it was caught, like Horizon tries here.

Horizon's motion should be denied.

## II. The Facts

Horizon and its counsel utterly failed to investigate NSI's repeated pre-suit warnings that Horizon's patents were invalid when all they needed to do was simply review the evidence already within their possession or pick up a phone and call the inventor. Instead—over the course of seven years—Horizon represented to the Patent Office and this Court as absolute fact whatever served them best without any regard whatsoever for the truth. That is litigation misconduct.[1]

The fact that NSI is seeking an award of attorney fees for Horizon's misconduct and repeated misrepresentations is not a new issue. And Horizon certainly cannot hide from its misconduct by claiming that the Court is now powerless over Horizon.

### A. Horizon misrepresented to the Patent Office and this Court several times that a "sketch" established conception of Horizon's supposed invention.

Horizon deceived the Patent Office and this Court multiple times by falsely claiming and swearing that a sketch Horizon submitted to obtain its Patents established conception. Indeed, Horizon could not even decide which element in the sketch was the critical "receiving member." Doc 99, pp. 2-4. Horizon first identified the receiving member as "clearly" being a slot on the hitch mount leg. *Id.* at 3. Later, Horizon changed its story and vehemently argued the receiving member was instead an aperture that it had previously claimed was for "connection to the [truck] frame." *Id.* at 3, 4.

---

[1] NSI does not specifically address Horizon's self-serving comments about "its good faith belief in the merits of its suit." (Doc 96, p. 5). The evidence of Horizon's misconduct and misrepresentations is pervasive and self-evident. Likewise, NSI does not specifically address Horizon's incredible claim that "NSI gave Horizon no choice but to bring this lawsuit or walk away from its valuable patent rights." *Id.* To the contrary, before Horizon filed suit, NSI explained to Horizon exactly why the asserted patents are invalid. Horizon has since admitted NSI was correct seven years ago.

Horizon's misrepresentations are no longer the subject of reasonable dispute as Horizon was forced to admit that because "the sketch doesn't disclose each and every limitation in the patent claims at issue, ***it is not evidence of a conception***." Doc 67-3, p. 14. Moreover, Horizon admitted that it had evidence all along that it had no legitimate basis to bring these claims. *Id.*

NSI brought this and other misconduct to the Court's attention in a June 2023 status report and requested leave to add counterclaims based on Horizon's misconduct. Doc 71. The Court allowed NSI to amend its counterclaims. Doc 87.

**B. NSI specifically requested attorney fees in its Third Amended Answer and Counterclaims.**

Given the Court's permission to amend its counterclaims, NSI filed its Third Amended Answer and Counterclaims. NSI specifically requested fees in that pleading:

> D. Declare this case to be "exceptional" under 35 U.S.C. § 285 and award NSI reasonable attorneys' fees and costs; and,
>
> E. Award NSI any further relief this Court deems just and proper.

Doc 88, p. 21.

**C. Following the Federal Circuit's affirmance that Horizon's Patents are invalid, the Court granted NSI discovery on its fees request.**

Following the Federal Circuit's affirmance of the IPR decision, NSI filed another status report informing the Court and Horizon that it was seeking attorney fees. Doc 92. NSI also specifically informed Horizon that "NSI expects that it will take the deposition of…certain attorneys at McDonald Hopkins…who made the several misrepresentations to the Court." Doc 92, p. 8.

In a February 5 minute order, the Court granted NSI the opportunity to seek discovery and set a deadline of May 6 for completing that discovery. The Court also ordered that Horizon dismiss its claims with prejudice by February 19, 2025.

### D. Horizon dismissed its claims accompanied by a limited covenant not to sue that does not include NSI's customers and excludes Horizon's licensees.

Horizon dismissed its ill-founded claims with prejudice on February 19, 2025, and soon thereafter presented NSI with a covenant not to sue ("Covenant"). Horizon claims in its motion that its Covenant "unconditionally covenants not to sue NSI ***or its customers*** for any past, current, or future infringement." Doc 96, p. 7 (emphasis added). That is untrue. There is no provision in Horizon's Covenant protecting NSI's customers:

> 1. **Covenant Not to Sue.** Horizon, solely on behalf of itself and any successors-in-interest to the 050 Patent or, to the extent any remaining interest exists, the 585 Patent, hereby unconditionally and irrevocably covenants not to make any claim or demand or file or maintain any lawsuit anywhere in the world ***against NSI for the infringement*** or alleged infringement (whether direct or indirect) of the 050 Patent or, to the extent any remaining interest exists, the 585 Patent, for any past, present, or future manufacture, use, sale, offer for sale, or importation by NSI in connection with any underbed combined gooseneck and fifth wheel hitch mounting system made, used, offered for sale, sold, or imported by NSI. Horizon further unconditionally and irrevocably covenants not to make any claim or demand or file or maintain any lawsuit anywhere in the world ***against NSI for the infringement*** or alleged infringement of the 050 Patent or, to the extent any remaining interest exists, the 585 Patent by any customers of NSI based on such customers' purchase or use of past, present, or future underbed combined gooseneck and fifth wheel hitch mounting system made, used, offered for sale, sold or imported by NSI (whether such infringement or allegation of infringement may be direct or indirect). This Covenant shall not bind or otherwise apply to any current licensees of the 050 Patent or, to the extent any remaining interest exists, the 585 Patent, or to any other third parties (except for successors-in-interest to NSI, the 050 Patent or, to the extent any remaining interest exists, the 585 Patent).

Doc 94-1, pp. 2-3 (emphasis added).

As seen above, the Covenant contains two clauses setting forth Horizon's promise not to sue. But both clauses only preclude future suit against NSI. The second clause, which relates to infringing actions by a customer, still only includes a promise not to sue NSI for those customers' actions; there is no promise not to sue the customers themselves.

Second, the Covenant broadly excludes licensees from its purview. *Id.* ("This Covenant

shall not bind or otherwise apply to any current licensees of the 050 Patent or, to the extent any remaining interest exists, the 585 Patent, or to any other third parties.). Under this broad exclusion, Horizon's licensees are not precluded from suing NSI.

NSI asked Horizon to identify the licensees in the Covenant. Unfortunately, those requests have gone unanswered with Horizon only vaguely claiming that the "language was included for completeness based on model covenants that have been used to efficiently resolve counterclaims in similar situations."[2]

Horizon's Covenant is not unconditional. It does not cover NSI's customers. It specifically excludes Horizon's unnamed licensees. Therefore, the Covenant is ineffective and does not extinguish the controversy between Horizon and NSI.

## III. Discussion

Horizon's motion is "Much Ado about Nothing" and a waste of the fees it decries in its motion. Whether declaratory judgment jurisdiction over NSI's counterclaims exists or not because of the Covenant, the law is well-settled that this Court maintains jurisdiction over NSI's counterclaims by virtue of NSI's request for fees under 35 U.S.C. § 285. Moreover, the Court has jurisdiction over an award of fees under its inherent powers.

### A. The Court maintains jurisdiction by virtue of NSI's request for fees under 35 U.S.C. § 285 and the Court's inherent powers.

Regardless of whether Horizon provided a proper covenant, this Court still retains jurisdiction over NSI's request for fees and its inequitable conduct counterclaims.

---

2 March 3, 2025 email from Brenden Clark to counsel for NSI, Exhibit A. The fact that Horizon has licensed its Patents In Suit but refuses to identify the licensees is troubling and could raise issues of whether others still have standing to sue NSI or its customers, and whether Horizon itself would seek to submarine this Covenant by suing NSI's customers.

The Federal Circuit considered this issue in *Monsanto Co. v. Bayer Bioscience N.V.*, 514 F.3d 1229 (Fed. Cir. 2008), and concluded that the district court retained independent jurisdiction over Monsanto's request for attorneys fees under 35 U.S.C. § 285 even though plaintiff had dismissed its infringement claims and covenanted not to sue defendant:

> Although [Bayer] originally sought a declaratory judgment that the four Bayer patents were infringed, Bayer subsequently dismissed its infringement claims under [three patents-in-suit] and filed a....covenant[ ] not to sue Monsanto...Even if filing such a covenant may divest the court of jurisdiction over a declaratory judgment action regarding these patents...under our precedent the district court retained independent jurisdiction over Monsanto's request for attorneys fees under 35 U.S.C. § 285.

*Monsanto Co.*, 514 F.3d at 1242. The Federal Circuit held that along with its jurisdiction to determine fees under Section 285, the court retained jurisdiction to consider inequitable conduct even with respect to patents that are no longer asserted. *Id.* at 1243 (holding that "there is no dispute that the court had an independent grant of jurisdiction under § 285 to consider inequitable conduct relating to the withdrawn patents.").

Likewise, Judge Gaughan addressed this exact same issue in *Accordant Energy, LLC v. Vexor Technology, LLC*, 364 F.Supp.3d 780, 786 (N.D. Ohio 2019) and found that defendant's request for attorney fees gave the Court continuing jurisdiction to investigate defendant's counterclaims and award fees:

> In the event the Court finds that a party engaged in inequitable conduct, the district court must declare a patent unenforceable . . . . This is so regardless of whether the Court maintains jurisdiction over the counterclaim itself as ***jurisdiction undoubtedly exists over these issues as a result of defendant's request for attorney's fees pursuant to 35 U.S.C. § 285*** . . . . The fee motion is the jurisdictional "hook" that gives the Court the power to declare a patent invalid when no other "case or controversy" exists. Accordingly, the Court will dismiss the counterclaims and allow defendant to file a motion pursuant to 35 U.S.C. § 285 in which defendant may argue that plaintiff's inequitable conduct warrants a declaration of unenforceability. In the event defendant succeeds, ***the Court undoubtedly possesses jurisdiction to enter a declaratory judgment to the extent necessary to enforce any appropriate fee award***.

*Accordant Energy*, 364 F.Supp.3d at 786 (emphasis added). See also, *Lowe v. ShieldMark, Inc*., 2023 WL 3043769, at *3 (ND. Ohio 2023) ("As a preliminary matter, the Court notes that it has subject matter jurisdiction to decide Defendants' fees counterclaim. Plaintiffs argue to the contrary, contending that the Court lost jurisdiction over Defendants' § 285 counterclaim when it dismissed Plaintiffs' patent infringement claim. But a § 285 counterclaim confers subject matter jurisdiction independent of an initial patent infringement claim."). In *Lowe*, the Court denied fees to defendant on its inequitable conduct claim but found it had jurisdiction to award fees for litigation misconduct under § 285 and the Court's inherent powers. *Id*. pp. 4-5.

Thus, even if Horizon had granted a proper covenant (or if it elects to do so later), Horizon's jurisdictional argument fails. The Court retains jurisdiction to award fees, and has an independent grant of jurisdiction under Section 285 to determine whether Horizon's patents are unenforceable.

### B. Horizon's Covenant is not effective to remove jurisdiction over NSI's declaratory judgment claims.

The test for whether jurisdiction over declaratory judgment claims exists after a dismissal of plaintiff's claims and a covenant not to sue is whether there continues to exist a "substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). The *MedImmune* Court adopted a "totality of the circumstances" test to evaluate whether a controversy is "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.*

Whether a covenant not to sue rises to the level of divesting a court of jurisdiction over declaratory judgment claims "depends on what is covered by the covenant." *Accordant Energy*,

364 F.Supp.3d at 782; citing *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.,* 556 F.3d 1294, 1297 (Fed. Cir. 2009).

In this case, Horizon seems to have copied nearly word-for-word the covenant not to sue Judge Gaughan found sufficient in *Accordant Energy,* but for a very critical distinction. Although Horizon represents to the Court in its motion that its Covenant "unconditionally covenants not to sue NSI ***or its customers*** for any past, current, or future infringement," Horizon deliberately omitted from the *Accordant Energy* covenant that very promise not to sue NSI's customers for infringement. Doc 96, p. 7, emphasis added; *compare Accordant Energy,* 364 F.Supp.3d at 782, *with* Doc 94-1, Horizon's Covenant Not to Sue (the second clause of the *Accordant* covenant promises not to maintain ***any*** lawsuit for infringement by customers, whereas the second clause of Horizon's Covenant, like the first clause, only promises not to maintain any suit ***against NSI*** for infringement by its customers).[3]

This is a significant, if surreptitious, change. In its First Amended Complaint Horizon specifically mentions NSI's continued sales to NSI's customer, General Motors, as motivation for this suit:

> 26. NSI has sold and continues to sell an underbed combined gooseneck and fifth wheel hitch mounting system, which infringes the Horizon Patents, to General Motors or to its subsidiaries or affiliates that is incorporated into at least the Chevrolet Silverado.

Doc 16, p. 5. In other words, Horizon has already alleged infringement by a specific NSI customer. And suing General Motors will effectively result in a suit against NSI. Thus, a very real and imminent threat exists. Else why would Horizon have made this conspicuous change to

---

[3] Horizon's exclusion of customers from the covenant seems deliberate given that it otherwise appears to have copied the *Accordant* covenant nearly verbatim. Horizon's choice to not inform the Court of the holding in *Accordant* that is decidedly contrary to what Horizon advocates in the brief is troublesome.

the *Accordant Energy* covenant not to sue? Moreover, Horizon's reluctance to tell NSI who its licensees are creates more uncertainty.[4]

Under *Medimmune*, there is sufficient immediacy and reality of a possible suit that jurisdiction over NSI's unenforceability and inventorship declaratory judgment actions does not divest.

## IV. Conclusion

The law is clear that neither the dismissal of Horizon's claims nor the Covenant divests this Court of jurisdiction over Horizon's misconduct in this suit or in its dealings with the Patent Office.

Horizon's motion should be denied.

Dated: March 20, 2025

Respectfully submitted,

By: /s/ Carter Ostrowski

Jay R. Campbell (0041293)
Carter Ostrowski (0102302)
**TUCKER ELLIS LLP**
950 Main Avenue Suite 1100
Cleveland, OH 44113
(216) 592-5000
jay.campbell@tuckerellis.com
carter.ostrowski@tuckerellis.com

Ron N. Sklar
Dennis J. Abdelnour
**HONIGMAN LLP**
321 N Clark Street, Suite 500

---

[4] Although the *Accordant* court accepted this same condition regarding licensees, it did so under very different facts. First, the licensees in *Accordant* were known. That allowed the court to assess that there was no immediate controversy with those licensees. *Accordant Energy*, 364 F.Supp.3d at 785. Second, the *Accordant* covenant expressly covered customers. *Id.* Neither is true here.

Chicago, IL 60654
(312) 701-9300
rsklar@honigman.com
dabdelnour@honigman.com

*Attorneys for Defendant Northern Stamping, Inc.*