**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| HORIZON GLOBAL AMERICAS INC., | ) | CASE NO.: 1:20-CV-00310-PAB |
| Plaintiff, | ) | JUDGE PAMELA A. BARKER |
| v. | ) | |
| NORTHERN STAMPING, INC., | ) | **HORIZON GLOBAL AMERICAS INC.'S REPLY IN SUPPORT OF ITS MOTION TO QUASH CUPAR SUBPOENA OR FOR PROTECTIVE ORDER** |
| Defendant. | ) | |

## I. INTRODUCTION

Defendant Northern Stamping, Inc's ("NSI") contempt for proper procedure is on full display in its Opposition to Plaintiff Horizon Global Americas, Inc.'s ("Horizon") Motion to Quash ("Opposition"). NSI's counterclaims are moot, there is no jurisdiction for discovery, and yet NSI continues to fill its briefing with hyperbolic rhetoric and portrayals of the record that range from tendentious and misleading to flatly untrue. The Court should at a minimum compel NSI to follow proper procedure as a safeguard against abuse in NSI's misguided quest to recover attorney fees. That must begin with quashing the Cupar subpoena.[1]

NSI is free to file a fee motion and request (but is far from guaranteed) discovery in connection with such a fee motion[2], but in doing so it must explain the theories supporting its contention that it is entitled to its fees and explain, with specific facts, the materiality of the requested discovery. Unsurprisingly, NSI has failed to make such a fee motion.

[1] NSI's February 19, 2025 non-compliant disclosure of attorneys' fees included fees associated with the *inter partes* review, which it cannot claim under Section 285. *Dragon Intellectual Prop. LLC v. DISH Network L.L.C.*, 101 F. 4th 1366 (Fed. Cir. 2024).

[2] Horizon, of course, does not imply that such would be proper or meritorious, but addressing these issues is beyond the scope of this Reply.

Instead, NSI proposes undertaking a bad-faith fishing expedition, starting with a deposition of opposing litigation counsel, in complete disregard of the procedural protections afforded both Horizon and Mr. Cupar. NSI's subpoena to Mr. Cupar should be quashed or a protective order prohibiting Mr. Cupar's deposition should be issued.

## II. REVIEW OF THE "FACTS"

As is NSI's habit, it overloads its alleged "facts" in the Opposition with grandstanding. The issue is not, as NSI fantasizes, that Horizon is "petrified" of NSI pursuing discovery. Rather, the issue is that NSI refuses to follow proper procedure to avoid clearly articulating the bases by which it believes it can obtain fees from Horizon or its former counsel through a motion and then identifying specific facts to satisfy the *Shelton* standard. The reason is obvious: there is no basis to support any such application and it hopes to avoid its obligation to provide one.

Horizon cannot fairly respond to accusations yet to be articulated or prepare for discovery in connection with accusations not yet made. That NSI did not undertake the legally correct, simple, and economical step of dismissing its counterclaims, filing a fee motion, and requesting discovery based on the fee motion speaks volumes as to its motivation in the discovery it now seeks. This has to stop.

NSI also continues to misrepresent communications with opposing counsel to the Court.[3] There is no reasonable interpretation by which opposing counsel's statements can be taken as a waiver of privilege or invitation to depose Mr. Cupar; neither Horizon nor its lawyers have suggested this at any point. The entire thrust of the misrepresented email was that a deposition of Mr. Cupar would be improper and should not be had.

[3] *See*, *e.g.*, Dkt 101 at n.2; Dkt 102 at n.1.

## III. NSI MISINTERPRETS THE LEGAL STANDARDS FOR JURISDICTION

None of the cases NSI cites for jurisdiction following mooting of counterclaims authorize any discovery, let alone the fishing expedition NSI suggests it should be allowed here. On the contrary, absent live claims, a court need not permit discovery even in conjunction with a request for attorney fees under § 285. *Digeo, Inc. v. Audible, Inc.*, 505 F.3d 1362, 1370 (Fed. Cir. 2007).

What NSI's cited cases do require, though, is that a party seeking fees after its counterclaims are dismissed file a motion for such fees. In *Monsanto*, inequitable conduct had already been found based on intentional withholding of widely circulated notes that an employee of the patent owner's intellectual property department testified "'could be important' to a patent examiner." *Monsanto Co. v. Bayer Bioscience N.V.*, 514 F.3d 1229, 1236 (Fed. Cir. 2008). *Monsanto* acknowledges that a covenant not to sue divests a court of jurisdiction over claims requesting declaratory judgment of unenforceability; the court retains jurisdiction only over a request for attorney fees. *Id*. at 1242.

Unlike NSI, district courts have had no trouble understanding that *Monsanto* requires a party requesting fees to set forth its theories for such fees in a motion for the court to retain jurisdiction under § 285.

> *Monsanto* does not support Ni-Q's assertion that a court can, independent of a motion for attorney's fees under § 285, find a patent that is not in suit unenforceable for inequitable conduct. [. . .] The prerequisite in *Monsanto* for the court having jurisdiction to hold the patent that was no longer in suit unenforceable was the existence of a pending motion under § 285. Here, Ni-Q has not yet filed a motion under § 285.

*Ni-Q, LLC v. Prolacta Bioscience, Inc.*, No. 3:17-CV-934-SI, 2021 WL 3145968, at *3 (D. Or. July 26, 2021); *see also Z. Trim Holdings v. Fiberstar Inc.*, 2008 WL 2717656 (W.D. Wis. April 10, 2008) (dismissing defendant's counterclaims, noting "[t]o the extent the issue of inequitable

conduct is relevant to a request for attorney fees, defendant may raise it in the context of a § 285 motion").

*Accordant* says the same. The Court in *Accordant* dismissed defendant's counterclaims, but "agree[d] with defendant that the Covenant does not divest the Court over defendant's request for attorney's fees asserted under 35 U.S.C. § 285." *Accordant Energy, LLC v. Vexor Tech., LLC*, 364 F. Supp. 3d 780, 786 (N.D. Ohio Feb. 1, 2019). There, the Court provided that it would "allow defendant to file a motion pursuant to 35 U.S.C. § 285" to the extent the plaintiff contested filing of such a motion. *Id*. The Court in *Accordant* did not consider any discovery, let alone taking depositions absent actual filing of such motion. On the contrary, the Court cautioned that it "need not 'allow fee litigation to be the tail that wags the dog.'" *Id*. (citations omitted).

NSI also fails to note that a fee motion had been filed in *ShieldMark* as well. In *ShieldMark*, the Court had already found "that Plaintiffs acted in bad faith to hide their loss of standing, and that they violated their obligation to protect Defendants' confidential information." *Lowe v. ShieldMark, Inc*., 2023 WL 3043769, at *1 (N.D. Ohio Ap. 21, 2023). Plaintiff's opposition to defendant's fee motion under § 285 argued that the Court lacked subject matter jurisdiction to consider defendant's request for fees. *See* Dkt 208, *Lowe v. ShieldMark, Inc*., No. 1:19-CV-748-JG (N.D. Ohio Sept. 29, 2022) (Plaintiffs' Brief in Opposition to Defendants' Motion (Doc. 203) for a Finding That This Case Is "Exceptional" and for an Award of Attorney Fees and Alternatively for Sanctions). The Court disagreed with the plaintiff's jurisdictional challenge to the fee motion, finding it retained jurisdiction over the motion, and issued its ruling on defendant's motion for fees. *ShieldMark*, 2023 WL 3043769, at *2.

The Court noted in *Accordant* that "[t]he fee motion is the 'hook' that gives the Court the power to declare a patent invalid when no other 'case or controversy' exists." *Accordant*, 364

F.Supp.3d at 786. Absent that hook, there is no jurisdiction, and no basis to request, let alone take, discovery.

## IV. THE COURT SHOULD QUASH NSI'S SUBPOENA TO MR. CUPAR

### A. NSI Has Not Filed a Motion for the Court to Retain Jurisdiction

Proper procedure is all that stands between orderly resolution of this case and an expensive and contentious fishing expedition. Before dragging the Court, Horizon, and the third parties it subpoenaed any further, NSI owes a clear explanation of the legal basis its fee motion will rest on, the evidence it has in support of that motion, and specific facts it believes it will obtain through its requested discovery. Assuming that further discovery should even be allowed at that point, this will ensure that Horizon knows what it is defending and limit NSI from engaging in improperly broad, invasive, and harassing discovery.

### B. NSI Continues to Ignore Evidence Already in the Record, Because It Contradicts NSI's Arguments

NSI's insistence that discovery is necessary completely overlooks the record that already exists. Mr. Clark's email that NSI continues to misrepresent is a clear admonition to NSI to look at the existing record, and that a deposition of Mr. Cupar cannot be justified. (See Dkt 99 at 3; Dkt 101 at n.2.[4]) That existing record should be the only source of evidence needed for its purported fee request. Anything more is either cumulative or privileged.[5]

This Court has a robust set of Local Patent Rules ("L.P.R.") that govern patent cases. L.P.R. 3.1 begins the "contentions" process and ensures that a defendant cannot be bullied into defending litigation while the plaintiff rests on minimum pleading standards. Accordingly,

---

[4] Contrary to NSI's footnote 2, Horizon never represented to NSI that it has licensed the patents-in-suit.

[5] For example, NSI seeks to depose inventor Eric Stanifer, who was already deposed *at length* during the IPR about NSI's claims regarding the hand drawing, "receiving members," and any alleged contribution by Ford engineer Sean Withers. (*See*, *e.g.*, Dkt 84.) NSI's proposed deposition of Mr. Cupar seeks only privileged information regarding Mr. Cupar's pre-suit investigation and mental processes.

Horizon's L.P.R. 3.1 infringement contentions necessarily demonstrate its pre-suit investigation, including how NSI's product is a near exact copy of Horizon's own products covered by the patents formerly in suit. Horizon not only satisfied the requirements of L.P.R. 3.1, but its actions reflect continuous investigation as it amended its initial infringement contentions twice. All three sets of initial infringement contentions were filed with this Court. (*See* Dkt 63 (including exhibits).) Even though patents are presumed valid under 35 U.S.C. § 282, a plaintiff responds to the defendant's invalidity and unenforceability contentions under L.P.R. 3.7. Horizon not only responded to NSI's unenforceability contentions but successfully moved to dismiss its first set of counterclaims directed to inequitable conduct, including as exhibits evidence that NSI now deliberately overlooks in its mischaracterization of the record. (*See* Dkt 35 (including exhibits).)

L.P.R. 3.2(b) required Horizon to provide "[a]ll documents evidencing conception," which it did over four years ago on August 14, 2020. (*See* Dkt 35-5.) Among Horizon's production that day were myriad conception and reduction to practice documents that go far beyond the hand drawn conception sketch on which NSI focuses its counterclaims. (*See, e.g.*, Ex. A, HZN000031 and HZN000034, January 31, 2008 drawings with handwritten notes showing pucks/receiving members.) NSI cannot pretend that it is unaware of the corroborating evidence as it has repeatedly been drawn to NSI's attention. (See, *e.g*, Dkt 35-6, Exhibit E to Horizon's Motion to Dismiss.)

L.P.R. 3.2(c) also required Horizon to provide the file histories of the patents-in-suit. These file histories included disclosure to the Patent Office of existing Horizon products having sockets and pucks for engaging the legs of fifth-wheel hitches, *i.e.*, the allegedly missing "receiving

member" undergirding NSI's counterclaims.[6] With these file history documents, Horizon also provided a copy of its information disclosure statements filed with the Patent Office citing U.S. Pat. No. 7,264,259 and U.S. Pat. No. 7,121,573 to Lindenman, *et al.*, (both of which Horizon owns) (Ex. C at HZN000107.) These were the same "Lindenman" references that NSI argued *disclose* the "receiving member" during the IPR. (*See* Dkt 67-1 at PageID # 2014 ("Petitioner asserts that Works discloses each of the limitations except for the receiving members, which it asserts are disclosed in Lindenman.").) Yet, despite the fact that one of the inventors here, the late Richard McCoy, was Thomas Lindenman's co-inventor on those patents, NSI now repeatedly insists that Messrs. McCoy and Stanifer had *not* conceived a "receiving member" on the date Mr. Stanifer alleged. (*See*, *e.g.*, Opposition at 2, *c.f.* Ex. A.) NSI cannot reverse course and now argue that the inventors could not have possessed a "receiving member" when the operation of a receiving member was known in the art and, indeed, required for the attachment of any fifth wheel hitch. NSI's selective amnesia with respect to both the corroborating conception documents and McCoy's obvious possession of "receiving members" as of the date of the hand drawing is stunning in light of its duty of candor to the Court and obligations under Fed. R. Civ. P. 11.

The conception evidence above is just what Horizon had provided to NSI as of August 14, 2020; more was provided later in this matter and during the *inter partes* review. (*See*, *e.g.*, Dkt 84 at 9; Dkt 83-10; Dkt 83-12; Dkt 83-13; Dkt 83-14.) NSI knows Horizon's contentions, productions, and papers demonstrate Horizon's diligence in procuring and enforcing the patents it asserted in this lawsuit as well as Messrs. McCoy and Stanifer's conception of the invention,

---

[6] *See*, *e.g.*, Ex. B, documents from file history, including: HZN000233; HZN000242; HZN000268; HZN00271; 279; 281; 290; 297-299; 304; 306-307; 313-314; 319; 324-325; 330; 332; 335; 344; 350; 357; 363; 375; 382-384; 389; 398; 399; 405; 415-417; 426-428; 438; 446; 449; 451; 460-462; 471-473; 481; 484; 486; 490; 500; 509; 518; 530; 538-540; 550; 557; 560; 562; 566; 576; 588 (showing prior products including pucks used to engage legs of fifth-wheel hitch).)

including the receiving member, by the date Mr. Stanifer alleged. Yet NSI still mischaracterizes deposition testimony by Mr. Stanifer and decontextualized statements made by former counsel, claiming it requires "answers," while ignoring the wealth of documents and prior testimony that already answer any questions NSI might pose. It is gravely concerning that NSI pretends materials that it has possessed for years now do not exist to drag out this lawsuit in its frenzied search for fees.

NSI's misrepresentations regarding the statements of Horizon's counsel and insinuation that Horizon lacks evidence to cite in opposing NSI's non-existent motion for fees (Opposition at n.3 (PageID # 3760)) further exemplify NSI's inability to argue the merit of its stance. If any sound basis for NSI's fee request existed, the record as it stands would show as much. Before being permitted to depose anyone, let alone former opposing litigation counsel, NSI should be made to explain the inconsistencies between such evidence and its baseless accusations of dishonesty against a respected patent litigator and longtime officer of the court.

### C. NSI Sets Forth No Legitimate Argument for Deposing Prior Opposing Litigation Counsel

Surprisingly, NSI's Opposition makes no attempt to satisfy the extraordinarily high bar to deposing opposing litigation counsel. NSI's burden on this front is clear.

Depositions of opposing counsel disrupt the adversarial nature of our judicial system, lower the standards of the profession, and add to the already burdensome time and costs of litigation. *Massillon Mgmt., LLC v. Americold Realty Tr.*, No. 5:08CV0799, 2009 WL 614831, at *2 (N.D. Ohio Jan. 21, 2009) (reversing magistrate's order allowing plaintiff to depose defendant's in-house counsel about discussions with non-parties (citing *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986))). Accordingly, "[d]iscovery from an opposing counsel is 'limited to where the party seeking to take the deposition has shown that (1) no other means exist to obtain the

information . . . ; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case.'" *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 278 F.3d 621, 628 (6th Cir. 2002) (citing *Shelton*, 805 F.2d at 1327; *Konecranes Glob. Corp. v. Mode Tech (Beijing) Co.*, No. CV 2:19-MC-41, 2020 WL 3265538, at *3 (S.D. Ohio June 17, 2020) (quashing subpoena to plaintiff's litigation counsel about facts supporting reasonable basis for initiating patent infringement claims)). Beginning at III(C) of its Opposition, NSI does not set forth *any* ground for the materiality of additional deposition testimony of Mr. Cupar, instead again arguing that its counterclaims are not moot. It is NSI's burden to identify specific nonprivileged facts and explain their materiality, and it has made no effort to carry this burden in its Opposition. *See Konecranes*, 2020 WL 3265538 at *3 and n.1 (denial of Rule 11 motion arguably mooted request for deposition of counsel but at a minimum meant testimony was not "relevant or crucial to the preparation of its case").

NSI's position that the burden and expense of "Mr. Cupar's deposition is inconsequential" against the whole of the litigation is flippant and not only disrespectful to efforts to efficiently resolve this matter but to the sanctity of the attorney-client privilege. Requiring Horizon to file this Motion to avoid incurring the additional costs and burden associated with an unjustified deposition itself imposes undue burden and expense on Horizon. *See, e.g., Coleman-Hill v. Governor Mifflin Sch. Dist.*, 271 F.R.D. 549, 555 (E.D. Pa. 2010) (sanctioning attorney for abuse of subpoena power that required moving party to file motion).

NSI's position that "[t]he 'case' here is NSI's request for attorney fees" (Dkt. 99 at 8) gets it no closer to satisfying the *Nationwide/Shelton* test. When the only issue before a court is a fee motion, discovery is strongly disfavored. A "[s]ection 285 attorney fees request is not a separate, surviving and independent cause of action, but rather a collateral or ancillary issue which is

dependent on the main action." *Aventis Cropscience, N.V. v. Pioneer Hi-Bred Int'l, Inc.*, 294 F. Supp. 2d 739, 743 (M.D.N.C. 2003). In this regard, "major secondary disputes over attorneys' fees should be avoided." *Id.* at 743-44 (collecting cases). Given this, a defendant does not have any entitlement to pursue discovery in connection with a § 285 motion, and post judgment discovery for that purpose is strongly disfavored. *Id.* at 744-45. In fact, "in instances where a plaintiff has elected to voluntarily dismiss an infringement action courts have often rejected fee petitions" altogether as a matter of both law and policy. *Dodge-Regupol, Inc. v. RB Rubber Products, Inc.*, 2010 WL 1342918, at *6 (M.D. Pa. Mar. 31, 2010) (collecting cases). Courts are correct to decline to hold a trial that requires interrogation of the merits when the only remaining issue is a fee request.

> In considering whether . . . to hold such an adversarial hearing in [a patent] case, [we] note first that "[f]ee litigation is not to be used as a means for a party to litigate the substantive merits of the case." Indeed, because § 285 is recognized as an expression of Congress's view that attorneys fees should be available only in "rare and unusual circumstances," courts have been very reluctant to allow discovery on facts allegedly necessary to prove the exceptional nature of a case after its resolution "so as not to allow fee litigation to be the tail that wags the dog."

*Id.* at *14-15 (citing *Euclid Chem. Co. v. Vector Corrosion Techs., Inc.,* No. 05–80, 2008 WL 4404540, *5 (N.D. Ohio Sept. 24, 2008). As such, permitting discovery after all claims are dismissed or moot is strongly disfavored. *Id.* Given the procedural posture of this case, engaging in further discovery would not be proportionate even if an attorney fees motion was pending.

Finally, the Court can reach its own conclusions as to the character of NSI's communications with Mr. Cupar's management and its briefing to this Court, including its dismissive characterization of Horizon's request for fees as "poppycock." NSI continues to misrepresent the facts and unnecessarily multiply litigation in what should be a concluded case.

For now, however, the Court should award Horizon its fees incurred to file the current motion in light of NSI making no attempt to satisfy its burden under *Nationwide/Shelton*.

## V. CONCLUSION

There is neither jurisdiction nor justification for the discovery NSI seeks, and its continuing bombast in lieu of sound procedural and substantive bases should not be rewarded with the unconstrained fishing license NSI seeks. NSI's subpoena to Mr. Cupar should be quashed or a protective order prohibiting Mr. Cupar's deposition should be issued. Knowing the case law, NSI could and should have dismissed its counterclaims and moved for fees, explaining its theories in its motions and requesting any discovery it can argue is appropriate. Instead, NSI forced this motion practice on the Court and parties. Given this, Horizon should be awarded its fees in connection with moving to quash a subpoena that lacks clear scope, subject matter jurisdiction, and legal basis for deposing prior opposing litigation counsel.

Dated: March 28, 2025

Respectfully submitted,
*/s/Christina J. Moser*


Christina J. Moser (0074817)
Email: cmoser@bakerlaw.com
Brendan E. Clark (085634)
Email: bclark@bakerlaw.com
Brian A. Troyer (059671)
Email: btroyer@bakerlaw.com

BAKER & HOSTETLER LLP
Key Tower
127 Public Square, Suite 2000
Cleveland, OH 44114-1214
Telephone: 216.621.0200
Facsimile: 216.696.0740
Attorneys for Plaintiff
Horizon Global Americas Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was served on this 28th day of March 2025 via the Court's electronic filing system on all parties registered to receive service therefrom.

By: *_/s/Christina J. Moser_*
Christina J. Moser