UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| HORIZON GLOBAL AMERICAS, INC., ) | |
| ) | Case No. 1:20-cv-00310-PAB |
| Plaintiff, ) | |
| ) | |
| v. ) | Judge Pamela Barker |
| ) | |
| NORTHERN STAMPING, INC., ) | |
| ) | |
| Defendant. ) | |

**NORTHERN STAMPING'S OPPOSITION TO HORIZON'S MOTION FOR
PROTECTIVE ORDER PREVENTING MR. STANIFER'S DEPOSITION**

**I.   Introduction**

There is no reason to prevent the deposition of the alleged inventor of the Horizon patents, Eric Stanifer.  Indeed, Mr. Stanifer himself has agreed to his deposition.

Acquiescing that its previous "lack of jurisdiction" argument has no merit,[1] Horizon tries a new tack.  Now, Horizon argues that "NSI has no independent 'claim' or motion for recovery of fees pending" and thus "NSI's counterclaims are now moot, extinguishing subject matter jurisdiction" and preventing the deposition. Doc 105, p. 1, emphasis added.  Horizon is incorrect. NSI has claimed entitlement to fees several times, including in its counterclaims, and in its several status reports.  As Judge Gauhan held in the *Accordant* case, such an "***anticipated***" fees motion is all that is needed for jurisdiction to exist. *Accordant Energy, LLC v. Vexor Technology, LLC*, 364 F.Supp.3d 780, 786 (N.D. Ohio 2019) (emphasis added).

---

[1] Horizon previously argued that dismissing its claims and providing a Covenant not to sue was sufficient to derail jurisdiction over a fees motion under 35 U.S.C. § 285.  *See* Docs 96, 100.  It has apparently abandoned that argument.

Horizon also contends that the deposition of Mr. Stanifer would be burdensome and redundant because NSI already deposed him in the IPR proceedings. Doc 105, p. 2. The problem is that NSI was only permitted to cross-examine Mr. Stanifer on the IPR Declaration that Horizon submitted for him in the IPR, as per the IPR rules.[2] It could not depose him.

NSI, for example, would have liked to ask Mr. Stanifer questions related to his intent in filing the sketch as proof of conception. NSI would also like to ask Mr. Stanifer how he and Horizon sought a patent for the very same invention for which Ford had already filed a patent application. And why, when the patent examiner identified that Ford application as making Horizon's unpatentable, Mr. Stanifer and Horizon remained silent regarding their relationship with Ford. NSI was not permitted to fully address these issues during the IPR proceedings.

Mr. Stanifer's testimony is very relevant now, could not have been obtained before because of the stay, and is hardly redundant. The Court should deny Horizon's motion for a protective order.

**II. The Facts**

Horizon has now filed *three* motions and *two* replies trying to prevent *any* further discovery in this case. The briefing has now likely far exceeded the costs of the two half-day depositions NSI is seeking. One can only wonder what Horizon is trying to hide.

> **A. The IPR established that NSI has asserted a viable claim that Horizon's Patents In Suit were obtained only through misconduct.**

The IPR proceedings revealed that Horizon obtained its patents through a series of false statements both during initial prosecution and during the IPR. Those statements were designed

---

[2] *See* 37 CFR 42.53 (d)(5)(D)(ii) ("For cross-examination testimony, the scope of the examination is limited to the scope of the direct testimony.").

2

to prove that Mr. Stanifer happened to independently conceive of the identical idea for the patented hitch just days before the Ford inventor, Sean Withers.[3] Else, Mr. Stanifer and Horizon would not have been able to get the Horizon patents.

The IPR proceedings could not have gone worse for Horizon. The Patent Office invalidated every one of the Asserted Claims of Horizon's '585 Patent—a decision affirmed by the Federal Circuit on appeal. Worse, Horizon was forced to admit the "conception" sketch it submitted to the Patent Office during the original prosecution of the Horizon patents and again in the IPR *did not include the receiving member* and *did not establish conception*:

> ***Evidence from both parties*** the Board already analyzed shows the May 2008 sketch does not contain the claimed receiving members. ***Because the May 2008 sketch doesn't disclose each and every limitation in the patent claims at issue, it is not evidence of a conception as of that date***.

Horizon Surreply in IPR, p. 14, Doc 67-3 (underlining in original, other emphasis added).

Moreover, as seen in the quote above, Horizon admitted that it had evidence that all of its statements to the Patent Office about the sketch establishing conception, and to this Court that it is "impossible" to argue that the sketch does not show the receiving member, were false. This is not NSI's spin on the IPR—although hard to believe, it is exactly what happened.

NSI thus moved to amend its counterclaims to add claims for unenforceability and false inventorship. Doc 80, p. 3. NSI explained that Horizon had filed false oaths and declarations to obtain the Patents In Suit:

> Horizon deceived that Patent Office in two ways to obtain its patents. First, it filed a false Oath in which Horizon employees claimed to be original inventors of the Horizon patents when in fact the inventor was a Ford employee who brought the invention to Horizon. In for a penny, in for a

---

[3] Horizon made similar false statements to the Court: "[I]t is impossible to argue with the fact that the drawings show the receiving members," "the only 'falsity' here is not in Stanifer's declaration, but rather NSI's misrepresentation to the Court that the receiving members are not found on the Conception Drawing when in fact they are." Doc 37, p. 4.

3

>pound, Stanifer later filed a declaration falsely claiming he conceived of the patented invention before the Ford employee.

Doc 80, p. 3.

Horizon's admissions that the declarations it filed with the Patent Office are false establish the "intent" prong of inequitable conduct. *eSpeed, Inc. v. BrokerTec USA, L.L.C.*, 480 F.3d 1129, 1138 (Fed. Cir. 2007) (the Federal Circuit holding that "[a]n inference of intent may arise where material false statements are proffered in a declaration or other sworn statement submitted to the PTO."). Moreover, there is no doubt the false Oaths and false Declarations were material as they were the ***only*** basis for Horizon overcoming the Patent Office's rejection over the earlier-filed Ford invention.

Notably, in its various briefs, Horizon tries to downplay its misconduct and paints NSI's claims for fees and inequitable conduct as futile. This Court already held otherwise: "NSI's proposed amended counterclaims are not futile." ECF 87 at 18. Indeed, the Court specifically held in granting NSI the opportunity to amend its counterclaims to assert inequitable conduct and false inventorship that NSI's claims were not mere unsupported fishing expeditions:

>It is reasonable to infer from these allegations that Stanifer and McCoy knew that Withers was the original inventor of the combination hitch, and that their declarations that they were the original inventors were false and intended to deceive the USPTO…Given the previous allegations that Ford disclosed its design to Stanifer and Horizon, it is reasonable to infer that Stanifer's declaration was false and made with the intent to deceive the USPTO.

Doc 87, p. 17.

### B. NSI moved for fees and the Court granted NSI 90 days of discovery to further develop its fee motion.

Over two years ago, NSI filed a status report stating that "At the appropriate time, NSI intends to pursue fees under 35 U.S.C. § 285, 28 U.S.C. § 1927, and/or Fed. Civ. P. 11." Doc 67, p. 9.

4

In the next status report, NSI again asserted that it was seeking fees under § 285 and the Court's inherent powers for Horizon's deception before the Patent Office and litigation misconduct in its many misrepresentations to this Court:

> Moreover, Horizon fails to appreciate that its liability to pay NSI its attorney fees is not solely based on whether Horizon committed inequitable conduct before the Patent Office.  See, *Lowe v. ShieldMark*, Inc., *et al*, 1-19-cv-00748, 2023 WL 3043769 (N.D. Ohio, April 21, 2023) (Judge Gwin noting that "[e]ven if the Court declines to award Defendants fees based on inequitable conduct, the Court still has discretion under § 285 to award Defendants fees based on other litigation misconduct that the Court finds to be 'exceptional.'" *Id*. at * 8).

Doc 71, p. 4.

After the Federal Circuit affirmed the Patent Office's conclusion that all Asserted Claims of the '585 Patent are conclusively invalid, the Court requested that the parties file status reports on January 22.  NSI responded in no uncertain terms that it was seeking attorney fees:

> NSI has several bases to seek to recover its attorney's fees in this case. Standing alone, the frivolous nature of this suit, Horizon's deliberate misrepresentations to this Court, and its submission of false sworn statements to the Patent Office each justify an award to NSI of its attorney fees.  NSI will move for these fees at the appropriate time.

Doc 92, p. 8.  Horizon even acknowledged NSI's claim for fees by responding that "NSI's status report is another unsubtle, incendiary, and inappropriate brief arguing for an award of its attorney's fees." Doc 93, p. 1, n. 1 (emphasis added).

On January 24, the Court set a status hearing for February 5, noting that at the hearing NSI's request for attorney fees and discovery would be discussed:

> Defendant is also intent on seeking attorneys' fees and conducting discovery associated therewith. A Status Conference is set for February 5, 2025, at 1:30 PM. … During the Status Conference, the parties shall be prepared to discuss next steps, to include the potential for mediation, *whether Plaintiff will dismiss its claims and the procedural mechanism for dismissal given Defendant's counterclaims, and the attorneys' fees and discovery that Defendant seeks* and the proposed time frames associated with any such

5

discovery and briefing.

January 24 Court Order (emphasis added).

Following the February 5 status hearing, the Court issued an order granting NSI 90 days for discovery to support its request for fees:

> The Court hereby lifts the stay. After discussion by and between counsel for the parties and the Court, the following deadlines were agreed upon, and the Court orders as follows. By February 19, 2025, Plaintiff shall file a dismissal of all its claims against Defendant, with prejudice. By February 19, 2025, Defendant shall furnish to Plaintiff an itemization of its attorney fees as of that date, and identify the fees associated with defending the case in the District Court, and the fees it seeks beyond those incurred defending the matter in the District Court. ***The deadline for Defendant's completion of depositions is May 6, 2025,*** and the deadline for filing any motion(s) for summary judgment is June 5, 2025. Any brief in opposition to the summary judgment motion(s) is due 30 days after the filing of the motion(s) and any reply brief is due 14 days after the filing of the brief in opposition.

February 5 Court Order (emphasis added).

Whatever Horizon wants to call it, the Court considered NSI's claim for fees and granted NSI discovery specifically for the purpose of exploring all of the bases for fees. That more than supports any court's requirement for continuing jurisdiction under 35 U.S.C. § 285.

**III. Discussion**

Horizon provides two arguments seeking to prevent Mr. Stanifer from testifying. The first is that the Court lacks jurisdiction because NSI did not make a claim or request for attorney fees. Doc 105, p.1. The second is that, according to Horizon, Mr. Stanifer's deposition would be "unduly burdensome and cumulative and, thus, disproportionate to the needs of the litigation." *Id.*, p. 2.

    **A.    The Court has continuing jurisdiction in this case to award NSI its fees for Horizon's misconduct.**

Horizon has apparently dropped its prior argument that the Court lacks subject matter

6

jurisdiction to consider fees because Horizon dismissed its case and filed a Covenant not to sue. *See* Horizon's Motion to Dismiss for Lack of Subject Matter Jurisdiction, Doc 96.

Instead, Horizon now argues that "NSI has no independent 'claim' or motion for recovery of fees pending.  It has only a line in the prayer for relief on its counterclaims, all of which are now moot." Doc 105, p. 1.  Why the claim for fees in the prayer for relief can be ignored, Horizon does not say.  Nor does Horizon try to explain away NSI's several claims for recovery of fees in its status reports.  Docs 67, 71, and 92.  Moreover, Horizon only gets to its requirement that there must be a claim "pending" by ignoring Judge Gauhan's holding in *Accordant Energy, LLC v. Vexor Technology, LLC*, 364 F.Supp.3d 780 (N.D. Ohio 2019).

The *Accordant* Court, construing Federal Circuit precedent, concluded that there must only be the ***intent*** to file a motion for fees—not an actual claim or motion pending—to convey jurisdiction. *Id.* at 786 ("Although there is some disagreement on this issue, this Court reads *Monsanto* to hold that jurisdiction over the counterclaims themselves is lacking, ***but jurisdiction over plaintiff's anticipated request for fees remains***." (emphasis added)).

There should be no question that NSI has repeatedly voiced its intention to file a motion for fees. *See, e.g.*, Docs 67, 71, 92.  Therefore this Court has jurisdiction to consider fees.

Although finding no fault in the *Accordant* holding, Horizon would instead prefer the Court follow two cases out of this district it likes better.  Horizon cites *Z Trim Holdings, Inc. v. Fiberstar, Inc.*, No. 07-CV-161-BBC, 2008 WL 2717656 (W.D. Wis. Apr. 10, 2008), but does not explain why.  In *Z Trim* the Court specifically clarified that it had dismissed defendant's counterclaims ***not for want of jurisdiction,*** but based on the Court's discretion as they were "shak[y]." *Id.* at *1. Moreover, the *Z Trim* Court stated that subject matter jurisdiction over fees existed anyway because defendant was the "prevailing party," under § 285, as NSI is here. *Id.* at

7

\*2 ("[D]ismissal of defendant's unenforceability counterclaim does not stand in its way to requesting attorney fees under § 285 because a defendant whose unenforceability and invalidity counterclaims are dismissed as "moot" upon a finding of noninfringement is still the 'prevailing party' under § 285.")

In the other case Horizon cites, *Ni-Q, LLC v. Prolacta Bioscience, Inc.*, No. 3:17-CV-934-SI, 2021 WL 3145968 (D. Or. July 26, 2021), the Court stated that it "will consider Ni-Q's arguments relating to inequitable conduct, including whether such conduct rendered the '921 Patent unenforceable, in any future motion under § 285." *Id*. at \*6. That is hardly a roadblock.

Horizon also argues in general that discovery on a fees motion is disfavored. Horizon proves too little, too late. The Court already considered Horizon's arguments in the status conference on February 5, 2025, and granted NSI a 90-day period of discovery.

### B. The deposition of Mr. Stanifer is not duplicative of the limited cross-examination allowed in the IPR.

Horizon argues that "NSI's position is, in short, that it has already proved fraud by Mr. Stanifer through his first deposition (it did not) but it wants to repeat his deposition to prove it again." Doc 105, p. 2. Not quite.

In the IPR, Horizon submitted a declaration of Mr. Stanifer narrowly tailored to certain issues. That is because the Patent Office rules preclude NSI's cross-examination from going beyond the scope of Mr. Stanifer's declaration testimony. *See* 37 CFR 42.53(d)(5)(D)(ii) (limiting cross-examination to the scope of direct testimony). Notably, inequitable conduct is outside the purview of an IPR proceeding. 35 U.S.C. § 311 (b) (stating that the scope of an IPR is limited to validity challenges based on "prior art consisting of patents or printed publications").

Horizon, in Mr. Stanifer's IPR declaration, attempted to establish a new conclusive

8

conception date for the Horizon patents. Horizon's purpose in submitting Mr. Stanifer's IPR declaration was ***not*** to prove or disprove inequitable conduct—thus NSI could not fully inquire on these issues.

In any event, Horizon's motivation in seeking this protective order is clear—with less testimony from Mr. Stanifer, it will continue to play fast and loose with the truth. Indeed, that is exactly what Horizon did in its recent Reply ISO Its Motion to Quash Cupar Subpoena. Doc 104. There, Horizon attempted to minimize the significance of Mr. Stanifer's and Horizon's admission during the IPR that the sketch "is ***not*** evidence of a conception." Instead, Horizon argues it had actually conceived and reduced to practice that same invention long ***before*** the May 8, 2008 sketch. Doc 104, p. 6. It claims it produced much "corroborating evidence" that has "repeatedly been drawn to NSI's attention." *Id.* Thus, Horizon argues that the false conception date in Stanifer's Declaration did really not matter. *Id.*

Not true. Incredibly, Horizon's new counsel must not have realized that Mr. Stanifer already dispelled this argument, having admitted, under oath, that the sketch "appears to be the very first iteration of the [alleged Horizon invention]." Stanifer Dep. Tr. at 32:6-23, Doc 83-4. Indeed, under the watchful eyes of the PTAB in the IPR, both Horizon and Mr. Stanifer admitted that the real conception date was much later than Horizon's so-called "corroborating evidence," instead "at least March/April 2009." Patent Owner's Response, p. 16, previously filed as Doc 76-5.

Unlike its cross-examination in the IPR, NSI's deposition of Mr. Stanifer under this Court's jurisdiction will focus on inequitable conduct and other subjects that bear more directly on 35 U.S.C. § 285.

Thus, Mr. Stanifer's deposition will not be "duplicative and wasteful," as Horizon

9

contends. Doc 105, p. 8.

**IV. Conclusion**

Horizon's motion for a protective order is just one more procedural roadblock Horizon designed to prevent additional misconduct by Horizon from coming to light.

NSI has no desire to rehash the same topics already covered during the IPR proceeding. But there are many relevant topics left regarding fees under § 285 that would educate both the Court and the parties.

Dated: April 4, 2025

Respectfully submitted,

By: */s/ Jay R. Campbell*

Jay R. Campbell (0041293)
Carter Ostrowski (0102302)
**TUCKER ELLIS LLP**
950 Main Avenue Suite 1100
Cleveland, OH 44113
(216) 592-5000
jay.campbell@tuckerellis.com
carter.ostrowski@tuckerellis.com

Ron N. Sklar
Dennis J. Abdelnour
**HONIGMAN LLP**
321 N Clark St., Suite 500
Chicago, IL 60654
(312) 701-9300
rsklar@honigman.com
dabdelnour@honigman.com

*Attorneys for Defendant Northern Stamping, Inc.*