**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **HORIZON GLOBAL AMERICAS, INC.,** | **Case No. 1:20-cv-00310-PAB** |
| **Plaintiff,** | |
| **-vs-** | **JUDGE PAMELA A. BARKER** |
| **NORTHERN STAMPING, INC.,** | |
| **Defendant.** | **MEMORANDUM OPINION & ORDER** |

This matter is before the Court upon Plaintiff Horizon Global America Inc.'s ("Horizon" or "Plaintiff") Motion to Dismiss Defendant's Counterclaims for Lack of Subject Matter Jurisdiction, filed on February 28, 2025 ("Plaintiff's Motion"). (Doc. No. 96). On March 20, 2025, Defendant Northern Stamping, Inc. ("NSI" or "Defendant") filed a Brief in Opposition to Plaintiff's Motion ("Defendant's Opposition"). (Doc. No. 101). On April 3, 2025, Plaintiff filed a Reply Brief in support of Plaintiff's Motion ("Plaintiff's Reply"). (Doc. No. 106.) On April 7, 2025, Defendant filed a Motion for Surreply to Plaintiff's Motion ("Defendant's Motion"). (Doc. No. 108.) On April 18, 2025, Plaintiff filed its Opposition to Defendant's Motion for Surreply ("Plaintiff's Opposition"). (Doc. No. 110.)

For the following reasons, Plaintiff's Motion (Doc. No. 96) is GRANTED in part and DENIED in part. Defendant's counterclaims are hereby dismissed, but the Court retains jurisdiction to entertain a motion pursuant to 35 U.S.C. § 285. Defendant's Motion (Doc. No. 108) is DENIED.

**I.    Background**[1]

---

[1] Only the facts and procedural history relevant to the disposition of this motion are set forth herein.

This case concerns Horizon's claims against NSI for infringement of two patents, U.S. Patent No. 9,834,050 ("the '050 Patent") and U.S. Patent No. 10,589,585 (the '585 Patent"),[2] and NSI's declaratory judgment counterclaims against Horizon for invalidity, noninfringement, and unenforceability based on inequitable conduct.  (Doc. No. 16 at PageID#s 81, 87; Doc. No. 88 at PageID#s 3544-58; Doc. No. 96 at PageID# 361.)   In Defendant's Third Amended Answer to Plaintiff's First Amended Complaint and Counterclaims (Doc. No. 88), NSI requests as 'relief on its counterclaims' that this Court "[d]eclare this case to be 'exceptional' under 35 U.S.C. § 285 and award NSI reasonable attorneys' fees and costs[.]"  (Doc. No. 88 at PageID# 3559.)

On September 8, 2021, NSI filed a Motion for Stay Pending Resolution of Inter Partes Review of the '585 Patent before the U.S. Patent and Trademark Office's Patent Trial and Appeal Board (the "PTAB"), which this Court granted on December 6, 2021.[3]  (Doc. No. 52; Doc. No. 65.)  On February 9, 2023, the PTAB issued a "Final Written Decision" declaring the '585 Patent to be invalid.  (Doc. No. 67 at PageID# 1993; Doc. No. 67-1 at PageID#s 2005-53; Doc. No. 93 at PageID# 3597.)   In April 2023, Horizon appealed the PTAB's decision to the United States Court of Appeals for the Federal Circuit.  (Non-Doc. Entry of Oct. 29, 2024.)

On January 14, 2025, Horizon notified this Court that the Federal Circuit had affirmed the PTAB's decision,[4] after which the Court set a status conference for February 5, 2025.  (Doc. No. 93

---

[2] The '050 Patent and the '585 Patent both relate to the manufacture and sale of underbed combined gooseneck and fifth-wheel hitch mounting systems.  (Doc. No. 16-1 at PageID#s 94-107; Doc. No. 16-2 at PageID#s 108-21; Doc. No. 92 at PageID# 3590; Doc. No. 94-1 at PageID# 3604.)

[3] The Court temporarily lifted the stay for the parties to file amended pleadings.  (Doc. No. 87; Doc. No. 88; Doc. No. 89.)

[4] *Horizon Global Americas Inc. v. Northern Stamping Co.*, 2025 WL 80072 (Fed. Cir. Jan. 13, 2025).

at PageID# 3597-98; Non-Doc. Entry of Jan. 24, 2025.)  At the status conference, Horizon indicated

that it would dismiss its claims, and NSI indicated that it intended to seek attorney fees.  (Minute

Order of Feb. 5, 2025.)  Accordingly, the Court lifted the stay, set a discovery and briefing schedule

for the parties to file summary judgment motions, and ordered Horizon to "file a dismissal of all its

claims against Defendant, with prejudice." (*Id.*)  On February 19, 2025, pursuant to Rule 41(a)(2),

Horizon filed Plaintiff's Motion to Dismiss Horizon's First Amended Complaint (Doc. No. 94),

which the Court granted on February 20, 2025. (Doc. No. 95.)  Horizon attached a Covenant Not to

Sue executed in favor of NSI (the "Covenant"), which provides in relevant part as follow:

> **1.** **Covenant Not to Sue**.  Horizon, solely on behalf of itself and any
> successors-in-interest to the 050 Patent or, to the extent any remaining interest exists,
> the 585 Patent, hereby unconditionally and irrevocably covenants not to make any
> claim or demand or file or maintain any lawsuit anywhere in the world against NSI for
> the infringement or alleged infringement (whether direct or indirect) of the 050 Patent
> or, to the extent any remaining interests exists, the 585 Patent, for any past, present, or
> future manufacture, use, sale, offer for sale, or importation by NSI in connection with
> any underbed combined gooseneck and fifth wheel hitch mounting system made, used,
> offered for sale, sold, or important by NSI.  Horizon further unconditionally and
> irrevocably covenants not to make any claim or demand or file or maintain any lawsuit
> anywhere in the world against NSI for the infringement or alleged infringement of the
> 050 Patent or, to the extent any remaining interest exists, the 585 Patent by any
> customers of NSI based on such customer's purchase or use of past, present, or future
> underbed combined gooseneck and fifth wheel hitch mounting system made, used
> offered for sale, sold, or imported by NSI (whether such infringement or allegation of
> infringement may be direct or indirect).  This Covenant shall not bind or otherwise
> apply to any current licensees of the 050 Patent or, to the extent any remaining interest
> exists, the 585 Patent, or to any other third parties (except for successors-in interest to
> NSI, the 050 Patent or, to the extent any remaining interests exists, the 585 Patent).

> **2.** **Dismissal**.  In conjunction with this Covenant, Horizon will move
> pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure, to dismiss its claims
> in the Action, with prejudice.

> **3.** **Not a License**.  This Covenant is not a license of any Horizon patent,
> and this Covenant is not to be used as an indication of the value or merit of any patents
> or claims made in the Action.

3

(Doc. No. 94-1 at PageID#s 3604-05.)

On February 28, 2025, Horizon filed Plaintiff's Motion pursuant to Rule 12(h)(3) to dismiss NSI's declaratory judgment counterclaims.  NSI filed Defendant's Opposition on March 20, 2025, and Horizon filed Plaintiff's Reply on April 3, 2025.  (Doc. No. 96; Doc. No. 101; Doc. No. 106.)  On April 7, 2025, NSI filed Defendant's Motion, and on April 18, Horizon filed Plaintiff's Opposition.  (Doc. No. 108; Doc. No. 110.)

## II.    Standard of Review

Horizon moves under Fed. R. Civ. P. 12(h)(3) to dismiss the case for lack of subject-matter jurisdiction.   Rule 12(h)(3) provides that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  Fed. R. Civ. P. 12(h)(3).  Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a), "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  "The 'actual controversy' requirement under the Declaratory Judgment Act is coextensive with Article III's case or controversy requirement."  *Hayden v. 2K Games, Inc.*, 375 F. Supp. 3d 823, 829 (N.D. Ohio 2019).  In determining whether a declaratory judgment action satisfies the case or controversy requirement, the question is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).  *MedImmune* requires this Court to analyze the "totality of the circumstances" to determine if a "controversy is 'of sufficient

4

immediacy and reality to warrant the issuance of a declaratory judgment.'" *Accordant Energy, LLC v. Vexor Tech., LLC*, 364 F. Supp. 3d 780, 782 (N.D. Ohio 2019) (quoting *MedImmune*, 549 U.S. at 127).

"The Federal Circuit still uses factors from the 'reasonable apprehension of imminent suit' test to determine whether a controversy is 'of sufficient immediacy and reality.'" *Bendix Com. Vehicle, Sys. LLC v. Haldex Brake Prods. Corp.*, 2010 WL 3221972 at *2 (N.D. Ohio Aug. 13, 2010); *Indus. Models v. SNF, Inc.*, 716 Fed. Appx. 949, 953 n.2 (Fed. Cir. 2017) (citing *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1336 (Fed. Cir. 2008)) ("[O]ur case law makes clear that we may continue to look to [the 'reasonable apprehension of suit' inquiry] as a helpful tool."); *see also Warrior Sports, Inc. v. STX, L.L.C.*, 596 F. Supp. 2d 1070, 1075 (E.D. Mich. 2009) (quoting *Prasco*, 537 F.3d at 1336) ("[P]roving a reasonable apprehension of suit is one of multiple ways that a declaratory judgment plaintiff can satisfy the more general all-the-circumstances test to establish that an action presents a justiciable Article III controversy.").

III.   **Analysis**

   A.  **NSI's Declaratory Judgment Counterclaims**

   In Plaintiff's Motion, Horizon argues that the Covenant divests the Court of subject-matter jurisdiction over NSI's declaratory judgment counterclaims because the Covenant removes the "actual controversy" between the parties necessary to sustain the Court's jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201.  (Doc. No. 96 at PageID# 3611, 3615.)  Horizon contends that without jurisdiction over NSI's counterclaims, and  pursuant to Rule 12(h)(3), the Court should "dismiss all eight of NSI's counterclaims, as well as NSI's defenses, to bring this long-running case to a conclusion[.]"  (*Id.* at PageID# 3615.)  In Defendant's Opposition, NSI asserts that Horizon

modeled its Covenant off the Covenant Not to Sue at issue in *Accordant* but altered it to remove NSI's customers. According to NSI, then, the Covenant is not broad enough to moot NSI's "claims for attorney fees and counterclaims" because Horizon has not promised to refrain from suing NSI's customers and the Covenant does not preclude Horizon's licensees from suing NSI. (Doc. No. 101 at PageID#s 3753, 3756-57.)

In Plaintiff's Reply, Horizon responds that although the Covenant does not include a promise to refrain from suing NSI's customers, background principles of patent exhaustion already prevent such a lawsuit, because, according to Horizon, "when a patentholder authorizes an entity to sell items and promises not to sue the entity for patent infringement, the patentholder loses the right to sue the entity's customers." (Doc. No. 106 at PageID# 4029.) And Horizon submits that NSI's concern about a potential lawsuit by Horizon's licensees is unwarranted because the mere possibility of a licensee's potential suit was held by this Court in *Bendix* to be insufficient to preserve jurisdiction under *MedImmune*. (*Id.* at PageID# 4031.)

In Defendant's Motion, NSI contends that in Plaintiff's Reply, Horizon introduced "completely new arguments," and challenges Horizon to explain why it would bother to exclude suits against customers from the Covenant if patent law already precluded such suits. (Doc. No. 108 at PageID# 4052.) In Plaintiff's Opposition, Horizon disagrees that its Reply raised new arguments, explaining that it "'removed' nothing" from the Covenant and reiterates its argument that a reference to NSI's customers is superfluous under governing patent law principles. (Doc. No. 110 at PageID#s 4085-89.) Importantly, though, Horizon offers "to issue further covenants to obviate any justiciable controversy[,]" and specifically offers to include NSI's customers in the Covenant. (*Id.* at PageID# 4090.)

6

In the patent context, "a covenant not to sue for patent infringement divests the trial court of subject matter jurisdiction over claims that the patent is invalid, because the covenant eliminates any case or controversy between the parties." *Dow Jones & Co. v. Ablaise Ltd.*, 606 F.3d 1338, 1346 (Fed. Cir. 2010) (citation omitted); *Super Sack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054, 1060 (Fed. Cir. 1995) (affirming trial court's decision that the covenant not to sue "rendered moot the controversy in this case."); *Organic Seed Growers & Trade Ass'n v. Monsanto Co.*, 718 F.3d 1350, 1357 (Fed. Cir. 2013) (citing *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 100 (2013)) ("As the Supreme Court has recognized, a covenant not to sue a declaratory judgment plaintiff can moot a controversy between the parties."). But "[w]hether a covenant not to sue will divest the trial court of jurisdiction depends on what is covered by the covenant." *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 556 F.3d 1294, 1297 (Fed. Cir. 2009). "The burden is on the party claiming declaratory judgment jurisdiction to establish that such jurisdiction existed at the time the claim for declaratory relief was filed and that it has continued since." *Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1344 (Fed. Cir. 2007). For the reasons below, the Court finds that NSI has failed to carry its burden that jurisdiction has continued.

### 1. Horizon is unlikely to sue NSI's customers and it has agreed to issue a further Covenant Not to Sue including NSI's customers.

The parties direct the Court's attention to two cases, *Accordant* and *Bendix Commercial Vehicle, Systems LLC v. Haldex Brake Products Corp.*, 2010 WL 3221972 (N.D. Ohio Aug. 13, 2010), where this Court reviewed Covenants Not to Sue nearly identical to the Covenant at issue here, and in both cases, this Court determined that the Covenants Not to Sue divested this Court's jurisdiction over the defendant's counterclaims. In *Accordant*, the plaintiff executed a Covenant Not to Sue that provided as follows:

> Plaintiff, solely on behalf of itself and any successors-in-interest to the '268 Patent and/or the '051 Patent, hereby unconditionally covenants not to file or maintain any lawsuit anywhere in the world against defendant for the infringement or alleged infringement of the patents for any past, present, or future manufacture, sale, offer for sale, or importation by defendant of the waste-driven fuel currently marketed as Vexor Engineered Fuel®.  Plaintiff further covenants not to file or maintain any lawsuit anywhere in the world for the infringement or alleged infringement of the patents **by customers of defendant**, based on the customers' purchase or use of the waste-derived fuel currently marketed as Vexor Engineered Fuel® and that is manufactured and sold by defendant.  This Covenant shall not bind or otherwise apply to any current licensees of the patents or to any other third parties[.]

*Accordant*, 364 F. Supp. 3d at 782 (alterations omitted) (emphasis added).

The defendant argued that the covenant at issue therein did not eliminate subject-matter jurisdiction over the defendant's counterclaims because the covenant was vague and ambiguous, did not prohibit a lawsuit for indirect infringement, did not cover defendant's ongoing business operations, allowed the plaintiff to sue by proxy, and did not prevent the plaintiff from interfering with the defendant's existing and potential customers.  *See id.* at 783.  Rejecting each argument, the court found that the defendant's concern about its customers was insufficient to preserve jurisdiction because the covenant did, in fact, explicitly provide that the plaintiff could not sue defendant's current customers.  *See id.* at 785.  Moreover, the court determined that addressing the declaratory judgment counterclaim merely due to the defendant's concern for the plaintiff's potential lawsuits against its customers would amount to "an improper advisory opinion" based on a "theoretical situation."  *See id.* at 785-86.

In *Bendix*,[5] the plaintiff issued the following Covenant Not to Sue, which unlike the Covenant Not to Sue at issue in *Accordant*, did not include a promise not to sue the defendant's customers:

---

[5] Horizon attached the Covenant Not to Sue at issue in *Bendix* to Plaintiff's Motion.  (Doc. No. 96-1 at PageID#s 3617-18; *Bendix*, 09-cv-176, Doc. No. 55-1 at PageID#s 796-97.)

> WHEREAS in the present litigation, [plaintiffs] have alleged that [Haldex] has infringed [the "Asserted Claims"] of the '874 patent . . . by making, using, offering to sell, and/or selling within the United States, and/or importing into the United States, Haldex's ModulX air disc brake products . . . Plaintiffs hereby unconditionally and irrevocably covenant not to sue Haldex for any infringement of [the Asserted Claims] of the '874 patent arising from making, using, offering to sell, and/or selling within the United States, and/or importing into the United States, the Accused Haldex Products.
>
> The foregoing covenant does not extend to any products other than the Accused Haldex Products, and in particular, does not extend to any new or modified brake models that Haldex may introduce, even if such new or modified brake model is sold under the "ModulX" name, nor does the covenant extend to the Asserted Claims or to any patent other than the '874 patent, whether related or unrelated to the '874 patent.

(Doc. No. 96-1 at PageID#s 3617-18; *Bendix*, 09-cv-176, Doc. No. 55-1 at PageID#s 796-97.)

Although the Covenant Not to Sue at issue in *Bendix* did not include a promise not to sue the defendant's customers, the court reasoned that the plaintiffs did not have a "history of suing customers," so the defendant's "apprehension over the possibility that Plaintiff will take such a tact, without any history of it happening, [was] not enough to create an actual controversy." 2010 WL 3221972 at *3. In *Bendix*, the Court found that *WS Packaging Grp., Inc. v. Global Commerce Grp., LLC*, 505 F. Supp. 2d 561 (E.D. Wis. 2007) and *Monolithic Power Systems, Inc. v. O2 Micro Int'l Limited*, 2008 WL 3266647 (N.D. Cal. 2008) were distinguishable from the case before it. *Id.* at *3. In *WS Packaging*, the plaintiff had "bragged in a trade magazine of its habit of threatening to sue (or actually suing) the customers of allegedly infringing vendors," and an officer of the plaintiff had admitted that it "routinely engaged in this very practice." 505 F. Supp. 3d at 566-67. In *Monolithic*, the covenantor had refused to include the covenantee's direct and indirect customers in the Covenant Not to Sue. 2008 WL 3266647 at *4. The court reasoned that it was "possible that a covenant not to sue would be sufficient to eliminate the controversy" if the covenantor "ha[d] offered a covenant not

9

to sue that extended to suits against [the covenantee's] customers[,]" but its failure to make such an offer suggested to the court that a controversy continued to exist between the parties.  *Id.* at *4.

The Court is persuaded by the reasoning in *Bendix* that a covenantor's failure to include the covenantee's customers in a Covenant Not to Sue is insufficient to preserve a court's jurisdiction over the covenantee's declaratory judgment claims where there is no evidence that the covenantor intends to sue the covenantee's customers.  Horizon contends that "the parties are competitors sharing customers that have potentially purchased NSI's infringing products," so a lawsuit by Horizon against such customers would conflict with its own economic interests.  (Doc. No. 110 at PageID# 4089.) NSI does not direct this Court's attention to any evidence demonstrating a history of Horizon suing NSI's customers or statements where one of its executives bragged about doing so, *see WS Packaging*, 505 F. Supp. 2d at 565-66.  Neither does NSI demonstrate that Horizon has refused to include NSI's customers in a Covenant Not to Sue.  To the contrary, and importantly, in Plaintiff's Opposition Horizon has offered to "issue further covenants to obviate any justiciable controversy," so the Court is directing Horizon to do just that, either through an additional Covenant Not to Sue whereby Horizon promises or covenants not to sue NSI's customers, or through amending or revising the Covenant to include NSI's customers.  (Doc. No. 110 at PageID# 4090.)

Additionally, NSI's reliance on *Accordant* is misplaced because *Accordant* did not hold that the presence of the promise not to sue the defendant's customers in the covenant was essential to eliminating the court's jurisdiction, but merely that in a "totality of the circumstances" inquiry, such an exclusion counted in favor of preserving the court's jurisdiction.  *See* 364 F. Supp. 3d at 780; *Id.* (quoting *MedImmune*, 549 U.S. at 127).  Thus, *Accordant* does not support the proposition that the failure to include the covenantee's customers in a covenant not to sue is dispositive.

10

Accordingly, the Court concludes that NSI has not shown that the Covenant's exclusion of NSI's customers creates a "reasonable apprehension of suit" sufficient to meet the "totality of the circumstances" test necessary to sustain this Court's jurisdiction.

## 2.  Patent Exhaustion and Article III Standing

As noted above, NSI argues that the Covenant fails to eliminate the Court's jurisdiction over its counterclaims because Horizon could still sue NSI's customers and because Horizon's licensees could still sue NSI.  Horizon responds that such lawsuits would be destined to fail because patent exhaustion would prevent a claim against NSI's customers, and lack of Article III standing would prevent a claim by Horizon's licensees.  (Doc. No. 101 at PageID# 3759; Doc. No. 106 at PageID# 4029-31.)  In Defendant's Motion, NSI requests an opportunity to respond to Horizon's patent exhaustion argument in a Surreply.  (Doc. No. 108 at PageID# 4053.)

First, the Court need not address Horizon's argument that the '050 Patent and '585 Patent have been exhausted because Horizon mooted the argument in Plaintiff's Opposition by offering to include NSI's customers in a further Covenant Not to Sue.  (Doc. No. 110 at PageID# 4090.)  NSI therefore has no need to respond to Horizon's argument that its claims would fail against NSI's customers due to patent exhaustion because Horizon has now made the very concession NSI asked for.[6]

---

[6] The Court has additionally conducted its own research on the issue and determined that Horizon is correct that principles of patent exhaustion would preclude Horizon from asserting a claim against NSI's customers. *See TransCore, LP v. Elec. Transaction Consultants Corp.*, 563 F.3d 1271, 1280 (Fed. Cir. 2009) (holding that the plaintiff's covenant not to sue in favor of the defendant "authorized" the defendant's sales to its downstream customers "and, accordingly, exhausted [the plaintiff's] patent rights in the products sold."). (Doc. No. 106 at PageID# 4030.)

Second, NSI's concern about potential enforcement actions by Horizon's licensees is similarly unfounded because both nonexclusive and exclusive licensees of the patents would lack standing to bring a lawsuit against NSI.  As a threshold matter, "[i]t is well-settled that 'only a patent owner or an exclusive licensee can have constitutional standing to bring an infringement suit; a non-exclusive licensee does not.'"  *Spine Sols., Inc. v. Medtronic Sofamor Danek USA, Inc.*, 620 F.3d 1305, 1317 (Fed. Cir. 2010) (quoting *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1367 (Fed. Cir. 2008)).[7]  A nonexclusive license "is a promise by the patent owner not to sue the licensee for practicing the patented invention, and under which the patent owner impliedly reserves the right to grant similar nonexclusive licenses to other entities."  *Molon Motor & Coil Corp. v. Nidec Motor Corp.*, 946 F.3d 1354, 1361 (Fed. Cir. 2020) (citing *Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.*, 248 F.3d 1333, 1345 (Fed. Cir. 2001)).  Horizon cites to *Ortho Pharm. Corp. v. Genetics Inst., Inc.*, 52 F.3d 1026 (Fed. Cir. 1995), where the court explained that a "holder of [a] nonexclusive license suffers no legal injury from infringement and, thus, has no standing to bring suit or even join in a suit with the patentee."  52 F.3d at 1031.[8]  Thus, Horizon is correct that NSI need not be concerned about a nonexclusive licensee's potential lawsuit because without standing, it would be meritless.

Similarly, an 'exclusive' licensee would also lack standing to sue NSI because, under *TransCore*, the Covenant effectively licenses NSI to practice the '050 Patent and '585 Patent, so such a licensee would not truly be 'exclusive.'  "[T]he touchstone of constitutional standing in a patent

---

[7] Horizon overstates its standing argument by contending that "*only* the patent owner, Horizon, has standing to bring an action for patent infringement" because Horizon overlooks that an exclusive licensee can have standing as well.  (Doc. No. 106 at PageID# 4031) (emphasis added).

[8] *See also Lowe v. ShieldMark, Inc.*, 2025 WL 893211 at *3 (Fed. Cir. Mar. 24, 2025) (quoting *Sicom Sys. Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 976 (Fed. Cir. 2005)) ("[A] nonexclusive licensee suffers no legal injury from infringement.").

infringement suit is whether a party can establish that it has an exclusionary right in a patent that, if violated by another, would cause the party holding the exclusionary right to suffer legal injury." *WiAV Sols. LLC v. Motorola, Inc.*, 631 F.3d 1257, 1265 (Fed. Cir. 2010).  "[A]n exclusive license is a license to practice the patented invention 'accompanied by the patent owner's promise that others shall be excluded from practicing it within the field of use wherein the licensee is given leave.'" *Molon Motor*, 946 F.3d at 1361 (quoting *Textile Prods., Inc. v. Mead Corp.*, 134 F.3d 1481, 1484 (Fed. Cir. 1998)).  "To be an exclusive licensee for standing purposes, 'a party must have received, not only the right to practice the invention within a given territory, but also the patentee's express or implied promise that others shall be excluded from practicing the invention within that territory as well.'" *Medtronic*, 620 F.3d at 1317 (quoting *Mars*, 527 F.3d at 1367).  "'If the party has not received an express or implied promise of exclusivity under the patent, i.e., the right to exclude others from making, using, or selling the patented invention,' the party has only a 'bare license'—and a 'bare license to sell an invention in a specified territory, even if it is the only license granted by the patentee, does not provide standing without the grant of a right to exclude others." *Id.* (quoting *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1553 (Fed. Cir. 1995) (en banc)).  Put differently, for one of Horizon's licensees to have standing to sue, it must be an exclusive licensee, yet to be an exclusive licensee, it must be the case that "others shall be excluded from practicing [the patents] within the field of use wherein the licensee is given leave." *Molon Motor*, 946 F.3d at 1361.  Otherwise, the licensee lacks the necessary "right to exclude others from making, using, or selling the patented invention" that defines it as an "*exclusive* licensee" to create standing.  *Medtronic*, 620 F.3d at 1317 (emphasis added).  As the court explained in *WiAV Sols.*:

> Because an exclusive licensee derives its standing from the exclusionary rights it holds,
> it follows that its standing will ordinarily be coterminous with those rights.  Depending

13

on the scope of its exclusionary rights, an exclusive licensee may have standing to sue some parties and not others.  For example, an exclusive licensee lacks standing to sue a party for infringement if that party holds a preexisting license under the patent to engage in the allegedly infringing activity.

*WiAV Sols.*, 631 F.3d at 1266.

Here, the Covenant does exactly that— it effectively licenses NSI to practice the '050 Patent and the '585 Patent, and therefore removes that exclusivity.  *See TransCore*, 563 F.3d at 1275 (collecting cases) ("[A] non-exclusive patent license is equivalent to a covenant not to sue."); *Molon Motor*, 946 F.3d at 1360 ("A covenant not to sue is equivalent to a nonexclusive or 'bare' license[.]").[9] So, by executing an "unconditional" covenant not to sue NSI "anywhere in the world" "for any past, present, or future" conduct, Horizon granted NSI a non-exclusive license to practice the '050 Patent and the '585 Patent unconstrained by territory or duration.  (Doc. No. 94-1 at PageID# 3604). Because NSI possesses this license, any *other* Horizon licensee could not be an "exclusive licensee for standing purposes" against NSI because they too would lack the necessary "exclusivity under the patent" by virtue of NSI's own license.  *Medtronic*, 620 F.3d at 1317; *WiAV Sols.*, 631 F.3d at 1266.

Accordingly, because Horizon's offer, and this Court's order requiring it, to further covenant that it will not sue NSI's customers moots the patent exhaustion issue, and because Horizon's licensees lack standing to enforce the '050 Patent or '585 Patent against NSI, the Court concludes that NSI has failed to demonstrate that it harbors a "reasonable apprehension of suit" related to the patents, and therefore, under "all the circumstances," there is no longer an "actual controversy"

---

[9] *See, e.g.*, *Spindelfabrik Suessen-Schurr, Stahlecker & Grill GmbH v. Schubert & Salzer Maschinenfabrik Aktiengesellschaft*, 829 F.2d 1075, 1081 (Fed. Cir. 1987) ("[A] patent license agreement is in essence nothing more than a promise by the licensor not to sue the licensee."); *U.S. Philips Corp. v. Int'l Trade Comm'n*, 424 F.3d 1179, 1189 (Fed. Cir. 2005) ("A nonexclusive patent license is simply a promise not to sue for infringement.").

14

between Horizon and NSI sufficient to sustain this Court's jurisdiction under the Declaratory Judgment Act.  *Indus. Models*, 716 Fed. Appx. at 953 n.2 (citing *Prasco*, 537 F.3d at 1336); *MedIummune*, 549 U.S. at 127; 28 U.S.C. § 2201(a).

**B.  NSI's Request for Attorney Fees Under 35 U.S.C. § 285**

Plaintiff's Motion does not reference the Court's jurisdiction over NSI's request for attorney fees, but in Defendant's Opposition, NSI argues that "[t]he law is clear that this Court [] still retain[s] jurisdiction over NSI's claims for attorney fees and counterclaims." (Doc. No. 101 at PageID# 3753.) NSI further asserts that "the law is well-settled that this Court maintains jurisdiction over NSI's counterclaims by virtue of NSI's request for fees under 35 U.S.C. § 285" and the Court's "inherent powers." (*Id.* at PageID# 3757.)  In Plaintiff's Reply, Horizon responds that the "Court should exercise its discretion to decline to determine the merits of NSI's counterclaims[,]" including "NSI's Fee Claim[,]" because it would force the Court to consider the underlying merits of Horizon's inequitable conduct without adequate procedural safeguards, waste judicial resources, and "hints at further litigation." (Doc. No. 106 at PageID# 4032-38).  In Defendant's Motion, NSI responds that determining Horizon's responsibility for attorney fees would not waste judicial resources or require the court to consider the merits of every substantive issue because "litigation misconduct has already been established." (Doc. No. 108 at PageID# 4052.)  Finally, in Plaintiff's Opposition, Horizon clarifies that in Plaintiff's Motion, it only "moved to dismiss NSI's counterclaims" and that "[w]hether the Court should hear a fee motion is a separate, albeit related, question.  But it is a hypothetical question because NSI has not filed a motion for fees." (Doc. No. 110 at PageID# 4091.)

As a threshold matter, for two reasons, the Court is satisfied that even though NSI has not yet filed a motion for fees under 35 U.S.C. § 285, the Court can still make the initial determination of

15

whether the Court possesses jurisdiction to consider such a motion.  First, the Court can make the

jurisdictional determination because in Defendant's Opposition, NSI contends that "[t]he Court

retains jurisdiction to award fees and has an independent grant of jurisdiction under Section 285 to

determine whether Horizon's patents are enforceable."  (Doc. No. 101 at PageID# 3759.)  By doing

so, NSI has put the jurisdictional question before the Court.  Second, the Court can do so because

Horizon conceded that "the Court in *Accordant dismissed* the counterclaims while stating that the

defendant could file a motion." (Doc. No. 110 at PageID# 4089) (emphasis in original).  Horizon has

therefore already acknowledged that this Court's precedent is to dismiss the underlying claims on

jurisdictional grounds and retain jurisdiction to hear a motion for attorney fees under § 285.  *See*

*Accordant*, 364 F. Supp. 3d. at 787 ("For the foregoing reasons, the motion to dismiss is GRANTED

in PART and DENIED in PART. The Counterclaims are DISMISSED, but the Court retains

jurisdiction to entertain a motion pursuant to 35 U.S.C. § 285.")  Thus, the Court proceeds to consider

whether it possesses jurisdiction over a motion for attorney fees under § 285.

Section 285 provides that "[t]he court in exceptional cases may award reasonable attorney

fees to the prevailing party."  35 U.S.C. § 285.  As NSI points out, Federal Circuit precedent squarely

supports its contention that this Court can consider a motion for attorney fees based on inequitable

conduct even after the Court has dismissed the underlying claims for lack of subject-matter

jurisdiction:

> The question facing this court is, thus, whether a district court's jurisdiction under §
> 285 to determine whether there was inequitable conduct in the prosecution of patents
> that are otherwise no longer in suit confers on that court the jurisdiction to hold such
> patents unenforceable for inequitable conduct.  We hold that it does.

*Monsanto Co. v. Bayer Bioscience N.V.*, 514 F.3d 1229, 1243 (Fed. Cir. 2008).  Indeed, the Federal

Circuit confirmed that *Monsanto* allows courts to consider a party's motion under § 285 after the

underlying claims have been dismissed:

> This court has held that a district court retains jurisdiction to consider a ***motion*** for attorney's fees under 35 U.S.C. § 285 and to make findings of inequitable conduct— even after a party has dismissed its counterclaims as to that patent.  The district court, therefore, properly retained jurisdiction to consider Romag's motion for attorney's fees based on inequitable conduct.

*Advanced Magnetic Closures, Inc. v. Rome Fastener Corp.*, 607 F.3d 817, 827 (Fed. Cir. 2010) (citing

*Monsanto*, 514 F.3d at 1242-43 (Fed. Cir. 2008)) (emphasis added); *see also Highway Equip. Co. v.*

*FECO, Ltd.*, 469 F.3d 1027, 1033 n.1 (Fed. Cir. 2006) ("While the covenant [not to sue for

infringement] may have eliminated the case or controversy pled in the patent-related counterclaims

and deprived the district court of Article III jurisdiction with respect to those counterclaims, the

covenant does not deprive the district court of jurisdiction to determine the disposition of the request

for attorney fees under 35 U.S.C. § 285.") (ellipsis omitted).[10]  Though not in the context of a motion

under § 285, this Court has also found that it retains jurisdiction to consider a claim under § 285.  *See*

*Robbins Co. v. Herrenknecht Tunnelling Sys. USA, Inc.*, 2014 WL 2735634 at *2 (N.D. Ohio June

16, 2014) ("Because 35 U.S.C. § 285 is an independent source of jurisdiction, a plaintiff's covenant

not to sue for patent infringement claims does not deprive a court of subject matter jurisdiction over

a defendant's 35 U.S.C. § 285 claim for attorneys' fees, even though the defendant's counterclaims

for non-infringement and invalidity are no longer in controversy."); *Lowe v. ShieldMark, Inc.*, 2023

---

[10] *See also Brasseler, U.S.A. I, L.P. v. Styker Sales Corp.*, 267 F.3d 1370, 1380 (Fed. Cir. 2001) ("A district court may award reasonable attorney fees to the prevailing party in a patent infringement case where the conduct of a party is deemed to be 'exceptional.'  The prevailing party may prove the existence of an exceptional case by showing inequitable conduct before the PTO.") (cleaned up).

17

WL 3043769 at *2 (N.D. Ohio Apr. 21, 2023) ("[A] § 285 counterclaim confers subject matter

jurisdiction independent of an initial patent infringement claim.").  Retaining jurisdiction to evaluate

a motion under § 285 is therefore consistent with this Court's approach in *Accordant* and applicable

Federal Circuit precedent, and it is also consistent with the approach of district courts in other

circuits.[11]

Accordingly, the Court concludes that even though the Covenant moots NSI's declaratory

judgment counterclaims, the Court retains jurisdiction to consider a motion for attorney fees[12] and

---

[11] *See, e.g.*, *Parallax Grp. Int'l, LLC v. Incstores LLC*, 2022 WL 17224672 at *2 (C.D. Cal. Aug. 16, 2022) (citing *Monsanto*, 514 F.3d at 1242-43) ("An inequitable conduct counterclaim may be moot where the asserted patent claims have already been invalidated.  This does not render inequitable conduct irrelevant, however.  The Federal Circuit has recognized 'that the district court's jurisdiction to rule on an attorney fees motion encompasses the jurisdiction to make findings of inequitable conduct.'  The district court's jurisdiction under 35 U.S.C. § 285 'to determine whether there was inequitable conduct in the prosecution of patents that are otherwise no longer in suit confers on that court the jurisdiction to hold such patents unenforceable for inequitable conduct.'") (internal citations and alterations omitted); *Novartis Corp. v. Webvention Holdings LLC*, 2015 WL 3901639 at *3 (D. Md. June 22, 2015) ("To the extent Webvention argues that the court's decision to grant its motion to dismiss for lack of subject matter jurisdiction also ousts jurisdiction over Novartis's section 285-related motions, Webvention is incorrect.  The court retains independent jurisdiction over such motions."); *Gordon-Darby Sys., Inc. v. Applus Techs., Inc.*, 2010 WL 5419068 at *4 (N.D. Ill. Dec. 23, 2010) ("Plaintiff's motion to dismiss its own claims with prejudice is granted . . . Defendant is given leave to move for fees and costs under 35 U.S.C. § 285, and we may progress to a theory of inequitable conduct [and therefore ultimately unenforceability] as required in that context, if that remains the Defendant's intention."); *Dodge-Regupol, Inc. v. RB Rubber Prods.*, 585 F. Supp. 2d 645, 657 (M.D. Pa. 2008) ("RB Rubber's counterclaims [as asserted in its second amended answer and counterclaims] will be dismissed without prejudice for lack of subject matter jurisdiction . . . RB Rubber will be granted leave to file a motion for attorney's fees under 35 U.S.C. § 285 within fourteen days of the date of this memorandum and order."); *Garfum.com Corp. v. Reflections by Ruth*, 2016 WL 1242762 at *2 (D.N.J. Mar. 30, 2016), *vacated on other grounds*, 2016 WL 7325467 (D.N.J. Dec. 16 2016) ("Although the covenant not to sue divested this Court of jurisdiction over the declaratory judgment counterclaims, and the Plaintiff's motion to dismiss divested this Court of jurisdiction over the original complaint, the Court retains independent jurisdiction over the request for attorneys' fees."); *Internet Pipeline, Inc. v. Aplifi, Inc.*, 2011 WL 4528340 at *4 (E.D. Pa. Sep. 29, 2011) ("Although we are dismissing iPipeline's claims and Aplifi's counterclaims in their entirety under *Super Sack*, this does not prevent Aplifi from filing any motion for attorneys' fees under § 285.").  Some courts, however, permit the retention of jurisdiction over the declaratory judgment counterclaim for inequitable conduct itself under 35 U.S.C. § 285.  *See, e.g., Deere & Co. v. Kinze Mfg., Inc.*, 712 F. Supp. 3d 1186, 1191 (S.D. Iowa 2024) (collecting cases).  But this Court follows its own precedent in *Accordant* and approved by the Federal Circuit in *Monsanto* and *Advanced Magnetic Closures* to dismiss the counterclaims while permitting a separate motion for attorney fees.

[12] This Court must also process a motion for attorney fee's under § 285 in accordance with Rule 54.  *See IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1386 (Fed. Cir. 2005) ("[W]e hold that any claim to attorney fees must be processed in compliance with Rule 54(d)(2)(B).  No provision in section 285 exempts requests for attorney fees thereunder from compliance with Rule 54(d)(2)(B)."); Fed. R. Civ. P. 54(d)(2)(B)(i) ("Unless a statute or a court order provides otherwise, the motion must . . . be filed no later than 14 days after the entry of judgment[.]").

that such a motion can properly assert inequitable conduct as the grounds for the "exceptional case" determination under § 285.  *See Monsanto*, 515 F.3d at 1242; *Advanced Magnetic Closures*, 607 F.3d at 827; *Brasseler*, 267 F.3d at 1380.

### C.  NSI has no need to respond to Horizon's new arguments in Plaintiff's Reply.

The Court denies Defendant's Motion (Doc. No. 108) because there is no need for NSI to respond to Horizon's new arguments of "patent exhaustion and jurisdictional discretion."  (Doc. No. 108 at PageID# 4053.)  The patent exhaustion argument is moot because whether Horizon's '050 Patent or '585 Patent is exhausted against NSI's customers does not affect the Court's resolution of Plaintiff's Motion, and Horizon must issue a covenant including NSI's customers to obviate the issue.  (Doc. No. 110 at PageID# 4090.)  Moreover, NSI need not respond to Horizon's jurisdictional discretion argument because the Court concludes that it has jurisdiction to "entertain[] NSI's fee request" under § 285.[13]  (Doc. No. 106 at PageID# 4032-34.)

## IV.  Conclusion

For the foregoing reasons, Defendant's Motion (Doc. No. 108) is DENIED, and Plaintiff's Motion (Doc. No. 96) is GRANTED in part and DENIED in part as follows.  The Court dismisses Defendant's counterclaims, but the Court retains jurisdiction to entertain a motion pursuant to 35 U.S.C. § 285.  Defendant is hereby ORDERED to file a motion for attorney fees pursuant to § 285 within fourteen (14) days of the date of this Order.  The Court will allow any supplemental or amended versions of Attorney Cupar's Motion to Quash (Doc. No. 98), Plaintiff's Motion to Quash Cupar Subpoena (Doc. No. 100), and Plaintiff's Motion for Protective Order Against Northern

---

[13] Horizon also characterizes NSI's request for attorney fees under § 285 as "NSI's Fee Claim."  (Doc. No. 106 at PageID# 4032.)

Stamping, Inc.'s Subpoena to Eric Stanifer (Doc. No. 105) (the "Pending Motions") to be filed no later than fourteen (14) days after NSI files a motion for attorney fees under § 285. Defendant may file any Brief in Opposition to any supplemental or amended versions of the Pending Motions within fourteen (14) days, and any replies thereto may be filed within seven (7) days thereafter. After the Court has resolved the Pending Motions as supplemented or amended, the Court will set a briefing schedule for Plaintiff to oppose Defendant's motion for attorney fees under § 285, and for Defendant to reply thereto.

Further, consistent with Plaintiff's representation in Plaintiff's Opposition to Defendant's Motion (Doc. No. 110), the Court hereby ORDERS Plaintiff to file an amended Covenant that includes Defendant's customers, including General Motors, or a revised Covenant that includes Defendant's customers, within seven (7) days of the date of this Memorandum Opinion and Order. Upon the Court's review of the amended Covenant or new covenant that includes NSI's customers, the Court will enter a Judgment Entry dismissing NSI's counterclaims but indicating that it retains jurisdiction over NSI's Motion for Fees.

**IT IS SO ORDERED.**

                                      *s/Pamela A. Barker*
                                        PAMELA A. BARKER
Date: May 13, 2025                     U. S. DISTRICT JUDGE