# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| HORIZON GLOBAL AMERICAS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:20-cv-00310-PAB |
| | ) | |
| NORTHERN STAMPING, INC., | ) | Honorable Judge Pamela A. Barker |
| | ) | |
| Defendant, | ) | |

## DEFENDANT NORTHERN STAMPING, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR ATTORNEYS' FEES PURSUANT TO 35 U.S.C. § 285, 28 U.S.C. § 1927, AND THE INHERENT POWER OF THIS COURT, AND UNENFORCEABILITY OF THE ASSERTED PATENTS FOR INEQUITABLE CONDUCT

**TABLE OF CONTENTS**

I.    STATEMENT OF FACTS ...................................................................................1

      A.    It Was Ford's Idea To Create A Combination Hitch ...................................2

      B.    Horizon Filed Its Own Patent Application On The Combination
            Hitch, Which Was Rejected By The Patent Office Based On Ford's
            Prior Art ...........................................................................................2

      C.    Horizon And its Counsel File A False Declaration To Obtain Its
            Patents ..............................................................................................2

      D.    Despite Having Notice Of Its False Declaration, Horizon
            Maintained The Sketch Disclosed Receiving Members, But
            Struggled to Identify Them ...................................................................4

      E.    Eventually, Horizon Could No Longer Maintain The Charade And
            Admitted The Declaration Was False ......................................................5

      F.    Horizon Continues To Tell This Court A Different Story Than The
            One It Presented To The PTAB ..............................................................6

      G.    Its Declaration Undeniably False, Horizon Could Not Maintain
            This Suit ............................................................................................6

II.   LAW AND ANALYSIS ..................................................................................7

      A.    Horizon Is Liable For NSI's Attorneys' Fees Under 35 U.S.C. §
            285 ....................................................................................................7

      B.    The McDonald Hopkins Attorneys Of Record Are Liable For
            NSI's Fees Under 28 U.S.C. § 1927 ........................................................9

      C.    Horizon and Its Original Counsel Should Be Sanctioned Under
            The Court's Inherent Power .................................................................10

      D.    The '050 And '585 Patents Should Be Held Unenforceable Due To
            Inequitable Conduct Before The Patent Office ........................................10

      E.    NSI Is Entitled To Its District Court And IPR Related Fees ....................14

III.  CONCLUSION .........................................................................................15

# TABLE OF AUTHORITIES

Page(s)

Cases

*Belcher Pharm., LLC v. Hospira, Inc.*,
   2022 WL 606075 (D. Del. Feb. 3, 2022) ............................................................... 8

*Carter v. Hickory Healthcare Inc.*,
   905 F.3d 963 (6th Cir. 2018) ............................................................................... 9

*Dragon Intell. Prop. LLC v. DISH Network L.L.C.*,
   101 F.4th 1366 (Fed. Cir. 2024) ........................................................................ 15

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
   575 F.3d 1312 (Fed. Cir. 2009) .......................................................................... 11

*First Bank of Marietta v. Hartford Underwriters Ins. Co.*,
   307 F.3d 501 (6th Cir. 2002) ............................................................................. 10

*Guardant Health, Inc. v. Found. Med., Inc.*,
   2020 WL 2477522 (D. Del. Jan. 7, 2020) .......................................................... 14

*Intellect Wireless, Inc. v. Sharp Corp.*,
   87 F. Supp. 3d 817 (N.D. Ill. 2015) ................................................................. 8, 9

*Lipman v. Dickinson*,
   174 F.3d 1363 (Fed. Cir. 1999) .......................................................................... 13

*Lowe v. ShieldMark, Inc.*,
   2023 WL 3043769 (N.D. Ohio Apr. 21, 2023) .................................................... 7

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
   572 U.S. 545 (2014) ............................................................................................. 7

*Raniere v. Microsoft Corp.*,
   887 F.3d 1298 (Fed. Cir. 2018) ............................................................................ 7

*Regeneron Pharms., Inc. v. Merus N.V.*,
   864 F.3d 1343 (Fed. Cir. 2017) .......................................................................... 13

*Rohm & Haas Co. v. Crystal Chem. Co.*,
   722 F.2d 1556 (Fed. Cir. 1983) ..................................................................... 12, 13

*Saint-Gobain Autover USA, Inc. v. Xinyi Glass North Am., Inc.*,
   707 F. Supp. 2d 737 (N.D. Ohio 2010) ............................................................... 8

ii

*Therasense, Inc. v. Becton, Dickinson & Co.*,
    649 F.3d 1276 (Fed. Cir. 2011) ........................................................................ 10, 11, 12, 13, 14

*Thermolife Int'l LLC v. GNC Corp.*,
    922 F.3d 1347 (Fed. Cir. 2019) ........................................................................ 7, 8

*Webastro Thermo & Comfort N. Am., Inc. v. Bestop, Inc.*,
    323 F. Supp. 3d 935 (E.D. Mich. 2018) ........................................................................ 10

Statutes

28 U.S.C. § 1927 ........................................................................ 2, 1, 9

35 U.S.C. § 285 ........................................................................ 2, 1, 7, 8

Rules

Fed. R. Civ. P. 54 (d)(2)(B)(iii) ........................................................................ 14

iii

This case, without question, stands out from others. Eight years ago, Horizon filed a false declaration at the Patent Office to obtain its patents. It has continued to perpetuate that false narrative ever since. Eventually, like a house of cards, it all came crashing down; but not before Horizon did significant damage, including causing NSI to incur millions in attorneys' fees.

The Patent Office granted Horizon's patents **solely** on the basis of a false declaration alleging that a "Sketch"[1] evidenced an early conception date. Horizon unabashedly advanced those same arguments here. It told this Court that the Sketch disclosed its claimed "receiving members" and that it was "***impossible***" to argue otherwise. But Horizon's argument was so frivolous, and its pre-suit investigation so clearly lacking, that Horizon itself was unable to identify those receiving members, changing its alleged identification at least four times.

Years into this case, Horizon did what it previously alleged was "impossible" and admitted what was clear all along—the Sketch "***does not contain the claimed receiving members***" and it is "***not evidence of a conception***." Just like that, the **sole** basis for Horizon's patent grant disappeared, making clear that it never should have filed this suit. Incredibly, Horizon admitted that it had the evidence to prove that its declaration was false. It either ignored that evidence or failed for years to conduct a proper investigation. Neither is excusable.

Alone, Horizon's strident misrepresentations to this Court make this case stand out from others. The surrounding circumstances, including Horizon's admitted possession of evidence that proved its declaration was false, make Horizon's actions that much more egregious. Given its misconduct, Horizon and its counsel should be held liable for NSI's attorneys' fees and Horizon's patents should be held unenforceable due to its inequitable conduct.

## I.   STATEMENT OF FACTS

---

[1] The "Sketch" has also been referred to by other names in this case, most frequently, the "Conception Drawing."

### A.     It Was Ford's Idea To Create A Combination Hitch

Ford and Horizon had a working relationship. It was Ford's idea to create a hitch having sockets for both fifth wheel and gooseneck connections. Dkt. 67-1, p. 21-22. Ford then approached Horizon to manufacture that combination hitch. *Id.*, p. 22 ("Ford Motor Company came to us and said, we want to combine these [hitch types]") (brackets in original).

### B.     Horizon Filed Its Own Patent Application On The Combination Hitch, Which Was Rejected By The Patent Office Based On Ford's Prior Art

Despite it being Ford's idea to create the combination hitch, Horizon sought to patent that hitch. Horizon's application subsequently issued as Patent No. 9,834,050. Dkt. 4-1. Horizon's application hit what should have been an absolute bar to it obtaining patent protection; Ford had already filed its own patent applications covering the same combination hitch. Although Horizon never disclosed its relationship with Ford, the examiner identified Ford's prior art and rejected Horizon's '050 patent application based on two earlier Ford references: 1) Patent No. 7,793,968 ("Ford Patent"); and 2) Pub. No. 2009/0295122 ("Withers '317"). Dkt. 35-2. PageID 275-280. Horizon's alleged invention and the combination hitch disclosed in the Ford Patent are virtually identical:

| Ford Patent | '050 Patent |
|---|---|
|  |  |

Dkt. 36-1, PageID 317 (Ford Patent, Fig. 1); Dkt. 4-1, PageID 30 ('050 Patent, Fig. 4).

### C.     Horizon And its Counsel File A False Declaration To Obtain Its Patents

Horizon refused to let Ford's patents get in its way. On August 28, 2017, Horizon filed a response to the examiner's rejection. That response was filed by Todd Benni, an attorney at

McDonald Hopkins LLC—the same firm that represented Horizon in this litigation and in the *inter partes* review ("IPR"). Dkt. 35-3. Mr. Benni did not dispute that the Ford Patent disclosed each of the claimed inventions in Horizon's '050 Patent; nor did he dispute that Withers '317 combined with Lindenman would render obvious and, therefore, invalidate the '050 Patent claims. *Id.* Instead, he merely alleged that "the '968 Withers [(i.e. the Ford Patent)] is not prior art," and "that '122 Withers [(i.e. Withers '317)] is not prior art" based on an attached declaration. *Id.* That declaration, executed under penalty of perjury by Eric Stanifer, a named inventor of the '050 Patent, included the following representation: "The drawings of Exhibit A demonstrate our conception of the claimed subject matter before the effective date of the '122 Withers [(i.e. Withers '317)] of May 30, 2008 and the '968 Withers [(i.e. the Ford Patent)] of June 23, 2009." Dkt. 18-1, PageID 140, ¶ 4 (brackets added). That attached drawing included the Sketch, purportedly drawn on May 8, 2008:



*Id.*, PageID 142.

Based on that declaration, the examiner issued a notice of allowability. The examiner maintained that both Ford references remain pertinent and show similar devices to Horizon's claims but stated that they are no longer being relied upon to reject Horizon's application. Dkt. 35-4, PageID 290. In other words, the examiner's **sole** basis for issuing Horizon's patent was the declaration alleging that the Sketch demonstrates conception prior to the relevant dates of the Ford references. That application issued as the '050 Patent. The other patent-in-suit, Patent No. 10,589,585, is a continuation of the '050 Patent. Dkt. 16-2, PageID 108. Based on the declaration

filed during prosecution of the '050 Patent, the examiner did not consider the Ford patents to be

prior art when examining the application that issued as the '585 Patent. Dkt. 46, p. 3.

### D. Despite Having Notice Of Its False Declaration, Horizon Maintained The Sketch Disclosed Receiving Members, But Struggled to Identify Them

Horizon had repeated notice of its false declaration. NSI first raised this issue more than a

year before Horizon filed its suit. Dkt. 61-2, PageID 1741, Dec. 20, 2018 email to Horizon ("The

May 8, 2008 drawing . . . does <u>not</u> show a receiving member . . . .") (emphasis original). NSI

continued to raise this issue throughout the litigation, including in its very first pleading. Dkt. 12,

Counterclaims, ¶ 19 ("Neither the Conception Drawing nor the Provision[al] Application provide

support for the 'receiving member . . . .'"). Sean Withers, an inventor on both Ford references,

submitted a declaration in this litigation identifying that same shortcoming. Dkt. 59-2, ¶ 19.[2]

Horizon maintained that the Sketch disclosed receiving members, but it struggled to

identify them. For example, the day after filing this suit, Horizon identified the receiving

member as being located at an inboard slot; a year later it changed its location:

| Feb. 13, 2020 Identification | Jan. 6, 2021 Identification |
|---|---|
|  | |

*Compare* Dkt. 99-1 (Horizon identifying the inboard slot as an "Example of a receiving

member" and the outboard slot as an "Aperture for connection to the frame") *with* Dkt. 37, p. 3

---

[2] Mr. Withers also declared that Horizon's '050 and '585 Patents "disclose the Combination Hitch that I invented and that I and my colleagues at Ford shared with Cequent [now Horizon]." Dkt. 59-2, ¶ 18.

(identifying the receiving members as "the four circles near each corner as shown by the arrows," which it had previously identified as the "aperture for connection to the frame.") (annotations in original).[3]

What Horizon lacked in proof it compensated for with bravado. It proclaimed to this Court: 1) the "Conception Drawings *do* show the allegedly 'missing' receiving members"; 2) "it is impossible to argue with the fact that the drawings show the receiving members"; and 3) it threatened that "[i]f NSI continues to pursue this baseless and debunked theory, then Horizon will pursue sanctions." Dkt. 37, pp. 3-4 (emphasis in original); *id.*, p. 2 n.1.

### E. Eventually, Horizon Could No Longer Maintain The Charade And Admitted The Declaration Was False

During his deposition, Mr. Stanifer admitted the Sketch did not show receiving members:

Q? . . . Are the receiving members shown in this sketch?  A. No, they're not.

Q. Are pucks shown in this sketch?  A. No, they are not.

Dkt. 67-2, 32:6-33:8, objection omitted; Ex. A, Stanifer Deposition Exhibit 3, the Sketch.

Following Mr. Stanifer's admission, in its signed pleading to the Patent Trial and Appeal Board, Horizon and its counsel, David Cupar, were forced to admit that the declaration was false; incredibly, Horizon and its counsel also conceded that it had the evidence to prove as much:

> Evidence from both parties the Board already analyzed shows the May 2008 sketch does ***not*** contain the claimed receiving members.[4]  Because the May 2008 sketch does not disclose each and every limitation in the patent claims at issue, it is not evidence of a conception as of that date.

Dkt. 67-3, pp. 14, 25. Incredibly, despite pre-suit and repeated notice thereafter of its false declaration, Horizon's counsel failed to contact Mr. Stanifer, the declarant, to

---

[3] These are Horizon's first and second attempts to identify the elusive "receiving member."

[4] This is Horizon's third position regarding the presence, or lack thereof, of "receiving members" in the Sketch.

investigate this matter until years into this case. Dkt. 83-4, cover page, 95:21-96:2 (Mr. Stanifer testifying that he was first contacted by counsel "a couple months" prior to his July 28, 2022 deposition).[5]

### F.   Horizon Continues To Tell This Court A Different Story Than The One It Presented To The PTAB

Horizon has repeatedly advanced two different stories in this case—one story to the Administrative Patent Judges ("APJs") at the PTAB, and a different story to this Court. For example, Horizon admitted to the APJs that the Sketch does not disclose receiving members and the Sketch is not evidence of conception. Dkt. 67-3, pp. 14, 25. But back in this Court and away from the APJs, Horizon seeks to ignore its admission altogether, arguing again that the Sketch does show receiving members as evidenced by "specially-formed structures where the pucks attach." Dkt. 76, p. 4.[6][7]

### G.   Its Declaration Undeniably False, Horizon Could Not Maintain This Suit

After admitting the declaration was false, Horizon had no choice but to dismiss its suit. Horizon made clear that alone, a finding by the PTAB that the '585 patent was invalid would not deter it from proceeding with its '050 Patent claims.[8] Dkt. 57, p. 13 (". . . a stay would not simplify the issues in this case because the parties will continue to fully litigate infringement by

---

[5] Although this Court initially dismissed NSI's inequitable conduct counterclaims, after Horizon conceded that it had filed a false declaration, this Court granted NSI's Supplemental Motion For Leave To Amend Counterclaims to add back its counterclaims of inequitable conduct. Dkt. 87.

[6] This is Horizon's fourth position regarding the presence of receiving members.

[7] Likewise, before this Court, Horizon now alleges that its actual conception date is even earlier than the alleged May 8, 2008 date of the Sketch. Dkt. 104, p. 6. However, before the APJs, Horizon presented a new conception date that was later than the date of the Sketch. Because Horizon presented a later conception date, Withers '317 was indisputably prior art and formed the basis for denying Horizon's motion to amend. *E.g.*, Dkt. 67-1, p. 46. It is inconceivable that Horizon had a legitimate basis to claim an earlier priority date but failed to do so in the IPR.

[8] NSI filed a petition for IPR against the '585 Patent only.

NSI on the '050 patent, regardless of the result of the IPR on the '585 patent."). However, the IPR did not solely result in a finding that the '585 Patent was invalid; it also resulted in Horizon's admission that it filed a false declaration to obtain its patent grants. Dkt. 67-3, p. 14. Accordingly, Horizon had no choice but to move to dismiss its suit, with prejudice. Dkt. 94. On February 20, 2025, this Court Ordered the case dismissed with prejudice. Dkt. 95.

## II.    LAW AND ANALYSIS

### A.    Horizon Is Liable For NSI's Attorneys' Fees Under 35 U.S.C. § 285.

The Patent Act provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. An "exceptional" case is "simply one that stands out from others with respect to the substantive strength of a party's litigating position" or "the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.,* 572 U.S. 545, 554 (2014). "A prevailing party may prove that a case is exceptional 'by showing: inequitable conduct before the PTO; litigation misconduct; vexatious, unjustified, and otherwise bad faith litigation; a frivolous suit or willful infringement." *Lowe v. ShieldMark, Inc.*, No. 1:19-CV-00748, 2023 WL 3043769, at *3 (N.D. Ohio Apr. 21, 2023), *aff'd in part, vacated in part, remanded,* No. 2023-1786, 2025 WL 893211 (Fed. Cir. Mar. 24, 2025).

As an initial matter, because Horizon's claims have been dismissed with prejudice (Dkt. 95), NSI is a prevailing party. *Raniere v. Microsoft Corp.*, 887 F.3d 1298, 1303 (Fed. Cir. 2018).

Further, this is an exceptional case. The record is replete with examples of Horizon's misconduct, and evidence that this case was unjustified and frivolous. For example, Horizon's failure to perform an adequate pre-suit investigation concerning Mr. Stanifer's false declaration—waiting more than two years after filing this suit to even contact Mr. Stanifer (Dkt. 83-4, 95:21-96:2)—makes this an exceptional case. *Thermolife Int'l LLC v. GNC Corp.*, 922 F.3d 1347, 1350, 1355 (Fed. Cir. 2019) (affirming Section 285 fee award totaling approximately $1.3

7

million based on a failure to perform an adequate pre-suit investigation).

The frivolity of the case is also demonstrated by Horizon's inability to clearly identify the receiving member in the Sketch. *Saint-Gobain Autover USA, Inc. v. Xinyi Glass North Am., Inc.*, 707 F. Supp. 2d 737, 751-53, 757 (N.D. Ohio 2010) (awarding Section 285 fees where party "continually chang[ed] its theories and present[ed] assertions that were both legally and factually unsupported"). Here, Horizon took four distinct positions regarding the location of the critical receiving member, including flip-flopping its position regarding whether the Sketch disclosed a receiving member at all. Supra § I.D.; n.3, 4, 6. Unable to clearly identify a component that formed the basis for its patent grant, Horizon never should have filed suit.

Taking contradictory positions in parallel proceedings also satisfies the exceptional case standard. *Belcher Pharm., LLC v. Hospira, Inc.*, 2022 WL 606075, at *2-*3 (D. Del. Feb. 3, 2022). Horizon did that multiple times. It told the PTAB the Sketch does not disclose receiving members while at the same time representing to the Court that it does. Dkt. 67-3, p. 14, Dkt. 76, p. 4. Further, at the PTAB, Horizon identified a conception date **after** the date of the Sketch, whereas in this Court, Horizon alleges its conception date is **before** that of the Sketch. Supra, n.7.

Finally, the submission of a false declaration (Supra, § I.E.) makes this case exceptional. *Intellect Wireless, Inc. v. Sharp Corp.*, 87 F. Supp. 3d 817, 843 (N.D. Ill. 2015).

It does not matter that this Court never had to reach a decision on the merits related to Horizon's false declaration. *Thermolife Int'l LLC*, 922 F.3d at 1350 (finding all patent claims **invalid**, and affirming fee award based on failure to conduct adequate investigation regarding **infringement** even though the issue of infringement had not been adjudicated on the merits, and "discovery on infringement had been postponed early in the proceedings.").

Horizon's now admittedly false declaration concerning the Sketch infected this entire

case and makes clear that Horizon never should have filed this suit. Indeed, had the IPR simply resulted in the invalidation of the '585 patent, Horizon made clear it would have continued to fully litigate its '050 Patent infringement claims. Dkt. 57, p. 13. But in addition to invalidating the '585 Patent, the IPR also definitively demonstrated, as Horizon conceded, that the declaration that formed the sole basis for its patent grants, was false. Dkt. 67-3, p. 14. Horizon, therefore, had little choice but to dismiss its suit, which it did. Dkt. 94. Had Horizon properly investigated its claims pre-suit, NSI would not have incurred any litigation expense. Accordingly, NSI respectfully asks this Court to award it its full attorneys' fees and costs.

**B.      The McDonald Hopkins Attorneys Of Record Are Liable For NSI's Fees Under 28 U.S.C. § 1927**

"Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. "The lawyer need not have subjective bad faith but must act with something more than negligence or incompetence." *Carter v. Hickory Healthcare Inc.*, 905 F.3d 963, 968 (6th Cir. 2018).

The McDonald Hopkins attorneys who appeared in this suit should be held liable for unreasonably and vexatiously multiplying these proceedings. Those attorneys were repeatedly notified, including pre-suit and throughout the litigation, that a false Rule 131 declaration formed the sole basis for its patent grant. *E.g.* Dkt. 12, Counterclaims, ¶ 19. Horizon's counsel ignored those warnings, thereby unreasonably increasing NSI's costs. *Intellect Wireless, Inc. v. Sharp Corp.*, 87 F. Supp. 3d 817, 822, 848-49 (N.D. Ill. 2015) (awarding Section 1927 sanctions based on the filing of a false Rule 131 declaration). Horizon's counsel waited two years after filing this lawsuit to even contact the declarant of that false declaration. In the meantime, NSI was forced to

litigate this case and a parallel IPR proceeding.

Horizon's counsel has already conceded that it would be appropriate to sanction counsel for misrepresenting the contents of Mr. Stanifer's declaration. Dkt. 37, p. 2 n.1. It made clear it intended to seek sanctions against NSI's counsel if the facts had come out otherwise. *Id.* Now that it is indisputable that the declaration was false, and Horizon admitted it had the evidence to prove it, Horizon's counsel should be sanctioned for all fees incurred following Horizon's filing of its complaint.

### C.    Horizon and Its Original Counsel Should Be Sanctioned Under The Court's Inherent Power

A district court has inherent power to "assess attorney's fees when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 512 (6th Cir. 2002)

For the same reasons discussed above, this Court should sanction both Horizon and its original counsel under this Court's inherent power. Horizon and its original counsel's submission and reliance on a false declaration, which it had the evidence to disprove, and its failure to timely investigate the matter, instead waiting two years to contact the declarant, support the imposition of sanctions in this case. *Webastro Thermo & Comfort N. Am., Inc. v. Bestop, Inc.*, 323 F. Supp. 3d 935, 940, 942 (E.D. Mich. 2018).

### D.    The '050 And '585 Patents Should Be Held Unenforceable Due To Inequitable Conduct Before The Patent Office

"Inequitable conduct is an equitable defense to patent infringement that, if proved, bars enforcement of a patent." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1285 (Fed. Cir. 2011). Inequitable conduct requires clear and convincing evidence that "(1) an individual associated with the filing and prosecution of a patent application made an affirmative misrepresentation of material fact, failed to disclose information, or submitted false information;

and (2) the individual did so with a specific intent to deceive the PTO." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 n.3 (Fed. Cir. 2009). "Although but-for materiality generally must be proved to satisfy the materiality prong . . . this court recognizes an exception in cases of affirmative egregious misconduct . . . . When the patentee has engaged in affirmative acts of egregious misconduct, such as the filing of an unmistakably false affidavit, the misconduct is material." *Therasense*, 649 F.3d at 1292.

Mr. Benni and Mr. Stanifer both committed inequitable conduct[9] during prosecution of the application that resulted in the '050 Patent. Both are individuals "associated with the filing and prosecution of a patent application." Mr. Benni is the attorney who filed the at-issue response to the examiner's rejection, which response included the Stanifer declaration as an attachment. Dkt. 35-3. Mr. Stanifer, a named inventor on the '050 Patent (Dkt. 4-1, cover page), executed the declaration that was submitted with the response. Dkt. 18-1.

Mr. Benni and Mr. Stanifer both made "affirmative misrepresentation[s] of material fact, failed to disclose information, or submitted false information," in an effort to overcome the examiner's rejection of its application so that it could obtain its patent grant.  More specifically, on August 28, 2017, Mr. Benni filed, at the Patent Office, the response to the examiner's rejection of Horizon's patent application. Dkt. 35-3. On that same date, Mr. Stanifer executed the declaration that was filed as an attachment to that response. Dkt. 18-1. Mr. Benni made the following material misrepresentations: "'968 Withers [(i.e. the Ford Patent)] is not prior art," and "'122 Withers [(i.e. Withers '317)] is not prior art" based on an attached declaration executed by Mr. Stanifer. Dkt. 35-3. Mr. Benni also filed Mr. Stanifer's declaration with the Patent Office as an attachment to Mr. Benni's response, which constitutes the submission of false information.

---

[9] If the Court finds that only one of these two individuals committed inequitable conduct, the result is the same.

Dkt. 35-3.

Mr. Stanifer made the affirmative false misrepresentation in his declaration that "[t]he drawings of Exhibit A demonstrate our conception of the claimed subject matter before the effective date of the '122 Withers [(i.e. Withers '317)] of May 30, 2008 and the '968 Withers [(i.e. the Ford Patent)] of June 23, 2009." Dkt. 18-1, PageID 140, ¶ 4.

It is beyond dispute that these statements by Mr. Benni and Mr. Stanifer were false. Mr. Stanifer admitted as much under oath (Dkt. 67-2, 32:6-33:8) and Horizon conceded as much:

> Evidence from both parties the Board already analyzed shows the May 2008 sketch does ***not*** contain the claimed receiving members.  Because the May 2008 sketch does not disclose each and every limitation in the patent claims at issue, it is not evidence of a conception as of that date.

Dkt. 67-3, pp. 14, 25.

These material misrepresentations by Mr. Benni and Mr. Stanifer were made to overcome the examiner's rejection, and they did overcome that rejection. Notably, these misrepresentations formed the sole basis for the examiner's allowance. The examiner never withdrew his argument that the two Ford references would invalidate the Horizon application that resulted in the '050 Patent. Instead, the examiner maintained that the Ford references were pertinent and show similar devices to those claimed by Horizon, but stated they are no longer being relied upon to reject Horizon's application. Dkt. 35-4, PageID 290. Accordingly, the false allegation that the declaration and Sketch demonstrates conception prior to the relevant dates of the Ford references was but-for material because it formed the examiner's ***sole*** basis for issuing Horizon's patent over the Ford references. Indeed, the filing of the false declaration is an affirmative act of egregious misconduct, which alone makes the conduct material. *Therasense*, 649 F.3d at 1292 ("When the patentee has engaged in affirmative acts of egregious misconduct, such as the filing of an unmistakably false affidavit, the misconduct is material."); *see also Rohm & Haas Co. v.*

12

*Crystal Chem. Co.*, 722 F.2d 1556, 1571 (Fed. Cir. 1983) ("there is no room to argue that submission of false affidavits is not material.").

Mr. Stanifer and Mr. Benni also had the specific intent to deceive the Patent Office. This can be demonstrated in numerous ways, though only one is needed. "Because direct evidence of deceptive intent is rare, a district court may infer intent from indirect and circumstantial evidence." *Therasense*, 649 F.3d at 1290. Mr. Stanifer conceded at his deposition that the Sketch attached to his declaration failed to show receiving members. Dkt. 67-2, 32:6-33:8. Accordingly, the declaration was knowingly false as it did not demonstrate conception, which evidences Mr. Stanifer's intent to deceive. *Lipman v. Dickinson*, 174 F.3d 1363, 1370 (Fed. Cir. 1999) ("The fact of misrepresentation coupled with proof that the party making it had knowledge of its falsity is enough to warrant drawing the inference that there was fraudulent intent.").

Further, Mr. Benni's and Mr. Stanifer's intent can be inferred based on the submission of a false declaration. *Rohm*, 722 F.2d at 1571 (the submission of a false declaration "usually will support the conclusion that the affidavit in which they were contained was the chosen instrument of an intentional scheme to deceive the PTO.").

Finally, as an alternative to the showing of specific intent discussed above, Horizon's repeated litigation misconduct warrants an adverse inference that Mr. Benni and Mr. Stanifer had the specific intent to deceive. *Regeneron Pharms., Inc. v. Merus N.V.*, 864 F.3d 1343, 1364 (Fed. Cir. 2017) (affirming district court's drawing of an adverse inference of specific intent to deceive based on party's litigation misconduct). In *Regeneron*, the court drew the adverse inference where the litigation misconduct "obfuscated its prosecution misconduct." *Id.* The same is true here. Rather than admit what was clear all along, Horizon tried to hide the fact that its declaration was false, including: 1) repeatedly identifying different components as the alleged

receiving member in the Sketch (Supra, § I.D.-F.) ; 2) failing to contact Mr. Stanifer to perform a reasonable investigation (Dkt. 83-4, cover page, 95:21-96:2); 3) representing to this Court that the Sketch does show receiving members and that it is impossible to argue otherwise (Dkt. 37, pp. 3-4 (emphasis in original); 4) threatening to seek sanctions against NSI for pointing out that Mr. Stanifer and Mr. Benni executed and filed a false declaration (*id.*, p. 2 n.1); and 5) even after conceding in the IPR that the declaration was false, continuing to assert in this Court that the declaration disclosed receiving members and evidences conception (Supra, § I.F.). An adverse inference is all the more appropriate here as the law firm of McDonald Hopkins has been a part of this process at every single step, having prosecuted Horizon's patents before the Patent Office, litigated them in this Court, and represented Horizon in the IPR proceedings. It is virtually impossible that Horizon did not recognize what was so blatantly obvious from the start. Accordingly, this Court may draw an adverse inference that both individuals had the specific intent to deceive.

Inequitable conduct of one patent renders a related patent unenforceable "where the conduct bears "an immediate and necessary relation" to the other patent. *Guardant Health, Inc. v. Found. Med., Inc.*, No. CV 17-1616-LPS-CJB, 2020 WL 2477522, at *5 (D. Del. Jan. 7, 2020). That relation exists here (Supra, § I.C.), therefore, the '585 Patent should also be rendered unenforceable.

This inequitable conduct is another basis to award Section 285 fees. *Therasense*, 649 F.3d at 1289 ("prevailing on a claim of inequitable conduct often makes a case 'exceptional.'").

### E.     NSI Is Entitled To Its District Court And IPR Related Fees

Pursuant to Fed. R. Civ. P. 54 (d)(2)(B)(iii), NSI estimates it has accrued approximately $1,988,000 of attorneys' fees.  Of those attorneys' fees, approximately $765,000 was attributable to the IPR proceeding.

NSI seeks both district court and IPR fees. Horizon has previously alleged that IPR fees are not recoverable based on *Dragon Intell. Prop. LLC v. DISH Network L.L.C.*, 101 F.4th 1366, 1368 (Fed. Cir. 2024), *cert. denied,* 145 S. Ct. 1176, 221 L. Ed. 2d 257 (2025). *Dragon* is not a bar to recovery of IPR fees in this case. The *Dragon* case concerns a lawsuit involving a single patent, and a related IPR that held all asserted claims unpatentable. *Id.* at 1368-69. Notably, the "bases for exceptionality were wholly unrelated to the [IPR]." *Id*. at 1372.

Here, the '050 Patent was not subject to an IPR and the work at the PTAB had significant implications for the ongoing litigation. The bases for exceptionality relates to both proceedings. For example, the Court granted NSI's Motion for Leave to Amend Counterclaims based in-part on evidence from the IPR proceedings. Dkt. 87, p. 6 ("At the IPR, Stanifer testified that the sketch . . . 'does not show the receiving members.'"). Further, even Horizon acknowledges that these two proceedings are intertwined. Dkt. 105, p. 2 (In support of Motion For Protective Order, Horizon arguing that a deposition of Mr. Stanifer in this Court is unnecessary as it is duplicative of his deposition in the IPR).

Because of the intertwined nature of these proceedings, NSI is entitled to all of its fees.

## III.    CONCLUSION

For the foregoing reasons, NSI respectfully asks this Court to award it its attorneys' fees, and to hold the '050 and '585 Patents unenforceable for inequitable conduct.

Dated:  May 27, 2025

Respectfully submitted,

By:  /s/ Ron N. Sklar

Ron N. Sklar
Dennis J. Abdelnour
**HONIGMAN LLP**
321 N. Clark St., Ste. 500
Chicago, IL 60654
(312) 701-9300
rsklar@honigman.com
dabdelnour@honigman.com

Jay R. Campbell (0041293)
Carter Ostrowski (0102302)
**TUCKER ELLIS LLP**
950 Main Avenue Suite 1100
Cleveland, OH 44113
(216) 592-5000
jay.campbell@tuckerellis.com
david.bernstein@tuckerellis.com

*Attorneys for Defendant Northern Stamping, Inc.*

16

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on May 27, 2025, I caused to be electronically filed the foregoing with

the Clerk of Court using the CM/ECF system, which will send notice of such filing to all registered

users.

By: <u>/s/ *Ron Sklar*            </u>