UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| HORIZON GLOBAL AMERICAS, INC., | ) | |
| | ) | Case No. 1:20-cv-00310-PAB |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge Pamela Barker |
| | ) | |
| NORTHERN STAMPING, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**NORTHERN STAMPING'S OBJECTION TO THE IMPOSITION OF ANY STAY OF ITS MOTION TO COLLECT FEES FROM McDONALD HOPKINS FOR LITIGATION MISCONDUCT**

NSI objects to any stay of the ongoing proceedings to collect fees from McDonald Hopkins ("MH") for MH's pervasive litigation misconduct. It is well-settled that "sanctions for attorney misconduct are not subject to the automatic stay" provided by section 362 of the Bankruptcy Code. See, *e.g., National Products Inc. v. Innovative Intelligent Products LLC*, 2025 WL 1929095, at *2 (W.D. Wash. July 14, 2025), citing *In re Berg*, 230 F.3d 1165, 1167–1168 (9th Cir. 2000).

Here, MH set out to deliberately and repeatedly deceive this Court to hide the fact it was pursuing a frivolous case. It did so by switching its version of the "facts" and the legal arguments it presented to this Court numerous, contradictory times. Worse, MH later admitted it had the evidence all along to prove its myriad versions of the facts were false. MH's misconduct prolonged this suit and cost NSI nearly two million dollars in needless fees it seeks to recover from MH.

Horizon's bankruptcy does not absolve MH of its deception and misconduct and thus

NSI's motion for fees against MH should not be stayed.

I.  **Factual Background**

Currently before this Court is NSI's motion for fees. Doc. No. 113. That motion seeks fees against MH under 28 U.S.C. §1927 and the Court's inherent powers. NSI objects to that portion of the motion being stayed. Separately, the motion also seeks fees against Horizon under 35 U.S.C. §285 and the Court's inherent powers and a finding that Horizon's asserted patents are unenforceable for inequitable conduct. NSI does not object to that portion against Horizon being stayed.

MH prolonged this litigation by pursuing it when a pre-suit investigation would have objectively revealed to anyone that it was frivolous. Indeed, MH later admitted that its arguments to the Court were false and it had evidence of the falsity.

As more comprehensively covered in NSI's motion for fees,[1] MH either failed to investigate the truth of its assertions or, worse, simply did not care about the truth. After Horizon, through MH, accused NSI of infringement, NSI replied that the Horizon patents are invalid since its alleged "conception sketch" lacked the critical "receiving member."

In response, MH alleged the sketch did in fact disclose the "receiving member" and it was "impossible" to argue otherwise.[2] MH was, however, unable to positively identify the

---

[1] This is an abridged version of MH's misconduct. The reasons that MH should be liable for NSI's fees are discussed more fully in Doc. No. 113.

[2] MH tried to cover up its knowingly false identifications of the receiving member with false bravado. MH proclaimed to this Court that "it is impossible to argue with the fact that the drawings show the receiving members." It further threatened that "[i]f NSI continues to pursue this baseless and debunked theory [that the receiving member is not in the sketch], then Horizon will pursue sanctions." Doc. No. 37 at PageID# 327-28; *id*. at PageID# 326, n.1.

receiving member, asserting to the Court at different times it was wholly different components at wholly different places in the sketch:

| Just after filing suit, Horizon labelled the inboard slot in the sketch as an "Example of a receiving member" and the circles at the ends as an "Aperture for connection to the frame." Doc. No. 99-1 at PageID# 3669.  (Labels supplied by Horizon.) | A few months later, Horizon argued to this Court that the receiving members are the circles that it had just represented were instead the "Aperture for connection to the frame." Doc. No. 37 at PageID# 327. (Orange arrows supplied by Horizon.) |
|---|---|
|  |  |

*Any investigation* would have revealed that MH's inconsistent and mutually exclusive identifications of the receiving member could not both be true.[3] In fact, MH admits it never even bothered to call or email the inventor, Mr. Stanifer, to investigate whether what they represented to the Court as the unvarnished truth was true at all.  Doc. No. 117 at PageID# 4147 (MH counsel: "We agree that McDonald Hopkins did not speak with Mr. Stanifer…. Mr. Stanifer has already testified to that fact, and it is undisputed.'").

---

[3] Remarkably, never has MH over the last 5 years tried to explain how it could have ethically or honestly made both of the contradictory representations it made to the Court.  Nor did MH ever try to apologize to the Court or NSI for its misrepresentations.

Worse yet, as MH was forced to admit, ***both supposed identifications of the receiving members were untrue***. During his deposition, Mr. Stanifer admitted the sketch did not show the receiving members at all:

Q? . . . Are the receiving members shown in this sketch?

A. No, they're not.

Excerpt from Stanifer Dep., Doc. No. 67-2 at PageID# 2057, 32:6-33:8, objection omitted (discussing Exhibit 3 to Stanifer Dep., Doc. No. 113-2).

One quick call to Mr. Stanifer would have revealed the case was frivolous nearly two million dollars ago. Yet MH failed—or chose not to—make that call.

And to compound MH's deceit before the Court, MH was forced to admit that it had evidence its representations of the presence of the receiving members in the sketch were untrue all along:

> ***Evidence from both parties*** the Board already analyzed shows the May 2008 ***sketch does not contain the claimed receiving members***. Because the May 2008 sketch does not disclose each and every limitation in the patent claims at issue, it is not evidence of a conception as of that date.

Doc. No. 113-1 at PageID# 4129, emphasis added. To be frank, it seems that MH pursued the case either knowing it to be frivolous or wholly indifferent to its merits.

These false representations formed the sole basis for Horizon's patent grant. And it was MH who advanced these arguments before the Patent Office, alleging that the sketch demonstrates the Horizon patents were conceived of coincidentally only days before Ford filed a patent application on the very same thing. And, as seen in the quote above, MH now admits that its representations to the Patent Office and this Court were untrue. ("Because the May 2008 sketch does not disclose each and every limitation in the patent claims at issue, ***it is not evidence of a conception*** as of that date." Emphasis added).

4

As discussed below, the bankruptcy automatic stay was not designed to insulate MH – a non-debtor wholly unrelated to Horizon—from its repeated attempts to deceive the Court and extend the proceedings to injure NSI. Thus, NSI's motion for fees as it relates to MH should not be stayed.

**II.     The automatic stay under 11 U.S.C. § 362(a) does not apply to NSI's motion for fees.**

The automatic stay imposed by 11 U.S.C. § 362(a) protects only the debtor, the debtor's property, and property of the estate. It does not insulate non-debtors, such as MH, from liability. See, *National Products Inc. v. Innovative Intelligent Products LLC*, 2025 WL 1929095, at *2 (W.D. Wash. July 14, 2025); *In re Berg*, 230 F.3d 1165, 1167–1168 (9th Cir. 2000); *Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1206–07 (3d Cir. 1991) ("the automatic stay is not available to non-bankrupt co-defendants"); *In re Aearo Technologies LLC*, 642 B.R. 891, 905 (Bankr. S.D. Ind. 2022); *In re All Seasons Resorts, Inc.*, 79 B.R. 901, 903-04 (Bankr. C.D. Cal. 1987) (automatic stay does not automatically extend to non-debtors; debtor seeking to extend the stay must take affirmative steps in the bankruptcy court to obtain such relief); *In re Tamarack Development Assocs., LLC*, 611 B.R. 286, 295 (Bankr. W.D. Mich. 2020) ("In the Sixth Circuit, for example, it is well-settled that the automatic stay of proceedings against the debtor under § 362(a)(1) does not bar actions against non-debtor third parties absent 'unusual circumstances' and the issuance of an injunction under § 105(a).").

Indeed, numerous courts have specifically held that sanctions or attorneys' fee awards imposed on a debtor's counsel are directed at counsel personally and do not constitute an action against the debtor, especially where there is no identity of interest between the debtor and the attorney. *See, e.g., Fox Valley Const. Workers Fringe Ben. Funds v. Pride of Fox Masonry and Expert Restorations*, 140 F.3d 661, 666 (7th Cir. 1998) (automatic stay does not deprive a district

court of jurisdiction to sanction an attorney for a bankrupt debtor); *In re Berg*, 230 F.3d at 1167-68 (holding that sanctions for attorney misconduct are not subject to the automatic stay; this case involved Rule 38 sanctions, and the court held that the governmental regulatory exemption of 11 U.S.C. § 362(b)(4) applied).

In fact, the *Berg* court noted that several courts have held "that a claimant may proceed to collect attorneys' fees imposed as a sanction for the ***debtor's*** improper conduct in litigation without regard to the automatic stay." *See also Alpern v. Lieb*, 11 F.3d 689, 690 (7th Cir. 1993) ("A litigant should not be allowed to delay the imposition of sanctions indefinitely by the expedient of declaring bankruptcy."). Thus, MH is liable for litigation misconduct attributable to Horizon. As such, MH cannot try to blame its misconduct on Horizon to avoid liability.

NSI affirms that it seeks to proceed with its pending motion solely against Horizon's counsel under 28 U.S.C. § 1927 and the Court's inherent powers, but not against Horizon or its bankruptcy estate. NSI's claims against Horizon not covered by MH will be brought either through a proof of claim filed in Horizon's chapter 11 case, or in this proceeding only after appropriate stay relief has been obtained from the U.S. Bankruptcy Court for the Southern District of Texas. Accordingly, the automatic stay does not apply to MH, and continuation of the fee motion against MH does not violate § 362(a) of the bankruptcy statute.

**III. Other Issues**

Also pending before this Court are MH's and Horizon's attempts to block the depositions of David Cupar, Horizon's previous lead counsel, and Eric Stanifer, the inventor of the Horizon patents. Because NSI does not oppose the imposition of the automatic stay with respect to Horizon, NSI would also agree to forgo its request for deposition of Mr. Stanifer during that stay.

6

## IV. Conclusion

The automatic stay imposed as a result of Horizon's bankruptcy proceedings do not apply to NSI's motion for fees against McDonald Hopkins. As such, the Court should not stay the proceedings related to NSI's motion for fees against McDonald Hopkins under 28 U.S.C. §1927 and the Court's inherent powers.

Dated: October 7, 2025              Respectfully submitted,

By: */s/ Jay R. Campbell*

Jay R. Campbell (0041293)
Carter Ostrowski (0102302)
**TUCKER ELLIS LLP**
950 Main Avenue Suite 1100
Cleveland, OH 44113
(216) 592-5000
jay.campbell@tuckerellis.com
carter.ostrowski@tuckerellis.com

Ron N. Sklar
Dennis J. Abdelnour
**HONIGMAN LLP**
321 N Clark St., Suite 500
Chicago, IL 60654
(312) 701-9300
rsklar@honigman.com
dabdelnour@honigman.com

*Attorneys for Defendant Northern Stamping, Inc.*