**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| HORIZON GLOBAL AMERICAS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:20-cv-00310-PAB |
| | ) | |
| NORTHERN STAMPING, INC., | ) | Honorable Judge Pamela A. Barker |
| | ) | |
| Defendant, | ) | |

# DEFENDANT NORTHERN STAMPING, INC.'S MEMORANDUM IN SUPPORT OF ITS AMENDED MOTION FOR ATTORNEYS' FEES PURSUANT TO 28 U.S.C. § 1927 AND THE INHERENT POWERS OF THIS COURT

## TABLE OF CONTENTS

I. STATEMENT OF FACTS ....................2

A. Horizon Did Not Conceive Of The Claimed Inventions—Ford Did—Therefore, Horizon Was Never Entitled To Any Patent Protection ....................2

B. Horizon Filed Its Own Patent Application On The Combination Hitch, Which Was Rejected By The Patent Office Based On Ford's Prior Art ....................2

C. Horizon And its Prosecution Counsel Filed A False Declaration To Obtain Its Patents ....................3

D. Despite Having Notice Of The False Declaration, Horizon's Counsel Maintained The Sketch Disclosed Receiving Members, Even Though It Struggled To Identify This Simple Mechanical Component ....................4

E. Eventually, Horizon Could No Longer Maintain The Charade And Admitted The Declaration Was False ....................6

F. Its Declaration Undeniably False, Horizon Could Not Maintain This Suit ....................7

**II. ARGUMENT ....................7**

A. Legal Standard ....................7

B. Horizon's counsel should be held liable for NSI's attorney's fees ....................8

1. The McDonald Hopkins Attorneys Of Record Are Liable For NSI's Fees Under 28 U.S.C. § 1927 ....................9

2. The McDonald Hopkins Attorneys Should Be Sanctioned Under The Court's Inherent Powers ....................12

C. NSI Is Entitled To Recoup All Of The Fees Incurred During This Dispute ....................14

**III. CONCLUSION ....................15**

## TABLE OF AUTHORITIES

Page(s)

Cases

*Carter v. Hickory Healthcare Inc.*,
905 F.3d 963 (6th Cir. 2018) ........................................................................................ 8

*EscapeX IP, LLC v. Google LLC*,
159 F.4th 1360 (Fed. Cir. 2025) ............................................................................. 8, 9, 12

*First Bank of Marietta v. Hartford Underwriters Ins. Co.*,
307 F.3d 501 (6th Cir. 2002) ........................................................................................ 8

*Intellect Wireless, Inc. v. Sharp Corp.*,
87 F.Supp.3d 817 (N.D. Ill. 2015)............................................................................ 8, 11, 14

*Laukus v. Rio Brands, Inc.*,
292 F.R.D. 485 (N.D. Ohio 2013) .............................................................................. 12, 13

*Ridder v. City of Springfield*,
109 F.3d 288 (6th Cir. 1997) ........................................................................................ 14

*Webasto Thermo & Comfort N. Am., Inc. v. BesTop, Inc.*,
No. 16-CV-13456, 2018 WL 5098784 (E.D. Mich. Oct. 19, 2018)......................................... 12

*Webastro Thermo & Comfort N. Am., Inc. v. Bestop, Inc.*,
323 F. Supp. 3d 935 (E.D. Mich. 2018) ......................................................................... 12

Statutes

28 U.S.C. § 1927.............................................................................................. 8, 9, 11, 12

Rules

Fed. R. Civ. P. 11 ........................................................................................................ 11

Fed. R. Civ. P. 54 (d)(2)(B)(iii) ........................................................................................ 15

Horizon's case was fatally flawed from the outset. Horizon lacked any legitimate patent rights because the Patent Office granted Horizon's patents ***solely*** based on a ***false declaration***. More specifically, to overcome the rejection of its patent application, Horizon's named inventor alleged in a sworn declaration to the Patent Office that a "Sketch"[1] evidenced a conception date, which predated Ford's prior art patents. However, that Sketch did not evidence conception as it failed to disclose critical elements claimed in Horizon's patents, namely, "receiving members." This flaw foreclosed any legitimate basis to file suit.

Despite the obvious implications of that false declaration, Horizon's counsel[2] proceeded undeterred. This Sketch being so critical to its case, counsel repeatedly misrepresented its contents to this Court, telling this Court that the Sketch disclosed "receiving members" and that it was "***impossible***" to argue otherwise.

Then Horizon's counsel did the "impossible." In a parallel *inter partes* review proceeding, counsel admitted to the Patent Trial and Appeal Board ("PTAB") what was clear all along—the Sketch "***does not contain the claimed receiving members***" and it is "***not evidence of a conception***." Beyond highlighting counsel's misconduct before this Court, that admission confirmed Horizon never should have filed suit.

Horizon's counsel cannot claim ignorance. It knew, or at a bare minimum, if it had conducted a reasonable investigation, it should have known of this fatal flaw at the outset. Indeed, NSI informed Horizon of this issue pre-suit, and again in numerous pleadings throughout this litigation. Further, alarm bells should have sounded when, despite repeatedly reassuring this Court

---

[1] The "Sketch" has also been referred to by other names in this case, most frequently, the "Conception Drawing."

[2] NSI seeks fees from Horizon's original counsel in this suit, David B. Cupar and Matthew J. Cavanagh. Both are listed in the signature block of Horizon's Complaint (Dkt. 1), documents falsely alleging that the Sketch discloses the receiving members (Dkt. 37), and the pleading in the *inter partes* review arguing that the Sketch does not disclose the receiving members (Dkt. 67-3). Mr. Cupar signed all three documents.

that the "receiving members" were present in the Sketch, Horizon and its counsel struggled to identify that component. It changed its identification of that component three times, including counsel's ultimate admission that the receiving members are not disclosed at all.[3] Incredibly, counsel admitted that Horizon itself had the evidence to prove that the Sketch does not disclose the receiving members. Counsel either ignored that evidence or failed for years to conduct a proper investigation. Neither is excusable.

Northern Stamping was forced to incur millions in attorneys' fees to defend against this baseless suit. Given its misconduct, Horizon's counsel should be held liable for those fees.

## I. STATEMENT OF FACTS

### A. Horizon Did Not Conceive Of The Claimed Inventions—Ford Did—Therefore, Horizon Was Never Entitled To Any Patent Protection

Horizon filed this suit, alleging infringement of two patents related to a combination fifth wheel and gooseneck trailer hitch. Dkt. 16, First Amended Complaint. But Horizon did not conceive of these inventions—a prerequisite for seeking patent protection. Rather, it was Ford's idea to create a hitch having sockets for both fifth wheel and gooseneck connections. Dkt. 67-1, p. 21-22. Ford then approached Horizon to manufacture that combination hitch. *Id.*, p. 22 ("Ford Motor Company came to us and said, we want to combine these [hitch types]") (brackets in original).

### B. Horizon Filed Its Own Patent Application On The Combination Hitch, Which Was Rejected By The Patent Office Based On Ford's Prior Art

Despite it being Ford's idea to create the combination hitch, Horizon sought to claim Ford's invention as its own. Horizon filed several patent applications on this hitch, one of which

[3] After Horizon replaced McDonald Hopkins with new counsel, Horizon's new counsel concocted a fourth theory as to the location of the receiving members, which differed from original counsel's first three attempts. Dkt. 76, p. 4.

subsequently issued as U.S. Patent No. 9,834,050 ("'050 Patent"). Dkt. 4-1.

Horizon's application that resulted in the '050 Patent hit what should have been an absolute bar to Horizon obtaining a patent—Ford had already filed its own patent applications covering the same combination hitch. The patent examiner rejected Horizon's application based on two earlier Ford references: 1) U.S. Patent No. 7,793,968 ("Ford Patent"); and 2) U.S. Patent Pub. No. 2009/0295122 ("Withers '317"). Dkt. 35-2. PageID 275-280. Indeed, a side-by-side comparison shows that Horizon was seeking to patent a nearly identical hitch to the one Ford had already patented:

| **Ford Patent** | **Horizon's '050 Patent** |
| --- | --- |
|   |   |

Dkt. 36-1, PageID 317 (Ford Patent, Fig. 1); Dkt. 4-1, PageID 30 ('050 Patent, Fig. 4).

### C. Horizon And its Prosecution Counsel Filed A False Declaration To Obtain Its Patents

Horizon refused to let Ford's patents stand in its way. On August 28, 2017, Horizon's prosecution counsel, Todd Benni, filed a response to the examiner's rejection. Mr. Benni was an attorney at McDonald Hopkins LLC—the same firm that represented Horizon in this litigation and in the *inter partes* review ("IPR"). Dkt. 35-3, PageID 283. Mr. Benni did not dispute the examiner's conclusion that the earlier filed Ford prior art would render Horizon's application unpatentable. *Id*, PageID 282-83. Instead, he alleged that a declaration attached to his submission demonstrated that Horizon invented the combination hitch before Ford, even though Ford had filed for patent protection first. *Id.* (alleging that "'968 Withers [(i.e., the Ford Patent)] is not prior art," and "'122 Withers [(i.e., Withers '317)] is not prior art.") That declaration, executed under penalty

of perjury by Eric Stanifer, a named inventor of the ’050 Patent, included the following representation: “The drawings of Exhibit A demonstrate our conception of the claimed subject matter before the effective date of the ‘122 Withers [(i.e. Withers ’317)] of May 30, 2008 and the ‘968 Withers [(i.e. the Ford Patent)] of June 23, 2009.” Dkt. 18-1, PageID 140, ¶ 4 (brackets added). That Exhibit included the Sketch, purportedly drawn on May 8, 2008:



*Id.*, PageID 142.

Based on that declaration, the examiner granted Horizon’s patent application. The examiner never altered his conclusion that the Ford prior art disclosed the inventions claimed by Horizon; he simply stated that he is no longer relying on that Ford prior art. Dkt. 35-4, PageID 290. In other words, the examiner’s ***sole*** basis for issuing Horizon’s patent was Mr. Stanifer’s sworn declaration alleging that his Sketch demonstrates he conceived of the invention before Ford. Horizon’s application issued as the ’050 Patent. The other patent-in-suit, Patent No. 10,589,585, is a continuation of the ’050 Patent. Dkt. 16-2, PageID 108. Based on the declaration filed during prosecution of the ’050 Patent, the examiner did not consider the Ford patents to be prior art when examining the application that issued as the ’585 Patent. Dkt. 46, PageID 350.

### D. Despite Having Notice Of The False Declaration, Horizon’s Counsel Maintained The Sketch Disclosed Receiving Members, Even Though It Struggled To Identify This Simple Mechanical Component

Horizon and its counsel had repeated notice of its false declaration. On December 12, 2017, Mr. Cupar first sent NSI a letter accusing NSI of patent infringement. Dkt. 16-3. In response, and more than a year before Horizon filed suit, NSI notified Horizon of its false declaration. Dkt. 61-

2, PageID 1741, Dec. 20, 2018 email to Horizon. NSI not only informed Horizon that "[t]he May 8, 2008 drawing . . . does not show a receiving member," it also made clear the implications of that shortcoming: "Thus, the May 8, 2008 drawing does not establish an invention date for the Horizon '050 patent earlier than the Ford patent . . . . [T]his makes the Horizon '050 patent invalid." *Id.* (emphasis original). NSI continued to raise this issue throughout the litigation, including in its very first pleading. Dkt. 12, Counterclaims, ¶ 19 ("Neither the Conception Drawing nor the Provision[al] Application provide support for the 'receiving members . . . .'"). Sean Withers, an inventor on both Ford references, who worked with Mr. Stanifer on this hitch project, submitted a declaration in this litigation identifying that same shortcoming. Dkt. 59-2, ¶ 12, 17, 19 ("This sketch does not show the claimed 'receiving members'").[4]

Although Horizon and its counsel maintained that the Sketch disclosed receiving members, it could not clearly identify this simple mechanical component. For example, the day after filing this suit, Horizon identified the receiving member as being located at an inboard slot; a year later it changed its location:

| **Feb. 13, 2020 Identification** | **Jan. 6, 2021 Identification** |
| --- | --- |
|   |  |

*Compare* Dkt. 99-1 (Horizon identifying the inboard slot as an "Example of a receiving member"

[4] Mr. Withers also declared that Horizon's '050 and '585 Patents "disclose the Combination Hitch that I invented and that I and my colleagues at Ford shared with Cequent [now Horizon]." Dkt. 59-2, ¶ 18.

and the outboard slot as an "Aperture for connection to the frame") *with* Dkt. 37, PageID 327 (identifying the receiving members as "the four circles near each corner as shown by the arrows," which it had previously identified as the "aperture for connection to the frame.") (annotations in original).[5]

What Horizon's counsel lacked in proof it compensated for with bravado. It proclaimed to this Court: 1) the "Conception Drawings *do* show the allegedly 'missing' receiving members"; 2) "it is impossible to argue with the fact that the drawings show the receiving members"; and 3) it threatened that "[i]f NSI continues to pursue this baseless and debunked theory, then Horizon will pursue sanctions." Dkt. 37, PageID 327-28 (emphasis in original); *id.*, PageID 326 n.1. What's good for the goose . . . .

**E. Eventually, Horizon Could No Longer Maintain The Charade And Admitted The Declaration Was False**

During his deposition, Mr. Stanifer admitted the Sketch did not show receiving members:

Q? . . . Are the receiving members shown in this sketch? A. No, they're not.

Q. Are pucks shown in this sketch? A. No, they are not.

Dkt. 67-2, 32:6-33:8, objection omitted; Dkt. 113-2, Stanifer Deposition Exhibit 3, the Sketch.

Following Mr. Stanifer's admission, in a signed pleading to the Patent Trial and Appeal Board, Horizon's counsel, David Cupar, was forced to admit that the declaration was false; incredibly, Mr. Cupar also conceded that Horizon had the evidence to prove as much:

> Evidence from both parties the Board already analyzed shows the May 2008 sketch does ***not*** contain the claimed receiving members.[6] Because the May 2008 sketch does not disclose each and every limitation in the patent claims at issue, it is not evidence of a conception as of that date.

---

[5] These are Horizon and its counsel's first and second attempts to identify the elusive "receiving member."

[6] This is Horizon and its counsel's third position regarding the presence, or lack thereof, of "receiving members" in the Sketch.

Dkt. 67-3, PageID 2079, 2090. Even more concerning, despite having pre-suit notice and repeated notice thereafter of Horizon's false declaration, Mr. Cupar failed to contact Mr. Stanifer, the declarant, to investigate this matter until years into this case. Dkt. 83-4, cover page, 95:21-96:2 (Mr. Stanifer testifying that he was first contacted by counsel "a couple months" prior to his July 28, 2022 deposition); *id.* at 103:16-105:6 (Mr. Stanifer stating that his first call with McDonald Hopkins concerned "the case from Northern Stamping . . . versus this patent"—i.e. the IPR proceeding).[7]

**F. Its Declaration Undeniably False, Horizon Could Not Maintain This Suit**

After admitting the declaration was false, Horizon had no choice but to dismiss its suit. Horizon and its counsel made clear that alone, a finding by the PTAB that the '585 patent was invalid would not deter it from proceeding with its '050 Patent claims in this suit.[8] Dkt. 57, PageID 1242 (". . . a stay would not simplify the issues in this case because the parties will continue to fully litigate infringement by NSI on the '050 patent, regardless of the result of the IPR on the '585 patent."). However, the IPR did not solely result in a finding that the '585 Patent was invalid; it also resulted in counsel's admission that Horizon filed a false declaration to obtain its patent grants. Dkt. 67-3, PageID 2079. Accordingly, Horizon had no choice but to dismiss its suit, with prejudice. Dkt. 94. On February 20, 2025, this Court Ordered the case dismissed with prejudice. Dkt. 95.

## II. ARGUMENT

### A. Legal Standard

"Any attorney or other person admitted to conduct cases in any court of the United States

[7] Although this Court initially dismissed NSI's inequitable conduct counterclaims, after Horizon conceded that it had filed a false declaration, this Court granted NSI's Supplemental Motion For Leave To Amend Counterclaims to add back its counterclaims of inequitable conduct. Dkt. 87.

[8] NSI filed a petition for IPR against the '585 Patent only.

or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. "The lawyer need not have 'subjective bad faith' but must act with 'something more than negligence or incompetence.'" *Carter v. Hickory Healthcare Inc.*, 905 F.3d 963, 968 (6th Cir. 2018). "Personal sanctions under section 1927 against an attorney are appropriate for conduct that viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the Court." *EscapeX IP, LLC v. Google LLC*, 159 F.4th 1360, 1369 (Fed. Cir. 2025). "An attorney's obligation to zealously advocate for a client is not a license to ignore other duties, such as conducting an adequate pre-suit investigation." *Id.*

A district court also has the inherent power to "assess attorney's fees when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 512 (6th Cir. 2002). While a court may award post-filing fees under either theory, courts are also "free to sanction [] pre-suit conduct . . . under its inherent authority." *Intellect Wireless, Inc. v. Sharp Corp.*, 87 F.Supp.3d 817, 844-45 (N.D. Ill. 2015).

**B. Horizon's counsel should be held liable for NSI's attorney's fees**

Mr. Cupar and Mr. Cavanagh should be held liable for NSI's attorney's fees. In fact, Horizon's counsel already conceded that it would be appropriate to sanction counsel for misrepresenting the contents of Mr. Stanifer's declaration. Dkt. 37, PageID 326 n.1. It is now indisputable that Mr. Cupar and Mr. Cavanagh misrepresented its contents. And they pursued a baseless lawsuit by ignoring the clear implications of that false declaration. In doing so, they acted in bad faith and demonstrated reckless disregard of their duties to this Court. Accordingly, they should be held liable for NSI's fees.

### 1. The McDonald Hopkins Attorneys Of Record Are Liable For NSI's Fees Under 28 U.S.C. § 1927

Mr. Cupar and Mr. Cavanagh unreasonably and vexatiously multiplied these proceedings and should be liable to NSI for its attorneys' fees. At a bare minimum, counsel demonstrated reckless disregard of its duties to this Court by failing to conduct a reasonable investigation, pursuing baseless claims, and misrepresenting facts to this Court.

Horizon's counsel failed to adequately investigate its claims. "An attorney's obligation to zealously advocate for a client is not a license to ignore other duties, such as conducting an adequate pre-suit investigation . . . ." *EscapeX IP, LLC*, 159 F.4th at 1369 (affirming an award of fees pursuant to 28 U.S.C. § 1927). Horizon's counsel proceeded to litigate this case despite having repeated notice that its investigation was severely deficient. That notice included: 1) NSI informed Horizon pre-suit that "[t]he May 8, 2008 drawing . . . does <u>not</u> show a receiving member," (Dkt. 61-2, PageID 1741); 2) Horizon's counsel itself struggled to identify this simple mechanical component within the Sketch (Supra, § I.D-E); 3) NSI repeatedly pointed out this deficiency in its pleadings, including in its very first pleading in this case (Dkt. 12, Counterclaims, ¶ 19); and 4) Mr. Withers, a named inventor on Ford's nearly identical hitch patents, who "worked with Eric Stanifer" on this project, stated in a sworn declaration that "[t]his sketch does not show the clamed 'receiving members'" (Dkt. 59-2, ¶¶ 12, 17, 19). Horizon's counsel ignored it all.

Counsel's egregious delay in investigating its claims is incomprehensible. It was clear at the outset of this dispute that Horizon could not file suit in good-faith if Mr. Stanifer's declaration was false. At a minimum, a reasonable investigation would have included counsel contacting Mr. Stanifer to discuss his declaration. And yet, four and a half years passed from the time Mr. Cupar first sent his December 12, 2017 cease and desist letter (Dkt. 16-3) until counsel finally contacted

Mr. Stanifer in approximately May 2022 (Dkt. 83-4, cover page, 95:21-96:2, 103:16-105:6). Counsel showed no increased urgency to contact Mr. Stanifer as the evidence of its false declaration continued to mount. Three and a half years lapsed from the time NSI first expressly informed Horizon of this deficiency (Dkt. 61-2, PageID 1741) until counsel contacted Mr. Stanifer. Nearly two years passed from the time NSI raised this issue in its first pleading in this suit. Dkt. 12, Counterclaims, ¶ 19. Even after Mr. Withers' declaration was filed with this Court (Dkt. 59-2), another eight months passed before counsel contacted Mr. Stanifer. During that intervening period, NSI was forced to litigate this case and the parallel IPR proceeding at great expense.

Mr. Cupar and Mr. Cavanagh's response to Mr. Withers' declaration is unfathomable and exemplifies their strategy, from the outset, of unreasonably multiplying these proceedings. Any diligent attorney would have contacted Mr. Stanifer to investigate their claims if presented with Mr. Withers' declaration. Mr. Withers, after all: 1) was employed by Horizon's customer, Ford, 2) is the named inventor on the Ford prior art that disclosed the nearly identical hitch as the one Horizon sought to patent; 3) worked with Mr. Stanifer on this hitch project; 4) testified that Horizon's patents claim the inventions that Mr. Withers invented, not Mr. Stanifer; and 5) testified that the Sketch does not disclose receiving members. Dkt. 59-2, ¶¶ 3, 11-12, 17-19. Rather than promptly contacting Mr. Stanifer, Horizon's counsel sought to disparage NSI's counsel. In a September 9, 2021 Joint Status Report, without seeking any relief from the Court, Horizon's counsel expressed unsubstantiated "concern" that NSI disparaged Horizon and Horizon's products to its customer, Ford. Ex. 1, Sept. 9, 2021 Joint Status Report at 2-5. If Horizon's counsel thought it could strong-arm NSI's counsel into foregoing NSI's proper investigation into its own claims and defenses, it was wrong. And if Horizon's counsel had instead investigated its own claims, it would have confirmed that Horizon's patents issued solely on the basis of a false declaration,

requiring it to immediately drop its suit.

To be clear, that the Sketch failed to disclose receiving members should have been apparent to any patent counsel even without contacting Mr. Stanifer. Indeed, Horizon and its counsel's inability to clearly identify this component in the Sketch should have given counsel pause. Regardless, a simple phone call by counsel to Mr. Stanifer would have promptly and definitively resolved the issue. As Mr. Stanifer testified: "Q? . . . Are the receiving members shown in this sketch? A. No, they're not." Dkt. 67-2, 32:6-33:8, objection omitted; Dkt. 113-2, Stanifer Deposition Exhibit 3, the Sketch.

Following Mr. Stanifer's admission, in a signed pleading to the Patent Trial and Appeal Board, counsel admitted that the declaration was false:

> Evidence from both parties the Board already analyzed shows the May 2008 sketch does ***not*** contain the claimed receiving members. Because the May 2008 sketch does not disclose each and every limitation in the patent claims at issue, it is not evidence of a conception as of that date.

Dkt. 67-3, PageID 2079, 2090. Incredibly, in making this statement, counsel conceded that Horizon itself had the evidence demonstrating that the Sketch does not contain receiving member—e.g., evidence from "both" parties demonstrated the absence of receiving members. Horizon's failure to adequately investigate this issue pre-suit, and its blind reliance on Mr. Stanifer's false declaration justifies an award of fees in this case. *Intellect Wireless, Inc.*, 87 F.Supp.3d at 822, 848-49 (awarding Section 1927 sanctions based on failure to adequately investigate false Rule 131 declaration).

Further, "[b]y presenting to the court a pleading . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: . . . the factual contentions have evidentiary support . . . ." Fed. R. Civ. P. 11. Horizon's counsel did not comply with that duty of candor to this Court. It stridently represented

to this Court that the Sketch discloses the claimed receiving members, that it is impossible to argue otherwise, and that NSI's counsel should be sanctioned for even attempting to make this argument. Dkt. 37, PageID 327-28, 326 n.1. It is impossible to square those representations with counsel's subsequent admission that Horizon had the evidence demonstrating that the Sketch does not disclose receiving members. By failing to uphold its duty of candor, counsel unreasonably and vexatiously multiplied these proceedings. This is another basis for holding counsel liable for NSI's attorney's fees. *EscapeX IP*, 159 F.4th at 1369.

Now that it is indisputable that the declaration was false, and Horizon admitted it had the evidence to prove it, pursuant to Section 1927, Horizon's counsel should be sanctioned for all fees incurred by NSI following Horizon's filing of its complaint.

#### 2. The McDonald Hopkins Attorneys Should Be Sanctioned Under The Court's Inherent Powers

For the same reasons discussed above, this Court should sanction Horizon's counsel under this Court's inherent power. Counsel's reliance on a false declaration, which it had the evidence to disprove, and its failure to timely investigate the matter, instead waiting years to contact the declarant, support the imposition of sanctions in this case. *Webasto Thermo & Comfort N. Am., Inc. v. BesTop, Inc.*, No. 16-CV-13456, 2018 WL 5098784, at *8 (E.D. Mich. Oct. 19, 2018) adopting recommendation of *Webastro Thermo & Comfort N. Am., Inc. v. Bestop, Inc.*, 323 F. Supp. 3d 935, 940, 942 (E.D. Mich. 2018) (awarding sanctions based on the court's inherent authority).

Horizon's counsel's failure to conduct a reasonable investigation is exactly the type of conduct that courts may sanction through their inherent authority. *See, e.g., Laukus v. Rio Brands, Inc.*, 292 F.R.D. 485, 505-06 (N.D. Ohio 2013). In fact, in *Laukus*, in awarding sanctions under its inherent authority, the court noted that counsel failed to perform a reasonable search and to

reasonably investigate matters once counsel had reason to believe an earlier position may have been mistaken. *Id.* at 506. Here, Horizon's counsel had reason to believe its position was mistaken even before it filed suit. And the evidence of that mistake continued to grow throughout the case, yet counsel failed to reasonably investigate that issue for years. Counsel failed to satisfy its duty before this Court.

Horizon's counsel's egregious litigation tactics in this suit evidence a pattern of behavior, not an isolated incident. In addition to its blatant misrepresentations to this Court, Horizon's counsel also misrepresented ***this Court's*** decisions to other judicial bodies. More specifically, in an effort to downplay the significance of Mr. Stanifer's admission, Horizon's counsel told the PTAB that "the Court already ***dismissed with prejudice*** [NSI's] inequitable conduct counterclaims." Dkt. 83-11, PageID 3313 n.5 (emphasis original). This Court never did any such thing; in fact it granted NSI's Motion for Leave to Amend to replead inequitable conduct. Dkt. 87, PageID 3538.

Instead of investigating its claims, Horizon harassed NSI through this suit. It kept the cloud of litigation over NSI for as long as possible through its failure to investigate and its misrepresentations to this Court and other judicial bodies. Horizon's counsel even used its IPR loss as an opportunity to create additional delay through a baseless appeal. That appeal had no bearing on this case or the enforceability of Horizon's patents as Horizon could not appeal its counsel's ***admission*** that the Sketch did not disclose receiving members and did not evidence conception.[9] Horizon's counsel also delayed and harassed NSI by repeatedly pursuing mediation

[9] Horizon's original counsel filed the appeal. After they were replaced by new counsel, Horizon continued with these same delay tactics. For example, on February 26, 2024, Horizon's new counsel indicated that it intended to proceed with oral argument on its appeal. Ex. 2, Response to Notice to Advise of Scheduling Conflicts (failing to waive oral argument and identifying dates on which it was unavailable for oral argument). Ten months later, after the Federal Circuit scheduled Oral Argument and Horizon could not delay any further, it waived oral argument. Ex. 3, Response to Notice of Oral Argument (checking box indicating "the above party intends to waiver oral argument.").

only to seek unreasonable settlements divorced from the facts of this case. *E.g.,* Dkt. 71, Request for Status Conference.[10] Horizon's counsel should be required to compensate NSI for the harm it caused, including both its pre-suit fees and all fees incurred following the filing of this suit. *Intellect Wireless*, 87 F.Supp.3d at 844-45.

**C. NSI Is Entitled To Recoup All Of The Fees Incurred During This Dispute**

Horizon's counsel should be held liable for all fees incurred by NSI during this dispute.[11] *See, e.g., Ridder v. City of Springfield*, 109 F.3d 288, 298-99 (6th Cir. 1997) (affirming an award of "the full amount of attorney fees" given the "persistent assertion of meritless claims.").

Horizon's now admittedly false declaration concerning the Sketch infected this entire case and makes clear that Horizon never should have filed this suit. Horizon's own actions prove this point. Had the IPR simply resulted in the invalidation of the '585 patent, Horizon made clear it would have continued to fully litigate its '050 Patent infringement claims. Dkt. 57, PageID 1242 ("a stay would not simplify the issues in this case because the parties will continue to fully litigate infringement by NSI on the '050 patent, regardless of the result of the IPR on the '585 patent."). But the IPR did not merely result in the invalidity of the '585 Patent; the IPR also definitively demonstrated, as Horizon conceded, that the declaration that formed the sole basis for its patent grants, was false. Dkt. 67-3, PageID 2079. Horizon, therefore, had little choice but to dismiss its suit, which it did. Dkt. 94. Had Horizon properly investigated its claims pre-suit, NSI would not have incurred any litigation expense. Accordingly, NSI respectfully asks this Court to award it its

[10] As memorialized in this pleading, with full knowledge that mediation would be pointless unless it agreed to "pay a significant portion of NSI's legal fees," Horizon's counsel still urged the Court to refer the case for mediation. Dkt. 71, PageID 2101-2102. The mediation "lasted just over an hour. It did nothing to advance the case, but only emphasized Horizon's desire to delay this case." *Id.*, PageID 2102.

[11] Subject, of course, to the previously disclosed law making clear that Section 1927 fees are limited to fees incurred during the litigation, while fees awarded under the Court's inherent authority may encompass pre-suit fees as well.

full attorneys' fees and costs.

Pursuant to Fed. R. Civ. P. 54 (d)(2)(B)(iii), NSI estimates it has accrued approximately $2,225,000 of attorneys' fees.

## III. CONCLUSION

For the foregoing reasons, NSI respectfully asks this Court to award it its attorneys' fees.

Dated: July 28, 2026

Respectfully submitted,

By: /s/ *Ron N. Sklar*

Ron N. Sklar
Dennis J. Abdelnour
**HONIGMAN LLP**
321 N. Clark St., Ste. 500
Chicago, IL 60654
(312) 701-9300
rsklar@honigman.com
dabdelnour@honigman.com

Jay R. Campbell (0041293)
Carter Ostrowski (0102302)
**TUCKER ELLIS LLP**
950 Main Avenue Suite 1100
Cleveland, OH 44113
(216) 592-5000
jay.campbell@tuckerellis.com
david.bernstein@tuckerellis.com

*Attorneys for Defendant Northern Stamping, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 28, 2026, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notice of such filing to all registered users.

/s/ *Ron N. Sklar*